DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
WENDY M. GARBERS (CABN 213208)
ADRIENNE ZACK (CABN 291629)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7031
    FAX: (415) 436-6748
    adrienne.zack@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID JENNINGS, *et al.*, <br><br> Defendant. | Case No. 20-cv-02731 VC <br><br> **DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR ALEXANDER PHAM IN SUPPORT OF FEDERAL DEFENDANTS' OPPOSITION TO TRO AND MOTION TO STAY IN LIGHT OF** *FRAIHART* |

    I, Alexander Pham, hereby declare:

    1.    I am an Assistant Field Office Director ("AFOD") with the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), in the San Francisco Field Office ("ERO San Francisco"). I have held this position since April 2019. I am currently assigned to the Bakersfield Sub-Office within ERO San Francisco, which is responsible for oversight of the Mesa Verde Detention Facility ("MVDF") in Bakersfield, California. Among my responsibilities as an AFOD, I oversee the management of the detained docket for the aliens who are detained at the MVDC. Prior to being an AFOD, I was a Supervisory Detention and Deportation Officer ("SDDO") from February 2011 to April 2019. I have otherwise worked in various other positions within ICE since May 2005.

2.      This declaration is based upon my personal and professional knowledge and information, belief, reasonable inquiry and review of information obtained from various records, systems, databases, other DHS employees, employees of DHS contract facilities, and information portals maintained and relied upon by DHS in the regular course of business.

3.      ICE is charged with removing aliens who lack lawful immigration status in the United States. Detention is an important and necessary part of immigration enforcement. The Immigration and Nationality Act ("INA") authorizes detention of aliens pending removal under sections 235, 236, and 241 of the INA. In some cases, aliens convicted of certain crimes are subject to mandatory custody under section 236(c) of the INA and are ineligible for release from ICE custody pending completion of removal proceedings. In other cases, aliens may be detained by ICE as a matter of discretion under sections 235 and 236(a) of the INA pending removal because they have been found to be a danger to the community or pose a flight risk. For aliens who have final administrative removal orders, custody is generally mandatory during the removal period under section 241(a)(2) of the INA, and once the removal period has expired custody becomes discretionary under section 241(a)(6) of the INA where release on supervision may be appropriate if there is no significant likelihood of removal in the foreseeable future.

4.      To provide context for the reasons why each of the seven named Plaintiffs is in custody, ICE has conducted a preliminary review of their case histories and each follows.

*Javier Alfaro*

5.      Javier Alfaro ("Alfaro") is a 39-year old male native and citizen of El Salvador who illegally entered the United without admission or parole. On October 5, 2012, he was arrested for obstruction of a public officer in violation of section 148(a)(1) of the Cal. Penal Code ("CPC"). Exhibit ("Exh.") 1. It appears that no charges were filed. *Id.* On May 10, 2018, he was arrested for infliction of corporal injury on a spouse/cohabitant (CPC § 273.5), felony false imprisonment with violence (CPC §§ 136/137), felony kidnapping (CPC § 207(a)) and threaten with intent to terrorize (CPC § 422). *Id.* On or about May 14, 2010, Alfaro was charged by felony complaint with felony kidnapping, two felony counts of terrorist threats, and two felony counts of dissuading a witness in violation of CPC § 136.1(c)(1). Exh. 2. At a preliminary hearing held on May 30, 2018, the District Attorney move to orally amend Count 3 of

DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR ALEXANDER PHAM
Case No. 20-cv-02731 VC

the Complaint to charge infliction of corporal injury on a spouse or cohabitant (CPC § 273.5).  *Id.*  On June 27, 2018, Alfaro was convicted of felony infliction of corporal injury on a spouse/cohabitant in violation of CPC § 273.5 and the remaining charges were dismissed.  Exhs. 1 & 2.  Imposition of sentencing was suspended, and he was ordered to served 97 days in jail and three years of probation. Exh. 2.  On June 19, 2019, Alfaro failed to appear for his court hearing and a warrant was issued for his arrest.  *Id.*  On June 26, 2019, Alfaro appeared in court with counsel and admitted that he knowingly violated probation by being terminated from Batterer's Treatment Program, failing to appear at a probation appointment and failing to appear to court.  *Id.*  He was sentenced to an additional 104 days jail and his probation was reinstated.  *Id.*  On October 2, 2019, Alfaro failed to appear for his court hearing and a warrant was issued for his arrest.  *Id.*  On October 5, 2018, Alfaro was encountered for driving without a license and no vehicle registration and was arrested for failing to appear on a felony charge.  Exh. 1.  On October 8, 2019, Alfaro appeared in court with counsel and admitted that he violated probation for driving on a suspended license.  Exh. 2.  Alfaro was sentenced to an additional 142 days in jail and his probation was reinstated.  *Id.*

6.      On January 14, 2020, Alfaro was arrested by ICE[1] and placed in removal proceedings and charged with inadmissibility under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled by an immigration official.  Exh. 3.  Due to his criminal conviction, he is subject to mandatory custody under section 236(c) of the INA.  He is scheduled for a hearing before an Immigration Judge on May 5, 2020.

7.      All new arrivals are given a number of handouts, including the CDC educational handout on COVID-19, which advises detainees that they should avoid close contact with others.  This information is also sent out via tablet messages and reinforced through posters and town hall meetings with the detainees.  While it is true that detainees are given ten minutes in between meal periods to clean the cafeteria, post-meal periods, detainees are allowed as much time as it takes to complete a comprehensive cleaning.  The towels that are provided to detainees for cleaning are used only for one area and are laundered daily.  Due to a recent local press report concerning MVDF detainees on a

---

[1] Alfaro was arrested in accordance with ICE policy.  *See* https://www.ice.gov/ero/enforcement/sensitive-loc.

possible hunger strike, MVDF staff identified those detainees as being housed in housing units C and D.  Thereafter, MVDF staff held an in-person town hall for those detainees and provided information regarding formal hunger strike protocols, which is defined as missing at least nine consecutive meals.  During the town-hall, MVDF staff informed detainees that according to protocol, after detainees have missed nine consecutive meals, they would lose access to their food commissary items.  After the hunger strike protocols were announced, the dormitory representatives informed the facility administrator that detainees would be attending facility provided food services.  Following this town hall, the detainees resumed regular meals.  At this town hall, the detainees were also informed that they could continue to purchase non-food items from the commissary, including shampoo, soap and other toiletries.  The items available for purchase in the commissary are brand name.  MVDF provides each detainee, free of charge, bar soap, shampoo, toothpaste and a toothbrush.  Reasonable requests for additional supplies of these items are furnished free of charge.  Cleaning supplies, such as disinfectants, are supplied by the facility and are not available for purchase from the commissary for safety reasons.

8. According to the ICE Health Service Corps ("IHSC") Field Medical Coordinator ("FMC"), Alfaro was diagnosed with hyperlipidemia which is controlled by medication.  Lab tests conducted on February 15, 2020 showed that his lipid panel lab values were within normal limits.

9. I obtained copies of the documents attached to this declaration, which are true and correct copies of documents from the above-named Petitioner's A-File or the DHS's databases:

Exhibit 1:   FBI Record of Arrests and Prosecutions (RAP) Sheet, Apr. 2, 2020;
Exhibit 2:   Fresno County Superior Court Documents – Case #F18903135.

***Dung Tuan Dang***

10. Dung Tuan Dang ("Dang") is a 49-year old native and citizen of Vietnam who was admitted into the United States as a lawful permeant resident on October 30, 1989.  He was arrested on three occasion, on January 6, 2004, April 23, 2011, and February 9, 2012, for disorderly conduct intoxication drugs and or alcohol, in violation of section CPC § 647(f).  For these three arrests, he was detained for intoxication only, and no charges were filed.  On April 14, 2014, he was convicted of CPC § 602(m), and sentenced to one (1) day jail, a fine, and two (2) years' probation.  On May 21, 2014,

Dang was charged with assault with a deadly weapon in violation of CPC § 245(a)(1) and vandalism in violation of CPC § 594(a)(b)(2)(A). Exh. 3. The charges were based on an incident wherein Dang entered a convenience store while intoxicated so the store clerk asked him to leave. Exh. 4. When Dang left, he shattered the front glass window of the store with a trash can, and then held a shard of glass in a threatening manner toward at the store clerk. *Id.* On July 10, 2014, he was convicted of assault with force likely to cause great bodily injury in violation of section 245(a)(4). Exh. 3. Sentencing was suspended and he was placed on probation, which he was found in violation of on November 17, 2016, because he was arrested and convicted on August 25, 2016 for driving under the influence ("DUI") with a blood alcohol content ("BAC") of 0.08% or above in violation of section 23152(b) of the Cal. Vehicle Code ("CVC") and disturbing the peace (CPC § 415(2)). For these convictions, he was sentenced to twenty-seven (27) days and one day in jail, respectively, and placed on three (3) years of probation on each conviction. *Id.* The court reinstated Dang's probation on the aggravated assault and vandalism case, which he was found in violation of again on November 15, 2018. *Id.* As a result of this second violation, Dang was remanded to state prison for two years for the aggravated assault, to run concurrent with the six-month sentence on the vandalism charge. *Id.*

11. Upon release from prison on June 7, 2019, Dang was taken into ICE custody and placed into removal proceedings and charged with removability pursuant to section 237(a)(2)(A)(iii) of the INA, an alien who after admission was convicted of an aggravated felony. Due to his aggravated felony convictions, he is subject to mandatory custody under section 236(c) of the INA. During removal proceedings, he requested and was granted five continuances. On November 21, 2019, an Immigration Judge issued a written decision and denied his applications for relief and ordered him removed to Vietnam. Exh. 5. On December 20, 2019, Dang appealed this decision to the Board of Immigration Appeals ("BIA"), which is pending. On March 20, 2020, San Francisco ERO received a request for humanitarian parole from his attorney citing medical conditions that may put him in at risk due to COVID-19. On the same date, San Francisco ERO contacted Mesa Verde Medical to obtain information regarding claimed medical conditions. On March 25, 2020, his humanitarian parole request was denied due to public safety and attorney was notified. If his appeal is ultimately denied, Vietnam has been issuing travel documents for its citizens who arrived prior to 1996.

12. The MVDF informed the IHSC FMC that hand sanitizer is not available to detainees because it is alcohol-based and poses a risk to detainee health if abused. However, MVDF stated that mounted hand sanitizer is available at the medical station and the lab station. Detainees have access to liquid soap and water for hand hygiene. As of April 20, 2020, IHSC FMC confirmed with the MVDF that each detainee received a surgical mask and was educated on proper wear to prevent infection and spread. At intake, new arrivals are also given surgical masks and instructed on how to properly wear them. In addition, instructional postings on how to wear face masks were placed in all the dorms in both English and Spanish. The masks will be replaced every Monday, Wednesday and Friday.

13. According to the IHSC FMC, MVDF medical staff diagnosed Dang with hypertriglyceridemia and latent tuberculosis ("TB"). A chest x-ray was completed on June 10, 2019, which showed no evidence of active tuberculosis. However, Dang was given a prophylactic course of medication for the TB that was completed in January 2020.[2] The MVDF medical staff will continue to monitor him for TB.

14. I obtained copies of the documents attached to this declaration, which are true and correct copies of documents from the above-named Petitioner's A-File or the DHS's databases:

Exhibit 3:   Santa Clara County Superior Court Documents – Case #C1483830;

Exhibit 4:   Immigration Judge Written Decision and Removal Order, Nov. 21, 2019; and

***Coraima Sanchez Nunez***

15. Coraima Sanchez Nunez ("Sanchez Nunez") is 26-year old native and citizen of Mexico who illegally entered the United without admission or parole. On December 9, 2017, 2012, she was arrested for felony driving under the influence ("DUI") of drugs/alcohol in violation of section 23153(a) of the Cal. Vehicle Code ("CVC"). Exh. 6. The arrest was a result of a high-speed rear end collision wherein the vehicle Sanchez Nunez was trying collided with a vehicle that was stopped at a stoplight, which had three passengers, two adults and a six-year old child. Exh. 7. The driver of the stopped

---

[2] It appears that Isoniazid is being tested as a potential treatment for COVID-19. *See* Ali Rismanbaf, "Potential Treatments for COVID-19; a Narrative Literature Review," 8 *Arch Acad Emerg Med.*, 8(1): e29 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7085862/#B26 (citing Smith M, Smith JC. Repurposing Therapeutics for COVID-19: Supercomputer-Based Docking to the SARS-CoV-2 Viral Spike Protein and Viral Spike Protein-Human ACE2 Interface (2020)).

DECLARATION OF ASSISTANT FIELD OFFICE DIRECTOR ALEXANDER PHAM
Case No. 20-cv-02731 VC

vehicle suffered a laceration on her forehead and complained of chest and back pain and was transported to the hospital.  *Id.*  Sanchez Nunez's passenger who was sitting in her car suffered facial lacerations and had to be transported to the hospital for stitches.  *Id.*  Upon her arrest for DUI, she submitted to a blood test.  *Id.*  Sanchez Nunez was also search and a small plastic baggie with a white powdery substance was discovered in her jacket pocket.  *Id.*  This substance later tested positive for cocaine.  *Id.*  On January 19, 2018, Sanchez Nunez was charged with three counts in total.  Exh. 8.  The first two counts were for felony DUI resulting in bodily injury in violation of CVC §§ 23153(a) & (b), both of which carried two enhancements, one for causing great bodily injury or death to more than one victim (CVC § 23558) and the second for having a blood alcohol level/content ("BAC") of 0.20% or more (CVC § 23538(b)(2)).  *Id.*  The third count was for possession of cocaine.  *Id.*  On May 8, 2018, Sanchez Nunez was convicted of DUI resulting in bodily injury with a BAC of 0.08% or above in violation of CVC § 23153(b), and admitted both the enhancements under CVC §§ 23558 and CVC § 23538(b)(2).  *Id.*  Her BAC was noted as 0.24%.  *Id.*  She was sentenced to 180 days in jail and 36 months of probation and ordered to complete a First Offender Drinking Driver Program for three months.  *Id.*  On July 9, 2019, Sanchez Nunez appeared in court with counsel and admitted to violating probation and was sentenced to an additional 53 days in jail and her probation was reinstated.  *Id.*

16. On August 21, 2019, upon her release from Sonoma Jail, ICE arrested Sanchez Nunez and served her a Notice to Appear, charging her under §212 (a)(6)(A)(i) of the Immigration Nationality Act (INA), an alien present in the United States without being admitted or paroled by an immigration official.  On October 17, 2019, an Immigration Judge held a bond hearing, found that Sanchez Nunez failed to establish that she is not a danger to the community, and denied bond.  She reserved appeal of that order, but no appeal was ever taken.  On November 13, 2019, an Immigration Judge denied all her applications for relief and ordered her removed to Mexico.  On December 9, 2019, she filed an appeal with the BIA, which is currently pending.  Even if Sanchez Nunez successfully reduced her DUI with bodily injury conviction from a felony to a misdemeanor, she would still be barred from DACA eligibility as any DUI conviction is considered a "significant misdemeanor."  FAQs – Criminal Convictions, USCIS, https://www.uscis.gov/archive/frequently-asked-questions#criminal_convictions.  In addition,

she is ineligible for adjustment of status in the United States as she has not been admitted or paroled. *See* INA § 245(a).

17. According to the IHSC FMC, during intake, Sanchez Nunez denied any medical conditions, but stated that she was feeling anxious and hopeless and was referred to mental health. She was diagnosed with anxiety and depression by a social worker and referred to a psychiatrist. She was placed on medication. When seen by a medical service provider in August 2019, she revealed for the first time that she was diagnosed with asthma in 2000 and stated that the frequency of her asthma is random and is aggravated by pets. She reported that her last hospitalization for asthma occurred in 2012. MVDF medical diagnosed Sanchez Nunez with mild/intermittent asthma that is controlled and treated with an inhaler and medication. Sanchez Nunez's mental and medical conditions are being monitored on a regular basis.

18. A variety of sanitation supplies are provided to detainees including a bathroom-specific cleaning solution. Detainees have regular access to two types of all-purpose cleaner (Tri-Base and Clean By Proxy), disinfectant (GS Disinfectant), and glass cleaner, which they are encouraged to use. Towels are distributed to detainees for cleaning purposes and are laundered on a daily basis. A soap and towel dispenser have been installed in the front of each dorm. In addition, each dorm has two bathroom areas, and two soap dispensers have been installed in each bathroom area with a total of five liquid soap dispensers in each dormitory. Sanchez Nunez is assigned to Dorm B. As of this week, all beds in Dorms A and B, have been staggered to allow six feet distancing.

19. I obtained copies of the documents attached to this declaration, which are true and correct copies of documents from the above-named Petitioner's A-File or the DHS's databases:

Exhibit 5:   FBI Record of Arrests and Prosecutions (RAP) Sheet, Oct. 11, 2019;

Exhibit 6:   California Highway Patrol Traffic Collision Report, Dec. 9, 2017; and

Exhibit 7:   Sonoma County Superior Court Records.

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed at Bakersfield, California.

Dated: April 24, 2020

Alexander Pham
Assistant Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security