UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>DAVID JENNINGS, et al.,<br><br>           Defendants. | Case No.  20-cv-02731-VC<br><br>**ORDER GRANTING MOTION FOR PROVISIONAL CLASS CERTIFICATION, GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER, AND DENYING MOTION FOR A STAY** |

A group of ICE detainees at the Mesa Verde Detention Facility and the Yuba County Jail have filed a proposed habeas class action challenging the conditions of their confinement. They contend they are at serious risk of becoming infected with Covid-19 because ICE has refused to alter conditions at the facilities so as to enable people to keep their distance from one another. The plaintiffs have filed a motion to provisionally certify a class of all detainees at the facilities, along with a motion for a temporary restraining order requiring ICE to take measures that will enable social distancing. The government, for its part, has moved for a stay of these proceedings in light of a separate case in which a federal judge certified a nationwide class of immigration detainees challenging ICE's overall response to the pandemic. The motion for provisional class certification is granted, as is the motion for a temporary restraining order. The motion for a stay is denied. As described more fully below, ICE is ordered to provide information to class counsel and to the Court to facilitate consideration of applications by detainees to be released on bail while this case is pending. In roughly 14 days, after individual bail applications have been processed, the Court will hold a preliminary injunction hearing to determine what measures, if

any, ICE must take to ensure social distancing and other protections for the people who remain detained at the facilities. Because time is of the essence, and because federal courts around the country have addressed most issues raised by these motions (including the public health threat currently posed by crowded detainee populations and ICE's failure to respond), this ruling assumes that the reader is familiar with the legal arguments and factual materials submitted by the parties.

Provisional Class Certification

1. There is nothing about the procedural posture of this lawsuit—such as the fact that it seeks habeas relief or that it is on behalf of immigration detainees—that precludes provisional class certification.[1]

2. The government's arguments regarding commonality, typicality, adequacy, and Rule 23(b) do not defeat class certification. At root, this lawsuit is not about whether any particular person should be released; it is about the conditions of confinement at the facilities. The primary question is whether the people detained at those facilities are being exposed to an unreasonable risk of infection in violation of the Due Process Clause. As the plaintiffs argue in their papers, "class members have suffered the same injury—the substantial risk of contracting COVID-19 due to the lack of social distancing—and all class members would benefit from the same remedy—an order requiring social distancing at Yuba and Mesa Verde." Dkt. 41 at 3. The likelihood that some people would need to be released as part of the effort to alleviate dangerous conditions at the jail (presumably by prioritizing people who have health vulnerabilities and whose records indicate they are not a danger to the community) does not change the ultimate relief the plaintiffs seek. And therefore it is not a reason to deny provisional class certification.[2] Nor, incidentally, is exposure to the virus a significant danger merely to people in high-risk

---

[1] *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840–41 (2018); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010); *Padilla v. ICE*, 953 F.3d 1134, 1151 (9th Cir. 2020).
[2] *See Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014); *Rodriguez*, 591 F.3d at 1123; *Savino v. Souza*, 2020 WL 1703844, at *7 (D. Mass. Apr. 8, 2020); *cf. Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1203-05 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Brown v. Plata*, 563 U.S. 493 (2011).

groups; as explained in *Savino v. Souza*, it is dangerous to everyone. 2020 WL 1703844, at \*7.[3]

<u>Temporary Restraining Order</u>

1. The Northern District of California is the proper forum for this action, as explained in *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1186–87 & n.9 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).[4]

2. As many courts have explained, ICE detainees in this situation have standing to sue in federal court.[5]

3. On this record, the plaintiffs have demonstrated an exceedingly strong likelihood that they will prevail on their claim that current conditions at the facilities violate class members' due process rights by unreasonably exposing them to a significant risk of harm.[6] There is no need to repeat a discussion of the "tinderbox" risk of the virus spreading in crowded detention facilities.[7] Nor is there need to recount the health risks posed by the virus—not just for people in high-risk categories but for healthy people as well.[8] In detention facilities throughout the nation, ICE has failed to take sufficient action to address the obvious health risks to detainees.[9] And as several

---

[3] *See also* Greifinger Decl., Dkt. 5-2 at ¶ 8, 24.

[4] *See also Rodriguez Sanchez v. Decker*, 2019 WL 3840977 (S.D.N.Y. Aug. 15, 2019); https://www.ice.gov/detention-facility/mesa-verde-ice-processing-facility, *and* https://www.ice.gov/detentionfacility/yuba-county-jail (identifying each facility as controlled by the "San Francisco Field Office" and specifically directing "Feedback or Complaints" to the San Francisco Field Office Director).

[5] *See, e.g.*, *Franco v. Jennings*, Case No. 20-cv-02474-CRB (N.D. Cal. Apr. 24, 2020), Dkt. 16 at 3-4; *Bent v. Barr*, Case No. 19-cv-06123-DMR (N.D. Cal. Apr 9, 2020), Dkt. 26 at 5-7; *Dawson v. Asher*, 2020 WL 1704324, at \*8 (W.D. Wash. Apr. 8, 2020).

[6] *See Youngberg v. Romeo*, 457 U.S. 307 (1982); *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018); *Helling v. McKinney*, 509 U.S. 25, 32 (1993).

[7] *See* Greifinger Decl. ¶¶ 16-24; Hernandez Decl. ¶¶ 19-21; *Basank v. Decker*, 2020 WL 1481503, at \*3 (S.D.N.Y. Mar. 26, 2020); *Bent*, *supra* at 11; *United States v. Daniels*, Case No. 19-cr-00709-LHK (NC), Dkt. 24 at 5–6;  *Doe v. Barr*, Case No. 20-cv-02141-LB (N.D. Cal. Apr. 12, 2020) Dkt. 27 at 3.

[8] *See* Greifinger Decl. ¶ 8, 24; Hernandez Decl. ¶ 13; *Savino v. Souza*, 2020 WL 1703844, at \*7.

[9] *Faour Abdallah Fraihat*, et al. v. U.S. Immigrations and Customs Enforcement, et al., Case No. 5:19-cv-1546-JGB-SHK (C.D. Cal. Apr. 20, 2020), Dkt. 132 at 29-34; *Roman*, *supra*, at \*3; *Pimentel-Estrada v. Barr*, Case No. 20-cv-00495-RSM-BAT (W.D. Wa. Apr. 28, 2020), Dkt. 51 at 31; *Coronel v. Decker*, 2020 WL1487274, at \*4 (S.D.N.Y. Mar. 27, 2020); *Basank*, *supra*, at \*3; *Thakker v. Doll*, 2020 WL 1671563, at \*8 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, 2020 WL 1672662, at \*12 (E.D. Mich. Apr. 5, 2020), *as amended* (Apr. 6, 2020); *Gayle v. Meade*, Case No. 20-cv-21553 (S.D. Fl. Apr. 22, 2020), Dkt. 63 at 67; Greifinger Decl. ¶¶ 44-57; Rodarte Decl. Ex A.

courts in this district have already explained, the same is true of ICE's performance at these local facilities.[10] Although ICE has recently begun taking modest measures, it is undisputed that the agency has not come close to achieving social distancing for most detainees—for example, people are still sleeping in barracks-style dorms within arms-reach of one another.[11] What's more, at the hearing on these motions, counsel for ICE asserted that it will take a significant amount of time for the agency to prepare a list of detainees with health vulnerabilities because it is "burdensome." The fact that ICE does not have such a list at the ready, six weeks after Governor Newsom shut down the entire state and one week after this lawsuit was filed, speaks volumes about where the safety of the people at these facilities falls on ICE's list of priorities.[12]

4. For similar reasons, the plaintiffs have demonstrated a strong likelihood of irreparable harm to the class.[13] Although ICE notes that it has discovered no cases of Covid-19 at the two facilities, this is not especially comforting given that only two detainees have been tested.[14] Moreover, people are regularly being transported from facilities with COVID-19 cases to Mesa Verde or Yuba County. For example, in the past several months, the Northern District of California has seen dozens of offenders sentenced for street-level drug crimes and transported on detainers from the Santa Rita Jail in Alameda County to these ICE facilities.

5. The public interest and the balance of hardships also counsels in favor of emergency relief to initiate the process of mitigating health risks at the facilities. The conditions of confinement do not merely threaten detainees; they also threaten facility staff, not to mention the greater community whose health is put at risk by the congregation of large groups in cramped

---

[10] *Bahena Ortuno v. Jennings*, Case No. 20-cv-02064-MMC (N.D. Cal. Apr. 8, 2020), Dkt. 38 at 6-7; *Bent*, *supra*, at 10-11; *Doe*, *supra*, at 16; *see generally* Greifinger Decl.; Greifinger Supp. Decl.
[11] *See* Greifinger Decl. ¶¶ 34-43; Greifinger Supp. Decl. ¶ 7; Kavanagh Decl. ¶ 5; Knox Decl. ¶ 9, 16, 17; Tovar Decl. ¶ 14; Mwaura Decl. ¶ 10; Dang Decl. ¶ 13; Nunez Decl. ¶ 14; Alfaro Decl. ¶ 16; Bonnar Decl. ¶ 11(f).
[12] *See* Hernandez Decl. ¶¶ 13-18; Greifinger Decl. ¶¶ 14-15.
[13] *Helling*, 509 U.S. at 33; *Fraihat, supra,* at 36; *Coronel, supra,* at *2; *Roman, supra,* at 21; *Bahena Ortuno*, *supra*, at 7-8; *Bent*, *supra*, at 12-13; *Doe*, *supra*, at 18.
[14] *See* Kaiser Decl. ¶ 11; Bonnar Decl. ¶ 12.

spaces.[15] As discussed in the next paragraph, the emergency relief ordered here—requiring ICE to provide information and access to detainees to facilitate a process of considering bail requests—will simply entail some hard work on ICE's part. And of course, as bail requests are considered, care will be taken both to avoid releasing detainees who are a danger to the community and to minimize the possibility that released detainees will fail to appear for their removal proceedings.

6. ICE is thus hereby ordered to provide the Court and class counsel with information and records regarding each detainee at the facilities. This includes names, ages, any health vulnerabilities, and any criminal information (including rap sheets and I-213 forms). ICE is also ordered to ensure that class counsel has the ability to promptly communicate with detainees. The purpose of this order is to enable the Court to implement a system for considering individual bail applications, modeled after a system created and successfully implemented by Judge Young in the District of Massachusetts.[16] In extraordinary cases like this, federal judges have the authority to release detainees on bail while their habeas cases are pending.[17] Judge Young, after certifying a class of ICE detainees at a facility in Massachusetts, considered bail requests as a precursor to a preliminary injunction hearing. Similarly, this Court—likely with the assistance of several Magistrate Judges—will consider bail applications from class members over a roughly 14-day period. After that period, the parties and the Court will have a better understanding of the number of people who will continue to be detained during the public health crisis, which in turn could affect the relief (if any) to be ordered by way of preliminary injunction to help ensure social

---

[15] Hernandez Decl. ¶¶ 22-28; Greifinger Decl. ¶ 24; *Coronel, supra,* at *7.

[16] See *Savino v. Souza*, Case No. 20-cv-10617-WGY (D. Mass. Apr. 8, 2020).

[17] *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *Savino, supra,* at 26-28; *Coronel, supra,* at *8; *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986); *Cherek v. U.S.*, 767 F.2d 335, 337 (7th Cir. 1985); *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981); *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) (per curiam); *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972); *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969) (per curiam). *See also Land v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989); *In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1084 (9th Cir. 2006); *United States v. McCandless*, 841 F.3d 819, 822 (9th Cir. 2016) (per curiam); *Tam v. I.N.S.*, 14 F. Supp. 2d 1184, 1192 (E.D. Cal. 1998).

distancing at the facilities. All information must be provided to the Court and class counsel on a rolling basis, but by no later than Friday at noon. A case management conference will take place Thursday at 4:00 p.m. for the purpose of assessing progress in compliance with this order, scheduling a preliminary injunction hearing, and discussing the process by which the Court will consider individual bail applications.[18]

7. ICE, while opposing any form of emergency relief, argued in its papers and at the hearing that if the Court is inclined to grant such relief, it should take a different form. Specifically, rather than being ordered to provide information that would permit the prompt consideration of bail requests, ICE asks that the Court simply order the agency to release a set number of detainees from the facilities. ICE does not specify the number of detainees it should be told to release. It has not explained how many of the detainees would pose a danger to the community if released. And it has not specified how many detainees would actually need to be released to alleviate the health risks at the facilities. It seems, at first glance anyway, that ICE is asking the Court to strike with a blunt instrument rather than using a more cautious and methodical approach to address the constitutional problem presented by this case. But in any event, given ICE's failure thus far to respond meaningfully to the crisis despite the wave of court rulings from around the country documenting the agency's inaction, given that ICE does not even currently possess a list of detainees with health vulnerabilities, and given the lack of specificity in ICE's alternative remedy proposal, it appears likely that the approach of ordering ICE to release a random number of detainees, rather than simply ordering ICE to provide information that will facilitate consideration of individualized bail requests, would create delay rather than meaningful improvements in the conditions of confinement at the facilities.

<u>Motion For A Stay Pending Related Litigation</u>

Whether to stay a proposed class action based on the pendency of an overlapping class

---

[18] ICE has requested a 48-hour stay of this temporary restraining order so that it can consider whether to appeal. Because this order requires ICE only to provide documents and to give class counsel access to detainees, that request is denied.

action in another court is a matter of judicial discretion. A stay is not warranted here. In the nationwide class action proceeding in the Central District of California, Judge Bernal has ordered preliminary relief at too high a level of generality to protect the immediate interests of the class members in this case (or, for that matter, in Judge Young's case). *See Fraihat v. ICE*, Case No. 5:19-cv-1546-JGB-SHK (C.D. Cal. Apr. 20, 2020), Dkt. 132 at 38-39. It does not appear that Judge Bernal intended, by the general nationwide relief he ordered, to interfere with the ability of facility-specific litigation to proceed. Nor, in any event, does a nationwide class action covering specific relief at specific facilities seem manageable. Denial of this motion is without prejudice to raising the issue again if the cases develop in such a way as to create conflicting obligations for ICE.

      **IT IS SO ORDERED.**

Dated: April 29, 2020

VINCE CHHABRIA
United States District Judge