WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
ANGÉLICA SALCEDA (SBN 296152)
asalceda@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Petitioners-Plaintiffs*
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (CA SBN 300505)
genna.beier@sfgov.org
EMILOU H. MACLEAN (CA SBN 319071)
emilou.maclean@sfgov.org
FRANCISCO UGARTE (CA SBN 241710)
francisco.ugarte@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility,<br><br>Respondents-Defendants. | **CASE NO. 3:20-CV-02731-VC**<br><br>**SUPPLEMENTAL BRIEF ON BURDEN IN BAIL ASSESSMENTS**<br><br>**JUDGE VINCE CHHABRIA** |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
TIFANEI RESSL-MOYER (SBN 319721)
tresslmoyer@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
FRANCISCO M. UNGER* (Mass. BBO# 698807)
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
* Admitted *Pro Hac Vice*

In the individual bail assessments under the Court's TRO order, a class member should always be released unless the government proves by clear and convincing evidence that such individual is presently dangerous or a flight risk. Even where the government does prove by clear and convincing evidence that an individual is dangerous or a flight risk, this Court should still consider whether release is constitutionally necessary as the health and safety of the individual, given their specific medical vulnerabilities, may outweigh the danger to the community or the individual's flight risk, especially where those concerns can be mitigated through conditions of release.

Specifically, as Plaintiffs-Petitioners urged in their case management statement, the Court should adopt the following rule as part of the bail review process:

> (ii) Should ICE oppose release of any individual based on their alleged risk of nonappearance or alleged risk to public safety, ICE bears the burden of proving such risk based on clear and convincing evidence. If ICE does not meet that burden and the person otherwise should be released, the Court will grant that person bail.
>   a. For public safety, ICE bears the burden of proving by clear and convincing evidence that (1) the person is presently dangerous, (2) that danger is so serious to outweigh the danger to the person and the broader community if they contract COVID-19, and (3) that danger cannot be mitigated with appropriate conditions of release.
>   b. For risk of nonappearance, ICE bears the burden of proving by clear and convincing evidence that (1) the person poses a risk of flight and (2) that risk cannot be mitigated through conditions of release.

(ECF 58, Exh. A) (with slight modifications here). Class members have a weighty interest in bail given that this Court has already found "an exceedingly strong likelihood that they will prevail on their claim that current conditions at the facilities violate [their] due process rights by unreasonably exposing them to a significant risk of harm. (ECF 53 at 3.) ICE interests that might otherwise justify detention are drastically diminished in light of the outbreak, while the individual interest in liberty could not be stronger.

Under the law of this Circuit, the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence for civil immigrant detainees who have a substantial due process interest in release. *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (requiring clear and convincing evidence after detention has become prolonged). The

government's burden applies both to the alleged danger or risk of flight as well as the absence of feasible alternatives to detention, and should be evaluated in light of the unprecedented COVID-19 circumstances in this case.

### A. The Clear and Convincing Standard Applies

#### 1. Unbroken Authority Dictates a Heightened Governmental Burden in the Civil Detention Context

The Supreme Court has repeatedly required that the government justify ongoing civil detention based on a heightened burden. *See Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) ("due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake ... are both particularly important and more substantial than mere loss of money'"); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause").

"Because it is improper to ask the individual to 'share equally with society the risk of error when the possible injury to the individual'—deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011) (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)); *see also id.* (BIA could have concluded convictions for theft, receipt of stolen property, and controlled substance did not show dangerousness under the clear and convincing standard). Accordingly, the Ninth Circuit has specifically held "that the government must prove by clear and convincing evidence that a [noncitizen] is a flight risk or a danger to the community to justify denial of bond" when detention has become prolonged. *Singh*, 638 F.3d at 1203.

This heightened standard, developed in the absence of a global pandemic, is "require[d]" by due process "to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (quotations omitted). The Ninth Circuit recently affirmed this constitutional holding in *Aleman*

*Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), stating that *Singh* "determined that constitutional procedural due process required the government to meet the clear and convincing burden of proof standard." *See also Kashem v. Barr*, 941 F.3d 358, 380 (9th Cir. 2019) (acknowledging that "the clear and convincing evidence standard . . . applies in a range of civil proceedings involving substantial deprivations of liberty.").

A heightened clear and convincing evidentiary standard should be given full force in this case. As the Court recognizes, Class Members face a significant and unique viral threat to their life and liberty as a result of the conditions in which they are civilly detained. There is "an exceedingly strong likelihood that [Plaintiffs] will prevail on their claim that current conditions at the facilities violate class members' due process rights by unreasonably exposing them to a significant risk of harm. (ECF 53 at 3). Moreover, a host of district courts to have considered the burden question in the COVID-19 context of immigration detention have required clear and convincing evidence. *See Coronel v. Decker*, 2020 WL1487274, at *9 (S.D.N.Y. Mar. 27, 2020) ("In addition to considering the serious risk of harm to Petitioners posed by COVID-19, the immigration court must place the burden on the Government to prove, by clear and convincing evidence that Petitioners either pose a danger to the community or a risk of flight."); *Gomes, et al. v. DHS, et al.*, No. 20-cv-453-LM (D.N.H., April 27, 2020), Order at 4 (ECF 34) (requiring that at a bail assessment "the respondents will have the burden to prove by clear convincing evidence that petitioner is either a danger to the public or a flight risk").

Here, where detention could quite literally lead to a higher risk of permanent injury or death, the Court should adopt a burden commensurate with that unprecedented concern. At an absolute minimum, this Court should adopt the clear and convincing evidence standard that was formed in the absence of this global pandemic. Anything less would threaten the effectiveness of the very relief the Court has ordered and be contrary to Ninth Circuit precedent where substantial deprivation of liberty is at stake.

### 2. Under the *Mathews v. Eldridge* Framework, Class Members' Substantial Life and Liberty Interests in Release from a Congregate Environment Dictate a Heightened Burden

Even if the Court were to ignore the authority above and engage in original analysis of the burden, *Mathews v. Eldridge*, 424 U.S. 319 (1976), would independently require a clear and convincing standard. In *Mathews*, the Supreme Court formalized the three factors courts use to determine what type of procedure is necessary to protect due process: (1) "the private interest," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

As to the first factor, Plaintiff's private interest is significant. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As to the second factor—the risk of erroneous deprivation and probable value of additional safeguards—if the government is not held to a heightened standard of proof, the risk that class members will inappropriately remain detained is substantial. If the burden were on the class member to demonstrate lack of danger or flight risk in the expedited bail assessments, the many class members who in fact are neither dangerous nor likely to flee might remain in an unconstitutional custodial setting merely because they would not be able to assemble sufficient information of rehabilitation in a short period of time. This is especially true where large portions of the class are unrepresented, as is the case here.[1]

Finally, while the Government has a judicially recognized interest in protecting the public and ensuring individuals appear at their hearings, they have no interest in detention that violates Plaintiffs' constitutional rights and exposes them to a significant risk of harm. *Cf. Zerezghi v. USCIS*, -- F.3d --, Slip Op. at *19 (9th Cir. Apr. 14, 2020) (explaining that while the

---

[1] Though plaintiffs do not yet have an exact number of the unrepresented population, national data states that, in 2019, 41,249 detained non-citizens lacked representation of the 64,763 total detained removal cases initiated in this country's immigration courts. *See* TRAC Data, *State and County Details on Deportation Proceedings in Immigration Court*, available at https://trac.syr.edu/phptools/immigration/nta/

government's interest in immigration enforcement may be weighty, its interest in not disclosing information on which it relies to make decisions is non-existent). Placing a heightened burden of proof on the government would not require it to expend additional resources or undertake additional administrative tasks – ICE will already be producing the information relevant to this inquiry for the bail assessments. Moreover, to the extent that imposition of the clear and convincing standard results in additional class members being released, that will actually save the government money. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (explaining that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

### B. The Government's Heightened Burden Must Also Encompass a Showing that Alternative Measures Short of Detention Are Not Feasible

The government's burden of proof should incorporate a showing that alternatives to detention that would mitigate any present danger or risk of flight are not feasible. As this Court is aware, numerous judges throughout the country have already ordered individuals with criminal records released, finding that the government's interests can be accomplished through alternative, less harsh methods, like release on supervision and conditions. *See* Motion for TRO (ECF 5) at *16-17 (collecting cases). Moreover, as discussed in Plaintiffs' TRO briefing, ICE has numerous alternatives to detention available to it that are highly effective. *Id.* at *17-18.

This Court is no doubt familiar with this concept from the Bail Reform Act (BRA), which generally allows for detention pending trial only where the government shows that a defendant is a flight risk or danger to the community *and* that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Even in serious "presumption" cases, where the defendant bears the burden of producing evidence to overcome a presumption in favor of detention, "[t]he government retains the burden throughout the proceeding to show by clear and convincing evidence that no condition or combination of conditions would reasonably assure defendant's

appearance at trial or the safety of the community." *United States v. Moore*, 607 F. Supp. 489, 497 (N.D. Cal. 1985). It is precisely these due process protections imposed by the BRA that allowed the Supreme Court to uphold it against constitutional challenge. *See United States v. Salerno*, 481 U.S. 739, 750 (1987) ("In a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person."). Here too the government must bear the burden of showing that there are no feasible alternatives to detention that would mitigate flight risk or danger.

### C. This Court Should Consider Both the Flight Risk and Public Safety Concerns More Broadly Given the COVID-19 Pandemic

Finally, in considering both the risk of flight and danger posed by the release of any one individual, it is necessary to take a broader view in light of the unique circumstances of COVID-19 and move beyond routine flights risk and danger analysis. Judge Bernal insightfully explained in *Fraihat* that COVID-19 casts concerns about nonappearance and public safety in a new light:

> [A]ttendance at hearings cannot be secured reliably when the detainee has, is at risk of having, or is at risk of infecting court staff with a deadly infectious disease with no known cure. Participation in immigration proceedings is not possible for those who are sick or dying, and is impossible for those who are dead. Another purpose of detention, public safety, is not advanced by delay. Plaintiffs establish that public safety as a whole is seriously diminished by facility outbreaks, which further tax community health resources.

Case No. 5:19-cv-01546-JGB-SHK (C.D. Cal.), Order at 34 (ECF 132). Likewise, *Rafael L.O. v. Tsoukaris*, No. 20-3481, 2020 WL 1808843 at *7 (D.N.J. Apr. 9, 2020), explained:

> [T]hese are not normal times, and context (or factual reality) is important. To use an extreme hypothetical, consider if civil detainees were being housed in a facility that was in the direct path of a hurricane and that the facility was unlikely to withstand the force of the storm. The government would still have a legitimate governmental interest in ensuring that the detainees appeared for immigration court – but the government would not have a legitimate interest in housing the detainees in that particular facility during the hurricane. COVID-19, and its associated risks, is the difference maker – it changes the equation in evaluating the government's legitimate objectives.

Indeed, a judge in this Court recently ordered the release of medically vulnerable individuals, some with serious prior criminal convictions, and only tangentially raised the issue of

dangerousness. *See Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 1701724, at *5 (N.D. Cal. Apr. 8, 2020); *see also Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *7 (N.D. Cal. Apr. 9, 2020) ("Given that additional burdens on the health system in this crisis may lead to a greater number of deaths among the public, public health considerations cannot be ignored in assessing an individual's risk to the community.").

Plaintiffs believe that this Court must weigh the government's legitimate objectives in a class member's detention differently given the risk of harm facing the class and society as a result of COVID-19. This means that even where the government may meet its burden with respect to an individual's flight risk or dangerousness, release may still be appropriate given the overall concern for an individual's health and safety and the risk to the public of overcrowding in Mesa Verde and Yuba.

### D. Conclusion

For the foregoing reasons, the Court should adopt a clear and convincing standard in bail assessments that applies both to any alleged risk of flight or dangerousness and to the absence of alternative measures short of ongoing detention in a dangerous congregate environment.

| | |
|---|---|
| Dated: May 1, 2020 | Respectfully submitted, |
| | /s/ Sean Riordan<br>William S. Freeman<br>Sean Riordan<br>Angélica Salceda<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA |
| Bree Bernwanger<br>Tifanei Ressl-Moyer<br>Hayden Rodarte<br>LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF SAN FRANCISCO BAY AREA | Manohar Raju<br>Public Defender<br>Matt Gonzalez<br>Chief Attorney<br>Francisco Ugarte<br>Genna Ellis Beier<br>Emilou H. MacLean<br>OFFICE OF THE PUBLIC DEFENDER SAN FRANCISCO |
| Judah Lakin<br>Amalia Wille<br>LAKIN & WILLE LLP | |
| Jordan Wells<br>Stephanie Padilla<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA | Martin S. Schenker<br>Timothy W. Cook<br>Francisco M. Unger<br>COOLEY LLP<br><br>*Attorneys for Petitioners-Plaintiffs* |