*Zepeda Rivas*
Brief re Protective Order for Undocumented Sponsors

## I. Introduction

Plaintiffs seek a protective order barring Defendants, and any other federal agency, from using all personal information obtained about non-litigants—including addresses and phone numbers—for purposes of future immigration enforcement. In offering safe haven for class members, Sponsors, and those who live with them, should not face the impossible choice of saving someone from the "tinderbox" peril of COVID-19 in ICE detention, and putting their own family in jeopardy of arrest by ICE. As this Court has already found, Plaintiffs "have demonstrated an exceedingly strong likelihood that they will prevail on their claim that current conditions at the facilities violate class members' due process rights by unreasonably exposing them to a significant risk of harm." *Zepeda Rivas, et. al. v. Jennings*, *et al.*, 3:20-cv-02731-VC, ECF 53, at *5 (N.D. Cal. Apr. 29, 2020). The Court's remedy has been to review individual bail applications, which include Sponsor information. At bottom, it would be fundamentally unfair to expose Sponsors and their families to a risk of immigration enforcement based on their willingness to step up and address a likely constitutional violation caused by Defendants.

The Court's existing order prohibiting ICE from asking about immigration status when interviewing sponsors does not address fears that ICE could use personal information to investigate, detain, deport, or prosecute proposed custodians or their household members. The chilling effect has already impeded class members' ability to seek release—multiple individuals have withdrawn as sponsors absent assurances that their good deed would not expose them to greater risk of deportation, while others are "torn between wanting to make sure that their loved one is no longer in immigration detention, where he is at greater risk of harm, and exposing themselves to potential deportation." Beier, ¶¶ 3-6.

Plaintiffs therefore request that the Court enter the proposed order filed in conjunction with this memorandum, which will facilitate full participation by Sponsors in the bail application process and ensure that information provided by the parties during the bail application process be used only for the purposes of this litigation, and not beyond.

## II. The Court Has Authority to Issue this Order

Federal courts have authority to issue protective orders "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c).[1] To the extent Defendants object to this protective order on the ground that it concerns information filed with the court pursuant to the bail review process and not formal discovery, that objection would elevate form over function to the detriment of the "just" and "speedy … determination of [this] action[.]" Fed. R. Civ. P. 1. Accordingly, the Court is vested with considerable discretion to regulate this proceeding in a manner consistent with equity and fairness. *See J. I. Case Co. v. Borak,* 377 U.S. 426, 433 (1964) (explaining federal court's fundamental power to enforce federal rights). The Court has authority to enter a protective order

---

[1] The Court's TRO set in motion a process akin to discovery because it requires production and filing of information to facilitate bail requests. *Zepeda Rivas,* 3:20-cv-02731-VC, ECF 53, at *5 (grant of emergency relief ordering ICE to provide "information and records regarding each detainee at the facilities"); *id*. at *6 ("provide information that would permit the prompt consideration of bail requests"); *id*. ("ordering ICE to provide information that will facilitate consideration of individualized bail requests").

governing the use of information provided in the implementation of its temporary restraining order.

**III.     The Court Should Restrict Use of Sponsor Information to The Bail Review Process**

Absent the protective order Plaintiffs seek here, family and friends of class members will be fearful of volunteering to shelter their loved ones during this crisis. Courts routinely craft protective orders designed to ensure that individuals asserting their constitutional and statutory rights are not deterred by fears of negative immigration consequences. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064–65 (9th Cir. 2004) (observing "[t]he chilling effect such discovery could have on the bringing of civil rights actions unacceptably burdens the public interest"); *Lozano v. City of Hazleton,* 496 F.Supp.2d 477, 512-14 (M.D. Pa. 2007) (prohibiting discovery into identity of undocumented Doe plaintiffs where disclosure would make them targets of anti-immigrant sentiment and threaten their right to shelter, education, and livelihood and noting that "federal courts have recognized that inquiries into immigration status can have an *in terrorem*, effect, limiting the willingness of plaintiffs to pursue their rights out of fears of the consequences of an exposure of their position"). These cases arise in the context of plaintiffs, who, in the process of asserting their own constitutional and statutory rights, do not wish to be prejudiced by disclosing information about their immigration status. *Id.* Here, the case for a protective order is even stronger because Plaintiffs do not seek protection for themselves—as they are already wrapped up in the immigration system—but rather for individuals who are stepping in to help remedy a likely constitutional violation by Defendants.

Failing to provide the protection that Plaintiffs seek will frustrate this Court's bail process. Sponsors turning over their addresses and phone numbers, even without their specific immigration status, has had, and will have continue to have, a significant *in terrorem* effect, because it deters individuals from providing safe haven for class members. Beier, ¶¶ 3-6. As a result, some class members will not be able to find Sponsors and that will frustrate this Court's orderly process of trying to adjudicate all class member's individual bail applications.

Moreover, even beyond a frustration of the process, it would be fundamentally unfair to expose sponsors and their families to a risk of immigration enforcement based on their willingness to step up and help remedy a likely constitutional violation caused by Defendants. ICE should be prohibited from using any of the information—including addresses and phone numbers—that is provided on these applications for enforcement now or in the future. Plaintiffs understand that ICE will need access to this information to verify release plans, but this is exactly why it needs to be covered by a protective order. Even though ICE is now prohibited from inquiring as to the immigration status of any individual in the household, once ICE has addresses and phone numbers for some 400-odd people, including some addresses where there may well be individuals without immigration status, they may use this information in the future (be it days, months, or years from now) for enforcement. Numerous individuals have expressed their fear of exactly this happening and have withdrawn from being sponsors. Beier, ¶¶ 3-6. Pursuant to this Court's existing order, ICE may not know about the lawful immigration status of the Sponsor or members of their household, but this does not change the fact that ICE can show up at the address provided in the bail application in an attempt to find undocumented individuals and arrest them.

The notion that individuals should not be disadvantaged by volunteering information is not unique to the situation facing this Court. In *Sanchez v. Sessions*, 904 F.3d 643, 657 (9th Cir. 2018), the Ninth Circuit examined the situation where an individual voluntarily puts forth information to receive a benefit only to have that information used against him to effectuate

immigration enforcement. Judge Paez, quoting the late Judge Pregerson, stated in his concurrence that "it is unfair for the Government to encourage noncitizens to apply for immigration relief, and, at a later date use statements in those relief applications against noncitizens in removal proceedings." *Id.* Here, the situation facing Sponsors and their families is even more concerning as they are not putting forward their information to receive a benefit for themselves, but rather simply to help this Court effectuate a remedy to Defendants' constitutional violation. It would flip the notions of justice and fairness on its head to then expose these individuals to potential immigration enforcement actions.

Finally, there is nothing remarkable about what Plaintiffs seek here. Information sharing in litigation is undertaken for the purpose of adjudicating the case at hand and not for other purposes (like civil law enforcement). *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (noting that discovery serves the "sole purpose" of resolving litigation); *Gillard v. Boulder Valley Sch. Dist.*, 196 F.R.D. 382, 387 (D. Colo. 2000) ("[C]ivil discovery is a device to allow parties to obtain information for the purpose of preparing and trying a lawsuit," and so, typically, "a party has no right to make unrestricted disclosure of the information obtained through discovery."). Courts thus do not hesitate to protect sensitive information even of non-parties—like the Sponsors here—disclosed in litigation. *See Coleman v. Am. Red Cross*, 979 F.2d 1135, 1139 (6th Cir. 1992) (affirming district court order prohibiting discovery into identity of non-party blood donor and collecting cases allowing plaintiffs to take anonymous discovery from blood donors in similar situations, including deposition by written questions); *Taylor v. Crawford*, No. 05-4173-CV-C-FJG, 2006 WL 1779035, at *1 (W.D. Mo. June 26, 2006) (allowing for anonymous deposition of non-party witness doctor who participated in a state's most recent execution). Here too, the Court should protect the personal information of sponsors and their families from use outside this litigation.

## IV. **Plaintiffs Do Not Seek Immunity for Sponsors from Immigration Enforcement**

Plaintiffs understand Defendants' position to be that a protective order of this nature would confer some sort of "immunity" on Sponsors and those that live with them. But the protective order would not improperly infringe on Defendants' ability to enforce the law. If ICE otherwise had obtained addresses, phone numbers, or information about a Sponsor's immigration status—outside of the context of this litigation—it would not be prohibited from using it. The protective order would only prevent Defendants or any other federal agency from taking action against individuals based on information obtained in the litigation, not information obtained independently of the expedited review process now underway. Therefore, the proposed protective order simply leaves Defendants in the same position they would have occupied if Plaintiffs had not brought this civil rights action in the first place. And it in no way impinges on Defendant's ability to defend against this lawsuit.

/s/Judah Lakin
Judah Lakin
Sean Riordan
Genna Beier