DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
WENDY M. GARBERS (CABN 213208)
ADRIENNE ZACK (CABN 291629)
SHIWON CHOE (CABN 320041)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7031
    Facsimile: (415) 436-6748
    wendy.garbers@usdoj.gov
    adrienne.zack@usdoj.gov
    shiwon.choe@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, *et al.*, | CASE NO. 3:20-cv-02731-VC |
| Plaintiffs, | **FEDERAL DEFENDANTS' RESPONSE TO ECF 156** |
| v. | |
| DAVID JENNINGS, *et al.*, | |
| Defendants. | |

**FEDERAL DEFENDANTS' RESPONSE ECF NO. 156**

On May 7, 2020, Immigration and Customs Enforcement ("ICE"), pursuant to its authority under 8 U.S.C. § 1226(a), issued a custody determination for Ms. Delfina Soto Soto, allowing her release subject to alternatives to detention, namely the Intensive Supervision Appearance Program ("ISAP"). ICE did so despite severe concerns regarding Ms. Soto's flight risk. As Defendants explained in their response to her bail application, Ms. Soto has an outstanding Interpol Red Notice from Mexico regarding a warrant for her arrest on kidnapping charges (based on the independent testimony of sixteen individuals), which ultimately resulted in the death of a young child. Despite Ms. Soto's contentions, this Red Notice at least pertains to Ms. Soto's risk of flight from immigration officials. Therefore, when

Ms. Soto was unreachable at the number provided to ICE upon her release and did not respond to an alert from her global positioning system ("GPS") device instructing her to contact the Intensive Supervision Appearance Program, ICE determined that her risk of flight remained too great and revoked her custody determination pursuant to 8 C.F.R. § 236.1(c)(9). Because neither Yuba County Jail nor Mesa Verde Detention Center, which is no longer housing women, were available to house Ms. Soto, she was transferred to the Aurora Contract Detention Facility.

### Ms. Soto is an Extreme Flight Risk and Danger

As Defendants stated in their opposition to Ms. Soto's bail application, ECF No. 87-2, Ms. Soto is an extreme flight risk and a danger to the community. An immigration judge previously denied her request for bond, finding that she was a flight risk and a danger. She entered the United States illegally on or after December 27, 2012. *See* Pham Declaration, submitted herewith. On December 12, 2014, a Mexican court issued an arrest warrant for Petitioner for the crime of aggravated kidnapping of a minor. On November 12, 2015, the International Criminal Police Organization ("INTERPOL") issued a Red Notice for Petitioner for the aggravated kidnapping of a five-year-old which resulted in his death.

Ms. Soto was arrested and charged by the Anti-kidnapping state police in Mexico, accused of aiding in the kidnapping of a young child who was held for ransom and murdered in April 2012. The police charged Ms. Soto with kidnapping, homicide, and using false documents in April 2012, but the Michoacan court dismissed charges in December 2012 because of the lack of a Purepecha interpreter during proceedings.

In 2013, following the dismissal and Ms. Soto's release from detention, the Mexican criminal trial court re-investigated the matter, heard independent testimony from sixteen witnesses and extensive evidence regarding the kidnapping and death of the child. Based on this new evidence, the court issued a second arrest warrant for Ms. Soto for aggravated kidnapping of a minor.

In Ms. Soto's removal proceedings, the immigration judge found the new evidence considered by the Mexican court constituted "serious reasons to believe" Ms. Soto kidnapped the minor for ransom. Although Ms. Soto denied involvement in the kidnapping in immigration court, the immigration judge found Soto "did not provide any other exculpatory evidence to establish . . . that she was not involved in the kidnapping." "To the contrary," the immigration judge concluded, "the record contains extensive

evidence connecting her to the crime."

The immigration judge pointed out that the Mexican court specifically acknowledged the Mexican government's initial "misconduct" in presenting unreliable evidence in the first investigation of Ms. Soto ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The immigration judge specifically noted however, despite the dismissal of the initial case, that the Mexican court on its own reopened Ms. Soto's case, and "after considering additional evidence of [her] alleged involvement," issued a new arrest warrant against her for aggravated kidnapping. He reasoned such new evidence "merits considerable weight." He explained "the fact that sixteen individuals testified" regarding Ms. Soto's participation in the kidnapping signifies "at least probable cause to believe that she was involved in committing the kidnapping."

The findings of the immigration judge, the fact-finder regarding Ms. Soto's claims for relief from removal and her request for release on bond before the immigration court, are detailed and specific. Based on these findings, Ms. Soto presents an extreme risk of flight. Although Ms. Soto stated in her bail application that she did not intend to return to Mexico, ECF No. 72-3, that is not the only flight risk ICE must consider. A Red Notice and outstanding warrant for arrest in Mexico make it extremely likely that Ms. Soto will not comply with any order to be removed to Mexico if she is unsuccessful in her claims for relief from removal. *See Torres Murillo v. Barr*, No. 19-cv-05676-SK, 2019 WL 8723753, at *5 (N.D. Cal. Oct. 23, 2019) (citing *Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *8 (N.D. Cal. Nov. 6, 2018)). Her redetention, in light of her violation of the conditions of her release, is therefore warranted.

### **Ms. Soto Violated the Conditions of Her Release**

On May 7, 2020, ICE released Ms. Soto pursuant to its authority under 8 U.S.C. § 1226(a) and placed her on the Intensive Supervision Appearance Program and placed a GPS ankle monitor on her ankle. ICE provided her information regarding how to contact the Intensive Supervision Appearance Program for any alerts or problems with the GPS monitor. *See* Pham Decl. When Ms. Soto was processed for release, she provided incorrect phone contact information. On May 12, 2020, when ICE was unable to reach her at the contact information provided, they requested that Intensive Supervision Appearance Program send a message through the GPS monitor to Ms. Soto, requesting her to call in.

FED. DEFS.' RESP. TO ECF NO. 156
No. 3:20-cv-02731-VC                                           3

The Intensive Supervision Appearance Program did so, and Ms. Soto did not call in. ICE officers then conducted a site visit.

Subsequently, ICE revoked its prior release determination due to Ms. Soto's violation of her release requirements. *See* 8 C.F.R. § 236.1(c)(9). She was therefore rearrested and returned to ICE custody.

This unusual circumstance does not constitute a transfer out of Mesa Verde Detention Center as Ms. Soto had been released from ICE custody and was rearrested after violating the terms of her release. Further, Ms. Soto was not released pursuant to an order from the Court, and only ICE's conditions of release applied to her release. Therefore, Plaintiffs' contentions regarding these issues are inapposite.

**Ms. Soto's Current Detention**

Upon revocation of her release, Ms. Soto was taken to the Aurora Contract Detention Facility. ICE has undertaken procedures at that location to protect detainees from COVID-19. *See, e.g.*, Declaration of Greg Davies, submitted herewith.[1] Specifically, while one detainee and some staff have tested positive for COVID-19 more than one month ago, these individuals were properly quarantined and do not pose a risk to the detainee population. *Id.* ¶¶ 18(a) (one detainee tested positive on April 11, 2020, before transfer to Aurora, and has been in medical isolation since that time; out of the 10 detainees tested, all have been negative[2]) ; 18(b) (the staff that tested positive did so in March and properly quarantined after doing so). Ms. Soto was taken to the Aurora Contract Detention Facility because there are no longer any women detainees at Mesa Verde Detention Center and Yuba County Jail would not accept her for custody.

Ms. Soto is an extreme flight risk and danger and, having violated her conditions of release, has been properly redetained. Her bail application before this Court was mooted by her release, and this Court should decline to consider any such application at this time.

---

[1] Portions of the declaration regarding individual detainees that are not relevant to this matter are redacted.

[2] See Pham Declaration.

DATED: May 13, 2020 Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*/s/ Adrienne Zack*
ADRIENNE ZACK
Assistant United States Attorney

Attorneys for Federal Defendants