# FEDERAL DEFENDANTS' RESPONSE TO SHORT-FORM BAIL APPLICATION
## Juvenal Garcia Gonzalez

**8. Date of Bond Hearing, if any:**

Mr. Garcia Gonzalez is subject to mandatory detention under 8 U.S.C. § 1226(c), due to a felony conviction for assault with a firearm on a person, an aggravated crime of violence. He received an individualized bond hearing before an immigration judge on February 7, 2019, as a result of a habeas petition.

**9. Outcome of bond hearing, if any:**

After acknowledging that the government bore the burden of proving by clear and convincing evidence that Mr. Garcia Gonzalez was a flight risk or danger to the community, the immigration judge denied release on bond, finding that Mr. Gonzalez posed a danger to the community. In reaching this conclusion, the immigration judge considered the report of psychiatrist Dr. Paul Elizondo but noted that the report was based solely on information provided to him from Mr. Garcia Gonzalez and that this information contained a number of discrepancies from his previous testimony. The immigration judge also considered a news report and evidence that was contradictory to M. Garcia Gonzalez's description of events surrounding his conviction for felony assault. This decision was upheld by the Board of Immigration Appeals on August 28, 2019. This Court is barred from reweighing the evidence presented to an immigration judge under 8 U.S.C. § 1226(e).

**11.    Medical condition(s) that put detainee at risk:**

The bail application states that Mr. Garcia Gonzalez "was recently found to have high blood pressure" and that he suffers from "adjustment disorder with mixed anxiety and depressed mood." Mr. Garcia Gonzalez "claim[ed] good health" and to have no medical issues in a December 2017 encounter with an ICE Deportation Officer, according to his Form I-213 Record of Deportable/Inadmissible Alien. When he was evaluated by psychiatrist Dr. Paul Elizondo on October 12, 2018, Mr. Garcia Gonzalez stated that he did not have any chronic medical problems and was not receiving any treatment or taking medication for any medical condition. In addition,

although Dr. Elizondo diagnosed Mr. Garcia Gonzalez with adjustment disorder based on the available information following a three hour and fifteen minute interview, this diagnosis indicates a finding that Mr. Garcia Gonzalez does not suffer from a depressive or anxiety disorder, and Dr. Elizondo stated that Mr. Garcia Gonzalez did not meet the diagnostic criteria for any other mental disorder.

In any event, according to the CDC criteria, Mr. Garcia Gonzalez has not been determined to be at high risk for serious illness as a result of COVID-19.  *See* Centers for Disease Control and Prevention, People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 23, 2020).  Defendants have no record of Mr. Garcia Gonzalez being diagnosed with any risk factors as defined by the CDC.  The CDC does not list high blood pressure[1] or adjustment disorder as conditions that place individuals at higher risk of severe illness from COVID-19.  *See id.*

**13. Felony or misdemeanor convictions, including date and offense:**

On May 9, 2017, Mr. Garcia Gonzalez was convicted in California Superior Court, County of San Bernardino, for the offense of Assault with a Firearm on a Person, in violation of

---

[1] Hypertension is mentioned on the CDC website in the context of discussing statistics from China showing higher fatality for patients with comorbidities.  *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.  However, it is not surprising that hypertension is not on the CDC's list of high-risk conditions.  The CDC's list already recognizes that people 65 or older are at higher risk for severe illness from COVID-19, and it is not at all clear that hypertension in younger people alone puts them at higher risk.  According to the International Society of Hypertension, hypertension usually affects the majority of people over 60, and therefore "there is no evidence that people with hypertension are over-represented amongst those seriously infected by COVID-19.  Indeed, the opposite is true."  A Statement from the International Society of Hypertension on COVID-19, available at https://ish-world.com/news/a/A-statement-from-the-International-Society-of-Hypertension-on-COVID-19/.  Similarly, the American Heart Association has noted that nearly half of Americans deal with high blood pressure and warned that "*elderly people* with coronary heart disease or high blood pressure may be more susceptible to the coronavirus and more likely to develop more severe symptoms."  AHA Guidance, "What People with High Blood Pressure Need to Know about COVID-19," available at https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-about-covid-19 (emphasis added).

California Penal Code § 245(a)(2).  He admitted that he intended to scare his neighbor with the loaded gun and was holding it in his front entry doorway when the police arrived, causing the police to shoot at Mr. Garcia Gonzalez.  Mr. Garcia Gonzalez did not have a permit for the weapon.  Mr. Garcia Gonzalez was sentenced to three years' imprisonment.

According to his bail application, Mr. Garcia Gonzalez has two previous misdemeanor convictions, one in 1997 for DUI in violation of California Vehicle Code § 23152(a) and one in 2003 for driving without a license in violation of California Vehicle Code § 12500(a).  He testified in his removal proceedings that he was convicted of DUI in 1999 and that he was later arrested because he failed to complete the classes required after his DUI conviction.

**15.    Scheduled removal date:**

An immigration judge issued an order of removal on November 6, 2018, and the BIA dismissed his appeal on April 24, 2019.  Mr. Garcia Gonzales has a fully briefed petition for review pending with the Ninth Circuit, *Garcia Gonzalez v. Barr*, No. 19-71043 (9th Cir.).  The Ninth Circuit has stayed Mr. Garcia Gonzalez's removal pending review.

**17.    Proposed Custodian & Description of Proposed Release**:

Mr. Garcia Gonzalez proposes to live alone in an apartment in San Bernardino, California, rented for him by his cousin, Rudy Gonzalez.  This apartment is over fifty miles (and nearly an hour by car) from Whittier, California, where Rudy Gonzalez lives.  Mr. Garcia Gonzalez's immediate family lives in Nebraska and Iowa.  Although the "Release Plan Letter" states that Rudy Gonzalez's family plans to provide for Mr. Garcia Gonzalez upon his release, his bail application indicates that his cousins, aunts, and uncles live in Whittier and Norwalk, California, both close to an hour away from San Bernardino, and there is no plan for Mr. Garcia Gonzalez's supervision or accountability.  Nor has sufficient information been provided to demonstrate that, if Mr. Garcia Gonzalez were to be released, he would return to ICE custody upon the termination of this Court's order.  To the contrary, he proposes that he will remain in San Bernardino through the end of his parole in December 2020.

**20.    Other Information Relevant to Bail Determination:**

Mr. Garcia Gonzalez should not be released because he has a recent criminal conviction for an aggravated felony crime of violence. In his removal proceedings, the immigration judge concluded, and the Board of Immigration Appeals agreed, that Gonzalez had committed a violent, dangerous crime and did not qualify for an inadmissibility waiver because he had not shown that his removal would cause "exceptional and extremely unusual hardship" to a relative. The felony that Mr. Garcia Gonzalez committed—assault with a firearm on a person—has, as an element, the use, attempted use, or threatened use, of physical force against the person or property of another, and the offense requires a level of intent greater than mere recklessness or negligence. Evidence indicated that Mr. Garcia Gonzalez threatened his neighbors with the firearm and pointed it at the police officers when they confronted him. The IJ found that Mr. Garcia Gonzalez's testimony regarding the facts of the incident had changed over time, and his claim that he immediately raised his hands and dropped the weapon when confronted by the police was not credible.

Mr. Garcia Gonzalez's criminal history record also shows that he was cited twice (in 1994 and 2003) for failure to appear in criminal proceedings, as well as for a probation violation in November 2003.