# FEDERAL DEFENDANTS' RESPONSE TO SHORT-FORM BAIL APPLICATION
## Armando Nunez Salgado

**9. Outcome of bond hearing, if any:**

Mr. Nunez is detained pursuant to 8 U.S.C. § 1231(a)(6), an alien under an administratively final order of removal. He has sought review of his most recent removal order in the Ninth Circuit, and his removal is stayed pending that review. That case is fully briefed and has been submitted to a panel for decision. *See Nunez-Salgado v. Barr*, No. 19-70568 (9th Cir.).

Mr. Nunez had two Immigration Judge bond hearings during 2018, and both times was found to be a flight risk.

On April 6, 2020, Mr. Nunez filed an individual habeas case, seeking release due to COVID-19 and also seeking a third IJ bond hearing. Judge Chen deferred ruling on the COVID-19 claim pending a decision by this Court on Mr. Nunez' release. *Nunez Salgado v. Barr,* No. 20-cv-2319 EMC (N.D. Cal. May 18, 2020), ECF 29, p. 2. Judge Chen also found that Mr. Nunez was not entitled to a third bond hearing at this time. *Id.* at 7.

**11. Medical Condition(s) That Put Detainee At Risk:**

Defendants have no record of Mr. Nunez being diagnosed with any risk factors, as defined by the CDC. The CDC does not list high cholesterol, high glucose levels, a family history of diabetes, high bilirubin levels, low carbon dioxide levels, or a potential future need for cataract surgery as conditions that place individuals at higher risk of severe illness from COVID-19. See Centers for Disease Control and Prevention, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 25, 2020).

When arrested by ICE on February 25, 2018, Mr. Nunez claimed to have no medical issues, and stated that he was not taking any medication.

**13. Felony or Misdemeanor Convictions, Including Date and Offense:** [1]

On July 23, 1997, Mr. Nunez was convicted of force/assault with a deadly weapon not firearm (great bodily injury likely) (California Penal Code § 245(a)(1) with a Street Gang Act enhancement), and was sentenced to five years in prison.  During Mr. Nunez' immigration proceedings, he conceded that this offense constituted a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii).  The Ninth Circuit has held that a conviction under California Penal Code § 245(a)(1) is categorically an aggravated felony.  *See United States v. Vasquez-Gonzalez*, 901 F.3d 1060, 1068 (9th Cir. 2018).

On January 7, 2002, Mr. Nunez was arrested for battery on a peace officer (California Penal Code § 243(b)), battery on cohabitant (California Penal Code § 242), failure to appear (California Penal Code § 853.7), receipt of stolen property (California Penal Code § 496(a)), and evading a peace officer (California Vehicle Code § 28001(a)).  Prosecution was deferred for revocation of parole.  On January 15, 2002, he was sentenced to finish a prior term of imprisonment due to the parole violation.

After being removed to Mexico for the first time, Mr. Nunez illegally re-entered the United States in 2003.  On December 8, 2004, he was convicted of second-degree felony burglary (California Penal Code § 459) and felony evasion of peace officer/disregarding safety (California Vehicle Code § 2800.2(a)), and sentenced to three years.  He was then removed to Mexico for the second time, and later re-entered illegally.

Mr. Nunez' bail application explains an additional burglary conviction (California Penal Code § 459) and two-year sentence on July 12, 2005, which is not documented on his RAP sheet.  Defendants' information is that this was a conviction for second-degree burglary committed in 2003, and Mr. Nunez was sentenced to four years in prison.

---

[1] Defendants do not concede that they are bound by the state statutes regarding disclosure of juvenile information.  However, for purposes of expediency, Mr. Sanchez-Brito's criminal history is limited to his adult encounters with law enforcement.

On December 8, 2008, Mr. Nunez was arrested, but not prosecuted, for possession of a controlled substance in prison (California Penal Code § 4573.6).

On October 19, 2013, Mr. Nunez was involved in a hit and run. He was charged with a felony, and absconded to Mexico. During a July 23, 2018 hearing in his immigration proceedings, Mr. Nunez told the IJ that he returned to Mexico for eleven months in late 2013 or early 2014 because he did not want to go to jail in the United States. He illegally reentered the United States in November 2014 after (according to his testimony in immigration court) numerous run-ins with Mexican police. On May 15, 2015, Mr. Nunez was convicted of felony evasion of peace officer/disregarding safety (California Vehicle Code § 2800.2(a)), felony hit and run: death or injury (California Vehicle Code § 20001(a)), and felony failure to appear (California Penal Code § 148(a)(1)). According to Napa County court records, in addition to five years of probation, Mr. Nunez was sentenced to the following prison terms: three years for evading a peace officer, with an additional year for the enhancement of having a non-violent felony prior; eight months for hit and run; eight months for failure to appear; and an additional two years for committing a felony while on bail (California Penal Code § 12022.1). After completing his prison term, Mr. Nunez was taken into ICE custody.

**20. Other Information Relevant to Bail Determination:**

Mr. Nunez has a significant history of committing crimes, evading law enforcement, and illegally reentering the United States after being removed due to his crimes. Given his history, and the fact that his petition for review is fully briefed and awaiting decision from the Ninth Circuit at any time, Mr. Nunez is a high flight risk and should remain detained until the Ninth Circuit rules on the merits of his petition. *Cf. Antonio-Martinez v. INS*, 317 F.3d 1089, 1093 (9th Cir. 2003) (characterizing situations when aliens flee after filing petitions for review as "heads I win, tails you'll never find me"). Mr. Nunez suggests that GPS monitoring is appropriate to ameliorate this risk. As courts have recognized, however, ankle monitors "can be removed." *Risner v. Fowler*, -- F. Supp.3d --, 2020 WL 2110579 at *4 (N.D. Tex. May 1, 2020).