# JOSE CARMEN GOMEZ
# SHORT-FORM BAIL APPLICATION

**SUMMARY:**

Jose Carmen Gomez is a 46 year-old long-time Lawful Permanent Resident. He grew up in Orange County, California where his parents, six siblings and large extended family reside. He has two adult children who are U.S. citizens who reside in Moreno Valley, CA and Minnesota.

Mr. Gomez became involved with a gang as a teenager and participated in the gang activity as a young adult. He was convicted of felony murder as the driver where two of his fellow gang members apparently shot and killed a rival gang member at a gas station in 1995 – Mr. Gomez reports that he was in a parked car at the gas station at the time and heard a shot and his friends came running back to the car and told him to leave. No arrest was made in that case for almost 7 years. In 1996, Mr. Gomez was shot and his girlfriend was killed in another gang-related drive by shooting. Mr. Gomez dropped out of the gang in 1996 and was arrested years later in 2002. When his 1995 case was charged in 2002, he was found guilty at trial and sentenced to 16 years to life. Mr. Gomez participated in substantial rehabilitative programming in prison, had no write-ups, and was granted parole by a unanimous parole board at his first parole board hearing. He was detained by immigration upon his release from prison and has been in immigration custody for almost 2 years. His immigration case is now at the Ninth Circuit pending oral argument.

Mr. Gomez is medically vulnerable as he suffers from hypertension, high cholesterol and has undergone multiple surgeries in prison and in immigration custody. If released, he would be supervised by the California Department of Corrections and Rehabilitation Parole Unit.

1. **Name:** Jose Carmen Gomez

2. **Age:** 46

3. **Sex:** M

4. **Primary Language:** Spanish/English

5. **If Hearing, Is An Interpreter Needed?** No

6. **Detained in**: Yuba County Jail

7. **Dorm Unit:** E

8. **Date of Bond Hearing, If Any:** 2/18/2020

9. **Outcome of Bond Hearing, If Any:** Denied for lack of jurisdiction and, in the alternative, the Immigration Judge denied based on flight risk, but noting that ICE had not met its burden to establish he was a danger to the community. Bond decision on appeal with the BIA.

10. **Length of Time in Detention:** almost 3 years

11. **Medical Condition(s) That Put Detainee At Risk**:

    Mr. Gomez reports that he suffers from hypertension and high cholesterol.  He receives daily medication: lisinopril for his hypertension and simvastatin for his cholesterol.

    Furthermore, Mr. Gomez has been suffering from hemorrhoids since 2008 which have required three surgeries so far – two while in prison and a third in ICE custody in July 2019. Mr. Gomez reports his third surgery did not go well as he continues to suffer from bleeding and pain, and the surgeon referred him to specialist at U.C. Davis back in February 2020 for further exploratory surgery, but Mr. Gomez has not yet received this follow up due to the pandemic.

12. **Attorney Name, Phone, Address and Email:**

    Shant Nazarian
    Berke Law Offices, LLP
    21911 Sherman Way
    Canoga Park, CA 91303
    Shant@berkelegal.com

13. **Felony or Misdemeanor Convictions, Including Date and Offense:**

    Mr. Gomez has three convictions for crimes he committed in the 1990's when he was in his late teens and early-20's and gang-involved.

    Mr. Gomez's first conviction was for an arrest in June 1990 where he admitted a misdemeanor charge for discharge of a firearm – California Penal Code § 12034(B) – he was sentenced to 36 months of probation.

    Mr. Gomez's second conviction was for an arrest in March 1996 where he admitted a misdemeanor charge for vandalism – California Penal Code § 594 – he was sentenced to 36 months of probation.

    Mr. Gomez's third conviction was for felony murder California Penal Code § 187.  He was charged in 2002 for the killing which took place in 1995. Mr. Gomez was found guilty at trial and sentenced to 16 years to life.  His conviction was upheld on appeal. The facts of the case are summarized at *People v. Carrillo*, No. G033808, 2006 WL 1933367 (Cal. Ct. App. July 13, 2006).  Mr. Gomez was the driver of a car that was involved in a gang-related shooting outside a convenience store in Santa Ana.

    Mr. Gomez says that, at the time of the crime, he was "very stupid and immature."  He started hanging out with gang members when he was in his late teens and joined a gang because he enjoyed the respect and acknowledgement he received from other gang

members.  He reports that at the time, he "felt addicted to that feeling" and remained involved in the gang until he was 25 or 26 years old.

At the time of the shooting in 1995, Mr. Gomez reports that some of his friends (fellow gang members) asked him for a ride and they went to the 7-11. Mr. Gomez reports that his friends got out of the car to go into the store and Mr. Gomez was waiting for them in the car.  He did not witness the shooting or know it was going to happen. Mr. Gomez is now applying to vacate his felony murder conviction based on the changes to California felony murder law enacted in 2018 with California Senate Bill 1437.[1]

While he denies directly participating in the murder, Mr. Gomez does admit that at the time he was engaged in shoot-outs and other criminal activity with rival gang members. He reports that on or around Mother's day in May 1996, he was again driving a car, this time with his girlfriend and some other friends (fellow gang members). Members of another gang from Orange County pulled up and started shooting at their car, killing Mr. Gomez's girlfriend and shooting Mr. Gomez through the hand. Mr. Gomez and his friends returned fire before realizing that his girlfriend was non-responsive. Mr. Gomez tried to resuscitate his girlfriend and began driving her to the hospital but was detained by police on the way. The other gang members were also identified and taken to trial and found guilty. Mr. Gomez was also charged in the shooting with 2nd degree murder (even though he and his girlfriend were the victims) but the charges were dismissed.[2]

After his girlfriend's death, Mr. Gomez reports that he went to his friends in the gang and dropped out. He realized that his actions and those of the other gang members were not just imperiling themselves but innocent people and bystanders. He told them that he did not want to be involved anymore and was willing to be jumped out or punished but no longer wanted any involvement. They allowed him to leave the gang and since June 1996, he has had no gang involvement.

After Mr. Gomez's arrest in 2002, he has engaged in a lot of rehabilitative programming. He participated in Alcoholics Anonymous; a program called GOGI (going out by going in) – a 12 step program to help incarcerated individuals learn how to make better decisions and make their own decisions instead of following others and trying to fit in or searching for acceptance;  he also participated in CGA (criminal gangs anonymous) for many years which helped him better understand why he had been addicted to the gang lifestyle earlier in his life and processing all the mistakes made and harm committed; celebrate recovery – a religious 12 step program; and numerous other programs.

Mr. Gomez reports that he had no write ups or disciplinary problems in prison.  In addition to participating in the rehabilitative programming he participated in vocational training and got his forklift certificate as well as taking classes on electronics and office services among other things.

---

[1] https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201720180SB1437
[2] Confirmed on Orange County Superior Court website with case number  98CF3202 (this is cycle 4 on his RAP sheet) https://ocjustice.occourts.org/Vision_PublicNS/Search.do#formAnchor

Mr. Gomez had his initial parole hearing on May 12, 2017. H was evaluated by a psychologist and found to be a low risk. The three independent parole board members after reviewing his records and interviewing him for a long time about his past gang membership, the facts of the 1995 crime as well as the 1996 shootout that resulted in his girlfriend's death, unanimously found that he was not a threat to society anymore and granted him parole. Mr. Gomez was scheduled to be released from prison on parole but detained by immigration in June 2017.

14. **Pending Criminal Charges and Outstanding Warrants, Including Jurisdiction and Offense:**

    None

15. **Scheduled Removal Date, If Any:** None.  Mr. Gomez has a final order of removal but was granted a stay of removal by the Ninth Circuit on June 25, 2019. Case 19-70079, Dkt. 11.

16. **Family:**

    Mr. Gomez has a large family mostly located in and around Orange County, California.

    Mr. Gomez has two adult children with whom he has remained in close contact. His oldest son Daniel Gomez (28) lives in Minnesota with wife Maddie and son, Mr. Gomez's grandson (6 months old). His daughter Dominique Gomez (22) is a college student and lives in Moreno Valley, in Riverside County, CA.

    Mr. Gomez's parents both reside in Santa Ana – his father Jose Demitrio Gomez is a U.S. Citizen and his mother, Maria Rosa Fernandez Gomez, is a Lawful Permanent Resident.

    Mr. Gomez has one brother, Omar Gomez, in Santa Ana.  He has 5 sisters who all live in Orange County - Maria Eugenia Gomez, Maria Laura Gomez, Maria Teresa Gomez, Maria Felisa Gomez and Maria Genovena Gomez. They are all U.S. Citizens or Lawful Permanent Residents.

    Mr. Gomez has over 20 nieces and nephews (ranging from 18 months to 46 years – his oldest nephew is a detective with LA county police) as well as aunts and uncles mostly residing in Orange County.

17. **Proposed Custodian and Description of Proposed Release Residence:**

If released, Mr. Gomez would live with his brother, Omar Gomez, Mr. Gomez's wife and four children and their parents, Jose Demitro Gomez and Maria Rosa Fernandez Gomez.[3]

███████████████

Santa Ana, CA 92707

███████████

Mr. Gomez's brother Omar would pick him up from custody in Marysville, CA. Alternatively, Susan Lange, a volunteer who has been meeting regularly with Mr. Gomez in custody for the past two years, has volunteered to drive him to his family's home. She can be reached at ███████████.

18. **Applicant's Ties to the Location of the Proposed Residence (such as length of time, family members, prior employment, etc.):**

Mr. Gomez has lived in Orange County since he came to the United States as a lawful permanent resident when he was 14 years old. His parents and siblings live there in addition to many extended family members.

19. **Employment History:**

Mr. Gomez reports that he has been working since was 17. He started working as dishwasher and also worked as a busboy, fast food restaurant line chef, machine operator, forklift driver, warehouse shipping and receiving and lead operator in a manufacturing company where he worked for 7 years prior to his arrest.

20. **Other Information Relevant to Bail Determination:**

- Mr. Gomez went before the California Department of Corrections and Rehabilitation Parole Board and was approved on his first time in 2017. He was evaluated by a psychologist and he reports that the psychologist found him to be a low risk if released.

- The Parole Board process involves a thorough and lengthy evaluation including an interview by one of the Parole Board's forensic clinical psychologists for purposes of producing a comprehensive risk assessment, a review of his institutional behavior and programming, with input from solicited from the District Attorney, victim and victim's family, and a review of his criminal history and the circumstances of his crime.[4] The Parole Board, whose mission it is to "protect and preserve public safety" and which includes a panel of independent commissioners, unanimously recommended Mr.

---

[3] Note: When he was scheduled to be released in 2017, Mr. Gomez was told that he would have to report to transitional housing if released.  Mr. Gomez was in communication with a transitional housing program in Spring Valley, CA.  (619) 327-5400 which had accepted him but after he was taken into immigration custody he was told his spot had been given to someone else.  If released, Mr. Gomez would check in with his parole officer to determine whether he is still required to report to transitional housing and where to go and would report if required. His Parole Officer is Deborah Jackson (949) 863-1478 and his CDCR #V32718.  .

[4] *See* https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/events-before-a-parole-suitability-hearing/

    Gomez's release from custody at his first parole board hearing. He was one of only 17% of individuals approved by the Parole Board for release that year.[5] The Board's decision was then reviewed by the Governor of California who allowed the decision to stand.[6]

- Mr. Gomez feels great remorse about his past gang involvement and criminal activity. He voluntarily left the gang before his arrest after the death of his girlfriend and has not had any involvement for over 24 years. Mr. Gomez was found by a licensed psychologist and a unanimous 3-panel board of independent commissioners not to be a danger to the community.

- Mr. Gomez was granted a stay of removal by the Ninth Circuit which found he met the standard in *Nken v. Holder* 556 U.S. 418 (2009), - namely that he had made a strong showing that he had demonstrated a likelihood of success on the merits and that he would be irreparably harmed if removed while his petition was pending.

- Mr. Gomez understands that if his removal order is final and the stay of removal is lifted, he will have to report for deportation. Mr. Gomez says unequivocally that he will do so. His main priority is to avoid re-detention and to live in peace. He knows that if he commits any violations of parole he can be returned to prison and that's the last place he wants to be.

21. **Attached are (check all that are applicable, but that is not a substitute for answering the above questions):**

    Mr. Gomez reports that he has some of his parole board documentation and CDCR certificates in his personal belongings at the ICE office in Stockton and could ask ICE for them if required.

    This application is accurate on information and belief. This application was prepared by Hayley Upshaw, San Francisco Deputy Public Defender based on a review of Mr. Gomez's RAP sheet, I-213, as well as conversations with his appellate attorney and family members, and publicly available information regarding his criminal case from the Orange County Superior Court and the Court of Appeals. Counsel does not have access to Mr. Gomez's medical records. In preparing this application, class counsel also reviewed Mr. Gomez's I-213 and rap sheet.

    Respectfully submitted,

    */s/ Genna Ellis Beier*
    Genna Ellis Beier

---

[5] *See* https://www.cdcr.ca.gov/bph/wp-content/uploads/sites/161/2020/01/BPH-Significant-Events-2017-R.pdf?label=2017%20Report&from=https://www.cdcr.ca.gov/bph/statistical-data/ (out of 5334 parole suitability hearings, only 915 were granted)

[6] See https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/what-to-expect-after-a-parole-suitability-hearing/

Jose Carmen Gomez    6

May 30, 2020

To whom It May Concern,

I write in support of Jose Carmen Gomez Fernandez, currently in ICE detention at the Yuba County Jail in Marysville, California. I am deeply concerned about the inadequate health care that he receives in immigration detention. Due to his ongoing health condition – colonic laceration, polyp surgery, lack of thorough follow up – Jose Carmen is especially at risk during this pandemic. An appointment with a specialist in the UCDavis Clinic of Sacramento was recommended in February 2019 but has not taken place. He continues to have colon issues which are not being addressed. He needs to be out of jail where he can fully engage in social distancing, access the quality health care his condition requires, and protect his health and wellbeing.

I met Jose Carmen on September 1, 2018 as a volunteer with Faithful Friends the visitation program affiliated with Freedom for Immigrants. Since then, I have visited with him almost weekly and have developed a strong friendship. I speak for my husband as well when I say that we both support him fully, as someone with a strong moral character and resilient, caring nature . He has my home phone number and home address, due to the trust that we both place in this person.

As co-coordinator of Faithful Friends, I visit at the Yuba County Jail often and have talked with many people there. Even during this time of the Corona virus, I am in contact with many people through daily phone calls. I am aware of conditions at the jail which make sanitation and hygiene difficult. As concerning as the conditions are for everyone housed at the Yuba jail, the conditions are especially dangerous for Jose Carmen, due to his medical conditions.

For the past six years, I have visited with over one hundred people in difficult circumstances. Jose Carmen stands out as an exceptional human being, resilient and caring. I hear from others housed with him the many ways he has helped them, for example, by stepping in to help with disputes or being the person to talk to when times are difficult. He has proven himself to be a responsible and caring person in so many ways.

I believe that Jose Carmen exemplifies the goal of the criminal justice system. He has made a sincere acceptance of responsibility for the decisions he has made in his life, has received parole, and is someone who is no longer a danger to society. He has close relationships with his family – his mother and father, his daughter, and his son who recently made Jose Carmen a grandfather with the arrival of a baby boy. He often tells me of the close relationship with his daughter with whom he has maintained strong ties despite the time he has been away. I believe that he would never jeopardize these ties by not abiding by the conditions of his release.

Based on his rehabilitation, family ties, and medical conditions, please consider a compassionate release for Jose Carmen Gomez Fernandez. It is so important to protect all our community members during this time of the Corona pandemic.

Please do not hesitate to connect with me if there are any questions or if I can be of more support to Jose Carmen.

Sincerely,

Susan Lange

Susanlange.uu@gmail.com

(650) 291-4603