WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
ANGÉLICA SALCEDA (SBN 296152)
asalceda@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (CA SBN 300505)
genna.beier@sfgov.org
EMILOU H. MACLEAN (CA SBN 319071)
emilou.maclean@sfgov.org
FRANCISCO UGARTE (CA SBN 241710)
francisco.ugarte@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility, <br><br> Respondents-Defendants. | Case No. 3:20-CV-02731-VC <br><br> **NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br><br> Date:  August 5, 2020 <br> Time:  9:00 a.m. |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
FRANCISCO M. UNGER* (Mass. BBO# 698807)
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

PLEASE TAKE NOTICE that, on Wednesday, August 5, 2020 at 9 a.m., Plaintiffs will and hereby do move, pursuant to Civil L. R. 7-1 and 65-1, for a temporary restraining order (TRO) directing Defendants to conduct rapid testing of all class members at Mesa Verde Detention Facility, clear a dorm to isolate all class members who are testing positive for COVID-19, and observe the limits on increased population in the remaining dorms as set out by the Court's preliminary injunction order.

Pursuant to Civil L.R. 65-1(b), on August 3, 2020 at 6:00 p.m., counsel for Plaintiffs sent an e-mail to counsel for Defendants to advise of the emergency reasons requiring them to seek a TRO. Plaintiffs' counsel have filed a redacted version of this notice of motion and motion on the public docket for this case and have e-mailed the sealed, unredacted version to Defendants' counsel.

### **INTRODUCTION**

Defendants have failed to take meaningful steps to halt an outbreak of COVID-19 within Mesa Verde Detention Facility (MVDF). Defendants first learned that MVDF staff members tested positive for COVID-19 more than a month ago. In light of increasing numbers of staff members who tested positive, more than ten days ago Plaintiffs implored Defendants to create a testing and cohorting protocol for class members at MVDF. (*See* Joint Case Management Statement, ECF No. 474 & Exh. A.) Yet Defendants neither implemented (nor substantively responded to) Plaintiffs' detailed plan nor took any other action to prevent COVID-19 from spreading through MVDF.

To the contrary, during the week of July 27, Defendants added more class members to MVDF than they released, increasing the density while the outbreak spread. At the same time, Defendants left symptomatic class members who would test positive for COVID-19 in their dorms to potentially infect other people. Numerous class members in multiple MVDF dorms have now tested positive for COVID-19. At least one has been hospitalized. Plaintiffs' requested TRO is a stop-gap measure necessary to prevent this situation from becoming even more dire and deadly.

NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:20-CV-02731-VC

**FACTS**

As of Friday, July 31, 2020, when the parties filed their Joint Case Management Statement, thirteen GEO staff and three class members at MVDF had tested positive for COVID-19. *See* Dkt. 474. Despite the alarming rise in positive cases, Defendants have declined to provide universal testing to class members, develop a comprehensive plan to test class members, house them safely, or make further releases of medically vulnerable individuals. Defendants have also admitted, through the deposition testimony of MVDF warden Nathan Allen, that GEO does not require employees to be tested or to remain at home if they come into close contact with someone who has tested positive. Coupled with recent intra-dorm transfers and new intakes from prison, conditions at MVDF pose a grave and imminent risk to the health and safety of class members, as well as to the general public.

Against this backdrop, on Saturday, August 1, Plaintiffs learned from other class members that a fourth class member had tested positive for COVID-19. According to his attorneys, Mr. Yao Saeturn, who is 65 years-old and suffers from chronic medical conditions,[1] had been exhibiting symptoms of COVID-19 for several days before he was brought to see Wellpath medical staff on Friday, July 31. *See* Declaration of Susan Beaty ("Beaty Dec.") at ¶ 6. Class members from Dorm C, where Mr. Saeturn had been housed, reported to his attorneys that he had been suffering from body aches, extreme fatigue, and coughing for more than two days – and that *his requests for medical attention were repeatedly ignored* by GEO. *Id.*

Neither Plaintiffs' counsel nor Mr. Saeturn's attorneys were initially able to obtain basic information from Defendants about his status, location or condition. Instead, information has trickled out from class members calling in distress. According to class members in Dorm C, Mr.

---

[1] Mr. Saeturn has hypertension, high cholesterol, gout, and cerebrovascular disease with significant functional limitations as a result of a prior stroke. *See* Dkt. 128-2 (Bail Application). Defendants have consistently downplayed his medical conditions, and recently confiscated Mr. Saeturn's walking cane that he relied upon for mobility. *See* Dkt. 139-2 (Response to Bail Application); Beaty Dec. at ¶ 3.

NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:20-CV-02731-VC

Saeturn was removed from the dorm, and class members in Dorm C were informed that he had tested positive for the virus. Dorm C was then "cohorted," meaning that it was placed on lockdown. After being informed by a GEO officer that Mr. Saeturn had been hospitalized, Mr. Saeturn's attorneys succeeded in locating Mr. Saeturn at Mercy Hospital Downtown.

That same day (August 1), Plaintiffs requested information regarding the safety of Mr. Saeturn and all class members from the Defendants via email. Maclean Dec., Exh. J (email from Plaintiff's counsel, Genna Beier). Specifically, Plaintiffs requested confirmation that Mr. Saeturn had tested positive, and asked whether Defendants could provide his location and his status. Among other things, Plaintiffs also asked for information relating to the well-being of all class members, including whether testing had been offered to all those in Dorm C; what, if any, contact tracing was being performed; what information about positive tests had been provided to class members by Defendants; and what the capacity is for local hospitals to absorb patients from Mesa Verde. Further, Plaintiffs called on Defendants to take urgent steps to protect class members, including by providing universal rapid (point-of-care) testing to class members and staff alike, offering Plaintiffs' counsel immediate access to class members who have been offered testing and refused, releasing medically vulnerable individuals such as Mr. Saeturn, and ceasing any new intakes into the facility until universal periodic testing has been implemented. Defendants initially failed to respond, other than to state that "Mr. Yao Saeturn was released to his family and is no longer in custody" (Coleman email 8/2/20), and, "Mesa Verde does not have enough rapid testing available to test all detainees." (Choe email 8/3/20).[2]

On August 3, Plaintiffs' counsel sent an e-mail requesting information about whether class members had tested positive and whether those who tested positive were being segregated. Maclean Dec., ¶ 11. Only in response to this request did Defendants inform Plaintiffs that five detainees in Dorm B had tested positive, with results pending for an unknown number of additional detainees, and that as of now, both Dorm B and Dorm C are "cohorted." *Id*. Later, on

---

[2] Plaintiffs have since learned that Mr. Saeturn was released from ICE custody on an order of supervision and directly admitted to the Emergency Department, where he remained until Sunday, August 2. Mercy Hospital Downtown discharged Mr. Saeturn on August 3. His attorneys report that he will quarantine at a motel in Merced, California, prior to returning home to his family. His condition, thankfully, is stable.

**NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:20-CV-02731-VC**

the evening of August 3, Defendants finally provided additional information about Mr. Saeturn and others in Dorm C. Maclean Dec., Exh. K. While Defendants' represented that "arrangements" to test the class members in Dorm C are "in progress," as of the afternoon of August 3, none of them had been tested. Beaty Decl. at ¶ 16. Moreover, class members report that approximately one dozen individuals in Dorm C are ill and showing symptoms of COVID-19. Beaty Decl. at ¶ 16. Although it is not clear from Defendants' statements, it now appears that in at least three of the four dormitories at MVDF, detainees who have tested positive and/or have been exposed to a known case of COVID-19 are indiscriminately housed among the general population.[3]

Defendants also informed class counsel that ten class members were "transferred for removal" on August 3. This is one of the largest, if not the largest, groups of daily releases from MVDF. Defendants did not inform class counsel where those class members were transferred, whether any of them had been tested prior to transfer, or whether they will be tested on arrival to the facility receiving them. It thus appears that those transfers may spread COVID-19 to other facilities.

Defendants know that it is unacceptable to simply leave detainees who have tested positive in a dorm because such practices violate applicable ICE Health Service Corps policies and risks exposing other detainees to COVID-19. Declaration of Francisco Unger (Unger Dec.), Exh. A, GEO_07064 GEO has acknowledged that even potentially exposed detainees— to say nothing of known positive cases— cannot be housed in dormitories because of the risk of widespread transmission. *Id.*, Exh. B, GEO_07202 Throughout this litigation,

---

[3] Even as Plaintiffs' counsel were finalizing this motion, they continued to receive alarming reports out of MVDF. For example, a class member reports that around 7 p.m. on August 3, firefighters entered the building and left with a man on oxygen on a stretcher who had apparently been in Dorm B. Beaty Decl. ¶ 17.

NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER
CASE NO. 3:20-CV-02731-VC

██████████████████████████████████████████████████████████████████████. *Id*., Exh. C, GEO_00003 (4/10/2020, Department of Homeland Security Survey filled out by Warden Allen, ████████████████████████████████████████████████████████ ████████████████████████████████████████); *id*, Exh. D, GEO_01052 (6/4/2020, Warden Allen email to Alexander Pham ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Maclean Dec., Exh. M, ICE 637 (6/4/2020, Alexander Pham email to David Jennings).

Warden Allen has not minced words in addressing Mesa Verde's inability to safely handle multiple positive cases. When ICE intervened just last month to transfer six detainees exposed to COVID-19 during the intake process to another facility with more space for cohorting and isolation, Allen wrote to his colleagues ██████████████████████████ Unger Dec., Exh. E, GEO 06391 (7/2/2020, Warden Allen email to Paul Laird and Cheryl Nelson.) Yet GEO's awareness of a potential catastrophe at Mesa Verde has not been matched by a sense of urgency in developing procedures and alternative housing arrangements that would mitigate risk. Indeed, Warden Allen's own GEO supervisor has ██████████████████████████████ ███████████████████████████████. *Id*., Exh. F, GEO_08822 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Even more troubling, ICE's discussions suggest that MVDF has failed to implement widespread testing of detainees and staff not because the facility lacks the resources to do so but precisely because MVDF has not developed a workable strategy for facilitating the isolation and cohorting that appropriately responding to many test results would require. *Id*., Exh. G, GEO_06238 ████████████████████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████; *id*., Exh. H, GEO_06450

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████; Maclean Dec., Exh. L, ICE

682 ███████████████████████████████████████████████████

███████████████████████████████████ In other words, widespread

testing has not been done because Defendants fear they would not be able to handle the truths that it would reveal.

## LEGAL STANDARD

Plaintiffs are entitled to a temporary restraining order if they establish that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co*., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). A temporary restraining order may likewise issue where "serious questions going to the merits [are] raised and the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). To succeed under the "serious question" test, Plaintiffs must show that they are likely to suffer irreparable injury and that an injunction is in the public's interest. *Id*. at 1132.

## ARGUMENT

COVID-19 is spreading quickly through MVDF. Three months after the TRO, two months after the preliminary injunction, one month after facility guards first tested positive for COVID-19, and several weeks after a MVDF class member first tested positive, Defendants have taken no effective action. The Court has already found that Plaintiffs satisfied the TRO and

injunctive relief factors on a record where there were *no* confirmed positive tests at MVDF.[4] (Dkt. 53; Dkt. 357.) In the face of Defendants' inaction as COVID-19 spreads throughout MVDF, the conditions are even more dangerous, the harm more imminent, and the equities more sharply tipped in favor of immediate relief than at the preliminary-injunction phase. Defendants' "disinterest and . . . lack of dexterity in adjusting its conduct to respond to a global crisis" has come to roost. Dkt. 357 at 3.

Defendants have had months to prepare for the inevitable outbreak that experts long warned would happen. *Id.* at 6, n. 2 ("[T]he fact that Covid has not yet entered the facilities does nothing to undermine the unrebutted evidence that if and when it does, it may cause a rapid and dangerous outbreak."). They have done virtually nothing, refusing to implement a universal testing and isolation protocol. Even the limited discovery taken to date demonstrates that Defendants have long been aware of the serious risks that the inability to quarantine at MVDF, that they failed to create any plan to respond to those risks, and that now that the risks are reality that they have failed to meaningfully respond. As explained below, further temporary relief is now necessary to prevent an increasingly dangerous situation from spiraling even more out of control.

Immediate point-of-care testing is necessary to determine the scope of the outbreak. Absent the rapid results that such testing produces, additional class members will inevitably contract COVID-19 from their dorm-mates. Those infected will be at risk of becoming seriously ill or dying, particularly the many class members who have COVID-19 risk factors. Third Supplemental Declaration of Dr. Robert Greifinger ("Greifinger Dec.") ¶¶ 9-12.

Once Defendants have the results from such rapid point-of-care tests they should immediately isolate all of those who test positive in a cleared dorm, provided that there are no further rooms in which to isolate individual class members. Greifinger Dec. ¶¶ 13-15. As Defendants' own documentary discovery shows, *supra*, isolating positive cases is the only way to

---

[4] Defendants' most vociferous responses to Plaintiffs' requests for relief in this case had been that there were no positive cases at MVDF and that class members were accordingly not endangered. Dkt. 357, at 6, n. 2. While the Court has long been unpersuaded by this argument (*see* Dkt. 53 at 4), there can be no dispute that Plaintiffs' position is stronger than it was previously.

prevent other detainees sharing a dorm from contracting COVID-19. Thus, the equitable relief factors weigh in favor of Plaintiffs' requested relief.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion for a TRO.

Dated: August 3, 2020                    AMERICAN CIVIL LIBERTIES
                                         FOUNDATION OF NORTHERN
                                         CALIFORNIA


                                         By: */s/ Sean Riordan*
                                             Sean Riordan (255752)

                                         Attorneys for Petitioners-Plaintiffs