# Exhibit I

| | |
|---|---|
| **Subject:** | RE: [Zepeda Rivas] proposal for testing/cohorting protocol |
| **Date:** | Tuesday, July 28, 2020 at 5:40:33 PM Pacific Daylight Time |
| **From:** | Sean Riordan |
| **To:** | Choe, Shiwon (USACAN), Coleman, Susan E., Zack, Adrienne (USACAN), Garbers, Wendy (USACAN) |
| **CC:** | Bill Freeman, Angelica Salceda, Marty Schenker, Maclean, Emilou (PDR), Bree Bernwanger, Francisco Unger, Timothy Cook, Beier, Genna (PDR), Judah Lakin |
| **Attachments:** | image001.jpg |

This message is from outside the City email system. Do not open links or attachments from untrusted sources.

Dear Shiwon:

We're following up here on several of the framework and substantive questions you raised during yesterday's meeting concerning testing and cohorting protocols. We also address pending case management issues in advance of next Wednesday's CMC.

**Testing and Cohorting Protocols**

- Negotiation Framework Questions:

  - As we stated yesterday, if the parties reach agreement on a protocol for testing and cohorting class members, we would not seek an evidentiary hearing absent changed circumstances or new disputes of which we are presently unaware.

  - As we indicated yesterday, we are willing to discuss a global resolution of the case if the Defendants are so interested. Indeed, if ICE is interested in exploring a global resolution, we believe that agreeing on a robust testing/cohorting regime would be an important trust-building step. But regardless of whether there is progress to be had on possible settlement of the whole case, testing/cohorting is an urgent issue that should be resolved as soon as possible.

- Substantive Questions:

  - Whether the plaintiffs would agree to increasing the density of certain dorms to free up other dorms for cohorting positives and/or refusers:
    - As we indicated in our initial proposal, we recognize that some modest increase may

be necessary.

- After further communication with experts on this question, we continue to believe that anything more than a modest increase would be too dangerous. The Abbott ID Now test remains an important tool for universal periodic testing, but it returns false negatives, as discovery in this case further affirms. This limitation means that a dorm of people who have all tested negative cannot be guaranteed to *not* have any COVID-positive detainees. Moreover, even those who do have the disease may not test positive, depending on the particular point in the infection cycle at which they are tested. There is also risk that between testing the virus could be introduced into a non-cohort dorm by other means – ventilation, facility personnel, etc. For all these reasons, maintaining social distancing remains important even with a rigorous testing/cohorting system.
- You asked us to provide a particular number for any dorm that would be considered safe. We would be interested in working with ICE on a cap number, in keeping with the imperative for social distancing.

○ Whether class members denied bail by Judge Chhabria should not be released in order to achieve the safe cohorting of class members:

- We propose a testing/cohorting system where ICE would decide who should be released in circumstances where released is required to avoid the unsafe redensification of a particular dorm. Under the Plaintiffs' proposal, ICE would have no obligation to release detainees previously denied bail by Judge Chhabria, but there would be no categorical prohibition against ICE deciding to release such detainees in its discretion.
- To proactively address the possibility that at least one dorm may need to be cleared and the consequent density issues, we believe it would be wise for ICE to begin by temporarily halting new arrivals to Mesa Verde and voluntarily releasing individuals who are a relatively lower security classification (see, e.g., ICE 637).

○ How long refusers should be cohorted:

- We believe that if ICE offers testing that provides prompt results, adequately explains the tests and the uses to which the results can be put, provides reasonable release forms, and allows class counsel to discuss the benefits of testing with putative refusers, the number of refusers will be extremely low. If we can agree on the other aspects of a proposal, we would commit to use our best efforts to convince any reluctant class member to submit to a test.
- For those who still refuse, the cohorting time should be 14 days or until they are willing to be tested, whichever is shorter.

○ Whether the court should order that class members be required to wear masks:

- We would want additional information about the Defendants' understanding of how often and in what circumstances class members are not wearing masks. We do not think development of this issue – which we are happy to continue discussing – should delay the implementation of a universal and regular testing system with cohorting plans.

We hope this additional information is useful to you and the Defendants. We would be happy to set a further meeting to discuss testing/cohorting issues at your earliest convenience.

**Case Management Issues**

We plan to submit a short case management statement tomorrow noting the recent COVID-19 positive tests and the parties' discussion of a potential testing/cohorting regime. We will indicate that if the parties cannot resolve this issue that we plan to file a motion on or around August 14 seeking additional preliminary injunctive relief of court-imposed testing and cohorting requirements. We may seek an evidentiary hearing to assist in resolving any such motion, and the court may order the same. If we are unable to resolve this issue by the time we file our motion, we will remain interested in continuing discussions thereafter in an attempt to develop a mutually acceptable testing and cohorting regime.

We also understand that the parties are to confer in advance of the CMC on future case deadlines. We propose the following rough case management deadlines:

- Fact discovery cut-off: March 2021.
- Expert discovery cut-off: June 2021.
- MSJ cut-off: August 2021.
- Trial: mid-2022.

Please let us know if you agree with these deadlines in principle.

Best Regards,
Sean

---

**From:** Sean Riordan
**Sent:** Saturday, July 25, 2020 1:24 PM
**To:** 'Choe, Shiwon (USACAN)' <Shiwon.Choe@usdoj.gov>; Coleman, Susan E. <SColeman@bwslaw.com>; Zack, Adrienne (USACAN) <Adrienne.Zack@usdoj.gov>; Garbers, Wendy (USACAN) <Wendy.Garbers@usdoj.gov>
**Cc:** Bill Freeman <wfreeman@aclunc.org>; Angelica Salceda <asalceda@aclunc.org>; Marty Schenker <mschenker@cooley.com>; Emilou Maclean <emilou.maclean@sfgov.org>; Bree Bernwanger <bbernwanger@lccrsf.org>; Francisco Unger <funger@cooley.com>; Timothy Cook <tcook@cooley.com>; Genna Beier <genna.beier@sfgov.org>; Judah Lakin <judah@lakinwille.com>
**Subject:** RE: [Zepeda Rivas] proposal for testing/cohorting protocol

Shiwon:

We appreciate the quick response on this.

Monday at 1 p.m. works best from our end. We recently switched over to "Microsoft Teams" as our remote meeting platform, and I can send an invite for that. Or if you have a conference call line, we'd be happy to use that.

Thanks,
Sean

---

**From:** Choe, Shiwon (USACAN) <Shiwon.Choe@usdoj.gov>
**Sent:** Friday, July 24, 2020 11:58 PM
**To:** Sean Riordan <SRiordan@aclunc.org>; Coleman, Susan E. <SColeman@bwslaw.com>; Zack, Adrienne (USACAN) <Adrienne.Zack@usdoj.gov>; Garbers, Wendy (USACAN) <Wendy.Garbers@usdoj.gov>
**Cc:** Bill Freeman <wfreeman@aclunc.org>; Angelica Salceda <asalceda@aclunc.org>; Marty Schenker <mschenker@cooley.com>; Emilou Maclean <emilou.maclean@sfgov.org>; Bree Bernwanger <bbernwanger@lccrsf.org>; Francisco Unger <funger@cooley.com>; Timothy Cook <tcook@cooley.com>; Genna Beier <genna.beier@sfgov.org>; Judah Lakin <judah@lakinwille.com>
**Subject:** RE: [Zepeda Rivas] proposal for testing/cohorting protocol

Dear Sean:

We have received Plaintiffs' proposal and are reviewing and evaluating with ICE.

We had some initial questions about Plaintiffs' proposal where we may need further clarity in order to evaluate.  We are happy to have a call to meet and confer to discuss on Monday between 10 and 11 or between 1 and 2, if that works for Plaintiffs and for GEO?

Best regards,
Shiwon


Shiwon Choe
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
T: (415) 436-6967
F: (415) 436-6748
E: shiwon.choe@usdoj.gov



**From:** Sean Riordan <SRiordan@aclunc.org>
**Sent:** Friday, July 24, 2020 1:26 PM
**To:** Coleman, Susan E. <SColeman@bwslaw.com>; Zack, Adrienne (USACAN) <AZack1@usa.doj.gov>; Choe, Shiwon (USACAN) <SChoe@usa.doj.gov>; Garbers, Wendy (USACAN) <wgarbers@usa.doj.gov>
**Cc:** Bill Freeman <wfreeman@aclunc.org>; Angelica Salceda <asalceda@aclunc.org>; Marty Schenker <mschenker@cooley.com>; Emilou Maclean <emilou.maclean@sfgov.org>; Bree Bernwanger <bbernwanger@lccrsf.org>; Francisco Unger <funger@cooley.com>; Timothy Cook <tcook@cooley.com>; Genna Beier <genna.beier@sfgov.org>; Judah Lakin <judah@lakinwille.com>

**Subject:** RE: [Zepeda Rivas] proposal for testing/cohorting protocol

In our proposal, that would depend on the availability of RHU/medical isolation space for those who refuse testing. As an initial matter, we believe this would be a very small or non-existent group if other aspects of our proposal were implemented, including the provision where we as class counsel would speak to refusers about testing. But if someone continued to refuse, the highlighted text below would cover that situation.

- **Refusal issues:** If the benefits of being tested were explained to all class members, we believe it would be very rare for a class member to refuse a test. With this in mind:
    - The parties should work together to formulate an information sheet providing basic information about testing to class members, which would be provided at the time a test is offered.
    - Any class members who refuse to be tested should be provided an opportunity to speak with class counsel.
    - If after speaking with class counsel, they continue to decline testing, they should be cohorted in one of the RHU or medical cells, if available, or, if space restrictions render it necessary, in another dorm that could be cleared for the purpose of cohorting those who refuse.
    - ICE should refrain from transferring to another detention facility anyone who refuses to be tested on intake. Public health experts inform us that this practice presents a risk to the personnel involved in the transport and to the personnel and detainees at the receiving facility, and these concerns are consistent with the CDC Guidance on Management of COVID-19 in Correctional and Detention Facilities which strongly discourages transfers of detained persons "unless necessary." At intake, individuals should be presented in a positive way the option of taking a test, afforded an opportunity to speak with class counsel about the test if they express reluctance, and cohorted for 14 days with anyone else who refuses if they ultimately decline to be tested.

---

**From:** Coleman, Susan E. <SColeman@bwslaw.com>
**Sent:** Friday, July 24, 2020 1:20 PM
**To:** Sean Riordan <SRiordan@aclunc.org>; Zack, Adrienne (USACAN) <Adrienne.Zack@usdoj.gov>; Choe, Shiwon (USACAN) <Shiwon.Choe@usdoj.gov>; Garbers, Wendy (USACAN) <Wendy.Garbers@usdoj.gov>
**Cc:** Bill Freeman <wfreeman@aclunc.org>; Angelica Salceda <asalceda@aclunc.org>; Marty Schenker <mschenker@cooley.com>; Emilou Maclean <emilou.maclean@sfgov.org>; Bree Bernwanger <bbernwanger@lccrsf.org>; Francisco Unger <funger@cooley.com>; Timothy Cook <tcook@cooley.com>; Genna Beier <genna.beier@sfgov.org>; Judah Lakin <judah@lakinwille.com>
**Subject:** RE: [Zepeda Rivas] proposal for testing/cohorting protocol

Counsel – what do you propose to do for the plaintiffs-detainees that refuse testing?

**Susan E. Coleman | Partner**
444 South Flower Street, Suite 2400 | Los Angeles, CA  90071-2953
d - 213.236.2831 | t - 213.236.0600 | f - 213.236.2700
scoleman@bwslaw.com | vCard | bwslaw.com



The information contained in this e-mail message is intended only for the CONFIDENTIAL use of the designated addressee named above. The information transmitted is subject to the attorney-client privilege and/or represents confidential attorney work product. Recipients should not file copies of this email with publicly accessible records. If you are not the designated addressee named above or the authorized agent responsible for delivering it to the designated addressee, you received this document through inadvertent error and any further review, dissemination, distribution or copying of this communication by you or anyone else is strictly prohibited. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONING THE SENDER NAMED ABOVE AT 800.333.4297. Thank you.

**From:** Sean Riordan [mailto:SRiordan@aclunc.org]
**Sent:** Friday, July 24, 2020 12:47 PM
**To:** Zack, Adrienne (USACAN); Choe, Shiwon (USACAN); Garbers, Wendy (USACAN); Coleman, Susan E.
**Cc:** Bill Freeman; Angelica Salceda; Marty Schenker; Emilou Maclean; Bree Bernwanger; Francisco Unger; Timothy Cook; Genna Beier; Judah Lakin
**Subject:** [Zepeda Rivas] proposal for testing/cohorting protocol

[EXTERNAL]

Dear Counsel:

We write to address the urgent need for universal and regular COVID-19 testing of class members at Mesa Verde. As you know, twelve MVDF staff and two detained class members have recently tested positive for COVID-19. While we believe that universal and regular testing should have already been occurring, in light of these developments it is imperative that ICE quickly establish such a testing regime and a plan for responding to any positive test. As the CDC's testing guidance ("CDC Guidance") states, "Before testing large numbers of asymptomatic individuals without known or suspected exposure, facility leadership should have a plan in place for how they will modify operations based on test results."

In recent days we have consulted medical and public health experts to better understand the problem and come up with potential solutions. Given that ICE has already expressed its willingness to engage in universal testing, we hope the Defendants will quickly agree to the implementation of this plan. We note that Defendants identified problematic conditions precedent to the implementation of universal testing, see Bonnar Declaration (ECF 429-1), para. 10 & n.3. Experts identified such conditions as either inconsequential or surmountable.

Specifically, we propose:

- **Intake:** ICE continue to test all arriving class members at intake and to medically isolate any such person who tests positive.

- **Universal and regular testing:** ICE test all MVDF personnel and class members on a regular basis, at least once per week, through a point of care test that returns results quickly, allowing the results to be acted upon.

- Experts inform us that the Abbott ID test already in use at MVDF is adequate for these purposes. By contrast, any test would be inadequate if it presents a significant delay in the availability of results, as Defendants have suggested is likely for tests that require offsite laboratory analysis. See Bonnar Dec. n. 3.
  - As a point of reference, some other institutions – like universities – are planning to test their populations two to three times per week to control against outbreaks. Professional sports leagues are doing this daily – they are, like DHS, multi-billion dollar operations with the possibility of widespread COVID infection if adequate mitigation measures are not implemented. Experts have advised that weekly tests are appropriate in a setting such as MVDF, and this is consistent with CDC Guidance ("Approaches for early identification of asymptomatic individuals include, initial testing of everyone in the setting, periodic (e.g., weekly) testing of everyone in the setting, and testing of new or returning entrants into the setting.").

- **Effective contact tracing:** ICE trace and test anyone who was in contact with staff or class members who tested positive, with a contact window beyond the two days that is the current practice. Experts recommend tracing and testing all those who came into contact with a confirmed positive individual within 14 days from the date that the individual contact tested positive absent evidence that the person who tested positive became infected only more recently.

- **Arranging facility for cohorting:** The Defendants establish a plan for responding to positive tests among the general population (i.e., not including intakes). If a class member tests positive, they should be placed in medical isolation consistent with the CDC guidelines. If there is insufficient space in medical isolation cells and/or the RHU in which to isolate that person, as an alternative Plaintiffs propose that the Defendants would cohort the confirmed COVID-positive class members in a separate dorm. Thus, Defendants would:
  - Clear the class members from one of the dorms and use that dorm as the site in which to quarantine those who test positive in a cohort. The clearing of that dorm should include taking measures to ensure that air is not circulating from that dorm to other parts of the facility. This may require modifying the existing ventilation system. It should also include significant measures to ensure that staff serving that COVID-positive dorm take measures to prevent transmission to other parts of the facility (i.e., with staff limiting their engagement with other class members outside of the dorm of those who test positive except to the extent necessary). On the expectation that adoption of this protocol would increase the safety level of the remaining dorms, we would be willing to discuss a modest increase in the number of detainees housed in those dorms.
  - Refrain from adding any new individual into a dorm from which a class member was moved after testing positive until 14 days have passed or all individuals in that dorm have tested negative. The dorm from which a class member was moved essentially becomes its own temporary cohort.

- **Refusal issues:** If the benefits of being tested were explained to all class members, we believe it would be very rare for a class member to refuse a test. With this in mind:
  - The parties should work together to formulate an information sheet providing basic information about testing to class members, which would be provided at the time a test is offered.

- ○ Any class members who refuse to be tested should be provided an opportunity to speak with class counsel.
- ○ If after speaking with class counsel, they continue to decline testing, they should be cohorted in one of the RHU or medical cells, if available, or, if space restrictions render it necessary, in another dorm that could be cleared for the purpose of cohorting those who refuse.
- ○ ICE should refrain from transferring to another detention facility anyone who refuses to be tested on intake. Public health experts inform us that this practice presents a risk to the personnel involved in the transport and to the personnel and detainees at the receiving facility, and these concerns are consistent with the CDC Guidance on Management of COVID-19 in Correctional and Detention Facilities which strongly discourages transfers of detained persons "unless necessary." At intake, individuals should be presented in a positive way the option of taking a test, afforded an opportunity to speak with class counsel about the test if they express reluctance, and cohorted for 14 days with anyone else who refuses if they ultimately decline to be tested.

- **Releasing individuals to avoid increased density if dorms need to be rearranged in light of positive test results**: Given the significant possibility that at least one and possibly two dorms would have to be cleared under this plan, and to comply with the preliminary injunction's requirement that conditions be maintained at the current level of safety, ICE will likely need to release additional class members at MVDF and/or slow or stop the arrival of new class members for a time. Otherwise, in clearing one or more dorms, the remaining dorms will be made significantly more crowded, increasing the risk of COVID-19 transmission in those remaining dorms. This should be done either voluntarily or through the Court's revisiting of bail applications, and this should prioritize those with medical vulnerabilities.

The Defendants have already offered universal testing of some sort (Bonnar Dec. para. 10) and have apparently seriously considered a cohorting scheme similar to the one suggested here (GEO 059). We hope then that the parties can reach a quick agreement to meaningfully address the testing and cohorting issues that the recent positive test results have made all the more urgent. Everyone involved has a significant interest in ensuring that Mesa Verde doesn't become the San Quentin of immigration detention centers. Our experts think the measures we've proposed, which are consistent with CDC guidance, represent a reasonable way to hedge against a tragic and deadly outcome.

We suggest the parties meet and confer to discuss this at the earliest opportunity. We hope to be able to resolve this without further litigation.

Best Regards,
Sean