| | |
|---|---|
| WILLIAM S. FREEMAN (SBN 82002) | MANOHAR RAJU (SBN 193771) |
| wfreeman@aclunc.org | Public Defender |
| SEAN RIORDAN (SBN 255752) | MATT GONZALEZ (SBN 153486) |
| sriordan@aclunc.org | Chief Attorney |
| ANGÉLICA SALCEDA (SBN 296152) | GENNA ELLIS BEIER (CA SBN 300505) |
| asalceda@aclunc.org | genna.beier@sfgov.org |
| AMERICAN CIVIL LIBERTIES UNION | EMILOU H. MACLEAN (CA SBN 319071) |
| FOUNDATION OF NORTHERN | emilou.maclean@sfgov.org |
| CALIFORNIA | FRANCISCO UGARTE (CA SBN 241710) |
| 39 Drumm Street | francisco.ugarte@sfgov.org |
| San Francisco, CA 94111 | OFFICE OF THE PUBLIC DEFENDER |
| Telephone: (415) 621-2493 | SAN FRANCISCO |
| Facsimile: (415) 255-8437 | 555 Seventh Street |
| | San Francisco, CA 94103 |
| *Attorneys for Petitioners-Plaintiffs* | Direct: (415) 553-9319 |
| Additional Counsel Listed on Following Page | Facsimile: (415) 553-9810 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility,<br><br>Respondents-Defendants. | Case No. 3:20-CV-02731-VC<br><br>**REPLY IN SUPPORT OF PLAINTIFFS-PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
FRANCISCO M. UNGER* (Mass. BBO# 698807)
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

In response to Defendants' objections (ECF Nos. 495 & 496), Plaintiffs-Petitioners respectfully submit the following reply in support of their motion for a temporary restraining order (ECF No. 485) and revised proposed order (ECF No. 490).

Defendants' assertions that they have acted quickly and appropriately to both prevent and respond to the threat of the COVID-19 pandemic to protect people in their custody at Mesa Verde Detention Facility is belied by the record. Defendants had considered and rejected prior universal testing and dorm segregation plans which could have obviated the need for the emergency relief that Plaintiffs-Petitioners seek today. *See, e.g.*, Exh. B, ICE 691 (May 21, 2020 Alexander Pham Conference Call Notes) ("At this time though, due to constraints that the IHSC guidelines would put on our housing resources we will be limiting the scope of testing as much as possible"). The current crisis is of Defendants' own making. They should not be able to avoid a meaningful order through bare, eleventh-hour statements that they are doing enough and that doing more would pose challenges.

1. Defendants' objections to the request for a Court order mandating point-of-care testing for all willing class members are without merit. First, weekly point-of-care testing is logistically possible. Indeed, point-of-care testing is the kind of testing that Defendants have conducted without incident for all new intakes since June 29 to produce "same-day results." Declaration of Deputy Field Office Director Erik Bonnar (Bonnar Decl.) ¶ 8 (ECF No. 429-1). Defendants have provided no explanation as to why point-of-care testing is more burdensome than taking nasopharyngeal samples and sending them to a laboratory for analysis except that Defendants would have to acquire more point of care test kits. ECF No. 495 (Federal Defendants Objections to Proposed Order) at 1; ECF No. 496 (GEO Objections to Proposed Order) at 3.[1] But

---

[1] Defendant GEO asserts that "the Abbott ID Now test uses a swab for the test" and certain precautions must be taken to avoid exposure. ECF No. 496 at 3. But Defendants have produced

this surmountable obstacle fails to justify using a test that would produce results beyond the period of utility. *See* Declaration of Robert Greifinger (Greifinger Decl.) ¶¶ 4-5, 9-12 (ECF No. 488) ("It is worthless to rely only on laboratory tests that produce very delayed results."). By Defendants' own representations, at the present time, laboratory testing would produce results that are so delayed that they would have limited value in mitigating the risk of ongoing spread for class members who are housed in close proximity without an ability to engage in adequate social distancing. Declaration of Acting Deputy Field Office Director Moises Becerra (Becerra Decl.) ¶ 9 (ECF No. 484-1) (results would be available in "4-7 days"); Bonnar Decl. at n. 3 (results may take "up to several weeks").[2] Plaintiffs-Petitioners have no objection to laboratory PCR testing in principle, but in the absence of rapid laboratory analysis—which is not presently available—point-of-care testing is a necessary tool to respond to the fast-growing emergency at Mesa Verde.

Second, Defendants apparently considered a plan for universal testing of all detainees in May, concluding that it could be done with relatively minimal resources over a short period of time. Exh. C, GEO 134 (May 18, 2020 GEO Memorandum Re: COVID-19 Testing Operational Plan). Defendants have provided no evidence that such a proposal could not be implemented today. All evidence suggests that universal testing was not implemented in May only because of concerns that it would uncover more widespread COVID-19 infection in the facility than

---

no evidence that this is different from the precautions that would need to be taken for nasopharyngeal tests that require laboratory analysis and produce significantly more delayed results. Federal Defendants' expression of concern about the potential for refusals among the detainee population, *see* ECF No. 495 at 1, is undermined by the results thus far. Virtually all class members have consented to be tested (only eight of 121 detainees refused) and class counsel for Plaintiffs-Petitioners have proposed to communicate with skeptical class members which would be expected to result in even higher rates of acceptance. ECF No. 488-9. Moreover, there need not be a requirement that all class members consent to testing in order for testing and quarantining those who test positive to be an effective mechanism to limit further spread.

[2] Yesterday Defendants reported a 14th staff member to have tested positive at Mesa Verde whose test results apparently took 15 days to be analyzed. Exh. A (Aug. 5, 2020 Email of Adrienne Zack to Plaintiffs).

Defendants could reasonably manage. *See, e.g.*, ECF No. 488-12, GEO 682 ("we submitted some concerns about being a test place – in short we have no place to cohort anyone who refuses, is positive, etc.").

Finally, contrary to Defendant GEO's assertions, ECF No. 496 at 4, weekly testing is indeed consistent with guidelines from the Centers for Disease Control and the recommendations of medical experts. CDC, "Overview of Testing for SARS-CoV-2," July 17, 2020, at https://www.cdc.gov/coronavirus/2019-ncov/hcp/testing-overview.html ("Approaches for early intervention of asymptomatic individuals include . . . periodic (e.g., weekly) testing of everyone in the setting"); Greifinger Decl. ¶¶ 7-8 ("Testing . . . should be frequent and not once-off," and "at least weekly" to permit a rapid response).

Despite recent tests there, retesting individuals in Dorms B and C is necessary in light of the long delay between testing and laboratory analysis. Due to the failure to use point of care testing at the outset, despite repeated entreaties, uninfected detainees have been in close contact with COVID-infected individuals for days while test results remained pending and some are likely now infected who were not at the time the tests were taken. *See, e.g.*, Greifinger Decl. ¶ 12. *See also* Exh. D, ICE 1944. Indeed, Defendants have admitted as much by retesting three class members who previously tested negative following exposure to symptomatic detainees awaiting COVID-19 tests. Exh. A, Zack email, Aug. 5, 2020. That same risk of infection is present for all class members and retesting is thus necessary.

2.      Contrary to Defendants' assertions, ECF No. 495 at 1-2, ECF No. 496 at 4, temporarily limiting new intakes is an appropriate remedy in the face of the current exigent circumstances. This is *not* indefinite relief. By definition, relief ordered pursuant to a temporary restraining order will either transform into a preliminary injunction or expire. Further, an injunction may be appropriate despite the voluntary cessation of certain actions where "there

exists some cognizable danger of recurrent violation." *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854–55 (9th Cir. 1995). Here, given that Defendants were adding significant numbers of new class members to the Mesa Verde population just last week – before abruptly reversing course – an order temporarily requiring them to maintain their current practice of not admitting new class members is appropriate.

3. Plaintiffs-Petitioners' proposal to limit the capacity of individual dorms is likewise appropriate and consistent with this Court's prior orders. The "primary relief" the Court ordered previously was that ICE "maintain the status quo of safety" that existed at the time of the preliminary injunction order. ECF No. 357 at 8. The request here is merely that the Court ensure that Defendants' belated actions to remedy a crisis of their own making not further jeopardize the health and safety of class members not already infected with COVID-19.

ICE seeks to forestall a court order that would require them to release individual detainees. However, such action is necessary to ensure reasonable health and safety of individual class members as well as the general public. Defendants themselves recognized as much when they contemplated the release of individuals in the event of an outbreak, or to preemptively plan for the possibility of one. *See, e.g.*, ECF No. 488-13, GEO 637 (June 4, 2020 Assistant Field Office Director Alexander Pham Email to Field Office Director David Jennings) ("the thought is to identify the least egregious cases for release if necessary so as to be able to free up a dorm for positive case cohorts"); Exh. B, ICE 691 (May 21, 2020 Alexander Pham Conference Call Notes) ("Through an internal assessment, MV would likely not be able to accommodate more than 27 to a dorm depending on how stringent the judge decides to get with what he deems necessary to accommodate his understanding of social distancing in all areas and settings"); Exh. E, ICE 1854 (May 27, 2020 Alexander Pham Email) ("I see two options if our hand is forced. Let the lows go and don't take anymore in. . ."). Defendants even engaged in the exercise of identifying

individuals whom they could safely release in the event of an outbreak that required restructuring the dorms. Deposition Transcript of ICE Assistant Field Office Director Alexander Pham ("Pham Dep.") 105:23-106:6, July 29, 2020 (Q: "Do you recall identifying detainees who could be released if there were a plan in place for universal testing?" Alexander Pham: "I don't remember as I sit here the timelines for when those actions occurred, but I do know that at some point we did go through and identify detainees that could potentially be released."). And Defendants have demonstrated throughout this litigation, and as recently as this weekend, that they are capable of releasing individuals in response to a crisis. *See* ECF No. 486 (describing the release of Mr. Saeturn to the hospital emergency room when he tested positive for COVID-19).

Defendants' assertions that this proposal does not allow for flexibility misunderstands the options. Defendants can identify people throughout the facility who may be released, not only in Dorms A and D. It is not true, as Defendants demonstrated with the release of Mr. Saeturn on August 1, that individuals may not be released if they test positive for COVID-19 or are under quarantine. Public health experts agree. *See, e.g.,* ECF No. 5-1, Declaration of Dr. Sandra Hernandez, ¶ 32 ("The current recommendations of health care providers in the state are for individuals to rest and recuperate at home, including if they have been tested and/or exposed to COVID-19, so long as they are not experiencing severe symptoms. . . . Therefore, individuals who have been exposed to COVID-19, including in the detention centers, ought to [be] quarantined where they are not in a congregate living situation and not exposing others to potential infection. This is true for individuals who have exposure to COVID-19 in the detention centers."). Moreover, there are alternatives to detention, including electronic monitoring and other

limitations on outright liberty, that mitigate concerns about flight risk or dangerousness. Federal Defendants regularly and effectively use these options.[3]

    For the foregoing reasons, and those previously elaborated, the Court should grant Plaintiffs-Petitioners' motion for a TRO.

Dated: August 6, 2020

                                              /s/ Emilou MacLean
                                              Emilou MacLean
                                              San Francisco Office of the Public Defender

                                              Attorneys for Petitioners-Plaintiffs

---

[3] Alternatives to detention are effective in preventing criminal activity by immigrants released on bond. For instance, in 2011, fewer than 1% of participants in ICE's intensive supervision program were removed from the program due to arrest by another law enforcement agency. *See Brief of 43 Social Science Researchers and Professors as Amici Curiae in Support of Respondents*, at 36-37, *Jennings v. Rodriguez*, 2016 WL 6276890, (No. 15-1204).