## RENEWED SHORT-FORM BAIL APPLICATION
## ASIF MASOOM QAZI

**Background:**

Mr. Asif Qazi submitted an initial request for bail on May 14, 2020. (Dkts. 171-6). On May 25, 2020, in response to this Court's May 24, 2020 Order Re Domestic Violence (Dkt. 200), Mr. Qazi submitted an update to that request explaining the circumstances of his 2019 arrest for domestic battery. (Dkt. 248-7). His application was denied without prejudice in Bail Order No. 11. *See* Dkt. 204. Mr. Qazi respectfully resubmits his application in light of changed circumstances, namely his increased risk of serious illness or death amidst the crisis outbreak in Mesa Verde, his inability to access adequate medical care from a facility that has "responded to the health crisis in such a cavalier fashion" that they have "put the detainees at serious risk of irreparable harm," *see* Dkt. 500 (Order Granting TRO), and newly-available evidence related to his criminal history and to an evaluation of whether he poses a danger to the community (he does not).

Since that order, Mr. Qazi has obtained a psychological evaluation from Dr. Susan Wilde, PsyD and expert on domestic violence, which states that Mr. Qazi does not fit the profile of a domestic batter. Given that Mr. Qazi has only a single arrest for domestic violence. Mr. Qazi has also obtained confirmation from his probation officer, Jenny Minor, that he has complied with all conditions of probation and will continue to be subject to strict probation conditions upon release. *See* Letter from Jenny Minor ("Minor Ltr."). Regarding Mr. Qazi's June 7, 2019, conviction for possession of handgun ammunition, Mr. Qazi presents additional evidence that the Vallejo police, who made that arrest. have been involved in a pattern of serious misconduct and illegal activity. This evidence corroborates previous statements by Mr. Qazi and his public defender Nick Filloy that his vehicle had been illegally searched.

Finally, the current dangerous conditions at the Mesa Verde Detention Facility pose an especially high risk to Mr. Qazi's health and safety. He is detained in Dorm C, which has Mr. Qazi, who is asthmatic and uses an inhaler, reports feeling more shortness of breath than usual in the last few weeks. He has also been suffering severe stomach pain and gas. He has not received sufficient medical treatment for these symptoms. The density of Dorm C also increased significantly this week when Defendants moved class members in Dorm B—who for days had been commingled with 5 class members who ultimately tested positive for the virus—into Dorm C, increasing his likelihood of exposure to the virus.

In light of these changed circumstances, Mr. Qazi respectfully requests this Court reconsider his bail application.

## 11. Medical condition(s) that put detainee at risk:

In addition to his previously reported asthma, Mr. Qazi reports suffering from a sinus infection. Currently, he is only able to breathe through one nostril. In the past few weeks, he has been experiencing more shortness of breath than usual. He reports using his inhaler every day,

several times per day. In the last two weeks, Mr. Qazi also has begun experiencing severe stomach pains and gas.

Worried that these worsening symptoms may be related to COVID-19, Mr. Qazi submitted a request for medical attention on August 1. On that date, he was taken to the medical area of the facility. There, he was placed in a holding cell with three other individuals to wait his turn to see the nurse practitioner. Mr. Qazi believes they were from a different dorm because he did not recognize them. The cell did not have room for them to stay six feet apart. During the visit, Mr. Qazi was simply prescribed probiotics and returned to his dorm. Mr. Qazi is afraid to request further care because of the possibility for COVID exposure from waiting in the holding cell.

Mr. Qazi is currently detained in Dorm C. Because individuals from Dorm B who tested negative for COVID-19 (but who spent days awaiting test results commingled with people who tested positive) were moved into the dorm, there are currently about 52 people in the dorm. Mr. Qazi does not share a bunk, but the bunks on all sides of him are occupied. To the left of him is a person who was transferred from state prison last week. To the right of him is someone who was brought from Dorm B was exposed to COVID there. Mr. Qazi sleeps just feet away from these individuals and fears they have exposed him to COVID.

**13. Felony or misdemeanor convictions, including date and offense:**

Mr. Qazi has a single domestic violence arrest, in 2019, for domestic battery. No charges were filed in that case. Both Mr. Qazi and his wife Raquel O'Brien Qazi, the alleged victim, maintain that there no violence involved in that incident. Ms. O'Brien Qazi stated that Mr. Qazi has never been violent with her. *See* Dkt. 248-7.

On July 17, 2020, Mr. Qazi underwent a psychological evaluation by Dr. Susan Wilde, Psy.D ("Psych. Eval"). Dr. Wilde has served as a clinical psychologist at San Quentin State Prison, where she was responsible for providing mental health screening, treatment planning risk assessment for adult male inmates.  Dr. Wilde has also served as an expert witness regarding trauma, especially that related to domestic violence, in criminal courts. *See* CV of Dr. Susan Wilde.

Dr. Wilde states that, in her professional opinion, Mr. Qazi "does not present with any of the markers of a domestic batterer. *See* Psych. Eval. at 1.  She notes that "[v]arious studies of male domestic abusers show that they typically present clinical personality patterns," such as narcissism, antisocial behavior or depression. Most "also present with problems of alcohol or drug abuse." *Id*. at 3. Her evaluation found that Mr. Qazi displayed none of these traits, and has no history of drug or alcohol abuse. Her analysis is additional evidence that Mr. Qazi does not present a danger to his wife if released.

Mr. Qazi also submits a letter in which he gives his own explanation of the 2019 arrest. As Ms. O'Brien's declaration also explained, *see* Dkt. 248-7, Mr. Qazi states that the arrest occurred because Ms. O'Brien falsely accused him of hitting her, because he had locked her out of their home. Nevertheless, Mr. Qazi takes responsibility for his actions leading up to the arrest;

Asif Masoom Qazi

as he states: "I'm ashamed not just because I let my emotions get a hold of me and I didn't treat my wife with respect, but also because the police had to come and mediate our argument and misunderstanding. *See* Letter from Asif Qazi.

As detailed in his initial bail application, Mr. Qazi's most recent conviction stems from an arrest in which Vallejo police officers found a handgun hanging in the engine compartment of his vehicle, during a traffic stop and illegal search his public defender characterizes as "illegal." *See* Dkt. 171-6 at 2. Mr. Qazi's public defender also described "coercive" plea tactics used by the District Attorney in Mr. Qazi's case. *Id.* Recent developments show that Mr. Qazi's experience fits a pattern of serious misconduct by the Vallejo Police Department, in which the District Attorney's office is complicit.

On June 5, 2020 Attorney General Javier Becerra announced that he would be conducting an extensive review of the Vallejo Police Department after they were responsible for several high-profile shootings. (Press Release, "Attorney General Becerra Announces Agreement to Review and Reform Vallejo Police Department Policies and Practices" (July 5, 2020), *available at* https://oag.ca.gov/news/press-releases/attorney-general-becerra-announces-agreement-review-and-reform-vallejo-police). On July 28, 2020, investigative reporters revealed that a "secretive clique within the Vallejo Police Department has commemorated fatal shootings with beers, backyard barbecues, and by bending the points of their badges each time they kill in the line of duty." The investigation uncovered that, in 2019, "the tradition became known at the highest levels of Vallejo city government and the district attorney's office." (Geoffrey King, Open Vallejo, "Vallejo police bend badges to mark fatal shootings" (July 28, 2020), *available at* https://openvallejo.org/2020/07/28/vallejo-police-bend-badge-tips-to-mark-fatal-shootings/).

Finally, Mr. Qazi has also obtained a letter from his probation officer, Jenny Minor of the Solano County Probation Department, confirming that he complied with all conditions of probation up until his detention in February 2020. Ms. Minor notes that Mr. Qazi completed his sentence, reported as directed to Probation, and was paying off all fines and fees. She notes her records confirm Mr. Qazi maintained employment with IronWorkers Local Union 378.

**17. Proposed custodian, including address and phone number, and description of proposed release residence:**

Mr. Qazi's proposed custodian and wife, Raquel O'Brien Qazi, is aware of the COVID-19 outbreak at Mesa Verde. Neither she nor their two daughters are medically vulnerable. The family lives in a two-bedroom apartment. Ms. O'Brien Qazi is prepared to vacate her bedroom and share a bedroom with the girls so that Mr. Qazi can have a room in which to quarantine. Ms. O'Brien Qazi understands that Mr. Qazi cannot have contact with family members during the quarantine period, and is prepared to provide him food and transportation to medical appointments.

Should Mr. Qazi at any point not be able to stay in the home, the Kern Welcoming and Extending Solidarity to Immigrants has confirmed with his counsel that they have sufficient funding to pay for a hotel stay during the quarantine period.

Asif Masoom Qazi

Finally, Mr. Qazi will be eligible to enroll as a dependent on Ms. Qazi's Kaiser health insurance plan upon his release. In the interim until those benefits take effect, Dr. Ian Kim, a licensed primary care physician, has committed to providing Mr. Qazi with a plan of care if released. Dr. Kim previously arranged for medical care for another class member who was recently released after testing positive for COVID-19, and he has ample experience in connecting with local pro bono medical providers.

**20. Other information relevant to bail determination:**

There is an outbreak of COVID-19 at Mesa Verde that is uncontrolled and that places the lives and health of detainees at risk. There are currently at least ten detainees who have been confirmed positive for COVID-19 while in ICE custody there. Others have been identified as symptomatic but whose test results have not yet returned. Dkt. 484-1 ¶ 6; TRO Mtn. at 4; Dkt. 482 at 4. In recent weeks, there have also been 16 staff members who are confirmed to have tested positive for COVID-19. This number constitutes more than 10% of all staff at Mesa Verde. It is nonetheless likely a severe underestimate given the lack of any comprehensive testing program in place, or any available testing for GEO staff.

Defendants ICE and GEO have shown a lack of concern for the health and safety of detainees, providing limited information to detainees or their counsel concerning the spread of COVID-19 in the facility and not taking either proactive or reactive steps to ensure the health and safety of those in their custody. Defendants have delayed universal testing of detainees for COVID-19 for months, apparently concerned about what the results of that testing would reveal and what logistical obstacles would be created by an outbreak. Exhs. L, M to MacLean Declaration in Support of Pls. Mtn for TRO, Aug. 4, 2020. Now, in the face of a verified outbreak, Defendants continue to drag their heels—providing tests that will not produce results for "four to seven days", Dkt. 484-1 ¶ 9, and maintaining people in close quarters while the results are pending. Id. at ¶¶ 8-9. Indeed, Mr. Qazi himself was tested for COVID-19 earlier this week, but does not yet have his results or know when he will have them.

Rather than communicating about health risks to vulnerable individuals, they have tried to absolve themselves of responsibility and seek to maintain secret the evidence of deteriorating health conditions of people in custody. Dkt. 477-30 ¶¶ 9-11 (ICE released an elderly and medically vulnerable individual to the emergency room of a hospital after he tested positive for COVID-19, and refused to allow the man to speak with his counsel until he was released from custody); Id. at ¶ 17 (GEO covered the windows of isolation cells and wheeled out a medically vulnerable man infected with COVID-19 in a stretcher); TRO Mtn. at 5 (Defendants refused to provide basic information in response to inquiries from Plaintiffs' counsel concerning reports of COVID-infected medically vulnerable class members). This is inconsistent with the recommendations of medical and public health experts.

It is the recommendation of medical and public health experts that individuals who are exposed to COVID-19 are safer outside of detention facilities than inside so long as they are able to safely quarantine. See, e.g., Dkt. 5-1 ¶ 32.

Asif Masoom Qazi

The current circumstances require a re-evaluation of Mr. Qazi's bail application. His continued detention places not just his life and health in jeopardy, but also places the lives and health of detention center personnel (at high risk of exposure from the outbreak, and increased risk with more detainees infected) and the general public (detrimentally affected by an outbreak of COVID-19 in a congregate facility, particularly given the increasingly uncontrolled spread).

If granted release, Mr. Qazi is prepared to comply with more stringent conditions on release, should the Court order them. Mr. Qazi understands that he has been exposed to COVID-19, and states that he would never want to expose his family and community to that risk.

**21. <u>Attached are</u>**
- Psychological Evaluation by Dr. Susan Wilde, Psy.D
- Dr. Wilde's CV
- Letter from Jenny Minor, Solano County Probation Department
- Letter from Asif Qazi

This application was prepared using information provided by Lisa Knox, Mr. Qazi's immigration attorney. Ms. Knox provided the attached documentation. All information in this application is accurate based on information and belief. Undersigned reviewed the information herein as well as the prior related filings.

Respectfully submitted,

*/s Bree Bernwanger*
Bree Bernwanger

Asif Masoom Qazi

Wilde Psychological Associates
Evaluating Psychologist – Susan M. Wilde, Psy.D.
## CONFIDENTIAL PSYCHOLOGICAL EVALUATION

| Name / DOB / Gender |
| --- |
| *Asif Masoom Qazi* |
| ████████                        *Male* |

| Date Patient First Examined | Date of Most Recent Examination | Frequency of Visits |
| --- | --- | --- |
| *7/17/2020* | *7/17/2020* | *1 visit* |

**REFERRAL QUESTION:**  *This man was referred for psychological evaluation as part of his petition for bond in relation to his immigration status case. The questions posed are whether Mr. Qazi meets the profile of a domestic batterer.*

SUMMARY OF FINDINGS:
   *This young man has presented himself to law enforcement and to ICE when requested; he has married, and dedicates himself to the care of his wife and daughters and his widowed mother. He **does not present with any of the markers of a domestic batterer**; he is without personality disorder, and no history of repeated arrests and convictions that are typical of batterers.*

   *Mr. Qazi's early criminal record appears to be the natural result of nefarious peer influence, and the 'gun charge' appears dubious in light of Mr. Qazi's marriage, his work ethic, and his dedication to taking care of his family. It seems unlikely that he would 're-offend'; much more likely is Mr. Qazi joining the electricians' union and continuing to take care of his family.*

GENERAL OBSERVATIONS:
   *[Note: this gentleman was interviewed and examined in English, by Susan Wilde, Psy.D., by telephone, as Mr. Qazi is currently detained by ICE at the GEO facility, Mesa Verde, in Bakersfield. Records provided by his attorney were reviewed, including:*
   ❖  *DHS submission for case of Asif Qazi;*
   ❖  *Medical records of Asif Qazi from Mesa Verde Detention Center;*
   ❖  *Short form bail application for Mr. Qazi and supporting documents; and*
   ❖  *Declaration of Raquel O'Brien Qazi.]*

METHODOLOGY:
   *Mr. Qazi was evaluated through various psychological clinical methods, including:*

   ♦  *Structured Clinical Interview for DSM-5 (SCID-5) a series of standardized questions about family, history, conditions, symptoms, complaints, etc. The structured interview helps the clinician make diagnoses based on the Diagnostic and Statistical Manual of Mental Health Disorders, 5th Edition (DSM-5).*

   ♦  *Mental Status Exam- a review of appearance, behavior/psychomotor activity, attitude toward examiner, affect and mood, speech and thought, perceptual disturbances, orientation and consciousness, memory and intelligence, reliability, judgment, and insight.*

VALIDITY and MALINGERING RULE OUT:
   *There are two kinds of misreporting experience: 'faking bad', in which the narrator reports excessive or invented symptoms or suffering in order to achieve a secondary gain; and 'faking good', in which the narrator masks or denies the presence or intensity or presence of symptoms or suffering.*

   *Mr. Qazi displayed no tendency toward embellishment or defensiveness. If anything, he is trying to present himself as less symptomatic than he actually might be. Mr. Qazi is not malingering.*

EVALUATION:
   *Mr. Qazi is a 31-year-old, short statured, well nourished, Bengladeshi immigrant man, who by self-report is yyy cm tall (five feet ten inches), and weighs 170 pounds.*
   *The results of Mr. Qazi's structured clinical interview indicate the presence of Major Depression and Post Traumatic Stress Disorder (PTSD).*

PRESENT ILLNESS:
   *Mr. Qazi currently endorses the symptoms for **Panic Disorder**, in that he has experienced panic attacks and the most recent one occurred only a few days before the interview. Mr. Qazi also endorses the symptoms for **Generalized Anxiety Disorder**:  significant daily worry that is difficult to control, that causes sleep disturbance, restlessness, irritability, and distractedness*

PAST HISTORY OF MENTAL DISORDER:
*Mr. Qazi has no history of psychiatric hospitalizations or of outpatient mental health treatment.*

FAMILY, SOCIAL, AND ENVIRONMENTAL HISTORY:

*Family & Marriage: Mr. Qazi is the younger of two siblings born to Bengali parents, all of whom migrated to the U.S. when Mr. Qazi was a young child. His father is now deceased, and his mother lives alone in Berkeley: she is an LPR. His oldest brother (33) lives in New York. Mr. Qaz'si biological daughter Desirai (9), lives in shared custody between him and her mother; he has a step-daughter Soleil (8), the daughter of his wife Raquel (25). Their household contains Mr. Qazi and his wife and step-daughter, and part of the time, also his daughter.*
*Mr. Qazi is the primary financial support forhis wife and their two daughters, and also provides significant financial support to his widowed mother*

*Trauma: Mr. Qazi denies any exposure to traumatic experience.*

*Education: Mr. Qazi completed high school in the U.S. and also two years of college.*

*Work: Mr. Qazi had been working as a union iron-worker at the time of his detention by ICE. He was preparing to take exams with the electrician's union.*

*Medical Problems and Treatment: Mr. Qazi has suffered with asthma for some time. He also recalls having once a positive TB test.*

*Religious affiliation: Mr. Qazi is a practicing Muslim who is involved in his mosque and the social support systems there.*

*Alcohol and Drug Abuse: Mr. Qazi denies any history of personal problems with drugs or alcohol.*

*Criminal Justice: Mr. Qazi has a criminal record:*

| | |
|---|---|
| *January 2008* | *(age 19) Convicted of robbery (PC 211). Mr. Qazi had been spending time with nefarious other male youth, who were mugging people for their cell phones. He regrets that youthful lack of judgment (all 4 other counts dismissed)* |
| *Spring 2010* | *(age 21) Pleads guilty to accessory after the fact (all 4 other counts dismissed)* |
| *November 2016* | *Police discovered a loaded, unregistered handgun hidden in the hood of Mr. Qazi's car. Mr. Qazi denies any knowledge of that gun. His public defender asserted that the location of the firearm was the result of an illegal search, and that there was no evidence linking Mf. Qazi to the gun.* |
| *September 2019* | *Police arrested Mr. Qazi after a disagreement with his wife who initially reported physical violence which then she immediately recanted. No charges were filed due to insufficient evidence.* |

*Migration: Mr. Qazi migrated from Bangladesh at age 9 with his family, in 1998. He has resided in California since that time.*

MENTAL STATUS EXAMINATION:
A) Attitude and Behavior:
*Mr. Qazi was conscious, alert, and oriented x4. He was attentive, and his concentration was good – he could accurately spell backwards a common five-letter English word, and his performance on serial sevens was within normal limits. Mr. Qazi's immediate recall was mildly impaired – he could recall two of three words at one minute -- and his long-term memory was somewhat sluggish.*
*Mr. Qazi's stream of thought was clear, coherent, and preoccupied with themes of worry about his family; his speech was articulate and normally paced.*
*Mr. Qazi's judgment, insight and impulse control were good. His movement and gaze were normal.*
*Mr. Qazi's mood was dysphoric and anxious. He presented as friendly, shy, and optimistic. Mr. Qazi was polite, pleasant, open, cooperative, and engaged with the examiner.*

B) Intellectual Functioning/Sensorium:
*No IQ testing was conducted for this evaluation. Mr. Qazi's sensorium and reality testing were intact.*

C) Affective Status:

   Mr. Qazi denies any history of suicidal ideation. He endorses the symptoms for **Panic Disorder**, in that he has experienced panic attacks and the most recent one occurred only a few days before the interview. Mr. Qazi also endorses the symptoms for **Generalized Anxiety Disorder**: *significant daily worry that is difficult to control, that causes sleep disturbance, restlessness, irritability, and distractedness.*

D) Reality Contact:

   *Mr. Qazi did not display any observable signs of internal preoccupation, response to internal stimuli, confusion, lability, grossly disorganized behavior, loose associations, hyperbole, or elliptical or tangential thought/speech responses. He is not suffering from any thought disorder or schizophrenia spectrum disorder.*

SOCIAL FUNCTION:

   *Mr. Qazi is a social man who is dedicated to his family, and also enjoys the camaraderie of his fellow union workers.*

CURRENT MEDICATIONS:

   *Mr. Qazi denies ever taking any prescription psychiatric medication.*

DIAGNOSIS:  (DSM-5 and ICD-10)

| | | |
|---|---|---|
| *Mental Disorders* | *F43.10* | *Panic Disorder* |
| | *F33.2* | *Generalized Anxiety Disorder* |
| *Medical Disorders* | *J45.991* | *Asthma* |
| | *J30.2* | *Seasonal pollen allergies* |
| *Psychosocial Stressors* | *X63.5* | *Separation from wife and children* |
| | *Z65.3* | *Stressors related to immigration detention and status* |
| *Global Functioning* | *GAF = 52* | *highest GAF past year = 60* |

RECOMMENDATIONS & PROGNOSIS:

   *Various studies of male domestic abusers typically present clinical personality , often beginning in childhood. One study found that 90% of domestic abusers presented clinical personality patterns, especially the narcissistic type (25%), negativist (24%), antisocial (19%), and depressive (19%).[i] The majority also present with problems of alcohol or drug abuse.[ii]*

   *Mr. Qazi does not present with any of these markers of a domestic batterer. He is without personality disorder and does not present with antisocial or pathological traits. He reports no history of drug or alcohol abuse, and does not have a history of substance-related arrests or other markers of drug/alcohol dependence.*

 *It is strongly recommended that Mr. Qazi be released from detention because of the severe risk to his health and life – exposure to COVID in jails and prisons in California is extremely elevated. This elevated health risk is a contributing factor to his generalized anxiety disorder and panic attack.*

   *It is also recommended that Mr. Qazi be granted a bond to return to his family. . After reuniting with his family, it is likely that his panic and anxiety symptoms will reduce significantly.*

---

| | |
|---|---|
| Name of reporting psychologist/evaluator<br>Susan M. Wilde, Psy.D., PSY19673 | Title<br>Licensed Clinical Psychologist |
| Postal Address<br>▮▮▮▮▮▮▮▮▮<br>Berkeley, CA  94704 | Phone<br>▮▮▮▮▮▮▮ |
| Signature<br>*Susan Wilde, Psy. D.* | Date<br>August 6, 2020 |

---

[i] Gondolf EW. MCMI-III results for batterer program participants in four cities: Less "pathological" than expected J. Fam. Violence 1999; 14: 1–17.

[ii] Grann M, Wedin I. Risk factors for recidivism among spousal assault and spousal homicide. Psychology, Crime and Law 2002; 8: 5-23.

**SUSAN M. WILDE, Psy.D., PSY 19673**
Licensed Clinical Psychologist

Berkeley, CA  94704

last updated 9-25-2019

cell

email hopeandtaste@gmail.com

## Formal Education

2002    **Psy.D. multi-cultural clinical psychology**, John F. Kennedy University.
Dissertation:  *From Witness to Advocate: A community empowerment course derived from a multi-cultural grounded theory of therapeutic interventions in observable child maltreatment.*

1980    **B.S. Chemical Engineering**, University of Colorado

## Professional License

2004-present    **PSY 19673**, Licensed Clinical Psychologist in California

## Forensic Expertise and Testimony

June 2004-present
Licensed Private Practice PSY 19673      Evaluations and Testimony for SSI, Immigration, Family Court, Hague, and Criminal Courts
Expertise and testimony for court cases related to psychiatric disability and to trauma, especially including domestic violence, family trauma, sexual trauma, & exposure to human rights violations including war, torture, massacre, human trafficking, immigration (asylum, U Visa, waiver, & cancellation cases).

## Formal Clinical Experience

June 2004-present
Licensed Private Practice PSY 19673      East Bay Area
Psychologist in private practice offering bilingual psychotherapy, assessment and consultation services with specialization in family therapy, trauma recovery, personal growth, & social justice with transpersonal/Jungian, and cultural emphasis. Clients include children, adolescents, adults, couples, families, and seniors. Clinical expertise in includes trauma, domestic violence, chemical dependency, acculturation, psychiatric disability, prison psychology & disorders of self.
  Expertise and testimony for court cases related to psychiatric disability and to trauma, especially including domestic violence, family trauma, sexual trauma, criminal defense, and exposure to human rights violations including war, torture, massacre, human trafficking, immigration (asylum, U Visa, and cancellation cases), and psychiatric disability.

Oct 2011-Nov 2012
Quality Manager Richmond CHAA, & Clinical Supervisor – Clinical & Wraparound Teams      Community Health for Asian Americans, Richmond CA
Clinical supervision and administrative management of un-licensed Wraparound Facilitators and Family Partners in culturally adapted High Fidelity Wraparound service team for highly distressed marginalized families – 70% Asian American, 30% African American and Latino clients – and individual therapists providing mental health services to children and adolescents. Coordinate care with clinical therapy team, outside agencies such as juvenile probation, homeless services, alcohol and drug treatment, school districts, children's health and psychiatry services, police, and hospitals.

July 2006 – Aug 2008
Staff Clinical Psychologist, Correctional Institution      San Quentin State Prison, San Quentin CA
Psychologist organizing and tracking as well as providing mental health and developmental disability screening of incoming newly committed and parole violating adult male inmates, referral and evaluation for placement in level of mental health care, suicide risk assessments, routine case management. Interface with medical providers, custody staff, psychiatry, and mental health professionals to provide adequate screening, treatment planning, program development for state-wide pilot project for day-of-entry health care screenings across disciplines; emergency response, and legal adjudication of mental health risk factors related to legal proceedings for inmates. Coordinate SQ mental health department responsibilities for Clark et al lawsuit settlement, including teaching in service training for staff about developmental disability program, tracking screening results on all current and incoming inmates; co-respond to semi-annual plaintiff conferences.

March 2006– July 2006
Clinical Supervisor and School and Latino Community Counselor      New Connections, Concord, CA
Psychologist providing clinical supervision to MFT interns and lay staff in multiple drug treatment programs in agency, including dually and trebly diagnosable clients with co-existent mental illness diagnoses and/or HIV sero-conversion: in alternative school providing counseling & assessment mental health, and drug rehab services for marginalized expelled middle- and high-school students.

May 2001-June 2004
Psychological Assistant  PSB 28597      Center for Culture and Diversity, El Cerrito CA
Psychological assistant in private practice offering bilingual psychotherapy and assessment services with special emphasis on family therapy, trauma recovery, personal growth, and social justice with transpersonal and cultural emphasis. Adults, couples, families, children, adolescents. Supervised by Yvette Flores, Ph. D., PSY 9495.

Sept 2001-March 2006
Mental Health Clinician, previously pre- and post-doctoral intern      Berkeley Mental Health, Berkeley CA [Clinic and Mobile Crisis Unit]
Clinician providing emergency and brief therapy and assessment in clinic and via mobile crisis unit, field outreach to homeless individuals with mental illness, in-clinic officer-of-the-day shift, bilingual individual therapy for diverse adult clients with severe persistent mental illness and/or dual diagnosis. Crisis intervention, provide evaluations for WIC 5150/5585 health and welfare evaluations (involuntary psychiatric hospitalization), coordination with psychiatry, police, APS and CPS reporting, and psychiatric emergencies in the community. Referral to community services for substance treatment, medical, and legal services.

Aug 2001-July 2002
Supervised Therapist in School-based Programs in WCCUSD      Y Team, Richmond CA
Supervised therapy (pre-licensure) in Spanish and English providing individual counseling for distressed low-income children in elementary school program. Sand tray, play and verbal psychotherapy for wide range of psychiatric diagnoses.

Aug 2000-Mar 2001
Pre-doctoral Psychologist  Intern      Family Institute of Pinole Clinic, Pinole CA
Psychologist intern providing short- and long-term family, individual (age 6-60) and couples psychotherapy for distressed clients in a community clinic setting, using psychodynamic, systems and narrative therapy models. Treatment of mood, anxiety, psychotic, substance, sleep, and childhood disorders, adjustment to HIV and progressive disabling medical conditions, with impairment from mild to severe. 60% mandated clients. Weekly live reflecting teams. Court testimony as expert witness on mandated cases. Diverse clients including African American, Latino and Caucasian clients. 25% of therapy cases monolingual Spanish.

Sept 1999-June 2000
Clinical Practicum Trainee in School Based Program in WCCUSD      Y-Team, Richmond CA
Clinical trainee providing short- and long-term individual and family psychotherapy for distressed low-income young adolescent clients (12-16) in a school-based treatment program.  Diverse clients including Latino, southeast Asian refugee immigrant (Iu-Mienh), and African American clients. Mild to high impairment with PTSD, mood and anxiety and substance disorders. Some individual and family therapy conducted monolingually in Spanish.

Sept 1998-June 1999
Clinical Practicum Trainee      East Bay Community Recovery Project (EBCRP), Oakland CA
Clinical trainee co-leading groups, providing short- and long-term individual psychotherapy for substance abuse treatment with dually diagnosed and criminal justice referral adults, in a community milieu day treatment program.  Diverse population, predominantly African American. High to extreme impairment: psychotic, mood, anxiety and substance disorders. Group work with severely mentally ill clients included social skill building, emotional awareness, empowerment, & self care.

*Susan Wilde*   (510) 978-0221   2

| Oct 1996-<br>June 1997 | Ethnographic Practicum Trainee | Japanese American Services of the East Bay (JASEB), Berkeley CA |
|---|---|---|

Ethnographic immersion placement: agency providing language appropriate and culturally sensitive social services to low-income ethnic Japanese seniors.

## Clinical Supervision Qualification and History, Management

**July 2017 – Present**  Clinical Director of Fiddleheads Nature Therapy Camp, in Seeds of Awareness /: Provide individual and group supervision to trainees and interns who provided mindfulness interventions in natural locations to children, both in 2-week summer camp sessions and in after-school programs, throughout the Bay Area. **April 2019: Clinical Director Fiddleheads**

**June 2007 –**  Maintain supervision qualifications to meet requirements for CAPPIC, California Board of Behavioral Science, and Board of Psychology to clinically supervise MFTi, LCSWi and psychology interns and practicum trainees.  External supervisor to psychology trainees and MFTis from various agencies.

**Oct 2011 – Nov 2013**  (CHAA) Clinical supervision and administrative management of un-licensed Wraparound Facilitators and Family Partners in culturally adapted High Fidelity Wraparound service team for highly distressed marginalized families – 70% Asian American, 30% African American and Latino clients – and individual therapists providing mental health services to children and adolescents.

**July 2006- August 2008**  Train and supervise unlicensed psychologists working in Reception Center at San Quentin State Prison.  Challenging environment in which judgment errors put supervisee and other staff at grave risk.  Supervised critical interviews of monolingual Spanish speaking inmates by staff.

**June 2006- January 2008**  Supervised MFTis and lay clinicians in harm reduction/addiction recovery outpatient treatment programs addressing dually and trebly diagnosed adults and adolescents.  Supervised psychologist assistant performing forensic assessments in private practice setting.  Supervised program development for psychologists (licensed and unlicensed) performing brief intake assessments for mental health and developmental disability, and triage in prison reception center.

## Assessment & Testing Experience

**June 2001–**  Clinical, Disability, and Forensic Assessments   Berkeley Mental Health, & Center for Culture and Diversity
Clinical batteries for diagnostic and treatment planning, testing and evaluation for **disability supplemental reports for SSI and SSDI** applicants; family, adolescent and child assessment and evaluation relative to child welfare, custody, social justice, immigration and forcible migration challenges, domestic and family violence; criminal forensic assessment for psychopathy and criminality; assessment of cognitive impairments, mental retardation, and developmental disorders in adults and adolescents; child welfare assessment for conflicted custody cases; and needs for services and education.  Assessment of trauma and exposure to violence **specialization**.  340 assorted evaluations conducted in English and/or Spanish.

**Sept 1999- Mar 2001**  Assessments   various clinical training placements
Batteries to assess a variety of clinical conditions amongst patients treated in community mental health clinics. 2-3 per academic year.

**Oct 1998- June 1999**  Assessment Teaching Assistant   JFK University, Orinda CA
Teaching test administration, supervising, review, feedback and grading testing assignments, Graded WAIS-III; WMS-III; Bender-Gestalt; Trailmaking; MMPI-2; MCMI-III; TAT; Rorschach; DAP-HTP; RISB.

## Professional Expert Witness Experience

**Oct 2002- present**  Expert Testimony via declaration/deposition, and via testimony as Expert Witness   Federal Courts and Superior Courts of CA
Written and court testimony regarding lawsuits related to domestic violence, trauma, child development, family function, immigration (revocation response, U-visa & asylum applications), child custody, psychiatric disability benefits application hearings, criminal defense, 5150 interventions in the community, formal criteria for placement in level of care, CPS interventions, and assistance to court-appointed special masters on behalf of minor children and wards of the court.

## Professional Development

**Feb 2000–**  Jung and Shamanism  Seminar   San Francisco CA
Bi-monthly therapist consultation group exploring shamanism in relation to analytic Jungian psychology and to self.  Facilitated by San Francisco Jungian analyst Carol McRae, Ph.D.

## Research Experience

**2010 -**  Research for survivors of torture, intimate partner violence, and family violence
Acquisition of data from asylum applicants to research hypotheses on psychological impacts of various kinds of extreme violence. Also research on femicide in varying Latin-American countries in contrast to the U.S.

**Oct-Nov 2004**  Latina Women's Anxiety Disorders Group   Berkeley Mental Health, Berkeley CA
With Rosa Granadillo, Ph.D., co-designed and conducted anxiety disorders group therapy for Latina women in Spanish combining art therapy, cognitive therapy, and guided relaxation.  Pre- and post-measures, qualitative and art data.  Article and clinician's manual in progress

**Feb 1998 -**  From Witness To Advocate
Ongoing data collection and analysis for multicultural grounded theory study of witness interventions in observable child maltreatment situations.

**Oct-Dec 1998**  Research Assistant   JFK University, Orinda, CA
Provided research support to Dan Hocoy, Ph.D.; methodology for training clinicians for multicultural competency.  Library research and compilation of literature.

## Teaching Experience

**Mar 2013- Fall 2018**  Adjunct Faculty   California Institute of Integral Studies, San Francisco CA
Teach core courses and specialization courses in the Masters of Counseling Psychology Program:, Expressive Arts specialization: Human Development and the Family; Family Theory and Practice; and Couples Counseling.

**Jan 2007- July 2008**  CLARK* Psychologist   San Quentin State Prison, San Quentin CA
Taught weekly annually required refresher course for correctional officers and staff about mental retardation (intellectual disability), cognitive disabilities, and pervasive developmental disabilities: discourage harassment, encourage referrals for evaluation, explain placement protocols.  Also responsible for tracking CLARK testing results of all resident and incoming inmates to meet federal class action requirements. * CLARK Vs. CA is a federal class action lawsuit whose settlement mandates screening, protection, and care of cognitively impaired inmates.

| June 2002-<br>June 2010 | FINISH!  (Research Support Seminar) | Center for Culture and Diversity |
|---|---|---|

FINISH!  (Research Support Seminar) — Center for Culture and Diversity
June 2002- June 2010 — Taught jointly with Yvette Flores, Ph.D., a seminar to assist and support doctoral students in the social and cultural sciences to make progress and completion of their dissertation projects.  Support, structure, and assistance for all stages of the dissertation for qualitative, quantitative, and evaluation methodologies. Summer session 4 sessions, academic year 8 sessions.

Assessment Teaching Assistant — JFK University, Orinda CA
Sept 1998- June 1999 — Taught test administration, supervising, review, feedback and grading testing assignments, Graded WAIS-III; WMS-III; Bender-Gestalt; Trailmaking; MMPI-2; MCMI-III; TAT; Rorschach; DAP-HTP; RISB.

Workshop Instructor and Instructor Trainer & Supervisor — Various "Model Mugging" Organizations in U.S.
Feb 1988- Aug 1998 — Leader of intensive workshops teaching self defense, violence prevention and trauma recovery, and personal empowerment, generically known as "model mugging," primarily to women but also to men and children. Course content includes state-dependent learning using the body, spirit, intellect, and emotional self. Combines psychodynamic, cognitive, behavioral, somatic, and recovery theories to support widening of beliefs and correcting of inaccurate and limiting cognitive-emotional sequences, typical of PTSD.  Intervention with psychological crises. Experience included intensive long term work with several clients diagnosed with DID, including numerous interventions and therapeutic referral support. Trained ~800 women, 100 men, 50 teens and trained and supervised 35 instructors.

**Business, Organizational and Management Work Experience**

WildeLife Consulting (Owner) — Oakland & Berkeley CA
Mar 1995- May 2004 — Web design, online database management, graphic arts, multimedia and web-based ordering systems. Manage 3-4 projects simultaneously, frequently supervise 2 employees.

New World Syndicate (Owner) — Oakland & Berkeley CA
Nov 1993- Apr 1997 — Provided text and cartoon features to the alternative press in the U.S., Canada, and the Pacific rim, most notably Rob Brezsny's Real Astrology column.  Managed marketing, contracts, distribution of content and billing.  Clients numbered 72 publications world-wide.

Worth Defending (Owner) — Berkeley, Colo. Springs, Helena (MT), Nashville (TN)
Apr 1992 – Oct 2010 — Founder and owner of Worth Defending which has offered self defense and empowerment courses in four states.  Arrangements made to provide instruction for intensive self defense programs for women and hate crime defense courses for gay men.  Supervised instruction and managed course planning for intensive courses in remote locations, employed contract employees and recruited and trained new instructors.  www.wildelife.com/worth/

On Your Side, Inc. (Founder, ED) — San Francisco CA
Oct 1990- Nov 1993 — Founder, Board Member, and Executive Director of 501(C)3 non-profit California corporation which provided grants to low-income women and girls so that they may enroll in self defense courses.  Priority for grants decided on the basis of financial, forensic, and emotional need. In 1991 executive director of international instructor training of 8 trainees with 12 employees.

KidPower (Co-Founder and Affiliate) — Santa Cruz CA
Oct 1988- — One of five founders who created an international children's personal safety program. KidPower was launched in 1990, has been established in over 40 cities world wide and has taught 60,000 children.  Currently serve as KidPower consultant and affiliate.

Nuclear Engineer (Safety Analysis) — Various Utility Companies in the U.S.
Sept 1980- Feb 1994 — Performed safety-related engineering oversight functions for Diablo Canyon, River Bend, Browns Ferry, Watts Bar and Sequoyah nuclear plants. Duties included Quality Assurance, regulatory commitments database control, industry watch for problematic equipment and human error to prevent repeat failure events, and authoring "screenplay" for and managing utility eployees' enactment of drill scenario of simulated nuclear accident for regulatory requirement of demonstration of emergency preparedness.  Multidisciplinary interface on a variety of engineering problems requiring excellent written and oral communication skills, analytic and holistic analysis, data analysis, and industry coordination after major world nuclear incidents (Chernobyl, TMI)

**Presentations**

Oct 2015 — "The Use of Expert Psychological Witnesses in Immigration Court Proceedings." National Immigration Project Conference, Oakland California.

Sept 2009 — "Working with Latina Women Suffering with Anxiety: A Shamanic, Somatic, Art Therapy Approach." Co-presenter Rosa Granadillo-Schwentker, Ph.D.  Presented at the Latino Behavioral Health Institute Conference, Los Angeles.

Nov 1998 — "From Witness to Advocate: Skills for immediate intervention in observed child maltreatment."  Presented at the Twelfth National Conference on Child Abuse and Neglect, Cincinnati.

Aug 1987 — "Methodology for the creation, testing, and execution of emergency preparedness exercise scenarios."  Presented at the International Nuclear Society annual conference, Chicago.

**Special Awards**

Mar 1992 — Frederick W. Mielke Award , Pacific Gas & Electric Co.
Awarded to 5 employees annually for extraordinary community service. Granted for work with women's empowerment & self defense; On Your Side.

**Computer Skills**

Macintosh, PC/Windows, and Unix: word processing, spreadsheet, desktop publishing, database, project management, graphic design, multi-media production. Web design, CGI scripting (Perl, PHP), JavaScript, CSS, VisualBasic, DHTML, online database IM, streaming multi-media.  MS Office fluency.

**Languages**

English and Spanish (fluency); German, Japanese, Ki-Swahili, Arabic, Gaelic (Scots) and Irish, Danish (conversational). Mam, Punjabi (beginning).

**Affiliations**

American Psychological Association (APA), member. [1997 - present]
Domestic Violence Experts Association of CA (DVEA), member. [2006 – present]
American Civil Liberties Union
Black Lives Matter

**References**

| Yvette Flores, Ph.D., colleague<br>& previous Clinical Supervisor<br>drayflores@gmail.com<br>(510) 229-8284 | Maurice Lyons, Ph.D. (retired)<br>San Quentin Sr. Psychologist<br>(415) 332-0370 | Bryan Port, Psy.D.<br>Psychologist, private practice<br>Berkeley and Walnut Creek<br>(510) 849-2739 | Carol McRae, Ph.D.<br>Jungian Analyst<br>(415) 550-1085 |
|---|---|---|---|



# COUNTY OF SOLANO
## PROBATION DEPARTMENT

**Christopher Hansen**
Chief Probation Officer

August 6, 2020

Asif Qazi
118 Alabama Street
Vallejo, CA 94590

Dear Mr. Qazi,

Per your request, I am sending you this letter via your attorney.

On 06/07/19, you were convicted of a 30315 PC (felony) by the Solano County Superior Court in Case No. VCR228172. You were sentenced to three years formal probation with general terms and conditions. Prior to being detained in February 2020, you were in compliance with probation. You completed your jail sentence, reported to Probation as directed, and made a payment towards your fines and fees. In addition, you attended our employment program and were able maintain employment with the Ironworkers Union Local 378.

Should you have any additional questions, please feel free to contact me.

Sincerely,

Jenny Minor,
Deputy Probation Officer
Solano County Probation
321 Tuolumne Street
Vallejo, CA 94590
Phone: 707-553-5785
Fax: 707-553-5021
Email: JWMinor@solanocounty.com

To the Honorable Judge Vince Chhabria,

My name is Asif Qazi. I'm from Bangladesh, but I've lived in Berkeley since I was 6 years old. I know you already reviewed my bail application and denied it, and I wanted to write you a letter to explain my criminal history.

As you know, I have priors. My most recent arrest was for domestic violence. But before that, I had been out of trouble for a while. I met my wife around 5 years ago, and we began a relationship around 3 years ago, and she really made an impact on me. Her being in my life made me want to change, and I really believe I did.

On May 5, 2019, I made a mistake, and I think this mistake is why I think you denied my bail application. I want to explain what happened—not to justify what happened, but to give context to where I was at then and where I'm at now. That day, my wife and I had gone to Starbucks in the morning, and on our way back, we got into an argument. It started by us saying mean things about our parents (her about my mother, me about her father), and then we started saying mean and hurtful things about each other. I was driving, and she asked me to let her out at an intersection. I did, without realizing that she had left her purse and house keys in the car.

She came back, and she needed to get inside the house to put on her uniform and go to work. But, I didn't let her in. I was being emotional, and immature, and I'm deeply ashamed for that. I should have just let her in to get her uniform, given ourselves some space, and then returned to the problem later. But I kept her locked out, and she called the police.

My wife told the police that things became physical, but the truth is that we have never physically fought. She later told me that the reason she told the police that things had gotten physical was so that she could enter the house and get her stuff. I can understand why she did that, especially because at that time, I wasn't in the most reasonable mindset either.

I'm ashamed not just because I let my emotions get a hold of me and I didn't treat my wife with respect, but also because the police had to come and mediate our argument and misunderstanding. I'm also ashamed because even though it was just a statement in the police report and my wife didn't mean it, there's a document out there that says that I had hit my wife. The idea of doing something like that really hurts me.

My dad died two years ago, and ever since, I've had a lot of anxiety. I'm telling you this only because it's something that I'm working on—recognizing and controlling my feelings, and knowing when I'm letting my emotions overcome me and how to stay grounded to reality and what's important. If I had better understanding and control back then, I wonder whether I would have let the argument with my wife spiral out of control like that.

As I said, my wife and kids are really important to me, and I need to be with them. My wife and I have two daughters: Dezirai, who is 9 years old and Soleil, who is 8. My family needs me to be their father and husband, and to work. My mother lives in Berkeley, and she started depending on me a lot after my dad died. My only other sibling is in New York and in school. My mother

doesn't have a car, and before I got locked up I would bring her groceries, take her to her doctors 'appointments, and help her run the little café she and my dad used to run. She's been really lonely, and really worried, about me being here.

If you give me a chance and grant me release, I think I could find a job pretty easily, too. I'm a union iron worker and before I got detained by ICE, I had two interviews scheduled to be in the electrician's union which is better paying. These are pretty coveted jobs, and they are stable and would really change things for my family.

I also just want to thank you for what you've done for the many people who benefited from the Zepeda Rivas class action. While I've been here I've been trying to stay connected to the other guys detained with me, because we're scared and I think we need each other's encouragement and support to stay strong. Through that, I've become close and care for everyone in here with me, and every time you've granted someone a release, it's been really encouraging to see. I've kept in touch with a few of the guys you ordered released, and they're very much at peace and doing well with their freedom. I hope to join them and my family soon.

Thank you for your time and consideration.

Sincerely,

Asif Qazi