## SUPPLEMENT IN SUPPORT OF SHORT-FORM BAIL APPLICATION OF HAMILTON GARCIA MARTINEZ

On July 1, 2020, the Court instructed class counsel to "submit further information, to which defendants may respond within 3 business days, regarding the facts underlying [Mr. Garcia's] arson conviction and any available arrest reports or court records." Counsel has obtained the police report underlying Mr. Garcia's arson charge, to which he pled guilty on the advice of his counsel at the time. As the police report had previously been in the possession of Mr. Garcia's attorney, markings on the report have been redacted as much as possible.

Police reports are inherently unreliable documents. The Federal Rules of Evidence generally classify them as inadmissible hearsay in criminal trials. While this is a civil case, the reasoning for excluding police reports remains relevant.[1] This particular police report relies primarily on single and double hearsay regarding Mr. Garcia's alleged conduct. Much of the hearsay allegations come from statements apparently made by Mr. Adalid Rodriguez, who, by virtue of his presence near the same abandoned buildings as Mr. Garcia, likely also would have been a suspect with self-interest in reporting Mr. Garcia.[2] The report also points out that Mr. Garcia knew the location of fires that had occurred in the area previously; however, Mr. Garcia maintains that was not involved in any of the other fires mentioned in the police report and appears never to have been charged with causing any additional fires. His conviction relates only to the June 12, 2019 fire described in the report, for which he was arrested. Mr. Garcia was unhoused and had been sleeping in and around the buildings at issue for some time, so he had seen the effect of the fires.

Mr. Garcia confirmed that he does not know who started the fire, as stated in his bail application. He admits to having been in the building before when looking for a place to sleep, but he was not there at the time of the fire, nor does the police report indicate that he was in the unit where the fire occurred at the time of the fire. Mr. Garcia stated he was at 9043 Ramsgate Avenue, while the fire occurred at 9033 Ramsgate Avenue. 9043 Ramsgate Avenue is 2 buildings south from 9033 Ramsgate, with one building between them. As stated in the report, many of these units shared a driveway. See Police Report at 4. The police report does not specify which unit he came out of, stating only that he exited the property (which contained at least 8 units on one lot). See Police Report at 4 for officers' statement ("Garcia exited the property"), at 4 for witness Jerome Robinson's statement ("he observed the two subjects walk to the rear of 9037, and 9033 Ramsgate Avenue."), at 6 for witness Adan Cabrera's statement ("the second suspect exited the property"). At the time of his arrest, Mr. Garia states, as described in his bail application, that he

---

[1] In *U.S v. Orozco*, the 9th Circuit Court stated, "The legislative history indicates that "(ostensibly), the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases. 590 F.2d 789 (9th Cir. 1979) (citing S.Rep. No. 1277, 93d Cong., 2d Sess., Reprinted in (1974) U.S.Code Cong. & Admin.News 7051, 7064).

[2] Indeed, Adalid Rodriguez made additional statements in the police report that ultimately were not true, such as warning that Mr. Garcia possessed a firearm when he did not. See Police Report at 4.

had been sleeping in a neighboring building and using methamphetamine. Mr. Garcia states that he did not make the comments he was accused of making by Mr. Adalid Rodriguez in his statements to the police. Mr. Garcia states he had no reason to make statements like that or to want to burn down a building in an area where he was seeking shelter.

Even if Mr. Hamilton had started the fire in 2019, he poses no current danger to the community. Unlike at the time of his arrest, Mr. Garcia now has confronted and sought treatment for his dependence on meth. He has admitted his drug problem to his family and for the first time accepted their support. He will no longer be unhoused and no longer uses meth. Mr. Garcia is committed to addressing his addiction and is taking active steps to do so. Mr. Garcia recognizes that his history of using methamphetamine Mr. Garcia began using methamphetamine when he was 16 or 17 years old. He has now been sober for more than 13 months and is actively seeking an in-patient rehabilitation program to attend if he is released. He has submitted an application to Los Angeles Mission's Recovery Program for Men. Class counsel has confirmed with the program that they are currently accepting new students and have a process in place to test new members and quarantine them while they wait for results. The Mission's Recovery Program is a 12-month residential, live-in program. The goal of the program is to help people gain tools to maintain sobriety, which includes helping them find housing and employment. If he cannot immediately enter rehabilitation program, he has the full support of his family, who would welcome him into their home.

Finally, since Mr. Garcia filed his initial bail application, conditions in Mesa Verde have changed dramatically. Mr. Garcia is detained in Dorm D, where potentially-infected class members await the results of laboratory testing, continuously exposed to one another. As the Court is well aware, Mesa Verde is gripped by an outbreak of COVID-19. At this time, 16 staff members and at least 9 class members detained have tested positive. *See* Dkt. 484-1 ¶ 6; TRO Mtn. at 4; Dkt. 482 at 4; Dkt. 474 at 1. As detailed in his bail application, Mr. Garcia suffers from Hepatitis C and has a history of asthma, which places him at heightened risk of serious illness if he is infected. *See* Dkt. 405-3 (bail application).

All information in this application is accurate based on information and belief. This supplement was prepared by Joy Navarro, summer law clerk at the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and reviewed by undersigned class counsel.

Respectfully submitted,

*/s/ Bree Bernwanger*
Bree Bernwanger