Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600    Fax: 213.236.2700

Attorneys for Respondents-Defendants
THE GEO GROUP, INC. (Sued herein as
GEO GROUP, INC.) and NATHAN ALLEN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUIZ TOVAR, LAWRENCE MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUNEZ, JAVIER ALFARO, DUNG TUAN DANG,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility,<br><br>Respondents-Defendants. | Case No. 3:20-cv-02731-VC<br><br>**DEFENDANTS THE GEO GROUP INC. AND NATHAN ALLEN'S BRIEF RE COVID-19 TESTING OF GEO STAFF**<br><br>Judge:  Hon. Vince Chhabria |

Defendants The GEO Group, Inc. and Facility Administrator Nathan Allen object to mandatory testing of its staff. GEO is already taking numerous measures at Mesa Verde including: screening staff for symptoms, exposure and elevated

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1    - 1 -    3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

1  temperature upon arrival; imposing a 10-day home quarantine if employees have
2  symptoms or a positive test; and requiring all staff to wear PPE including masks.
3  Given these measures, and GEO's adherence to CDC guidelines for custody
4  facilities, Plaintiffs do not meet the high standard to obtain an injunction requiring
5  mandatory and repeated testing.

## I. INTRODUCTION

Plaintiffs propose testing of employees every two (2) days for an indefinite time period, which is not feasible at Mesa Verde. This proposal also goes far beyond CDC guidelines for correctional and custody facilities (including detention facilities), which do not recommend regular or mandatory testing of staff who lack any COVID-19 symptoms. GEO is taking all appropriate measures required by the CDC, so mandatory regular testing of staff should not be court ordered. Plaintiffs' comparison to nursing homes and schools is not apt here, when the CDC has specific guidelines for correctional and detention facilities. Not even hospitals have recommendations by the CDC for the mandatory testing requested by Plaintiffs.

## II. CURRENT GEO EMPLOYEE MEASURES AT MESA VERDE

Facility Administrator Allen and others at GEO have been monitoring the COVID-19 guidelines issued by the Centers for Disease Control (CDC), in an effort to stay current with the recommendations applicable to detention centers. (Allen Decl. ¶ 2.) GEO has continued modifying and updating procedures at Mesa Verde Detention Facility in order to comply with these CDC guidelines. (*Id*.) It has been Allen's goal since the pandemic began to keep both detainees and staff healthy and safe. (*Id*.)

Currently, staff at Mesa Verde is screened upon arrival at work for symptoms of COVID-19, close contact with anyone who has tested positive, or a fever. If the temperature exceeds 100.4º, or if the person has any other symptoms, the person is instructed to go home and contact a health care provider. (Allen Decl. ¶ 3.) Flyers are posted upon entry into the facility and throughout various areas of the facility

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1                - 2 -                3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

1  about symptoms of COVID-19, to go home if employees have any symptoms,
2  washing hands and surfaces, wearing masks and socially distancing to minimize the
3  risk of spreading infection.  (*Id*., ¶¶ 3-5, 10-11.)

4       GEO staff persons are tested on their own as needed via their primary care
5  physicians and/or local public test sites such as the Kern County Fairgrounds.  Staff
6  persons are required to report any positive COVID-19 result to the Facility and then
7  quarantine at home thereafter for a minimum of 10 days.  (Allen Decl. ¶ 6.)  If a
8  staff person tests positive, then contact tracing is conducted and anyone who was in
9  close contact with the person within 48 hours of the last time worked is advised of
10 their exposure.  (*Id*., ¶ 7.)

11      Return to work guidelines in compliance with CDC recommendations are
12 strictly followed.  Employees who had close contact with someone who has tested
13 positive for COVID-19 <u>and</u> are asymptomatic are permitted to work under
14 following conditions:  (1) they complete the Employee Wellness Screening each
15 day prior to work; (2) they wear a face mask at all times while in the workplace for
16 14 days after last exposure; (3) they practice social distancing as work duties
17 permit; and (4) all areas such as offices, bathrooms, common areas and shared
18 equipment are cleaned and disinfected regularly.  (Allen Decl. ¶ 8.)  If staff persons
19 are symptomatic, they are placed on leave and may return to work after they have
20 had no fever (temperature is below 100.4º) for at least 24 hours (without the use of
21 medicine that reduces fevers) **and** other symptoms have improved (for example,
22 when their cough or shortness of breath has improved) **and** they have completed a
23 self-quarantine period of 10 days after last exposure.  (*Id*.)

24      GEO staff is also required to wear Personal Protective Equipment (PPE)
25 including face masks while at work when in the presence of others (*i.e*. unless alone
26 outside or in a staff office).  Wearing masks is reportedly the best way to prevent
27 transmission of COVID-19 between persons.  (Allen Decl. ¶ 9.)
28 ///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1      - 3 -      3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

## III. STANDARD FOR PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

To succeed on the merits here, Plaintiffs must show a likelihood to prevail under the Fourteenth Amendment, which requires they establish "deliberate indifference" on the part of Defendants. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (Eighth Amendment); *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S.Ct. 2466, 2473-74 (2015) (Fourteenth Amendment). As the Ninth Circuit has explained, "[d]eliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).

For a Fourteenth Amendment claim, Plaintiffs must prove objective deliberate indifference. *Gordon v. City of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) ("[C]laims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under and objective deliberate indifference standard") (internal quotations omitted). The Ninth Circuit has developed a four-part test to determine objective deliberate indifference:  (i) the defendant made an internal decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though

a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon*, 888 F.3d at 1125.

## IV. PLAINTIFFS ARE NOT ENTITLED TO RELIEF BECAUSE GEO DEFENDANTS ARE NOT DELIBERATELY INDIFFERENT

Plaintiffs seek measures far exceeding CDC guidelines for staff at detention facilities. In fact, they seek to impose requirements akin to nursing homes. But GEO is adhering to the recommended measures for staff at custody facilities, as set forth in Facility Administrator Allen's declaration. (*See generally*, Allen Decl.) CDC guidance pertaining to "Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities supports the approach taken at Mesa Verde, stating: "All staff with suspected or confirmed COVID-19 should wear cloth face coverings (unless contraindicated), self-isolate at home, connect with appropriate medical care as soon as possible, and follow medical care and instructions."[1]

The list of potential COVID-19 symptoms (according to the most recent CDC guidelines) is very long and includes symptoms that are often attributable to other causes. It is therefore important for staff persons who believe they may have a symptom consistent with COVID-19 to undergo a medical evaluation and to be assessed by a medical professional who can better determine whether testing is warranted in light of their symptomatology. This is particularly important given that testing resources are at a premium and, as this Court well knows, testing volumes and turnaround times statewide are stretched thin.

To further safeguard the detained population and staff members from the risks of COVID-19, GEO's plan provides that staff persons who are sick shall stay

---

[1] CDC's Interim Considerations for SARS-CoV-2 Testing in Correctional and Detention Facilities, last updated July 7, 2020, is available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/testing.html

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1         - 5 -         3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

1  home and consult their primary care physician.  (Allen Decl. ¶¶ 3-5.) Personnel
2  who develop fever, respiratory symptoms, or other COVID-related symptoms are
3  also instructed not to report to work, contact medical personnel, and to notify their
4  supervisor.  (*Id.*)  While at work, GEO staff is required to wear masks while
5  working in the presence of anyone else. (*Id.* ¶ 9.)  Staff and detainees are all
6  reminded to wear masks, distance from others, not to touch one's face/eyes/nose,
7  and cleaning and disinfecting frequently touched items. (*Id.* ¶ 10.)

8        Thus, because GEO's COVID-19 is based upon current CDC guidance and
9  recommendations, in addition to recently added regular testing of detainees,
10 Defendants cannot possibly be disregarding an excessive risk to staff or detainee
11 health or safety.  A mere difference in medical opinion cannot support a finding of
12 deliberate indifference.  *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.
13 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez v. Vild*, 891
14 F.2d 240, 242 (9th Cir. 1989); *Colwell v. Bannister*, 763 F.3d 1050, 1068 (9th Cir.
15 2014) ("A difference of opinion between a physician and the prisoner—or between
16 medical professionals—concerning what medical care is appropriate does not
17 amount to deliberate indifference." (citation and quotation marks omitted).)
18 Accordingly, Plaintiffs are not entitled to the relief they seek here.

19       Further, for any preliminary injunction, relief must be narrowly drawn,
20 extend no further than necessary to correct the harm, and be the least intrusive
21 means of addressing the violation of the federal right(s) or correcting the harm. *See*
22 18 U.S.C. § 3626(a)(2) (setting requirements for prospective relief in any civil
23 action with respect to prison conditions).  Plaintiffs' plan to require mandatory
24 testing of staff every 2 days for an indefinite period is unduly burdensome and not
25 narrowly tailored. There is no showing that, given staff requirements to wear
26 masks, staff is transmitting COVID to detainees as opposed to detainees having
27 brought the virus in during intake, particularly since the detainees at Mesa Verde
28 are largely non-compliant with CDC and GEO recommendations to wear face

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1    - 6 -    3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

masks and socially distance from others. Even if the Court were to require baseline testing of staff, there is no reason why staff would need to retest three times per week.

Masks are touted by the CDC as a critical tool to prevent the spread of the disease.  The CDC issued a press release dated July 14, 2020[2], citing an article in the Journal of the American Medical Association (JAMA) affirming that cloth face coverings are a "critical tool in the fight against COVID-19 that could reduce the spread of the disease, particularly when used universally within communities. There is increasing evidence that cloth face coverings help prevent people who have COVID from spreading the virus to others." CDC Director Dr. Robert R. Redfield was quoted as noting:  "Cloth face coverings are one of the most powerful weapons we have to slow and stop the spread of the virus – particularly when used universally within a community setting. All Americans have a responsibility to protect themselves, their families, and their communities."

This article included a case study from CDC's Morbidity and Mortality Weekly Report (MMWR), showing that wearing a mask prevented the spread of infection from two hair stylists to their customers in Missouri. The results of the Missouri case study provide further evidence on the benefits of wearing a mask. As the CDC noted, the "investigation focused on two hair stylists — infected with and having symptoms of COVID-19 — whose salon policy followed a local ordinance requiring cloth face coverings for all employees and patrons.[3] The investigators found that none of the stylists' 139 clients or secondary contacts became ill, and all

---

[2] https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html, citing CDC Editorial in JAMA: Brooks JT, Butler JC, Redfield RR. Time for universal masking and prevention of transmission of SARS-CoV-2. JAMA. Published online July 14, 2020.  Doi:10.100/jama.2020.13107
https://jamanetwork.com/journals/jama/fullarticle/10.1001/jama.2020.13107

[3] MMWR Article: No Transmission of Symptomatic SARS-CoV-2 After Significant Exposure With Universal Face Mask Use at a Hair Salon – Springfield, Missouri, May 2020
https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e2.htm?s_cid=mm6928e2_w

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1

- 7 -

3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19 TESTING OF GEO STAFF

67 clients who volunteered to be tested showed no sign of infection." Given the Missouri study and other medical evidence, while Plaintiffs will point to the rates of infection in Kern County as an indicator that staff is bringing the virus into the facility, it is actually more likely that detainees – who are generally not complying with recommendations to wear masks – are the source of any virus spread as opposed to the staff who are wearing masks within the facility. Accordingly, this Court should focus on increasing detainee adherence to CDC guidelines including wearing masks and socially distancing from others to decrease COVID cases.

Rather than ordering mandatory staff testing, this Court may instead simply mandate that GEO's plan continue to comply with current CDC recommendations as they continue to evolve. A court order mandating anything beyond that would hinder GEO's ability to adjust its plan at a time when flexibility and adoption of evolving standards is critical to mitigating the spread of COVID-19.

## V. COMPARISON TO NURSING HOMES OR SCHOOLS IS NOT APT, GIVEN CDC GUIDELINES FOR CUSTODY FACILITIES

Plaintiffs suggest using CDC guidelines set forth for nursing homes or schools[4]. However, these are inapplicable. The specific guidelines developed and updated by CDC for correctional and detention facilities should be used instead, for the reasons set forth below.

First, nursing homes contain, by definition, people who are typically <u>at least</u> 65 years of age. Approximately 33.8% of nursing home residents are 85 years to 94 years old, 26.4% are between 75 and 84, and 16.5% are between 65 and 74 years of age, and 7.8% are 95 years of age or older[5]. These elderly populations also often have underlying health conditions such as dementia or Alzheimer's, putting them at

---

[4] In meet and confer discussions with Plaintiffs' counsel, they referred to nursing home staff and resident testing recommendations by CDC, as well as testing of educators and staff in education settings.
[5] U.S. News & World Report, October 11, 2019, *Nursing Home Facts and Statistics*, by Elaine Howley.

additional risk in terms of both health and non-compliance with wearing masks. In contrast, detention facilities have much younger populations. The average detainee age across facilities in California is 33 years old, with the largest age group 25-34 years of age[6]. While there are outliers for both age and health conditions, the younger age alone puts detainees at lower risk of a severe infection.

Second, educational settings are distinct from correctional or detention facilities. Children are less likely to be compliant with masks than adults because of decreased volition and cognition (depending on the age). While currently the detainee population is largely non-compliant, they are adults with cognitive abilities that have the ability to understand and adhere to rules, and the first steps should focus on gaining their compliance rather than giving up and imposing uncomfortable and invasive testing on staff instead. Further a review of CDC protocol for opening K-12 education does not state that testing of staff should be required[7]. Rather, it advocates screening, testing symptomatic individuals, contact tracing, and isolation/quarantine as needed. This is the same protocol GEO is already following for its staff, with the testing done by employees' primary care physician as needed. Nothing in the CDC guidelines for K1-12 schools indicates that educators should be tested at or by the school or that such testing should be done every other day, only that it be provided to symptomatic individuals.

///
///
///
///
///

---

[6] Immigration Detention in California, DOJ Review dated February 2019, at 17. https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/immigration-detention-2019.pdf
[7] See https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-testing.html

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1 - 9 -

3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19
TESTING OF GEO STAFF

## VI. CONCLUSION

Plaintiffs have not demonstrated that they are entitled to the injunctive relief they request. But even if they could demonstrate Defendants' deliberate indifference to the COVID-19 pandemic, they still would not be entitled to their requested relief of testing staff every two days because it is not narrowly drawn. Their motion should therefore be denied. GEO should be permitted and encouraged to continue its adherence to CDC protocol and recommendations as they evolve.

Dated: August 13, 2020                     BURKE, WILLIAMS & SORENSEN, LLP


By: /s/ *Susan E. Coleman*
     Susan E. Coleman

Attorneys for Defendants
THE GEO GROUP, INC. and NATHAN ALLEN

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

SD #4832-3604-1415 v1

- 10 -

3:20-CV-02731-VC
DEFENDANTS' BRIEF RE COVID-19 TESTING OF GEO STAFF