# OSCAR ARMANDO AMAYA SHORT-FORM BAIL APPLICATION

**SUMMARY:** Oscar Armando Amaya presents a strong application for bail. *See* Dkt. 90 (setting forth standard for bail applications); Dkt. 361 (setting forth process for bail applications). *First,* current conditions in the Yuba County Jail put Oscar's health at great risk. Oscar has medical vulnerabilities and his health has worsened due to the heightened restrictions on his activities due to COVID-19.

*Second*, Oscar is not a danger to the community. Oscar has been forthcoming about the mistakes he has made. Oscar fled El Salvador when he was about twelve years old after MS13 murdered his older brother Ronald in front of him and then threatened to kill Oscar and his family because they helped Salvadoran police prosecute Ronald's murderers. He grew up in San Francisco and began using alcohol at a young age to cope with his trauma. In high school he succumbed to gang presence in his neighborhood, although he still graduated and earned his diploma. However, Oscar had still not dealt with his substance abuse or post-traumatic stress disorder from his brother's murder, and he remained angry and in the company of the wrong group of friends. In 2016, he was sentenced to 60 months incarceration for second degree robbery. Since then, Oscar has dedicated himself to turning his life around and been proactive in addressing the root causes of the issues that led him off course. In prison he went to Fire Camp, was given a position of trust operating a chainsaw, and helped to fight the deadly Camp Fire in Paradise. Oscar's fire captain recognized his potential and recommended Oscar attend an eighteen-month Fire Academy after serving his time, which he hopes to do if released. Oscar also attends Alcoholics Anonymous programming as well as Thinking for a Change to address his chronic post-traumatic stress disorder. Oscar has been sober since his 2016 arrest.

*Finally*, Oscar is not a flight risk. He has a strong release plan and the support of his close-knit family. If released, he will live with his mother and younger brother in their apartment in San Francisco, California. Oscar's request for deferral of removal under the Convention Against Torture is pending appeal at the Board of Immigration Appeals. He is committed to appear for any subsequent immigration proceedings as required.[1]

1. **Name:** Oscar Armando Amaya

2. **Age:** 27

3. **Sex:** Male

4. **Primary Language:** Fluent in English and Spanish

5. **If Hearing, Is An Interpreter Needed?** No

---

[1] Please note that although class counsel believe that Mr. Amaya meets the criteria for a strong bail application pursuant to the Court's order at Dkt 361, this position should not be construed as class counsel's position regarding the relative strengths or weaknesses of remaining class members, for many of whom the government has produced no documents and whose applications class counsel continues to actively investigate.

Name: Oscar Armando Amaya

6. **Detained in Yuba County Jail**

7. **Dorm Unit:** Variable. Oscar has been moved several times in the last few months.

8. **Date of Bond Hearing, If Any:** None

9. **Outcome of Bond Hearing, If Any:** n/a

10. **Length of Time in Detention:** Since May 2019 – 1 year and 3 months.

11. **Medical Condition(s) That Put Detainee At Risk:**

    Oscar has been diagnosed with chronic post-traumatic stress disorder. Oscar's chronic post-traumatic stress disorder is related to immunosuppression and is thus also a risk factor for severe COVID-19. During recent health screenings, Oscar has presented with increased blood pressure levels that are approaching hypertension. Hypertension is a CDC-recognized risk factor for COVID-19. Previously, Oscar stayed very active and regularly exercised to maintain his health and blood pressure. At present, Oscar has very limited opportunities to exercise, if any at all, while in custody due to the COVID-19 crisis.

    *Hypertension*

    Oscar reports that his blood pressure has been increasing since the COVID-19 outbreak and that recent health screens show he has prehypertension.

    *Mental Health Issues*

    Oscar suffers from chronic post-traumatic stress disorder. Mental health experts have concluded, and courts have found, that mental health conditions impact the immune system and therefore render those affected at increased risk of developing COVID-19 complications. S*ee, e.g.*, *Fraihat v. ICE*, No. 19-cv-1546-JGB, 2020 WL 1932570, at *16 n. 20 (C.D. Cal. Apr. 20, 2020); *Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *4 (N.D. Cal. Apr. 12, 2020) (PTSD, depression, and latent tuberculosis). In an expert declaration submitted in a COVID-related habeas petition, Dr. Mira Zein, MD, MPH, provided that these mental illnesses "directly stimulate production of pro-inflammatory cytokines, as well as downregulate cellular immunity leading to increased risk of acute and prolonged infection, and delayed wound healing. The pro-inflammatory states found in these mental health disorders leads to a complex feedback in which inflammation changes brain circuits and neurochemical expression, perpetuating a cycle of immune dysfunction and mental health symptoms."[2]

---

[2] Statement by Dr. Mira Zein, MD, MPH, Clinical Assistant Professor, Consult Liaison Psychiatry, Stanford University School of Medicine, Department of Psychiatry and Behavioral Sciences, April 6, 2020, available upon request.

**12. Attorney Name, Phone, Address and Email:**

Mark Zambarda
Office Ph: (650) 843-5360;
3175 Hanover Street, Palo Alto CA 94304
MZambarda@cooley.com

**13. Felony or Misdemeanor Convictions, Including Date and Offense:**

[REDACTED] The United States Supreme Court has recognized that juveniles have reduced culpability and are more capable of change than adults. *See Graham v. Florida*, 560 U.S. 48, 68 (2010) (finding that sentencing juveniles to life without parole to be unconstitutional in non-homicide cases); *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (holding that mandatory sentences of life without the possibility of parole are unconstitutional for juvenile offenders). The Court cited evidence regarding adolescent brain development, finding that partly due to the immature brain development, adolescents are more impulsive and less able to think through consequences of their actions but that they are also more capable of change. *See Graham*, 560 U.S. at 68.

On February 26, 2015, Oscar was convicted of one count of CPC § 236, false imprisonment by deceit, and one count of CPC § 23152 (b), driving under the influence causing injury. This incident arose out of Oscar driving after drinking with his daughter and his daughter's mother (his now ex-girlfriend) in the car. Oscar has not been in contact with his daughter or ex-girlfriend since he was incarcerated in 2016. His daughter lives with Oscar's ex-girlfriend in Chicago, Illinois. Their relationship is over and he has made no attempts to contact her while in custody. He understands that this relationship was unhealthy and that it did not bring out the best in him. Oscar will not attempt to make any contact in any form with his daughter or ex-girlfriend while he is on bail. If he is granted deferral of removal under the Convention Against Torture and able to remain in the United States long-term, he would like to one day be a positive part of his daughter's life.

On October 5, 2015, Oscar was convicted of one count of CPC § 186.22(a) Misdemeanor participation in a criminal street gang, sentenced to 270 days. Oscar grew up in a Nortenos controlled neighborhood in San Francisco and many of the adult male figures in his life were Nortenos, since he never knew his father and his older brother Ronald was murdered. Oscar began to associate with the Nortenos in high school. Although he was never formally initiated into the gang, he became affiliated with the Nortenos because many of the friends he regularly hung out with were Nortenos. Oscar disassociated from the Nortenos in 2017.

On February 4, 2016, Oscar was convicted of one count of CPC § 211 Second-degree robbery, sentenced to 5 years. Oscar and a group of friends stole a backpack, money, and a cell phone from a MUNI bus passenger.

Name: Oscar Armando Amaya

Oscar struggled psychologically with his brother Ronald's murder, and his chronic post-traumatic stress disorder led him to make bad choices. He grew up with a single mother in a San Francisco neighborhood controlled by a Norteno gang, and spent time with gang members, and getting involved with petty crimes.

Oscar used his time in state prison to turn his life around. He had no disciplinary write-ups and participated in self-improvement programs including Alcoholics Anonymous and Thinking for a Change, which is a cognitive behavior therapy program. Because of his good behavior, Oscar was eligible to participate in Fire Camp, through which he spent approximately fifteen months of a very active fire season fighting wildfires. He received training as a sawyer, a position of special trust because sawyers must carry a chain saw, and he deployed on many occasions to fight forest fires—including to the deadly November 2018 Camp Fire near Paradise, California. Oscar's fire captain recognized his potential and recommended Oscar attend an eighteen-month Fire Academy after serving his time. Oscar's sentence was shortened because of his good behavior, and he would have been released in May 2019, but was instead transferred to Immigrations and Customs Enforcement ("ICE") custody under an ICE detainer.

On May 25, 2020, Oscar became involved in an altercation with another inmate at Yuba County Jail. Following the altercation, Oscar learned that the other inmate asked to press misdemeanor charges against Oscar. However, the district attorney dropped those charges against Oscar shortly thereafter, a little over a month later in early July 2020.

Oscar is extraordinarily remorseful of his past criminal conduct, and hopes to continue to make amends by continuing to serve the community as a firefighter. He reports that this work has given him a sense of identity and purpose that he had previously been lacking, and given him a path forward in life that he finds fulfilling.

14. **Pending Criminal Charges and Outstanding Warrants, Including Jurisdiction and Offense:**

n/a

15. **Scheduled Removal Date:**

Not applicable—proceedings pending at the Board of Immigration Appeals.

16. **Marital status and location of spouse, significant other, children, parents and siblings**

Oscar's grandmother (Victoria Amaya), mother (Sandra Amaya Palacios), and brother (F.A.) live in San Francisco.

Oscar is unmarried. Oscar's daughter lives with her mother in Chicago, Illinois. Oscar has no contact with his daughter or his daughter's mother and will not resume contact with them.

Name: Oscar Armando Amaya

17. **Proposed custodian, including address and phone number, and description of proposed release residence:**

    If released from custody, Oscar's mother Sandra has offered to allow Oscar to live with her in her apartment in San Francisco. Oscar's younger brother, F.A., is in high school and also lives in this apartment with Sandra. Their address is ███████████, San Francisco, CA 94112. Sandra can be reached at ███████████. Oscar's immigration attorney Mark Zambarda (contact information listed above) will pick him up from Yuba County jail and take him to Sandra's home. The family will provide and use gloves and masks for protection.

18. **Applicant's Ties to the Location of the Proposed Residence (such as length of time, family members, prior employment, etc.):**

    Oscar spent all his teenage years in San Francisco. He fled from El Salvador to San Francisco with his mother and younger brother when he was just thirteen because his grandmother lived there. Oscar's grandmother, mother, and brother all still live in San Francisco. Oscar attended middle school and high school in San Francisco, and received a high school diploma from O'Connell High School. After high school he worked as a dishwasher at a restaurant in San Francisco for two years.

19. **Employment History:**

    Oscar served as a firefighter while in prison. Oscar also worked as a dishwasher at a restaurant for about two years after he graduated high school. If released, he hopes to continue working as a firefighter.

20. **Other Information Relevant to Bail Determination:**
    Oscar's mother and younger brother were granted asylum based on the facts surrounding Ronald's murder in December 2016, which also underlie Oscar's Convention Against Torture claim.

    Oscar hopes to continue his work as a firefighter and has no interest in further involvement with criminal activity.

21. **Attached are (check all that are applicable, but that is not a substitute for answering the above questions):** Not applicable.
    ___ Medical Records   ___ Rap Sheet   ___ Letter from Proposed Custodian   ___ Bond Hearing Decision   ___ Bond Hearing Transcript

All information in this application is accurate based on information and belief. This application was prepared by Mark Zambarda, Oscar's immigration attorney, and Kelly Engel Wells of the San Francisco Office of the Public Defender based on information provided by Oscar's criminal defense attorney documents and records accessible to the San Francisco Public Defender's

Name: Oscar Armando Amaya

office. In preparing this application, class counsel also reviewed Oscar's RAP sheet and I-213 provided by Defendants.

Respectfully submitted,

*/s/ Bree Bernwanger*
Bree Bernwanger

Name: Oscar Armando Amaya