DAVID L. ANDERSON (CABN 149604)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

WENDY M. GARBERS (CABN 213208)
ADRIENNE ZACK (CABN 291629)
SHIWON CHOE (CABN 320041)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6967
    Facsimile: (415) 436-6748
    wendy.garbers@usdoj.gov
    adrienne.zack@usdoj.gov
    shiwon.choe@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID JENNINGS, *et al.*, <br><br> Defendants. | CASE NO. 3:20-cv-02731-VC <br><br> **FEDERAL DEFENDANTS' RESPONSE TO THE COURT'S AUGUST 17, 2020 ORDER CALLING FOR BRIEFS AND DECLARATIONS REGARDING MEDICAL CONDITIONS FOR COVID-POSITIVE DETAINEES** |

Federal Defendants respectfully submit this response to the Court's order of August 17, 2020 calling for the parties to file briefs and accompanying declarations regarding medical conditions for COVID-positive detainees (ECF No. 563).

## I.   Appropriate Level of Care and Monitoring

The Court directed the parties to "address the appropriate level of care and monitoring necessary for a dorm full of people who have tested positive for Covid-19."

While COVID-19 can present serious complications for some individuals, according to guidance from the Centers for Disease Control and Prevention (CDC), "[m]ost people with COVID-19 have mild illness and can recover at home without medical care." CDC, *Coronavirus Disease 2019 (COVID-19) > What to Do If You Are Sick* (May 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html (last visited Aug. 19, 2020) (*What to Do*); *see also* CDC, *Coronavirus Disease 2019 (COVID-19) > Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)* (June 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited Aug. 19, 2020) ("Patients with a mild clinical presentation (absence of viral pneumonia and hypoxia) may not initially require hospitalization, and many patients will be able to manage their illness at home.") (cited by CDC, *Coronavirus Disease 2019 (COVID-19) > Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Aug. 19, 2020)); *accord United States v. Mays*, No. 17-cr-96-pp, 2020 WL 4048501, at *5 (E.D. Wis. July 20, 2020) (quoting CDC, *What to Do*, and applying it to correctional facility).

The CDC guidance states that individuals who have COVID-19 should "[m]onitor [their] symptoms," which "include fever, cough, or other symptoms." CDC, *What to Do*. The CDC guidance states that individuals should "[l]ook for emergency warning signs for COVID-19" and instructs that "[i]f someone is showing any of these signs, seek emergency medical care immediately" and "[p]lease call your medical provider for any other symptoms that are severe or concerning to you." *Id.* Medical staff at Mesa Verde monitor detainees' temperature and vital signs twice a day, are present for hours each day in Dorm B administering medical treatments, and are on site 24 hours at a day, seven days a

week. Declaration of Dr. Richard Medrano, Regional Medical Director for Wellpath ¶¶ 7, 17–19 (ECF No. 581-1) (Medrano Decl.).

A number of courts that have addressed correctional and detention facilities with confirmed COVID-19 cases have found twice-daily monitoring of COVID-19 positive detainees by medical staff of temperatures and vital signs to be reasonable and not inappropriate or insufficient. *See, e.g.*, *United States v. Kline*, No. 17-253 (01) (MJD), 2020 WL 4433018, at *2 (D. Minn. July 31, 2020) (discussing a detainee with obesity and hypertension who tested positive for COVID-19 and was checked twice a day for symptoms, and holding that the detainee "has not demonstrated that he suffers from a medical condition for which the BOP is unable to provide him appropriate medical treatment"); *United States v. Billings*, No. 19-cr-00099-REB, 2020 WL 4705285, at *4 (D. Colo. Aug. 13, 2020) (discussing the federal correctional facility with the largest number of COVID-19 infections of all federal facilities in the country, and describing the facility's efforts "implementing mass testing of all inmates and staff, checking inmates' temperature twice daily, and providing cloth masks to all inmates" with approval as "sweeping"); *Duvall v. Hogan*, No. ELH-94-2541, 2020 WL 3402301, at *5, *13 (D. Md. June 19, 2020) (discussing a detention facility where 60 detainees and staff members had tested positive and one staff member had died, and describing the facility's efforts, including "creat[ing] a quarantine housing unit for infected detainees" who "are monitored twice per day by medical staff and remain there for at least 14 days," as "a reasonable response to the unforeseen, rapidly evolving COVID-19 pandemic"); *accord* Declaration of Dr. Ada Rivera, Deputy Assistant Director for Clinical Services/Medical Director of the ICE Health Service Corps (IHSC) ¶ 5 ("Rivera Decl.") ("Per CDC guidelines and my medical experience, monitoring and completing temperature and vitals checks twice daily meets the standard of care."); Medrano Decl. ¶¶ 4–5 (generally similar).[1]

## II.   Risks in the Facility Versus Release

The Court directed the parties to "address the assertion made by class counsel at Friday's hearing that people with COVID-19 are at a greater risk of complications or death in the facility than if

---

[1] To the extent that Plaintiffs or their experts disagree regarding the appropriate standard of care, Federal Defendants respectfully note that "a mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (internal quotation marks and alterations omitted).

released."

As noted above, detainees have access to on-site medical staff 24 hours at a day, seven days a week, at Mesa Verde, which is coverage that they would not necessarily have if released. *See* Medrano Decl. ¶¶ 4–8. A number of courts that have addressed the question of detention versus release have disagreed with the assertion that there is a greater risk of complications or death from COVID-19 within a detention facility than upon release. As one court noted in denying a motion brought by immigration detainees seeking their immediate release:

> [A]lthough medical care at a correctional facility is not optimal, in [the facilities], Petitioners have access to around-the-clock medical care and consistent checks to monitor whether they have potentially been infected with COVID-19. Moreover, should any individual test positive for COVID-19, they would be regularly monitored and have access to rapid medical care, including treatment at a local hospital, if needed. There is no evidence that Petitioners would have better access to medical care if released from custody—and therefore be safer if released—which in turn militates against a finding of irreparable harm.

*Engelund v. Doll*, No. 4:20-CV-00604, 2020 WL 1974389, at *13 (M.D. Pa. Apr. 24, 2020); *accord, e.g.*, *United States v. Carrington*, No. 2:19-CR-59-PPS-JPK, 2020 WL 2029391, at *8 (N.D. Ind. Apr. 28, 2020) (denying release of a pretrial detainee with chronic obstructive pulmonary disease, asthma, emphysema, bronchitis, and congestive heart failure who tested positive for COVID-19, and noting that, in detention, the detainee was checked on twice daily and a nurse was on call 24/7, whereas if the detainee were released, she "would presumably would have to leave . . . home to see a healthcare provider in person" and also "would significantly increase the risk of transmission to her [family]"); *United States v. West*, No. ELH-19-0364, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying release of a pretrial detainee who tested positive for COVID-19 where "there is no specific plan offered by [detainee] in the event he were released into the community and became ill" and "[w]hat the [detainee] is asking is for the Court to take a person who has tested positive for COVID out of isolation and place him into the community with no further information"); Rivera Decl. ¶ 6 ("Individuals with COVID-19 are not at a greater risk of complications or death in the facility than if released. The risk of complications or death for certain individuals is rather due to the factors making them more at risk for complications if exposed to COVID-19, which are well defined by CDC, than detention itself. Further, all individuals in ICE custody are provided with and have access to comprehensive medical care.");

Medrano Decl. ¶¶ 4–8 (generally similar).

### III. Hospitalization

The Court directed the parties to "address the measures that can be taken to reduce the risk of detainees' health deteriorating after being housed in the Covid-positive dorm, and the level of monitoring necessary to ensure that detainees are hospitalized promptly when needed" and "who pays for hospitalization and whether there are any financial disincentives to hospitalizing detainees."

As discussed above, medical staff at Mesa Verde check detainees' temperature and vital signs twice a day, are present for hours each day in Dorm B administering medical treatments, and are on site 24 hours at a day, seven days a week. Medrano Decl. ¶¶ 7, 17–19. Decisions about hospitalizations are made by Mesa Verde medical staff in the exercise of their medical judgment. *Id.* ¶ 24. The ICE Health Services Corps pays for hospitalizations. Rivera Decl. ¶ 9. Decisions about sending a detainee to a hospital, however, are based on clinical determinations by the facility's medical staff, and not on costs or financial incentives or disincentives. *Id.*; Medrano Decl. ¶ 24; *accord* Declaration of Nathan Allen, Facility Administrator of Mesa Verde ¶ 5 (ECF No. 581-2). Medical staff do not need ICE's approval to send someone to the hospital, and if they feel a detainee needs to go to the hospital, they do so in the exercise of their discretion and medical judgment without regard to cost. Rivera Decl. ¶ 9; Medrano Decl. ¶ 24; *accord* Allen Decl. ¶ 5.

### IV. Retesting Individuals Who Previously Tested Positive

At the August 18, 2020 status conference, the Court directed the parties to address retesting individuals who previously tested positive for COVID-19.

The CDC has issued guidance that states that "a person who has had and recovered from COVID-19 may have low levels of virus in their bodies for up to 3 months after diagnosis. This means that if the person who has recovered from COVID-19 is retested within 3 months of initial infection, they may continue to have a positive test result, even though they are not spreading COVID-19." CDC, *Coronavirus Disease 2019 (COVID-19) > Duration of Isolation & Precautions for Adults* (Aug. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited Aug. 19, 2020). More specifically, the CDC guidance states that:

> Available data indicate that persons with mild to moderate COVID-19 remain infectious no longer than 10 days after symptom onset. Persons

>
> with more severe to critical illness or severe immunocompromise [sic] likely remain infectious no longer than 20 days after symptom onset. Recovered persons can continue to shed detectable SARS-CoV-2 RNA in upper respiratory specimens for up to 3 months after illness onset, albeit at concentrations considerably lower than during illness, in ranges where replication-competent virus has not been reliably recovered and infectiousness is unlikely. The etiology of this persistently detectable SARS-CoV-2 RNA has yet to be determined. Studies have not found evidence that clinically recovered persons with persistence of viral RNA have transmitted SARS-CoV-2 to others. These findings strengthen the justification for relying on a symptom based, rather than test-based strategy for ending isolation of these patients, so that persons who are by current evidence no longer infectious are not kept unnecessarily isolated and excluded from work or other responsibilities.

*Id.* The CDC recommends that "[f]or persons previously diagnosed with symptomatic COVID-19 who remain asymptomatic after recovery, retesting is not recommended within 3 months after the date of symptom onset for the initial COVID-19 infection" and that "[f]or persons who never developed symptoms," retesting is not recommended within three months of the first positive (reverse-transcription polymerase-chain-reaction) COVID-19 test. *Id.* "For persons who develop new symptoms consistent with COVID-19 during the 3 months after the date of initial symptom onset, if an alternative etiology cannot be identified by a provider, then the person may warrant retesting." *Id.*

DATED: August 19, 2020                     Respectfully submitted,

                                           DAVID L. ANDERSON
                                           United States Attorney

                                           *s/Shiwon Choe*
                                           SHIWON CHOE
                                           Assistant United States Attorney

                                           Attorneys for Federal Defendants