# JOHN EMMANUEL CARVAJAL VICTORIO
# SHORT-FORM BAIL APPLICATION

**SUMMARY:**

John Emmanuel Carvajal Victorio presents a strong application for bail. See Dkt. 90 (setting forth standard for bail applications); Dkt. 361 (setting forth process for bail applications). *First*, Mr. Victorio does not represent a danger to the community. He regrets his past mistakes and understands what he needs to do to ensure he never re-offends. His criminal history is a result of his drug use; however, he has significant rehabilitation and a strong commitment to sobriety. Mr. Victorio found the Lord at a Christ-based residential treatment program four years ago which dramatically changed his life. Unfortunately, he later relapsed and ended up back in jail. Since then, he completed a five-month residential program which has given him clarity and the tools he needs to remain sober. Additionally, if released, he will attend a faith-based recovery program, Set Free Ranch, where he will solidify the tools he needs to remain on the right path and free of drugs. He has re-committed to leading a Christian life, and takes seriously his relationship with God. All of this, along with support from his family, will ensure he will not have further problems with the law.

*Second*, Mr. Victorio is a long-time Lawful Permanent Resident and has presented a strong case against deportation in that he is in fact wrongly detained as a U.S. citizen. He was previously released from DHS custody on these grounds. He is continuing to compile documents to provide evidence of his derived citizenship but should not be unnecessarily detained in the midst of the COVID pandemic while he does so. He is also seeking to prove that he will be harmed if deported to his country of birth, the Philippines.

*Third*, Mr. Victorio continues to suffer severe symptoms after contracting COVID-19 at Mesa Verde Processing Center. He believes he will not be able to fully recover until he is released to his proposed custodian and to be able to get adequate medical care that they are ensuring he will have outside of custody. If released, he plans to quarantine at a hotel with the support of his family until he has recovered from the virus, with guaranteed access to nutritious food and medical care and continued support for monitoring his symptoms. Once he recovers from COVID-19, his family will transport him to Set Free Ranch, a Christ-based residential recovery program in Riverside County. There he will solidify the tools he needs to remain on the right path. Once he completes his drug recovery program, he will live permanently with supportive family.

1. **Name:** John Emmanuel Carvajal Victorio

2. **Age:** 41 (DOB 01/30/1979)

3. **Sex:** Male

4. **Primary Language:** English

3

5. **If Hearing, Is An Interpreter Needed?** No

6. **Detained in Mesa Verde Detention Facility**  X

7. **Dorm Unit:** C

8. **Date of Bond Hearing, If Any:** None

9. **Outcome of Bond Hearing, If Any:** N/A

10. **Length of Time in Detention:** July 23, 2020

11. **Medical Condition(s) That Put Detainee At Risk:**

Mr. Victorio has suffered from asthma for many years. He uses an inhaler to manage his symptoms. In addition, Mr. Victorio has been a heavy smoker for years—before he was detained, he smoked about two packs per week. These two facts make him highly vulnerable to severe COVID-19.

Mr. Victorio tested positive for COVID-19 on August 10, 2020 after presenting with severe symptoms of the virus. He asked to see a doctor starting on August 7th because of his symptoms but didn't see one until the 10th, at which time his diagnosis was confirmed and he was moved to Dorm B. He has suffered from severe chills, body aches, headaches, has lost all sense of taste or smell, has mostly lost his appetite, and has felt weak and fatigued. He also has suffered from severe diarrhea for the past week and a half. After 10 days of diarrhea and requesting treatment, he has received only two single serving packets of electrolytes. He reports that immediately after he eats, he has to use the bathroom and because there are so many others suffering the same, he sometimes has to wait, or he times his meals around the bathroom availability.

Mr. Victorio reports that when he tested positive, he was told he would receive vitamins but didn't receive them for over a week.

He was also diagnosed with bronchitis and is suffering from wheezing and shortness of breath and inflamed lungs. His asthma has exacerbated his breathing problems. Two full weeks after his COVID diagnosis, he was finally provided with a desperately-needed inhaler, which he now uses three or four times a day.

Mr. Victorio also reports that today, August 27th, he was "cleared" to be moved out of Dorm B because he has been there for more than 14 days, but he insisted that he was not well and ultimately advocated for himself to remain. This transfer of symptomatic COVID-positive detainees out of Dorm B is extremely concerning.

Mr. Victorio was diagnosed over twelve years ago with sciatic nerve pain, which causes him severe pain in his lower left back. He takes 600mg of ibuprofen twice a day to treat this pain.

12. **Attorney Name, Phone, Address and Email:**
    Anoop Prasad, Staff Attorney at the Immigrant Rights Program—Asian Law Caucus
    55 Columbus Avenue, San Francisco, California 94111. Telephone: (415) 848-7722.

4

**13. <u>Felony or Misdemeanor Convictions, Including Date and Offense:</u>**

Mr. Victorio has had the following 8 convictions. He has 2 domestic violence convictions (from 2001 and 2014); 2 DUIs (from 2006 and 2013), 2 drug possessions (from 2010 and 2013), a conviction for credit card fraud in 2014, and a conviction for Receipt of Stolen Property from 2018, He admits to having struggled with drugs and alcohol, and his addiction has been the primary source of his criminal activity. He attended a residential drug treatment program he found very impactful in 2014, but unfortunately relapsed; he has now attended an additional drug treatment program and been sober for over two years and additional tools and insight to avoid an additional relapse.

- In 2001, Mr. Victorio was arrested after having a fight with his girlfriend in a store, and ultimately convicted around 2005 of Nevada NRS 200.485, Battery/Domestic Violence (sentence unknown). At the time, Mr. Victorio was living in Las Vegas, Nevada. During the fight, he grabbed his girlfriend's phone and threw it to the ground. The conflict attracted the attention of others at the store who called the police, and though the girlfriend assured them that Mr. Victorio had not physically hit her, he was arrested. He was released pending resolution of his case. He later returned to Las Vegas, and pled no contest around 2005. As part of his sentence, he also attended anger management classes.

- In June 2006, he was convicted of DUI, VC 23152(B), and sentenced to 2 days' jail and probation.

- In April 2010, Mr. Victorio was arrested for drug possession (CPC 11350(A)). He was sentenced to drug court diversion, and attended a substance abuse program which he successfully completed. According to the Rap Sheet, all charges were dismissed. This arrest was the result of a drug habit that Mr. Victorio developed after he lost his job of six years unexpectedly and he had started to spiral. Mr. Victorio reports that while he completed the outpatient program, it involved classes and videos that he did not find impactful and did not make meaningful progress toward rehabilitation at that time.

- In March 2013, he was convicted of drug possession, HS 11377(A), and sentenced to six months jail (concurrent with November 2013 conviction).

- In November 2013, he was arrested for drug possession, HS 11377(A), and DUI, VC 23152(A). He was convicted and sentenced to a concurrent six months sentence. Mr. Victorio reports that he was using meth and alcohol at the time. He reports that he fell asleep behind the wheel and hit a fire hydrant.

- On May 28, 2014, Mr. Victorio was convicted of PC 273.5, inflicting corporal injury on a spouse, and PC 594(B), vandalism. According to his rap sheet, he was sentenced to 668 days jail and 48 months of probation. Because of his then-addiction to meth, Mr. Victorio was not able to hold a steady job. He and a girlfriend had developed a credit card fraud scheme to support their habit. Because of their addiction, they had a tumultuous relationship, and at the time of the incident leading to this conviction, had gotten into a fight about money. Mr. Victorio fully admits and deeply regrets that they hit each other. He is ashamed of what happened and takes full responsibility for letting things escalate. He reports that he is incapable of such behavior when he is sober. For this reason, he is entirely committed to make sure he does not revert to that destructive lifestyle again.

- On August 1, 2014, Mr. Victorio was arrested and ultimately convicted of Identity Theft, PC 530.5(A), Grand Theft, PC 487(A), False Impersonation, PC 529(A)(3), and Burglary,

    PC 459, in connection with the credit card scheme he was involved in. The court deferred the sentence and released him to residential Salvation Army rehabilitation program for about six months. After Mr. Victorio completed and graduated from the program, which was very impactful for him, sentencing remained deferred. In March 2016, after graduating from Salvation Army, Mr. Victorio felt he was on the path to recovery for the first time. He started working and quickly rose to the role of general manager. However, unfortunately, after this first significant period of rehabilitation, Mr. Victorio relapsed again.

- In May 2017, Mr. Victorio was arrested and ultimately convicted of Receipt of Stolen Property, PC 496(d), and sentenced to eight months in custody. Mr. Victorio reports that he was using drugs at the time and made the poor decision to purchase a car he suspected was stolen because of the price. He reports that absent drug use, he wouldn't have made that error.

- In May 2018, Mr. Victorio was charged with a probation violation and resentenced.[1] The probation violation was a traffic stop in which a police officer found meth and drug-related paraphernalia. As a result, the judge revoked probation from the 2014 credit card fraud conviction and reinstated his seven year and eight month suspended sentence. During that time, he participated in an in-house program in jail, Residential Substance Abuse Treatment, which included regular AA, NA, Bible Study, and anger management programs. He reports that program equipped him with tactics to do things different when get out and strategies to implement to avoid a second relapse. It was focused on the 12-step model from AA, which is different from his previous residential program, Salvation Army, which is Christ-based. He reports that the two strategies together are particularly compelling to him and he is anxious for an opportunity to use his new-found tools. He is proud to report that he successfully completed the five-month program. After the program, he continued to participate in AA, NA, and church services. On July 23, 2020 he was transferred to ICE custody.

As detailed above, Mr. Victorio felt like he had turned his life around in 2016 after he completed the Salvation Army program. He worked at Shogun restaurant—his passion has been and continues to be for the Japanese food industry-- and he was promoted to a managerial position. Unfortunately, this also meant that he was working long hours, which had the unintended result of preventing him from going to AA/NA meetings and church services. As he let his meetings an church attendance slide, due to increasing stressors and a lack of support, he regrettably relapsed. He regrets making the mistake of believing that he was recovered, and he stopped "feeding his recovery".

He is now sober and in recovery for the second time and has been sober since May 2018. During that time, he also completed the five-month residential program that equipped him with new tools to avoid relapse. He also hopes to get the opportunity to attend the Set Free Ranch residential program to continue to work on his recovery.

---

[1] Also in May 2018, Mr. Victorio was arrested for domestic violence but no conviction resulted. On May 4, 2018, he and his girlfriend at the time had a fight. He acknowledges that he tried to stop her from leaving the house during their argument, but did not physically harm her in any way and no charges were brought.

6

14. **Pending Criminal Charges and Outstanding Warrants**: None

15. **Scheduled Removal Date, If Any**:

None. Mr. Victorio was ordered removed in absentia on July 3, 2018 because he was in criminal custody, but he is working with an immigration attorney to prepare a Motion to Reopen for his case. Mr. Victorio believes he may be a U.S. citizen based on the fact that his father, who petitioned for him to get his green card, became a naturalized U.S. citizen before Mr. Victorio turned 18.

Mr. Victorio was detained previously by ICE in Lancaster, California after trying to renew his green card in San Bernardino, California in 2006 Mr. Victorio, who has reason to believe he derived U.S. citizenship from his U.S.-citizen father. On that occasion, he was released pending further proceedings into the question of whether he has derived U.S. citizenship, an inquiry he is anxious to take back up now. Additionally, he fears deportation to the Philippines because of rampant torture there and will seek protection under the Convention Against Torture.

16. **Family**:

Mr. Victorio's parents are very involved in his life. His father, Manuel Victorio, is a U.S. citizen who lives in Las Vegas, Nevada. Manuel Victorio sponsored his son to join him in the United States when he was only fourteen, and Mr. Victorio resided with his father in California until he was an adult. The two are very close.

His mother, Ann Fermin, is also a U.S. citizen now. She has since re-married, but she also remains close to her son. Because neither of them lives in California, he is prepared to live with close family friends, whom he considers family, in Cathedral City, California after completing treatment upon his release.

17. **Proposed Custodian and Description of Proposed Release Residence**:

Mr. Victorio hopes to be released to attend a faith-based drug rehabilitation program, Set Free Men's Ranch, at 18569 Grand Ave., Lake Elsinore, CA 92530. Class counsel spoke with Doug Ikler, Assistant Director, at Set Free Men's Ranch, who can be reached at 951-849-3678. Mr. Ikler affirmed that Mr. Victorio has been accepted into the program and there is an immediate bed available for him.

However, Set Free Men's Ranch requires a negative COVID-19 test before a participant moves in. Because Mr. Victorio is currently testing positive, if released, he would quarantine in a hotel in Cathedral City at the expense of his family.

His sponsor, Ms. Arlene Gutierrez would serve as Mr. Victorio's custodian. She is a close family friend who Mr. Victorio considers family and calls his aunt. Ms. Gutierrez would pick him up from Bakersfield and transport him to a hotel near her home, using all possible protection against COVID-19 including masks, gloves, and open windows, and transport him to the hotel. Ms. Gutierrez will provide Mr. Victorio with a cell phone so that she can remain in close contact with him. She will provide him with all necessary food, preparing healthy meals and providing fresh

7

fruit and produce. She will also ensure that he has access to any and all necessary medical care, including helping to monitor his illness, including his temperature and oxygen levels. With the assistance of Mr. Victorio's immigration attorney and class counsel, she will identify community health resources to help support Mr. Victorio's recovery. Once Mr. Victorio secures a negative test, Ms. Gutierrez then transport him to Set Free Men's Ranch for his treatment program.

If Mr. Victorio remains at liberty in the United States at the conclusion of the Set Free Men's Ranch program, he intends to reside with Ms. Gutierrez and her husband, Lito Gutierrez. They are very close friends and parental figures of Mr. Victorio, and the family took him in before when he had nowhere else to go. Ms. Gutierrez can be reached at ▮▮▮▮▮▮▮▮▮▮. The family resides at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Cathedral City, CA 92234, and they have three children who are 18, 16 and 12. Mr. and Mrs. Gutierrez are Christians who have a very family-oriented environment in their home. He thinks this would be a supportive and balanced place for him. What's more, he looks up to them. Mr. Victorio says that he wants something like what they have one day—a true home, with a family who he can support and spend time with.

### 18. **Applicant's Ties to the Location of the Proposed Residence (such as length of time, family members, prior employment, etc.)**:

Mr. Victorio lived with the Gutierrez family for a time back in 2013. He has lived in Palm Springs, the area near where they live, on and off over the years. Mostly, he intends to quarantine and then remain at home because he believes they are a positive influence on his life.

### 19. **Employment History:**

Mr. Victorio has been in the Japanese food service industry for years now, and he is passionate about this industry. He has been a manager before, but now sees his goal as being one of balance. He would like to re-enter the industry, but only in a way that is healthy and leaves space for his recovery.

### 20. **Other Information Relevant to Bail Determination**:

Mr. Victorio contracted Covid-19 while in detention, which he knows because he was negative when he first arrived at Mesa Verde Processing Center on July 23. He tested positive later, on August 10, 2020, after showing serious symptoms. He has now developed bronchitis, requires the frequent use of an inhaler, and continues to struggle to breathe, as well as continuing to suffer from frequent diarrhea

Mr. Victorio is excited at the possibility of entering a Christ-based rehabilitation program. He says that he knows this will be his last chance to follow the Lord's path. In fact, he says he found the Lord when he was at the residential Salvation Army center in 2016. Since 2018, his faith has been growing, but he knows he can't do it by himself. He reports that he has made poor choices, and he has repeatedly lost his way. But, he says, if he listens to Him, he will end up in the right direction.

He now recognizes that he needs to stay plugged in to church and meetings and not let life and work get in the way. About his prior relapse, he reflects, "I stopped feeding my recovery, so I

relapsed. I have to balance my life. I'm an addict, I'm not a normal person who can just go to work and home. There's a battle in my mind that always goes on. As I keep feeding my recovery with classes and meetings, I can be successful again." He says, he thought "I got it." His failure was thinking he could do it on his own at a certain point. With the stable foundation from his established rehabilitation, he plans to continue to feed his recovery with the Set Free Ranch, and after that, to continue to attend NA meetings and make sure he has a sponsor and a community to keep him accountable. He will also attend church services and Bible Study. Even now, Mr. Victorio listens to Christian music every morning, eats his daily bread, and reads scriptures in the Bible. His favorite passage is from Proverbs 3, 5 and 6, which he quotes as saying: "Trust in the Lord with all your heart. And lean not in your own understanding. In all your ways, acknowledge him. He will return, and He will make your path straight."

**COVID-19 Outbreak at Mesa Verde:** Mr. Victorio tested positive for COVID-19 on August 10, 2020. He remains cohorted in Dorm B. Dkt. 621.

There is an uncontrolled outbreak of COVID-19 at Mesa Verde that places class members' lives in danger, with heightened risks for those who are medically vulnerable. There are currently at least 57 detainees who are confirmed positive for COVID-19 in the facility, one of whom remains hospitalized with serious complications. Dkt. 580. This represents over 50% of all individuals detained at Mesa Verde. In recent weeks, there have also been 27 staff members who are confirmed to have tested positive for COVID-19 before the staff testing started. Dkt. 575. This number constitutes more than 25% of all staff at Mesa Verde. It is nonetheless likely a severe underestimate given the lack of any comprehensive testing prior to the court's intervention.

Defendants recently admitted that they have no facility-specific medical plan for managing the COVID-19 outbreak. Dkt. 591. Dr. Greifinger, a correctional health expert, calls Defendants' lack of planning a "striking example" of their "indifference to the obligation to mitigate the risk of COVID transmission" at Mesa Verde. Dkt. 591-6 at ¶ 32. Without a plan for mitigating the spread of the virus, Defendants have floundered as the outbreak has grown unchecked. See Dkt. 591-2 at ¶ 29 ("Facility-specific treatment plans must be in place because COVID outbreaks can spread in days, quickly overwhelming resources and staff.") (Decl. of Dr. Sarah Allen).

Defendants' haphazard and negligent response to the outbreak puts class members' lives at risk. ICE and GEO have shown a lack of concern for the safety of class members, providing delayed and substandard care even for people who are severely medically vulnerable and confirmed COVID-infected. Individuals who are COVID-19 positive continue to face barriers to receiving medical care. Class members can wait days for medical staff to respond to sick call slips. Dkt 591-3 at ¶¶ 4-9 (Decl. of Susan Beaty). GEO custody officers regularly delay in alerting medical staff to serious COVID-19 symptoms. Id. at ¶¶ 10-19.

Even as class members with COVID-19 report signs of severe deterioration to staff, Defendants disavow any problem. Dkt. 591-6 at ¶ 45 (the same day a radiologist discovered pneumonia in both of Mr. Ruiz's lungs, medical staff reported that he only needed to be instructed how to use his inhaler property). Upon review of Defendants' current medical practices, infectious disease specialist Dr. Sarah Allen concluded that Defendants "need to take significant, immediate steps to improve the degree of patient monitoring, provide bedside access to medical care, and

9

streamline access to emergency medical care." Dkt 591-2 at ¶ 19. Defendants' numerous failures and delays in testing and treatment could potentially cost class members' their lives. Dkt. 591-6 at ¶¶ 25, 35, 47, 58 (Decl. of Dr. Allen Keller).

Mr. Victorio is far safer outside of Mesa Verde rather than inside. He is medically vulnerable and at risk of severe COVID-19 infection, and Mesa Verde health authorities have demonstrated an inability or unwillingness to safely care for the medical needs of those who are infected. So long an individual has, as Mr. Victorio does, a strong release plan that ensures he can follow isolation protocols, monitor symptoms, access food and hygiene, and safely access emergency medical care if needed, he will be "at least as safe released to isolation at home or in their community as remaining in the detention center." Dkt. 591-5 at ¶¶ 6-12 Mr. Victorio's continued detention places not just his life and health in jeopardy, but also places the lives and health of detention center personnel (at high risk of exposure from the outbreak, and increased risk with more detainees infected) and the general public (detrimentally affected by an outbreak of COVID-19 in a congregate facility, particularly given the increasingly uncontrolled spread). Dkt. 591-5 at ¶¶ 5, 13-18.

21. **Attached are (check all that are applicable, but that is not a substitute for answering the above questions):**
    N/A

All information in this application is accurate based on information and belief. This application was prepared based on conversations between Mr. Victorio and Jennifer T. Friedman, deputy public defender at the Public Defender's Office, as well as conversations with Mr. Victorio's family and the Set Free Ranch. The application was prepared using information obtained through interviews, and review of Mr. Victorio's ICE arrest reports (I-213), Rap Sheet, and Medical Records.

Respectfully submitted,

*/s/Jennifer T. Friedman*
Jennifer T. Friedman