DAVID L. ANDERSON (CABN 149604)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

WENDY M. GARBERS (CABN 213208)
ADRIENNE ZACK (CABN 291629)
SHIWON CHOE (CABN 320041)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6967
    Facsimile: (415) 436-6748
    wendy.garbers@usdoj.gov
    adrienne.zack@usdoj.gov
    shiwon.choe@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, *et al.*, | CASE NO. 3:20-cv-02731-VC |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO THE COURT'S AUGUST 21, 2020 ORDER TO CREATE A WRITTEN PLAN TO IMPROVE MEDICAL ASSISTANCE FOR COVID-POSITIVE DETAINEES** |
| v. | |
| DAVID JENNINGS, *et al.*, | |
| Defendants. | |

# INTRODUCTION

In response to the Court's order of August 21, 2020 calling for Defendants "to create a written plan to improve their system of monitoring, caring for, and responding to medical assistance requests from detainees who have tested positive and who have health conditions that the CDC has identified as creating an elevated risk of complications" and to "file a final draft on the docket" (ECF No. 595), Defendants respectfully submit the attached draft written plan.

Defendants also respond to Plaintiffs' pending "request that the Court require Defendants to bring their care up to acceptable standards or release additional detainees, contingent on a satisfactory release plan, to safely isolate in their communities." Pls. Br. 12 (ECF No. 591). This effectively is a request for a new mandatory injunction. *See United States v. Oriho*, __ F.3d __, No. 19-10291, 2020 WL 4579478, at *3 (9th Cir. Aug. 10, 2020) (an order not specifically styled as a restraining order or injunction nonetheless has the "practical effect" of an injunction where it is "'directed to a party, enforceable by contempt, and designed to accord some or all of the relief sought by a complaint'") (quoting *United States v. Samueli*, 582 F.3d 988, 993 (9th Cir. 2009)). Defendants respectfully submit that the procedures in place at the Mesa Verde Detention Facility satisfy all applicable constitutional and legal requirements and that Plaintiffs have not established an entitlement to a further injunction.

As of today, all but 15 of the 101 detainees at Mesa Verde either have never tested positive for COVID-19 or have met the conditions set forth in guidance issued by the Centers for Disease Control and Prevention (CDC) for discontinuing isolation and precautions. While Defendants submit the attached draft plan in response to the Court's August 21 order (and medical staff have implemented the measures in this draft plan), a further Court order (regarding either this draft plan or any alternative plan that Plaintiffs might propose) is unwarranted.[1]

# LEGAL STANDARD

## I. Preliminary-Injunction Standard[2]

"A preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Benisek v.*

---

[1] Defendants specifically object to any conclusion that these changes or any others are constitutionally required, and reserve the right to appeal the Court's August 21 order and any further order.

[2] The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co, Inc. v. John D. Brush & Co, Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Rovio*

*Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). A plaintiff's burden is a "heavy" one, *id.*, that requires "substantial proof" and a "*clear showing*" that an injunction is warranted, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "The burden to prove clear entitlement to injunctive relief always stays with the party requesting that relief." *Hope v. Warden York Cty. Prison*, __ F.3d __, No. 20-1784, 2020 WL 5001785, at *5 (3d Cir. Aug. 25, 2020) (vacating TRO issued in immigration-detainee COVID-19 lawsuit where the district court placed the burden on the government to show why injunctive relief should not be entered, rather than on the immigration detainees to prove clear entitlement to injunctive relief); *accord Valentine v. Collier*, 956 F.3d 797, 801 n.1 (5th Cir. 2020) (staying preliminary injunction in prison-detainee COVID-19 lawsuit and holding that "of course, it's the Plaintiffs' burden to prove their entitlement to an injunction, not the Defendants' burden to prove the opposite"), *motion to vacate stay denied*, 140 S. Ct. 1598 (2020).

In particular, "a mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation, quotation marks, and brackets omitted). The burden on a plaintiff seeking a mandatory injunction "is doubly demanding: . . . she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). "The district court should deny such relief unless the facts and law clearly favor the moving party." *Id.* (citations and quotation marks omitted).

Even where a clear showing has been made, "because injunctive relief must be narrowly tailored to remedy the specific harm alleged, an overbroad injunction is an abuse of discretion." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140–41 (9th Cir. 2009) (citations, quotation marks, brackets, and ellipsis omitted) (vacating injunction where district court "failed to tailor the injunction" to the specific alleged constitutional harm of plaintiffs and instead "issued an overbroad injunction").

"Every order granting an injunction and every restraining order must: (A) state the reasons why

---

*Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012).

it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Regarding the first requirement, the reasons for the injunction must be forward-looking, as "the well-established purpose of [] preliminary injunctive relief . . . is to prevent future irreparable harm before a final judgment on the merits can be made, not to remedy past harms." *GSI Tech., Inc. v. United Memories, Inc.*, No. C 13-1081 PSG, 2013 WL 12172990, at *10 (N.D. Cal. Aug. 21, 2013). Regarding the second and third requirements, "an injunction should be phrased in terms of objective actions, not legal conclusions." *Hope*, __ F.3d __, 2020 WL 5001785, at *5 (citation and quotation marks omitted) (vacating TRO issued in immigration-detainee COVID-19 lawsuit where the district court required, among other things, that the government impose "reasonable" terms of supervision and comply with "guidance," as being vague and violating Rule 65(d)); *see Abbott v. Perez*, 138 S. Ct. 2305, 2321 (2018) (discussing the importance of Rule 65(d), which "protects the party against which an injunction is issued by requiring clear notice as to what that party must do or refrain from doing"). "'The specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.'" *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1150 (9th Cir. 2011) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)).

A court entering a preliminary injunction "must find the facts specifically and state its conclusions of law separately." Fed. R. Civ. P. 52(a); *Diouf v. Mukasey*, 542 F.3d 1222, 1235 n.7 (9th Cir. 2008).

## II.   Medical-Care Standard

Claims brought by immigration detainees for allegedly inadequate medical care are evaluated under an objective deliberate-indifference standard. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (analyzing claim by pretrial detainee who had not been criminally convicted under objective deliberative-indifference standard); *Arizmendi de Paz v. Wolf*, No. 20-cv-955-WQH-BGS, 2020 WL 3469372, at *8 (S.D. Cal. June 25, 2020) (applying objective deliberate-indifference standard to immigration detainee in COVID-19 lawsuit). The elements of an inadequate-medical-care

claim under an objective deliberative-indifference standard are that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (citation, quotation marks, and brackets omitted). The "mere lack of due care by a state official" does not plead a claim. *Id.* "Thus, the plaintiff must prove more than negligence but less than subjective intent — something akin to reckless disregard." *Id.* (citations and quotation marks omitted). "[A] mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation, quotation marks, brackets, and ellipsis omitted); *see Hayes v. Williams*, No. C-05-00070 RMW, 2009 WL 3004037, at *4 (N.D. Cal. Sept. 15, 2009) (under the objective deliberative-indifference standard, "a plaintiff must [] show that the course of treatment was medically unacceptable under the circumstances. This requires showing more than a difference of medical opinion about a prisoner's treatment.") (citations, quotation marks, and ellipsis omitted); *accord Hope*, __ F.3d __, 2020 WL 5001785, at *12 (same, in immigration-detainee COVID-19 lawsuit).

## APPLICATION

There currently are 101 detainees at Mesa Verde. Declaration of Dr. Richard Medrano, Regional Medical Director for Wellpath ¶ 24 (Medrano Decl.). 41 of these detainees have tested negative for COVID-19 on each of their repeated tests. *Id.* (A forty-second detainee tested negative on July 30, 2020 and subsequently refused all additional offers of testing. *Id.*) Of the remaining 59 detainees, 44 have now met the CDC's guidance for discontinuing isolation and precautions. *Id.* ¶¶ 24–25.[3] The remaining

---

[3] The CDC states that "For most persons with COVID-19 illness, isolation and precautions can generally be discontinued 10 days *after symptom onset* and resolution of fever for at least 24 hours, without the use of fever-reducing medications, and with improvement of other symptoms. A limited number of persons with severe illness may produce replication-competent virus beyond 10 days that may warrant extending duration of isolation and precautions for up to 20 days after symptom onset; consider

15 detainees who have tested positive for COVID-19 remain cohorted in Dorm B or housed in isolation units. *Id.* ¶ 22. Only six to eight detainees on average have active symptoms at any given time (such as headache, malaise, or diarrhea). *Id.* ¶ 21. While medical staff are routinely monitoring the detainees for changes in condition and development and/or changes for symptoms, not every detainee needs medicine for COVID-19 or other medical intervention. *Id.* Most will likely recover via rest and fluids. *Id.*; *accord* CDC, *Coronavirus Disease 2019 (COVID-19) > What to Do If You Are Sick* (May 8, 2020), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html (last visited Aug. 31, 2020) (*What to Do*) ("Most people with COVID-19 have mild illness and can recover at home without medical care."); *see United States v. Mays*, No. 17-cr-96-pp, 2020 WL 4048501, at *5 (E.D. Wis. July 20, 2020) (quoting CDC, *What to Do*, and applying it to correctional facility); *Chunn v. Edge*, __ F. Supp. 3d __, No. 20-cv-1590 (RPK) (RLM), 2020 WL 3055669, at *16 (E.D.N.Y. June 9, 2020) (discussing "the ordinary standard of care for COVID-19 patients, who are commonly advised to 'isolate and manage' symptoms rather than to seek daily assessments from healthcare providers").

     In light of the above, Plaintiffs have not made a "*clear showing*" that an injunction is warranted, *cf. Mazurek*, 520 U.S. at 972 (emphasis in original), let alone that the law and facts "*clearly favor*" their position that they are entitled to a mandatory injunction, *cf. Garcia*, 786 F.3d at 740 (emphasis in original). 86 of the 101 detainees either have never tested positive for COVID-19 or have now met the CDC's guidance for discontinuing isolation and precautions. Medical staff at Mesa Verde — who are onsite 24 hours a day, seven days a week, and spend approximately three hours per day in Dorm B[4] — have been providing and continue to provide medical care to the remaining 15 detainees who have tested positive for COVID-19 and who have not met the CDC's guidance for discontinuing isolation and precautions, including checking each such detainee's temperature, blood pressure, heart rate, respiration rate, and oxygen-saturation level twice a day; asking each such detainee about their symptoms; and

---

consultation with infection control experts. For persons who never develop symptoms, isolation and other precautions can be discontinued 10 days *after the date of their first positive RT-PCR test for SARS-CoV-2 RNA.*" CDC, *Coronavirus Disease 2019 (COVID-19) > Duration of Isolation & Precautions for Adults* (Aug. 16, 2020) (emphasis in original), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited Aug. 31, 2020); *accord* Medrano Decl. ¶ 25.

[4] Medical staff previously spent approximately four to six hours a day in Dorm B, [First] Declaration of Dr. Richard Medrano, Regional Medical Director for Wellpath ¶ 20 (ECF No. 581-1), but this number has gone down as the population in Dorm B has gone down. [Second] Medrano Decl. ¶ 20.

responding to detainee sick-call requests. Medrano Decl. ¶¶ 7, 15–20; *accord* Third Supplemental Declaration of Dr. Robert B. Greifinger ¶ 31 (ECF No. 591-4) (agreeing that medical staffing levels are adequate). Medical staff follow both the CDC's guidelines regarding COVID-19 symptoms and the ICE Health Services Corps' recommendations, and often exceed these guidelines. Medrano Decl. ¶ 3 & Ex. A. Medical staff use their experience, training, and medical judgment to determine whether to send a detainee to the hospital (and do not need ICE's or GEO's approval to do so). *Id.* ¶¶ 13, 26.[5]

The medical care provided at Mesa Verde already complies with all applicable constitutional and legal requirements.  Plaintiffs have not made a clear showing that this level of medical care for the remaining 15 detainees in Dorm B or isolation units, or even for all 59 detainees who have tested positive for COVID-19 at any time, is so constitutionally deficient that a further court order is warranted. *Cf., e.g.*, *Chunn*, __ F. Supp. 3d __, 2020 WL 3055669, at *15–16 (rejecting argument by class-action prisoner plaintiffs on behalf of both prisoners and pretrial detainees that "twice-daily medical rounds are insufficient" and rejecting "[p]etitioners' preferred procedures[, which] go beyond anything the CDC has recommended" and "do not even appear to be consistent with the ordinary standard of care for COVID-19 patients, who are commonly advised to 'isolate and manage' symptoms rather than to seek daily assessments from healthcare providers"); *United States v. Billings*, No. 19-cr-00099-REB, 2020 WL 4705285, at *4 (D. Colo. Aug. 13, 2020) (discussing the federal correctional facility with the largest number of COVID-19 infections of all federal facilities in the country, and describing the facility's efforts "implementing mass testing of all inmates and staff, checking inmates' temperature twice daily, and providing cloth masks to all inmates" with approval as "sweeping"); *Duvall v. Hogan*, No. ELH-94-2541, 2020 WL 3402301, at *5, *13 (D. Md. June 19, 2020) (addressing lawsuit brought by pretrial detainees under the Fourteenth Amendment involving a detention facility where 60 detainees and staff members had tested positive and one staff member had died, and describing the

---

[5] According to Google Maps, Mercy Hospital on Truxtun Avenue in Bakersfield is eight minutes away from Mesa Verde. Google Maps, https://www.google.com/maps/dir/Mesa+Verde+ICE+Processing+Facility,+425+Golden+State+Ave,+Bakersfield,+CA+93301/Mercy+Hospital+Downtown+-+Bakersfield,+2215+Truxtun+Ave,+Bakersfield,+CA+93301 (last visited Aug. 31, 2020); *accord* Medrano Decl. ¶ 13. Of the last five detainees sent to the hospital, only one was admitted; the other four detainees were returned to Mesa Verde without being admitted to the hospital, and with prescriptions for the same medications they were already prescribed by Mesa Verde medical staff. Medrano Decl. ¶ 14.

facility's efforts, including "creat[ing] a quarantine housing unit for infected detainees" who "are monitored twice per day by medical staff and remain there for at least 14 days," as "a reasonable response to the unforeseen, rapidly evolving COVID-19 pandemic"); *Engelund v. Doll*, No. 4:20-CV-00604, 2020 WL 1974389, at *10–11 (M.D. Pa. Apr. 24, 2020) (addressing lawsuit brought by immigration detainees and holding that conditions of confinement that included daily temperature checks and screenings for COVID-19 symptoms "do not amount to punishment in violation of the Constitution" or deliberate indifference); *see also Valentine*, 956 F.3d at 802 (staying COVID-19 preliminary injunction in prisoner class action where the district court had issued its injunction because "it wanted to see 'extra measures'" that "go beyond [the facility's] and CDC policies" but where plaintiffs cited no precedent holding that the facility's and CDC policies were insufficient to satisfy the Constitution).

Plaintiffs and their experts might prefer a different plan. But as courts in this district and elsewhere have recognized:

> Defendants' approach may not be the plan that Plaintiffs think best; it may not even be the plan that the Court would choose, if it were sufficiently informed to offer an opinion on the subject. But the Fourteenth Amendment does not afford litigants and courts an avenue for de novo review of the decisions of prison officials.

*Gonzalez v. Ahern*, No. 19-cv-07423-JSC, 2020 WL 3470089, at *8 (N.D. Cal. June 25, 2020) (quotation marks and brackets omitted) (addressing COVID-19 claims of plaintiffs, whom the court assumed to be pretrial detainees, under the objective deliberative-indifference standard and denying TRO) (quoting *Money v. Pritzker*, __ F. Supp. 3d __, No. 20-cv-2093, 2020 WL 1820660, at *18 (N.D. Ill. Apr. 10, 2020)). As the Third Circuit recently held in vacating a TRO issued in an immigration-detainee COVID-19 lawsuit, "'mere disagreement' as to the response to the risk to Petitioners in light of their medical condition will not support constitutional infringement." *Hope*, __ F.3d __, 2020 WL 5001785, at *12. As the Fifth Circuit similarly held in staying a district court's preliminary injunction in a COVID-19 prisoner class action, "[a]lthough the district court might do things differently, mere 'disagreement' with [the facility's] medical decisions does not establish deliberate indifference." *Valentine*, 956 F.3d at 803. As another court similarly explained in denying a motion for a TRO and preliminary injunction challenging cohorting of prisoners who tested positive for COVID-19, including

the medical care they provided received:

> [T]he existence of an alternative plan — even a better plan — is not evidence that the challenged plan is unconstitutional or illustrative of deliberate indifference. Whether the Plaintiffs' proffered alternative plan . . . is feasible and better than Defendants' plan is not the inquiry. Plaintiffs must offer evidence that the challenged plan is unconstitutional, and they have not done so.

*Gumns v. Edwards*, No. 20-231-SDD-RLB, 2020 WL 2510248, at *15 (M.D. La. May 15, 2020).

## CONCLUSION

Plaintiffs have not shown that the medical care at Mesa Verde is constitutionally deficient, let alone made the required clear showing that the law and facts clearly favor them such that they are entitled to a mandatory injunction. Defendants thus respectfully submit that no further Court order is warranted.

If the Court were to enter a further order, Defendants respectfully request that the Court state specifically in objective terms what the constitutional requirements are for treating COVID-19 patients. For example, if the Court were to determine that twice-daily temperature and vital-sign checks are constitutionally insufficient,[6] Defendants respectfully request that the Court state specifically in objective terms exactly what the constitutional requirements are and what Defendants must do to meet those requirements. *Cf.* Fed. R. Civ. P. 65(d). Defendants further respectfully submit that any order must be "narrowly tailored" to constitutional requirements and that an order directing Defendants to go beyond constitutional requirements would be inappropriate.[7] Plaintiffs' requested order — an order for "Defendants to bring their care up to acceptable standards" or otherwise to release additional detainees — is too vague to satisfy the requirements of Rule 65(d)(1) and would leave Defendants unclear as to how to comply. *Cf. Hope*, __ F.3d __, 2020 WL 5001785, at *5 (vacating TRO issued in immigration-

---

[6] *But see Chunn*, __ F. Supp. 3d __, 2020 WL 3055669, at *15–16; *Billings*, 2020 WL 4705285, at *4; *Duvall*, 2020 WL 3402301, at *5, *13; *Engelund*, 2020 WL1974389, at *10–11.

[7] *Cf. Valentine*, 956 F.3d at 802 (staying COVID-19 preliminary injunction where plaintiffs cited no precedent that facility's policies were constitutionally deficient); *Stormans*, 586 F.3d at 1140–41 (vacating as "overbroad" an injunction where district court "failed to tailor the injunction to remedy the specific harm alleged by the [plaintiffs]"); *see also Gonzalez*, 2020 WL 3470089, at *8 (COVID-19 medical-care claim, even under "the more stringent objective deliberate indifference standard," "does not afford litigants and courts an avenue for de novo review of the decisions of prison officials"). Defendants maintain that the current medical care practices and procedures at Mesa Verde satisfy all constitutional requirements.

detainee COVID-19 lawsuit that required the government impose "reasonable" terms of supervision and comply with "guidance," as being vague and violating Rule 65(d)); *see also, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1048 (9th Cir. 2013) (vacating injunction prohibiting copyright defendant from targeting a user base "generally understood" to be engaging in infringement, because "[h]ow is one to determine what is 'generally understood' — whose knowledge matters, and how widespread must the understanding be? . . . . Unless it can be rewritten to comply with the requirements of Rule 65(d) for fair notice through adequate specificity and detail, [that requirement] must be excised.").

DATED: August 31, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*s/Shiwon Choe*
SHIWON CHOE
Assistant United States Attorney

Attorneys for Federal Defendants

BURKE, WILLIAMS & SORENSEN, LLP

*s/Susan E. Coleman\**
SUSAN E. COLEMAN

Attorneys for GEO Defendants

\* In compliance with Civil Local Rule 5-1(i)(3), the filer attests that all signatories have concurred in the filing of this document.