<u>**WALTER IVAN CARRILLO TORRES**</u>
<u>**SHORT-FORM BAIL APPLICATION**</u>

<u>**SUMMARY:**</u>

Walter Carrillo Torres is a 27-year-old who has lived in the United States since he was six years old. He presents a strong application for bail.[1] *See* Dkt. 90 (setting forth standard for bail applications); Dkt. 361 (setting forth process for bail applications). *First*, Mr. Carrillo Torres is medically vulnerable and at heightened risk of serious complications or death now that he has tested positive for COVID-19. He was diagnosed with hypertension in 2018 while in state custody and still suffers from it. On August 13, 2020, Mr. Carrillo Torres tested positive for COVID-19. *Second*, Mr. Carrillo Torres does not present a danger to the community. He has two convictions for nonviolent burglaries, both of which occurred when he was a very young adult— 18 and 20 years old. He readily admits his mistakes as a teenager and young adult and committed himself to meaningful rehabilitation while in custody and after release. *Third*, Mr. Carrillo Torres has a strong release plan and does not present a flight risk. Upon release, he plans to quarantine as needed and live with his Lawful Permanent Resident mother, with whom he is extremely close, in her long-time home in Sacramento, and pursue all possible forms of relief to remain safely in the United States before the Immigration Court.

1. <u>**Name:**</u> Walter Ivan Carrillo Torres

2. <u>**Age:**</u> 27

3. <u>**Sex:**</u> Male

4. <u>**Primary language:**</u> Fluent in English and Spanish

5. <u>**If Hearing, Is an Interpreter Needed?**</u> No

6. <u>**Detained in Mesa Verde Detention Facility**</u> _X__ <u>**or Yuba County Jail**</u>

7. <u>**Dorm Unit:**</u> B

8. <u>**Date of Bond hearing, If any:**</u> N/A

9. <u>**Outcome of Bond Hearing, If Any:**</u> N/A

10. <u>**Length of Time in Detention:**</u> Arrived at Mesa Verde on July 29, 2020.

11. <u>**Medical Condition(s) that Put Detainee at Risk:**</u>

---

[1] Please note that although class counsel believe that Mr. Carrillo Torres meets the criteria for a strong bail application pursuant to the Court's order at Dkt. 361, this position should not be construed as class counsel's position regarding the relative strengths or weaknesses of remaining class members, for many of whom the government has produced no documents and whose applications class counsel continues to actively investigate.

In 2018, Mr. Carrillo Torres was diagnosed with hypertension and still suffers from this condition.

He has also been diagnosed with PTSD and Major Depression, which stems from serious child abuse that he suffered at the hands of his grandmother in Mexico and his father in the United States. Mental health experts have concluded, and courts have found, that mental health conditions, including depression, impact the immune system, and therefore render those affected at increased risk of developing COVID-19 complications. See, e.g., *Fraihat v. ICE*, No. 19-cv-1546-JGB, 2020 WL 1932570, at *16 n. 20 (C.D. Cal. Apr. 20, 2020); *Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *4 (N.D. Cal. Apr. 12, 2020) (PTSD, depression, and latent tuberculosis). In an expert declaration submitted in a COVID-related habeas petition, Dr. Mira Zein, MD, MPH, provided that these mental illnesses "directly stimulate production of pro-inflammatory cytokines, as well as downregulate cellular immunity leading to increased risk of acute and prolonged infection, and delayed wound healing. The pro-inflammatory states found in these mental health disorders leads to a complex feedback in which inflammation changes brain circuits and neurochemical expression, perpetuating a cycle of immune dysfunction and mental health symptoms."[2]

On 7/23/2020 while finishing his sentence at Corcoran State Prison, Mr. Carrillo Torres tested negative for COVID-19. Mesa Verde staff tested him upon his arrival on 7/29/2020, resulting in a negative test. Mr. Carrillo Torres was concerned that at the time, Mesa Verde staff never informed him directly, either verbally or in writing, of these results. About the same time as he took a subsequent test on 8/4/2020, he began suffering from serious symptoms consistent with COVID-19, including chest pains, chills, fever of 100 degrees, pain in his bones, and lack of energy, causing him to be bedridden for about a week. On 8/13/20—9 days after his last test and still suffering from symptoms—MVDF staff verbally informed him that he had tested positive for COVID-19. He was moved to the isolation Dorm B the same day, where he currently remains.

## 12. <u>Attorney Name, Phone, Address and Email:</u>

Katherine Fleming
CRLA Foundation
2210 K Street, Suite 201
Sacramento, CA 95816
kfleming@crlaf.org
(279) 222-4180

## 13. <u>Felony or Misdemeanor Convictions, including Date and Offense:</u>

████████████████████████████████████████████████

---

[2] Statement by Dr. Mira Zein, MD, MPH, Clinical Assistant Professor, Consult Liaison Psychiatry, Stanford University School of Medicine, Department of Psychiatry and Behavioral Sciences, April 6, 2020, available upon request.



After Mr. Carrillo Torres' father was deported, his mother had to work around the clock to support her three children, therefore Mr. Carrillo Torres and his siblings were left alone much of the time.

Mr. Carrillo Torres' home life was extremely strained after his father was deported, and the stress caused him and his brothers to argue with one another. He felt that he shouldered the burden of taking care of the home while his mother had to be out of the home working, which included designating chores to his brothers. Although both of his brothers worked and lived a significant distance from where Mr. Carrillo Torres was incarcerated, they would travel to visit him in prison and always spend as much time as they could to support him.

The United States Supreme Court has recognized that juveniles have reduced culpability and are more capable of change than adults. *See Graham v. Florida*, 560 U.S. 48, 68 (2010) (finding that sentencing juveniles to life without parole to be unconstitutional in non-homicide cases); *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (holding that mandatory sentences of life without the possibility of parole are unconstitutional or juvenile offenders). The Court cited evidence regarding adolescent brain development, finding that partly due to the immature brain development, adolescents are more impulsive and less able to think through consequences of their actions but that they are also more capable of change. *See Graham*, 560 U.S. at 68.

**Adult Convictions**

- 3/9/11: Burglary, PC 459; sentenced to 2 years
- 10/18/13: Burglary, PC 459; sentenced to 9 years.

Mr. Carrillo Torres was convicted on March 9, 2011 under PC 459 for residential burglary. He was 18 years old at the time he was sentenced. He was again convicted of burglary under PC 459 on October 18, 2013. As this was the second "strike" on his record, he received a mandatory minimum sentence increase under PC 667, amounting to 9 years in prison total. He was 20 years old at the time of this second adult conviction. No one was home at the time of his entry for either burglary conviction and no one was injured as a result of these non-violent, albeit serious, convictions. Mr. Carrillo Torres readily admits to and regrets entering the homes in order to take electronics or other items of value.

Mr. Carrillo Torres' RAP sheet includes an initial charge of attempted murder with a gang enhancement, PC 187/186.22, from May 24, 2017, prosecutors did not pursue the matter further after Mr. Carrillo Torres was cleared of any involvement in the underlying incident. The incident arose as Mr. Carrillo Torres was exercising while incarcerated at Pelican Bay Prison. A fight between other inmates and correctional officers began around him and he reports that charges were originally initiated against everyone in the vicinity—about 100 individuals—including Mr. Carrillo Torres, pending investigation. These charges were dropped once the individuals involved in the fight were correctly identified; because Mr. Carrillo Torres was not involved in the fight, charges against him also were dropped. Mr. Carrillo Torres has never been involved in or affiliated with a gang or gang-related activities.

**Rehabilitation**

Mr. Carrillo Torres has spent his entire young adulthood in prison and he deeply regrets his actions. He reports having anger and depression issues at the time that the convictions occurred which influenced him to make these poor choices. He has grown tremendously over the years and he sincerely wants to prove himself to his family and his community that he can turn his life around upon release. Following his last conviction, Mr. Carrillo Torres took it upon himself to enroll in several classes, including classes on family relationships, anger management, and computer literacy, which he completed in 2017. He also took completed a course in criminal thinking for which he received a certificate in 2019. This course in particular helped him understand the triggers that have caused him to make bad decisions in the past and how to make better decisions in the future to be able to move his life forward in the right direction. If Mr. Carrillo Torres is released, he hopes to continue his education and attend culinary school to become a chef. He also wishes to continue therapy and engage in anger management. Mr. Carrillo Torres intends to volunteer at his local place of worship, St. Paul Catholic Church, in Sacramento. His mother and brothers will support his participation in these programs and activities on his path to growth and improvement.

**14. Pending Criminal Charges and Outstanding Warrants, including Jurisdiction and Offense:** None.

**15. <u>Scheduled removal date:</u>** N/A. Mr. Carrillo Torres is currently in removal proceedings before the Immigration Court and he is committed to pursuing all available forms of relief.

**16. <u>Marital status and location of spouse, significant other, children, parents and siblings:</u>**

Mr. Carrillo Torres is extremely close to his mother and his siblings, which include:
- Patricia Torres, mother, Lawful Permanent Resident
- Edgar Carrillo Torres, brother, Lawful Permanent Resident
- Angel Carrillo Torres, brother, DACA recipient

Mr. Carrillo Torres' family members all live in the Sacramento area, where he grew up. They remain a close-knit family and provide consistent emotional and financial support to one another.

**17. <u>Proposed Custodian, including Address and Phone Number, and Description of Proposed Release Residence:</u>**

Mr. Carrillo Torres has a strong release plan in place and the support of his family to help him succeed. If released from custody, Mr. Carrillo Torres will reside with his Lawful Permanent Resident mother, Patricia Torres. Ms. Torres is self-employed through her business, Paty Housekeeping.  She can be reached at ▮▮▮▮▮▮▮. Her address is ▮▮▮▮▮▮▮▮▮▮▮, Sacramento, California 95828. Ms. Torres will pick up her son from MVDF and bring him home to Sacramento. She will also provide Mr. Carrillo Torres a mask upon picking him up.

Given his COVID-19 diagnosis, Mr. Carrillo Torres' mother and brothers have the financial resources and are very willing to secure a local hotel room for Mr. Carrillo Torres to isolate as needed directly after his release from detention. His family will regularly monitor his health and symptoms, bring him any medication, and transport him to medical care as needed. They will also bring him food and all other necessities throughout his stay.

Once it is safe for Mr. Carrillo Torres to no longer quarantine, he will have his own space at his mother's house where he will reside, and where he and his family will abide by local stay at home orders and wear masks when outside of the home or in other situations where masks are warranted.

Class counsel has contacted Mr. Carrillo Torres' parole officer Antonio Richardson at the California Department of Corrections and Rehabilitation ("CDCR") at his phone number 916-838-1866 to confirm his reporting requirements upon release from ICE custody. On 8/31/20, the parole officer confirmed to class counsel that Mr. Carrillo Torres must report to the CDCR adult parole office located at 4616 Roseville Road, Suite 100, North Highlands, California 95660, within one working day of his release from Mesa Verde. Mr. Carrillo Torres will abide by these requirements and his immigration counsel will assist him in meeting them.

Mr. Carrillo Torres will also be working with an immigration attorney to file for several forms of relief in the immigration court. His mother has indicated that she will ensure that Mr. Carrillo Torres has transportation to immigration court hearings and any other important meetings. His mother is ready to welcome her son to work for her to help him begin a new chapter of his life.

Walter Ivan Carrillo Torres

Mr. Carrillo Torres' brothers, Angel and Edgar, have also committed to helping their brother get back on his feet.

**18. Applicant's Ties To The Location Of The Proposed Residence (Such As Length Of Time, Family Members, Prior Employment, Etc.)**

Mr. Carrillo Torres has called Sacramento home since he came to the United States as a six-year-old boy. His mother and siblings all live in Sacramento and all have documented immigration status. While he did fall into the wrong crowd as an adolescent and young adult, many years have passed and he has had no communication with these individuals while in prison. Mr. Carrillo Torres looks forward to a fresh start with his family in Sacramento upon his release.

**19. Employment History:**

Mr. Carrillo Torres has worked in various informal laborer and agricultural jobs as an adolescent and adult in California. While serving his sentence, he worked as part of the kitchen staff.

**20. Other Information Relevant to Bail Determination:**

**History of Trauma and Abuse**

As a young child Mr. Carrillo Torres was left by his parents in Mexico as they made their way to the United States to create a new life for their family. He was left in the care of his maternal grandmother who was physically abusive to him and his brothers. When Mr. Carrillo Torres was finally able to reunite with his parents in the United States, he found himself in an even more abusive household than when he was in Mexico as a result of serious abuse by his father. He was physically and emotionally abused by his father and he witnessed countless incidents of his father's abuse against his mother. Even at such a young age, Mr. Carrillo Torres would intervene between his parents to try to protect his mother from his father's physical abuse. His father was ultimately deported as a result of the abuse and his mother was granted a visa for victims of crime based on the abuse she suffered. Mr. Carrillo Torres' mother was often obligated to leave him and his siblings alone to be able to work outside of the home, which she now regrets. She and Mr. Carrillo Torres have received counseling together and have a deep and strong relationship.

Mr. Carrillo Torres and his mother have maintained a strong bond while he has been in prison during the last seven years and they spoke by phone at least once a week during that time. His mother is terrified for his well-being inside detention and often cries whenever she thinks of how his childhood trauma and decisions he made when he was so young have endangered his safety and his immigration status. She is dedicated to helping her son defend himself in his immigration case, and Mr. Carrillo Torres is extremely grateful for all of her support. They are very much looking forward to reuniting in person.

Mr. Carrillo Torres has been diagnosed with severe and chronic PTSD as well as Major Depression based on the abuse he suffered as a child. Mr. Carrillo Torres faults only himself for

6

Walter Ivan Carrillo Torres

his prior actions. If released, he will continue to seek treatment for his PTSD and depression, as well as family counseling with his mother to continue healing from their past shared trauma.

All information in this application is accurate based on information and belief. This application was prepared by Katherine Fleming, using information ascertained by telephone conversations with Mr. Carrillo Torres and his mother, Patricia Torres. In preparing this application, counsel reviewed Mr. Carrillo Torres' ICE rap sheet, I-213, and criminal and immigration records as disclosed by Mr. Carrillo Torres' prior counsel.

Respectfully submitted,
*/s/ Hayden Rodarte*
Hayden Rodarte

7
Walter Ivan Carrillo Torres