## FEDERAL DEFENDANTS' RESPONSE TO SHORT-FORM BAIL APPLICATION[1]

### Walter Ivan Carrillo Torres

**8. Date of bond hearing, if any:**

Mr. Carrillo Torres is detained pursuant to 8 U.S.C. § 1226(c).

**11. Medical condition(s) that put detainee at risk:**

Mr. Carrillo Torres's claims in his bail application regarding his medical history are contradicted by the record. When Mr. Carrillo Torres arrived at Mesa Verde on or about July 29, 2020, he was offered a point of care COVID-19 test, and he refused to be tested. *See, e.g.,* ECF No. 656 at 4-5. Mr. Carrillo Torres did consent to a COVID-19 test on August 4, 2020; however, the results of that test were delayed. *Id.* In the interim, Mr. Carrillo Torres was offered another COVID-19 test on August 11, 2020, which he refused. *Id.* On August 13, 2020, Mr. Carrillo Torres changed his mind and was tested. While the results of that test were pending, on August 15, 2020, Mr. Carrillo Torres was offered a point-of-care test, and the same-day results of that test showed that Mr. Carrillo Torres was positive for COVID-19. He was informed of his test results on August 15, 2020. Also on August 15, 2020, he was moved to Dorm B, which is set aside to house COVID-positive detainees. *See* ECF Nos. 544 at 4 and 554 at 5 (August 13 and 14, 2020 daily reports showing Mr. Carrillo Torres in Dorm C) and ECF No. 562 at 5 (August 17, 2020 daily report showing Mr. Carrillo Torres in Dorm B). On August 16, 2020, the results of the August 13, 2020 test also returned with a positive result. ECF No. 656 at 4-5.

---

[1] Class counsel's assertion that Federal Defendants have produced "no documents" for "many" of the class members who have not presented bail applications is incorrect. Federal Defendants' weekly spreadsheets contain a summary of all detainees' criminal histories and state when Defendants have record of the detainee being diagnosed with a CDC risk factor. Additionally, of the approximately 48 detainees for whom bail applications had not been presented as of June 10, 2020, Defendants provided I-213s for 29 of those individuals by May 27, 2020, and the remaining I-213s by June 12, 2020. Rap sheets for 22 of those individuals were provided on May 7, 2020, and 25 additional rap sheets were provided on June 17, 2020. (Rap sheets must be reviewed for privilege by the Federal Bureau of Investigation before production.) With respect to medical records, Defendants received Class Counsel's request for the medical records of these individuals on June 10, 2020, and produced the requested medical records on June 19, 2020. Defendants have also produced I-213s, medical records, and rap sheets for individuals newly admitted to ICE custody on a rolling basis, including on June 29, July 10, July 20, July 31, August 7, and August 18, 2020.

On August 17, 2020, Mr. Carrillo Torres saw a doctor and denied symptoms of COVID-19.  Additionally, when Mr. Carrillo Torres was tested on August 4, August 13, and August 15, he did not report any symptoms.  Mr. Carrillo Torres has not placed any sick calls in recent weeks, and he has denied symptoms in all symptom screens since he tested positive on August 15, 2020.  From August 15, 2020, to August 17, 2020, his temperature was between 97.5 degrees and 98.1 degrees.  On August 27, 2020, Mr. Carrillo Torres was determined to no longer need isolation and precautions.  He has, however, declined to move to Dorm C.

Mr. Carrillo Torres's medical records from his intake examination and initial history and physical assessment do not show diagnoses for hypertension, PTSD or major depression.  He was not on any mediation when he arrived at Mesa Verde, and the medical information provided from his prior incarceration facility do not list any medications or mental health diagnoses.

The CDC states that people with hypertension "might be at an increased risk" for severe illness from COVID-19, and that studies on this factor present mixed evidence.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html.  The CDC does not list PTSD or major depression as conditions that place individuals at higher risk of severe illness from COVID-19.  See Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 31, 2020).

**13. Felony or misdemeanor convictions, including date and offense:**

[redacted]

███████████████████████████████████████

███████████████████████████████████████

███████

Mr. Carrillo Torres's criminal conduct only continued when he turned 18. On March 9, 2011, Mr. Carrillo Torres was convicted of first-degree burglary (California Penal Code § 459) and sentenced to two years in prison and five years of probation. Mr. Carrillo Torres stole a 46-inch television, a laptop computer, $70 in change, and costume jewelry, according to a probation report summary of the police report. The police located Mr. Carrillo Torres by getting his fingerprints from the scene.

On October 18, 2013, Mr. Carrillo Torres was convicted of first-degree burglary (California Penal Code § 459) and sentenced to four years in prison. Mr. Carrillo Torres received an enhancement of an additional five years in prison for being previously convicted of a felony (California Penal Code § 667(a)). According to the 2013 Probation Officer's report, Mr. Carrillo Torres and others entered the victim's apartment through the kitchen window. While inside, they drank wine and ransacked the home. They stole a 60-inch television, a 33-inch television, a Blu-Ray player, two Armani watches, a Coach watch and three Armani suits. The police located Mr. Carrillo Torres by getting his fingerprints from inside the apartment. The police discovered that Mr. Carrillo Torres was on "formal searchable probation for a prior residential burglary" while committing the crime.

**20. Other Information Relevant to Bail Determination:**

In August 2011, Mr. Carrillo Torres was placed in removal proceedings and detained in ICE custody. On September 1, 2011, Mr. Carrillo Torres was released from ICE custody after posting a bond. While he was released on bond, he was convicted of the 2013 offense above. On March 9, 2016, his removal proceedings were administratively closed because Mr. Carrillo Torres was in state prison. In August 2020, Mr. Carrillo Torres's removal proceedings were re-calendared after he was released from state custody.

3

In 2013, the Mr. Carrillo Torres admitted to the probation officer that he did not report to his probation officer upon his release from custody for his 2011 conviction. Mr. Carrillo Torres is reported as saying that he did not think he had a probation officer for his 2011 conviction because everyone thought he was getting deported.

Mr. Carrillo Torres recently received a facility incident report for participating in a Riot/Fight.

Mr. Carrillo Torres's criminal record shows that even while on probation for prior offenses and while released from immigration custody on bond, he is not able to discontinue his significant pattern of crime. And although his past offenses have been mostly been burglary, such crimes are not without risk to others if he should happen to encounter someone while breaking into their house. He should not be released from custody because he is a danger to persons and property.