WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Petitioners-Plaintiffs*
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (SBN 300505)
genna.beier@sfgov.org
EMILOU H. MACLEAN (SBN 319071)
emilou.maclean@sfgov.org
FRANCISCO UGARTE (SBN 241710)
francisco.ugarte@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TONY PHAM, Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility,<br><br>Respondents-Defendants. | **CASE NO. 3:20-CV-02731-VC**<br><br>**PLAINTIFFS' STATUS REPORT**<br><br>**JUDGE VINCE CHHABRIA** |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK
(Mass. BBO# 688688)*
tcook@cooley.com
FRANCISCO M. UNGER
(Mass. BBO# 698807)*
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

**STATUS REPORT**

Yuba County Jail is experiencing an escalating COVID-19 outbreak. Thirty-four individuals in custody have tested positive in the past ten days—over half in the past few days—and two staff members tested positive today.[1] While opposing counsel have scrambled to piece together what is going on today in response to a set of urgent inquiries from class counsel last night, ICE evidently made no prior genuine efforts to stay abreast of the number of positive tests at the facility or to develop or learn about the plans for testing, cohorting, quarantining, and isolation at the Jail. At this hour, ICE cannot say what the plan is for housing future symptomatic individuals or class members who test positive, and at present there are no cells available for individual isolation; each of the seven available for that purpose is occupied. There are additional causes for concern: Last month two symptomatic class members were given PCR tests (and not rapid tests) and held in the same cell because of a lack of space for individual isolation; despite ICE's earlier representations to the Court, class members have been held in group settings in the "old jail" where social distancing is difficult if not impossible; and Yuba and Sutter counties have the highest rates of infection in California and their only hospital does not have a single ICU bed available. Plaintiffs provide this status report to ensure the Court has the information currently known to them, and to request an urgent status conference to prevent further COVID spread in the facility.

- **There are at least 34 known COVID-positive individuals in custody—up from a single case less than ten days ago.** On December 11, Federal Defendants informed Plaintiffs that one County inmate tested positive for COVID-19 two days earlier. *See* Declaration of Hayden Rodarte ("Rodarte Dec.") ¶ 3; Ex. A to Rodarte Dec. On December 14, Federal

---

[1] While no class members have yet tested positive, laboratory tests are outstanding, and an increasing number of County inmates in custody are testing positive in different parts of the facility. "Today" refers to Friday, December 18; Plaintiffs are filing this after midnight.

Defendants informed Plaintiffs that three additional County inmates tested positive, and that further testing would only be conducted on December 23, 2020 and only for those in A-pod. *Id.* On December 17, Plaintiffs independently discovered that YCJ had issued a press release providing that seven County inmates had tested positive. Rodarte Dec. ¶ 4; Ex. C to Rodarte Dec. On the same afternoon Plaintiffs learned from Professor Carter White at UC-Davis School of Law (who is counsel in a case monitoring conditions in YCJ) that the number had already increased to 16 individuals. Rodarte Dec. ¶ 4; Declaration of Carter White ("White Dec.") ¶ 12. Plaintiffs provided this information to Federal Defendants, expressing grave concern about the failure of Federal Defendants both to provide timely information and to take immediate action in response to the outbreak. Rodarte Dec. ¶ 4. While Federal Defendants informed Plaintiffs (and the Court) that no class members tested positive,[2] PCR test results remain pending for all but one of the class members currently in custody and the numbers of COVID-positive individuals in custody is growing exponentially. Rodarte Dec. ¶ 7, Ex. B to Rodarte Dec.

- **YCJ and ICE delayed in producing results of facility-wide testing.** YCJ and ICE began facility-wide testing only on December 16, one week after the first positive COVID test; took three days to administer the testing; and now must wait up to three (or more) days for results to be returned. White Dec. at ¶ 18; Rodarte Dec. at ¶ 3; Ex. B to Rodarte Dec. (notes in blue text under "PCR testing" heading: "YCJ now informs that testing began on Wednesday and was completed today"). On December 9, YCJ offered laboratory tests to all of those in A-pod after a positive test there; this includes one medically vulnerable class member held in A-pod. Rodarte Dec. ¶ 3; Ex. B to Rodarte Dec. On December 16, Federal Defendants informed Plaintiffs that "out of an abundance of caution" YCJ officials were offering laboratory tests to

---

[2] At Plaintiffs' request, Federal Defendants administered rapid testing to class members today; two tests were invalid and none tested positive. Rodarte Dec. at ¶ 7; Ex. B to Rodarte Dec.

everyone in the facility. Rodarte Dec. ¶ 3. This hardly seems an abundance of caution: At that time, there were already 16 COVID-positive individuals in "multiple housing units," White Dec. ¶¶ 12-16, though counsel for Federal Defendants were apparently unaware of this. *See* Rodarte Dec. at ¶¶ 3-5. On December 16, 17 and 18, YCJ offered laboratory tests to all of those in custody and results remain pending. Ex. B to Rodarte Dec.

- **YCJ and ICE have not provided consistent rapid testing to those exposed to COVID-19 or to symptomatic individuals in custody, despite delayed results and the risk of rapid spread in congregate facilities.** Despite assertions that symptomatic individuals are tested with antigen ("rapid") tests, White Dec. at ¶ 18; Ex. B to Rodarte Dec.; YCJ and ICE have relied on laboratory testing for at least some symptomatic individuals. Rodarte Dec. at ¶¶ 11-12; White Dec. at ¶¶ 10, 15-17 (some symptomatic and exposed individuals tested with laboratory tests, many apparently still pending; medically vulnerable symptomatic individual waited more than a week to be tested with a PCR test). YCJ has asserted that it lacked sufficient rapid tests for facility-wide testing and has not used antigen tests for COVID contacts, even those held in very close quarters. White Dec. at ¶ 16-18. At Plaintiffs' request, Federal Defendants offered rapid tests to all class members today. Rodarte Dec. ¶¶ 6-7. No such commitment has been made with regard to County inmates, even those who have had close contact with COVID-positive individuals. *See* Ex. B to Rodarte Dec.; White Dec. at ¶ 18.

- **There is inadequate space for quarantine and isolation, and individuals who are symptomatic with test results pending at YCJ are *not* systematically held in isolation.** Federal Defendants provided that, as of today, there are no cells available for individual isolation; and each of the seven cells available for that purpose are occupied. Rodarte Dec. at ¶¶ 8-9; Ex. B to Rodarte Dec.; Ex. C to Rodarte Dec. (YCJ Media Release stating that as of Dec.

16, there were "seven COVID-positive County inmates," each "under 24-hour medical care in isolation."). As recently as mid-November, two class members who were symptomatic were detained together in a double cell while test results were pending "in light of the limited space at the facility." Rodarte Dec. at ¶¶ 11-12. *But see* ECF 357 (PI Order) at 8 ("detainees who present symptoms are placed in isolation in the medical unit"). Federal Defendants have not confirmed that during the current outbreak YCJ is immediately isolating symptomatic detainees. Ex. B to Rodarte Dec. ("Are symptomatic people being held in isolation in individual cells? If not, where and how are they being held? *We do not have information regarding County inmates at this time.*") (emphasis added). There are known risks of cohorting symptomatic detainees together and the Centers for Disease Control and Prevention (CDC) unambiguously recommends against it. CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, rev'd Dec. 3, 2020, *at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html ("If an individual develops symptoms for SARS-CoV-2, they should be considered a suspected COVID-19 case, given a mask (if not already wearing one), and moved to medical isolation immediately (individually, and separately from those with confirmed COVID-19 and others with suspected COVID-19) and further evaluated.").

- **YCJ and ICE have not ensured even the social distancing Federal Defendants described in a sworn declaration prior to this Court's first preliminary injunction.** At the time of the preliminary injunction briefing before this Court, Federal Defendants asserted that no class members were held in the "old" side of the jail because of the

need for adequate social distancing in light of the COVID pandemic[3]; and that no two detainees occupied an individual cell. *See* ECF 264-2 at ¶¶ 11, 37-40 (Declaration of AFOD Dana Fishburn) ("In response to COVID-19, YCJ has moved ICE detainees such that no ICE detainees will no [sic] be housed in the so-called 'old' side of the facility."); *Id.* at ¶ 41 (describing the celled units which then housed ICE detainees: "No two detainees share a cell."). This Court recognized these modifications as significant in granting a PI Order which required Federal Defendants "to maintain, at a minimum, the status quo that currently exists as it relates to protection from transmission of Covid-19." *See, e.g.*, ECF 357 (PI Order) at 12. *See also Id.* at 8 (highlighting that "[a]t Yuba County Jail, no two detainees are sharing a cell in units A, D, and E"). Over the past three months, however, YCJ and ICE have *consistently* held class members in the "old" jail. In the latest report from Federal Defendants, 28% of class members are in the "old jail"; between 18% and 35% of class members have been held in the old jail for each of the past twelve weeks. Rodarte Dec. at ¶ 13. Class members have also been held in the "tanks," a crowded portion of the jail without walls on all sides and with beds spaced only a few feet apart horizontally and only inches apart vertically. *See* Dkt. 229-19 ¶¶ 34-36 (Greifinger Dec., with photographs); ECF 619-4 at 1-2 (Bail Application of Rajnish Rajnish); White Dec. ¶ 4. And at least two class members are being held two to a cell in the old jail. Declaration of Kelly Wells ("Wells Dec.") ¶ 4.

YCJ is also holding County inmates in close quarters without adequate social distancing, crowded together in the tanks, and in some cases occupying every bed in a double-cell, triple-cell or quad-cell. This increases the risk of transmission in a congregate facility, with heightened

---

[3] The "old" side of the jail includes numerous dorms "separated from the hallway only by bars," --without solid walls and "shar[ing] the same airflow; and "extraordinarily cramped living areas with bunk beds set very close together." White Dec. ¶ 4.

risks for class members. In the current outbreak, four medically vulnerable County inmates were sharing a quad-cell, and all became infected with COVID-19. White Dec. ¶¶ 10, 16. At that time they were moved out of the quad-cell. Two class members then were moved into the vacated quad-cell. Wells Dec. ¶ 5.

- **There is a drastic shortage of available intensive care bed space in the County for YCJ class members who become severely infected with COVID-19 and require hospitalization.** The "only hospital serving both" Yuba and Sutter counties had *zero* intensive care unit beds as of December 15, 2020. *See* Rodarte Dec. ¶ 10; Ex. D to Rodarte Dec. The infection rates "are the worst numbers anywhere in the state," with 20-25% of those testing reporting positive results last week. Ex. D to Rodarte Dec.

- **Class members and County inmates are not entirely segregated in YCJ; an outbreak among County inmates will inevitably reach class members and may have already.** Class members have been spread throughout the facility and are not isolated in a particular section of YCJ. *See* Rodarte Dec. at ¶ 13. Class members are housed in sections of YCJ occupied by County inmates; moved frequently throughout the facility; share showers; and have staff who interact with County inmates. *See, e.g.*, Wells Dec. ¶¶ 4-6.

- **At least eight YCJ staff members have tested positive for COVID-19**. Rodarte Dec. at ¶ 7; Ex. B to Rodarte Dec. As there has not previously been staff testing at YCJ, this is almost certainly an undercount of staff who contracted COVID-19 during the pandemic. With the possible exception of the two positive results from today, all of these individuals have tested on their own. On Wednesday, Defendants provided that the ongoing "whole-facility testing" includes "all staff," but have not yet provided further information, including whether staff testing is mandated or recurring, or when it will occur if it has not yet occurred. Ex. B to Rodarte Dec.

*See also* White Dec. ¶ 23 (County expressed concerns about mandated staff testing).

- **Federal Defendants are not getting or sharing timely information about the risk of COVID infection to class members**. Federal Defendants are either not receiving or not providing timely information to class counsel concerning the growing outbreak. At the time that class counsel learned that there were 16 individuals in YCJ custody who had already tested positive, Defendants had only informed class counsel about four positive tests; there was already a YCJ press release announcing seven tests and class counsel ultimately informed Federal Defendants that the number of those testing positive had quadrupled. Rodarte Dec. ¶¶ 3-5; Ex. A to Rodarte Dec. Class counsel do not suggest that there is malice or dishonesty here, but a failure by ICE even to be minimally informed of an urgent and evolving situation which poses grave risks to class members. This is unacceptable. Federal Defendants likewise are inadequately informed about the protocol for testing, quarantine or isolation in the midst of an outbreak, many months into the pandemic, and after egregious lapses led to an outbreak that quickly spread out of control at the one other facility in this litigation. This is also unacceptable.

Given the growing crisis, Plaintiffs asked Federal Defendants to take certain steps to protect class members from unreasonable risk of COVID infection. Federal Defendants have taken some but not all of these steps, and provided incomplete information.

- **Rapid Tests:** Federal Defendants conducted rapid tests of ICE detainees today, but did not commit to provide rapid tests to anyone in contact with newly positive individuals; YCJ is not currently providing rapid tests for close contacts. Federal Defendants identified that "rapid tests have been used on symptomatic individuals," but YCJ and ICE are not *systematically* using rapid tests for symptomatic individuals.

- **Regular Testing of Individuals in Custody and Staff:** Federal Defendants

committed to administer weekly laboratory testing for all individuals in custody, but only for two weeks. Defendants provided that YCJ offered staff testing, but provided no details and could provide no information about "further County staff testing."

- **Isolation and Quarantine:** Federal Defendants provided no information or commitments regarding individual or group isolation of COVID-positive individuals; isolation of medically vulnerable individuals.

- **Releases:** Federal Defendants provided no information or commitments regarding further population reduction.

- **Information Disclosure:** Federal Defendants have asserted that they have consistently provided timely disclosure of "information in their possession," but have made inadequate attempts to *obtain* necessary information concerning COVID risks, or to develop appropriate policies and ensure their proper administration.

*See* Rodarte Dec. at ¶¶ 4-8; Ex. B to Rodarte Dec.

Plaintiffs respectfully request a status conference early next week to discuss the ongoing crisis and whether immediate forms of relief may be required to protect class members from severe illness or death.

Date: December 19, 2020

Respectfully by,

*/s/ Emilou H. MacLean*
Manohar Raju
Public Defender
Matt Gonzalez
Chief Attorney
Francisco Ugarte
Genna Ellis Beier
Emilou H. MacLean
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO

| | |
|---|---|
| Bree Bernwanger<br>Hayden Rodarte<br>LAWYERS' COMMITTEE FOR<br>CIVIL RIGHTS OF<br>SAN FRANCISCO BAY AREA | Sean Riordan<br>William S. Freeman<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF NORTHERN<br>CALIFORNIA |
| Judah Lakin<br>Amalia Wille<br>LAKIN & WILLE LLP | Martin S. Schenker<br>Timothy W. Cook<br>Francisco M. Unger<br>COOLEY LLP |
| Jordan Wells<br>Stephanie Padilla<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF SOUTHERN<br>CALIFORNIA | *Attorneys for Plaintiffs-Appellees* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of December 2020, a true and correct copy of this Status Report was served via electronic mail on (1) Shiwon Choe, counsel for Federal Defendants and (2) Susan Coleman, counsel for GEO Defendants.

<u>/s/ Emilou MacLean</u>
Emilou MacLean
San Francisco Office of the Public Defender

*Attorney for Petitioners-Plaintiffs*