## RENEWED SHORT-FORM BAIL APPLICATION
## RAJNISH RAJNISH

Rajnish Rajnish submitted an initial request for bail on May 15, 2020. Dkts. 181, 194, 198, 200. That request was denied without prejudice in Bail Order 12 on May 20, 2020. Dkt. 206. He submitted a subsequent request for bail on August 26, 2020. Dkts. 619-4 - 619-8, 641-3, 649-5. That request was denied in Bail Order 48 on September 8, 2020. Dkt. 678. Mr. Rajnish provides here only information supplemental to his prior filings.

Mr. Rajnish has been detained at Yuba County Jail since December 30, 2019. He has only had a single misdemeanor conviction in his lifetime—a crime that the Immigration Judge at his merits hearing deemed not a "particularly serious crime" for purposes of granting him withholding of removal, based on a thorough review of the facts of his case. She noted in her decision that his crime, while "offensive" and "bizarre," was "not a violent offense." As provided in his resubmission, Mr. Rajnish was awarded relief from removal under Withholding of Removal by the Immigration Court on July 30, 2020. Despite the grant of protection from the Judge, he was not released from custody because the government filed an appeal and would not stipulate to release on bond. Thus, Mr. Rajnish would be free and with a lawful right to live and work in the United States but for this appeal. Meanwhile, Mr. Rajnish presents a low risk of recidivism and his detention is causing deleterious mental health effects.[1]

Mr. Rajnish respectfully resubmits his application in light of changed circumstances.
    *First*, Federal District Court Judge William Orrick granted Mr. Rajnish's habeas petition, ordering the Government to provide Mr. Rajnish a new bond hearing within 21 days where ICE has the burden to prove that he is a danger or flight risk, or to release him. *Rajnish v. Jennings*, No. 20-cv-07819, Dkt. No. 10 (N.D. Cal. Dec. 22, 2020) (*hereinafter* "Habeas Dec'n").
    *Second*, in light of the escalating COVID-19 outbreak at Yuba County Jail (30% of those in custody have tested positive as of Dec. 21), Mr. Rajnish has a heightened risk of infection in the interim. Particularly in light of the egregious mismanagement of the Yuba County Jail Facility by Yuba County Jail and the Yuba County Sheriffs' Department, *see* Dkts. 894, 894-1, 894-2, 894-3, Mr. Rajnish has a grave risk of infection with a deadly disease while awaiting his court-ordered bond hearing.
    *Finally*, Mr. Rajnish also presents a more robust release plan which includes medical support and a commitment and plan to test and quarantine safely.

### 7. Dorm Unit:

Mr. Rajnish has been transferred between various housing units at Yuba, including in the Old Jail and in the highly risky so-called "tanks." *See, e.g.*, Dkt. 619-4. In the Federal Defendants' most recent report on Friday, Mr. Rajnish was in Pod P, in the Old Jail, but he has apparently since been moved. The repeated movement within the facility—in light of the pandemic and particularly in light of the outbreak—is one of many examples of the failure by Federal

---

[1] In a prior bond hearing, a psychologist testified that Mr. Rajnish was "'medically compliant,' and posed a low risk of recidivism," and provided in a declaration that Mr. Rajnish "has presented evidence that this prolonged detention has resulted in a degradation of his mental health." *Rajnish v. Jennings*, No. 20-cv-07819, Dkt. No. 10, 4-5 (N.D. Cal. Dec. 22, 2020).

Defendants and the Yuba County Sheriffs' Department to take necessary actions to protect the health and safety of Mr. Rajnish and other class members.

## 17. Proposed Custodian

Mr. Rajnish plans to reside in Merced County, CA, with a family friend, Mukesh Kumar, with assistance from local nonprofit NorCal Resist.

After his release, Mr. Rajnish will quarantine with the assistance of the local organization NorCal Resist. This organization can provide Mr. Rajnish with short-term housing pursuant to the terms of his probation in the form of an extended stay at a motel with kitchenette. Mr. Rajnish's attorney is able to coordinate with NorCal Resist volunteers to pick him up from Yuba County Jail if he is released, have him tested for COVID-19, and have him quarantine at the motel until the results are released and he is medically cleared to leave. They will provide him food and all other items that he needs so that he will not need to leave the motel to get food for the period of his quarantine. The agency will also secure a health check and follow-up medical care with Dr. Ian Kim, a primary care physician.

After his quarantine, Mr. Kumar will provide long-term housing for Mr. Rajnish at his home in Merced, at ███████████████, Merced, CA 95341. Mr. Kumar speaks English, and can be reached at ███████████.

Mr. Rajnish's attorney is working with NorCal Resist and Mr. Rajnish's family friend, Mr. Kumar, to procure Mr. Rajnish a cellphone, coordinate his check-in with the Sacramento County Probation Office within 48 hours of his release, take meals to him during the quarantine and get him enrolled in Medi-Cal and under a doctor's care so Mr. Rajnish can continue taking his medication. Mr. Rajnish qualifies for Medi-Cal. Mr. Kumar will assist Mr. Rajnish in reporting to probation and obtaining access to medical care.

Dr. Howard, a licensed clinical psychologist, who has evaluated Mr. Rajnish, will continue assisting him in finding referrals for mental health. She has located Merced County Behavioral Health and Recovery Services as an ideal option for Rajnish. Both inpatient and outpatient sites have staff that speak several Southeast Asian languages including Hindi and Punjabi. They accept Medi-Cal and have doctors that are available to take on new patients. In the habeas decision ordering a new bond hearing or Mr. Rajnish's release, Judge Orrick highlighted the "realistic, psychologist approved plan if he were let out on bond that would, the psychologist states, help lower his risk of recidivism." Habeas Dec'n at 15.

Mr. Rajnish is committed to getting counseling through the assistance of Dr. Howard and is committed to ensuring that he complies with all obligations of this Court and federal immigration authorities.

## 20. Other information relevant to bail determination:

In a habeas decision ordering a new bond hearing, with a shift in the burden to the Government, or release, Federal District Court Judge William Orrick provided:

"The [Immigration Judge]'s unconstitutional burden-shifting plausibly prejudiced Rajnish because he plausibly would have been granted a bond if the burden had been on the government. Rajnish, at that point, had already filed for asylum, indicating intent to lawfully remain in the United States. He came here in the first place (as the IJ eventually found) after facing political persecution and believed he was likely to face political persecution upon returning. Even now, the only substantive evidence the respondents rely on to show he is a risk is the misdemeanor. Rajnish's behavior was criminally blameworthy, but that does not create an automatic risk of flight or future threat to the community. The crime's connection to a flight risk is particularly weak as Rajnish had already served his criminal sentence." Habeas Dec'n at 13.

While Mr. Rajnish awaits a new bond hearing, he is at extraordinary risk of contracting a dangerous and deadly disease at Yuba County Jail. There has been an exponential increase of COVID cases in the past two weeks at Yuba in light of the mismanagement of the pandemic by Federal Defendants for months, and especially since the first COVID infections among the general population. Federal Defendants failed to develop a plan for the segregation and treatment of COVID-positive and symptomatic people, despite express and unambiguous CDC guidance requiring concrete planning. This led to confirmed COVID-positive individuals knowingly being left in mixed housing units. Federal Defendants also failed to be minimally informed about the risks posed to Mr. Rajnish and others because of custodial decisions at the Facility. They further failed to promptly implement facility-wide or staff testing; administer systematic rapid testing to symptomatic people and close contacts; and implement proper quarantine protocols. *See* Dkts. 894, 894-1, 894-2, 894-3, and Transcript of Dec. 21, 2020 Case Management Conference. The result has been extraordinary risks for Mr. Rajnish and other class members.

## 21. Attached are (check all that are applicable, but this is not a substitute for answering the above questions):

- Declaration of Kishwer Vikaas, attorney for Mr. Rajnish
- Letter from Autumn Gonzalez, Co-Founder of NorCal Resist
- Declaration of Mukesh Kumar, Proposed Sponsor
- District Court decision ordering new bond hearing with burden shifted or release

These supplement additional materials provided to this Court.

All information in this application is accurate based on information and relief. This application was prepared using information probed by Mr. Rajnish's attorney, Kishwer Vikaas. Class counsel reviewed the information herein as well as the prior related filings.

Respectfully submitted,

/s/ Emi MacLean
Emi MacLean

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
630 SANSOME STREET, SUITE 475
SAN FRANCISCO, CA 94111

**AMENDED**

IN THE MATTER OF
**RAJNISH, RAJNISH**
RESPONDENT

Case No.:   A ▮▮▮▮-730
IN REMOVAL PROCEEDINGS

## ORDER OF THE IMMIGRATION JUDGE  July 20, 2020

This is a summary of the oral decision entered on _____ July 23, 2020
This memorandum is solely for the convenience of the parties. If the proceedings should
be appealed or reopened, the oral decision will become the official opinion in the case.

☑ The respondent was ordered removed from the United States to          INDIA
☐ Respondent's application for voluntary departure was denied and respondent was
  ordered removed to     INDIA     or in the alternative to _____
☐ Respondent's application for voluntary departure was granted until _____
  upon posting a bond in the amount of $ _ICD__ by _____
  for each respondent with an alternative order of removal to _____
☑ Respondent's application for asylum was ☒ granted ☒ denied ☐ withdrawn
  ☐ other. *as a matter of discretion.*
☑ Respondent's application for withholding of removal was ☒ granted ☐ denied
  ☐ withdrawn ☐ other.
☑ Respondent's application for ☒ withholding of removal and/or ☐ deferral of removal
  under Article III of the Convention Against Torture was ☐ granted ☐ denied
  ☐ withdrawn ☒ other. *Moot.*
☐ Other: _____
☐ Respondent's application for cancellation of removal under section 240A(a) was
  ☐ granted ☐ denied ☐ withdrawn ☐ other.
☐ Respondent's application for cancellation of removal under section 240A(b) was
  ☐ granted ☐ denied ☐ withdrawn ☐ other. If granted, it was ordered that the
  respondent be issued all appropriate documents necessary to give effect to this
  order.
☐ Respondent's application for a waiver under section _____ of the INA
  was ☐ granted ☐ denied ☐ withdrawn ☐ other.
☐ Respondent's application for adjustment of status under section _____
  of the INA was ☐ granted ☐ denied ☐ withdrawn ☐ other. If granted, it was
  ordered that respondent be issued all appropriate documents necessary to give
  effect to this order.
☐ Respondent's status was rescinded under section 246 of the INA.
☐ Respondent is admitted to the United States as a _____ until _____
☐ Respondent knowingly filed a frivolous asylum application after proper notice.
☐ Respondent was advised of the limitation on discretionary relief for failure to
  appear as ordered in the Immigration Judge's oral decision.
☐ Proceedings were terminated.
☐ The prior order of removal dated _____ is hereby reinstated.
☐ Other: RE-ENTRY WARNING

Appeal: Waived / (Reserved)   A / I / (B)
Appeal due by: August 31, 2020

Date: 7/20/20

ILA C. DEISS
Immigration Judge

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:   MAIL (M) ☐   PERSONAL SERVICE (P) ☐
TO: ☐ ALIEN ☐ ALIEN c/o Custodial Officer ☑ ALIEN'S ATTY/REP ☒ DHS
DATE: ~~07/23/2020~~   BY: IJ/COURT STAFF: _ICD_
Attachments: ☐ EOIR-33 ☐ EOIR-28 ☐ Legal Services List ☐ OTHER
7-31-20

Kishwer Vikaas # 296576                                            **DETAINED**
McGeorge School of Law
Community Legal Services
3200 5th Avenue
Sacramento, CA 95817
Phone: (916) 325-4629
kvikaas@pacific.edu

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO CA

In the Matter of:                          )          File No. A209 868 730
                                           )
                                           )          DECLARATION OF ATTORNEY
                                           )
Rajnish RAJNISH                            )
Respondent                                 )
                                           )
_____ )

I, Kishwer Vikaas, declare the following:

1.  I am the immigration attorney for Rajnish Rajnish. I have worked with Rajnish's family
    in India and his family friends in California to facilitate Rajnish's asylum application and
    bond application. Rajnish was granted Withholding of Removal by Immigration Judge
    Deiss in San Francisco on July 30, 2020.

2.  Rajnish has a tight-knit Indian community of mixed-immigration status in the
    Sacramento region able and ready to support him after his release from Yuba County Jail.

3.  A local non-profit organization that assists immigration detainees post-release with
    housing and accompaniment, NorCal Resist, has agreed to assist Rajnish after he is
    released from custody. They will provide him with temporary housing, access to COVID-
    19 testing, accompany him to register for probation, secure medical care and can assist
    him to obtain long-term housing.

4.  Together with NorCal Resist volunteers, our plan is to pick up Rajnish at Yuba County
    Jail and take him to a motel pre-arranged by NorCal Resist. We will work together to
    schedule COVID-19 testing through the Community-Based Testing site at California
    Exposition Center in Sacramento California as Rajnish has informed me that that
    individuals in Yuba County Jail have been diagnosed with COVID-19. Rajnish will stay
    self-quarantined at the motel until his test results are clear. NorCal Resist volunteers will
    supply him with food and necessities in the meantime.

5. A family friend has offered long-term housing with him in Merced County. Prior to his detention, Rajnish worked at a convenience store. After his release, he plans to apply for employment authorization and continue working. He also plans to enroll in adult school and take English as a Second Language (ESL) classes.

6. After being detained at Yuba County Jail, Rajnish was diagnosed with schizophrenia spectrum disorder. He has remained medically compliant and plans to connect with medical care immediately upon release.

7. The Merced County Behavioral Health and Recovery Services is located at 301 E 13th St, Merced, CA 95341. The phone number is 888-334-0163. Both inpatient and outpatient sites have staff that speak several Southeast Asian languages. They accept Medi-Cal and have doctors available that speak Hindi and Punjabi. Once Rajnish is released from ICE custody, we will assist him in calling and scheduling an appointment. The staff has informed us that the first appointment will be an assessment that they will use to determine what services he needs. They will then match him with the services and doctor they believe he needs which would include a doctor that is fluent in Hindi/Punjabi.

8. I spoke with the Sacramento County Probation Office today and they stated that Rajnish needs to report to their office headquarters located at 8745 Folsom Blvd, Sacramento, CA 95826 within 48 business-hours of his release. He was sentenced to informal probation. I informed Rajnish of this requirement and he is ready and able to comply with this with transportation assistance coordinated between myself and NorCal Resist. After he moves to Merced, he will immediately register with the Merced County Probation Office.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge.

Kishwer Vikaas

September 24, 2020



Honorable Immigration Judge
630 Sansome Street, 4th Floor, Room 475
San Francisco, CA 94111

September 15, 2020

Dear Judge,

I am a co-founder of NorCal Resist, a Sacramento-based organization that provides support for immigrants and asylum seekers. We are a 501(c)(3) registered nonprofit. Our services include assisting asylum seekers in detention find sponsors, housing and accompaniment once released.

We were recently contacted by the attorney for 19-year old Rajnish Rajnish, who indicated that he was an Unaccompanied Minor in detention in need of our services. We are aware of his misdemeanor conviction from 2019 in Sacramento County for annoying or molesting a minor under 18 for which he was sentenced to 240 days in county jail and is required to register under 290 as a sex offender. Currently, we are able to provide Rajnish with short-term housing in the form of a motel room (extended stay with a kitchenette) for several weeks. NorCal Resist volunteers are also able to help Rajnish with purchasing food and other necessities he may not have on release. We are also in the process of working with his attorney to seek more long-term housing and accompaniment. We looking forward to meeting Rajnish and helping him settle in our area.

Additionally, we are in the process of securing a health check and a plan for follow-up medical care in coordination with Rajnish's attorney and Dr. Ian Kim, a board-certified Family Medicine physician in in Sacramento, CA who is employed as a primary care physician at CommuniCare Health Centers in Yolo County, CA.

If you have any questions, you may contact me at ███████████

Thank you,

Autumn Gonzalez

PO Box 188331 Sacramento, CA 95818-8331 ~ norcalresist@gmail.com
(916) 382-0256
www.norcalresist.org

## DECLARATION OF DR. SHARON HOWARD

1. My name is Dr. Sharon P. Howard, Ph.D. I submit this declaration in support of Rajnish Rajnish's bail application and to outline his plan for mental health care if released from immigration custody.

2. I am licensed clinical psychologist in California. I reside in Roseville, CA and I am employed as a clinical and forensic psychologist in the Sacramento region. I earned my Ph.D. in Clinical Psychology from University of Kansas and received additional training in clinical and forensic psychology in Arkansas and California.

3. I performed a pro bono evaluation of Mr. Rajnish in Yuba County Prison on March 10, 2020 where I diagnosed him with a schizophrenia spectrum disorder. I testified pro bono at his bond hearing on April 2, 2020. I was also retained to testify at his asylum hearing on July 23, 2020. I understand from his counsel that he remains detained at Yuba County Prison despite being granted Withholding of Removal while at least one of his fellow detainees has tested positive for COVID-19. I understand that if he is released, he will reside in Sacramento, CA with initial short-term housing as arranged by local immigrants' rights nonprofit NorCal Resist and long-term housing with a family friend in Merced County.

4. If Mr. Rajnish is released from ICE custody, he will need to connect with a local health care provider who can commit to providing ongoing care. As a board member at large with the Sacramento Valley Psychological Association's Forensic Division, I have a large professional network and have had success with connecting immigrants with referrals for mental health care.

5. I understand from his counsel that Mr. Rajnish has already made arrangements to stay at a motel in Sacramento, CA and will self-quarantine and get tested for COVID-19 after his release.

6. In my professional opinion, Mr. Rajnish will decompensate psychologically if he continues to be detained at Yuba County Jail. I have provided similar referrals to other individuals who were released from ICE custody and if Mr. Rajnish were released, I can coordinate with his counsel to help him find referrals in Merced County for counseling and mental health care.

I, Sharon Howard, declare under penalty of perjury that the foregoing is true and correct to the best of my recollection. I sign this from Roseville, California.

*Sharon P Howard, PhD*

Dated: August 26, 2020

/s/Sharon P. Howard
Sharon P. Howard, Ph.D.

Kishwer Vikaas # 296576                                    **DETAINED**
McGeorge School of Law
Community Legal Services
3200 5th Avenue
Sacramento, CA 95817
Phone: (916) 325-4629
kvikaas@pacific.edu

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO CA

| | |
|---|---|
| In the Matter of:           ) | File No. A209 868 730 |
| ) | |
| ) | DECLARATION OF FAMILY FRIEND |
| ) | |
| Rajnish RAJNISH       ) | |
| Respondent        ) | |
| ———————————————) | |

**DECLARATION OF MUKESH KUMAR**

I, Mukesh Kumar, declare the following:

1. I was born ▮▮▮▮▮▮▮ 1989 in Haryana, India and I am 31 years old. I live in Merced, California and have been a proud U.S. citizen almost 2 years. I am married with two children—a daughter age 6 and a son age 4. However, my wife and I are separated and live at separate residences. I currently work at a gas station in Merced. I have gotten to know Rajnish's family because my classmate is his maternal cousin. When Rajnish was detained at Yuba County Jail in January, his family immediately contacted me for help.

2. I have since become close to Rajnish's family. I talk with them often about his case and even offered to pay the bond for Rajnish's release. Since Rajnish has been in jail, I consider myself to be like an older brother to him. Myself and other people in our Indian community, are ready to guide him on the right path.

3. In the past year since Rajnish has been in America, I have helped him work with his immigration lawyer to help him apply for asylum and helped him financially so he can continue his case. Now I am ready to help him with housing, food and other necessities if he is released from Yuba County Jail.

1

4. I have been working with Rajnish's immigration attorney for the past seven months to help him get out of Yuba County Jail. When the pandemic started, his family and me became afraid that he might get COVID-19 in jail. After the Judge gave him Withholding of Removal on July 30, 2020 at his hearing, we thought he would be released immediately.

5. Rajnish told his attorney that someone in Yuba County Jail in a dorm next to him, Pod E, was diagnosed with COVID-19. We want him released right away. He is very anxious and depressed and we are very afraid he will get sick. I currently rent a room in a 3-bedroom house at ███████████, Merced, CA 95341. I live with four of my coworkers. We are all Indian men from the same region of India as Rajnish. We are all happy to have Rajnish live with us at that residence after he is finished quarantining in Sacramento. It is far from any schools or parks.

6. My plan is to pick up Rajnish from the motel in Sacramento where he plans to stay initially to quarantine after his release. His attorney told me an organization called NorCal Resist will help him with food and housing for the first few weeks after he is released. They will help him get to a COVID-19 test center in Sacramento. He will quarantine in Sacramento for a few weeks until his test results are clear. They will also help him with a health check and with registering with Sacramento County Probation Office within 48 hours of his release.

7. After Rajnish moves with me to Merced, I will help him immediately register with Merced County Probation Department. In addition, I can help Rajnish enroll for Medi-Cal so he can be under the care of a doctor and continue taking the medication he needs.

8. Rajnish is only 19 years old. He has a lot of time to grow up and become a good member of society. Myself and his other family friends in the Indian community are happy to help him get an employment card through his immigration attorney and find a job. We know he wants to go back to school and learn English, so we plan to help him enroll in an adult school in Merced. We respectfully request that you release Rajnish to my care so he can live in a safe environment with me. He is very excited that he won his case and we know he will not get into any more trouble again.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge.

_Mukesh Kumar_ (signature)

Mukesh Kumar

Date: September 22, 2020

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJNISH RAJNISH,<br><br>           Plaintiff,<br><br>   v.<br><br>DAVID W. JENNINGS, et al.,<br><br>           Defendants. | Case No.  3:20-cv-07819-WHO<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 10 |

## INTRODUCTION

In the United States, the government cannot generally hold people for prolonged, incarceration-like detention merely because they are the subject of a civil or criminal proceeding. Instead, the government is usually required to prove that, if someone were released from detention, he or she would be a flight risk or a danger to themselves or others.  And its burden is high--clear and convincing evidence, not just a preponderance.  Those rules are rooted in core constitutional principles.  Yet for immigration proceedings, the executive branch has written a different set of rules.  Under those rules, the burden is placed on the noncitizen to prove that he is *not* a flight risk or danger to the community.

That was the burden placed on habeas petitioner Rajnish Rajnish, who is currently detained in the Yuba County Jail by immigration authorities.  Rajnish, who is from India, entered the country while he was a minor.  After he appeared in removal proceedings, an immigration judge ("IJ") granted him withholding of removal based on a finding that he had been persecuted for political reasons in India and likely would be again if he were returned.  Under that decision, Rajnish may remain in the United States.  But because the government appealed the decision, Rajnish remains detained.

Before Rajnish was granted withholding of removal, he appeared at a hearing in which the burden was placed on him to show why he should be released on bond. An IJ then found that he had not met that burden. That was in April 2020; in the nine months since, Rajnish has remained in custody and shown signs of mental illness. Even after the IJ's withholding-of-removal determination, the government has not provided him a second hearing to reevaluate whether he would be a flight risk or danger.

This habeas petition seeks narrow relief, a new hearing to determine whether Rajnish may be released on bond while his case proceeds. The petition is GRANTED. Rajnish's bond hearing violated the constitutional guarantee of due process because the IJ unconstitutionally placed the burden on Rajnish to prove he was not a flight risk or danger to the community. That burden belongs with the government, which must prove that a noncitizen is a flight risk or danger to the community by clear and convincing evidence to continue detaining him. This aside, procedural due process required the government to afford Rajnish at least one further hearing in the subsequent nine months he was detained to reexamine the decision.

Accordingly, as explained more fully below, the respondents[1] are ORDERED to provide Rajnish with a bond hearing or, if they do not do so within 21 days, to release him. This new bond determination must comply with the Constitution. The burden must be on the government to prove by clear and convincing evidence that Rajnish should be detained while his case proceeds.

## BACKGROUND

On the record before me, there are no material facts in dispute. The facts are drawn from several IJs' decisions and declarations in the record.

Rajnish is a citizen and native of India. *See* Oral Decision and Order of the Immigration Judge ("IJ Order") [Dkt. No. 10-8] 1. At age 16, he left India and entered the United States in January 2017 without inspection. *Id.* 2; Declaration of Kishwer Vikaas ("Vikaas Decl.") [Dkt. No.

---

[1] The respondents are David W. Jennings, Acting Field Office Director of the San Francisco Field Office of Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Operations; Tony H. Pham, Senior Official Performing the Duties of the Director of ICE; William Barr, Attorney General of the United States; and Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security.

United States District Court
Northern District of California

10-3] ¶ 4. He was apprehended by immigration authorities and determined to be an "unaccompanied alien child" under 6 U.S.C. § 279(g)(2). Vikaas Decl. ¶ 4. Among other things, that designation reflected that Rajnish had no parent or guardian in the United States. Rajnish was eventually released to a "distant relative" in California. *Id.* In March 2018, Rajnish, then 17, filed an application for asylum and withholding of removal with the assistance of counsel. *Id.* ¶ 5. But in May 2018, he appeared in removal proceedings in San Francisco after receiving a Notice to Appear. *Id.* ¶ 6. At the first hearing, the IJ granted an unopposed continuance so that Rajnish could show that his application had been filed with the United States Citizenship and Immigration Services ("USCIS") Asylum Office, which would have initial jurisdiction over it. *Id.* The hearing was continued again, to February 2020, so that USCIS could adjudicate the application. *Id.*

In August 2019, Rajnish, then 18 years old, forcibly kissed a ten-year old girl in a store for two to three seconds and showed her pornography on his phone. *Id.* ¶ 7; Declaration of Deportation Officer Edward Winans [Dkt. No. 13-1] ¶ 10. He pled guilty to misdemeanor annoying or molesting a child under California Penal Code § 647.6(a). Vikaas Decl. ¶ 7. He was sentenced to 240 days in jail and three years of probation. *Id.* After serving four months in jail (in part due to good time credits), he was released on December 30, 2019. *Id.* ¶ 8. According to the petition, Rajnish was "immediately" apprehended by Immigration and Customs Enforcement ("ICE"). *Id.* Since then, he has been in ICE custody in the Yuba County Jail. *Id.*

In January 2020, Rajnish appeared again in immigration court. *Id.* ¶ 9. His counsel withdrew from representing him, so the hearing was continued until February. *Id.* In February, it was again continued because he was identified as a potential class member in *Franco-Gonzalez v. Holder*, a class action that requires the government to provide counsel for certain noncitizens with mental disabilities. *Id.* ¶ 11. In March, the IJ conducted a competency inquiry, ordered Rajnish evaluated by a psychologist, and continued the hearing. *Id.* ¶ 13.

In April 2020, now with counsel, Rajnish appeared for the bond hearing.[2] *Id.* ¶ 14. The IJ

---

[2] These hearings are sometimes referred to as "redetermination hearings" even if they are the first bond hearing before the IJ because an immigration officer may make a preliminary decision regarding bond.

found that Rajnish had the burden of proof to establish he was eligible to be released on bond. *Id.*
At the hearing, a psychologist testified that Rajnish likely experienced a schizophrenia spectrum
disorder, was "medically compliant," and posed a low risk of recidivism. *Id.* The IJ ultimately
denied the request for a bond, finding Rajnish was a flight risk and danger to the community. *Id.*;
Dkt. No. 10-5.

At the end of April, the IJ finished the competency inquiry and found Rajnish competent to
proceed on his asylum application without an attorney, though his bond counsel agreed to
represent him in the removal proceeding. Vikaas Decl. ¶ 15. A hearing was scheduled for May.
*Id.* The hearing was again continued roughly two weeks at Rajnish's request so that USCIS could
adjudicate his application. *Id.* ¶ 16. It scheduled asylum interviews for June. *Id.* ¶ 17.
Consequently, the hearing was continued until the end of June so that the asylum interviews could
be completed. *Id.* ¶ 18. Due to the COVID-19 pandemic, USCIS was unable to schedule the
interviews and said it could not provide a firm date within the following three months. *Id.* ¶ 19.
Accordingly, Rajnish decided—in his words, he was "forced"—to forego USCIS adjudication
because it would require further detention of an indefinite duration. *See* Amended Petition for
Writ of Habeas Corpus ("Pet.") [Dkt. No. 10] ¶ 41; Vikaas Decl. ¶ 20.

On July 23 and 30, 2020, another IJ heard the claims for asylum and withholding of
removal. Vikaas Decl. ¶ 21. That IJ denied Rajnish asylum but found he was entitled to
withholding of removal because he established that there was past persecution and that he would,
more likely than not, be persecuted in the future. *Id.* ¶ 21; *see* IJ Order 5–6. The IJ found Rajnish
credible. IJ Order 4. He presented testimony that he had been persecuted by a rival political party
for his political affiliation; he testified he was beaten and that he and his family were threatened.
*Id.* 2–3. Rajnish also presented evidence that rival party members still searched for him and
presented a threat to his family. *Id.* He said that the police were unwilling to help. *Id.* Expert
reports also attested to the party's use of these types of tactics. *Id.* Additionally, the IJ found that
Rajnish's misdemeanor was not a "particularly serious crime" that would bar withholding of
removal. *Id.* 4; *see Delgado v. Holder*, 648 F.3d 1095, 1101–02 (9th Cir. 2011) (discussing the
particularly serious crime bar).

United States District Court
Northern District of California

4

The government appealed to the Board of Immigration Appeals ("BIA") on August 25, 2020. Vikaas Decl. ¶ 22. The next day, Rajnish filed an appeal of the IJ's denial of his asylum claim. *Id.* That appeal is still pending. *Id.* In late September 2020, Rajnish filed a motion for a new bond redetermination hearing, as federal regulations permit him to do. *Id.* ¶ 23; *see* 8 C.F.R. § 1003.19(e). An IJ found, however, that there were no materially changed circumstances and declined to hold a new hearing. *Id.*; Dkt. No. 10-10. Rajnish appealed that denial in late October 2020. Vikaas Decl. ¶ 24. Rajnish also sought release through *Zepeda Rivas v. Jennings*, a class action involving noncitizens at Yuba County Jail being adequately protected from COVID-19. The Hon. Vince Chhabria denied two bail applications from him. *See Zepeda Rivas v. Jennings*, No. 3:20-cv-02731-VC, Dkt. Nos. 206, 678.

Rajnish has presented evidence that this prolonged detention has resulted in a degradation of his mental health. As noted, a clinical psychologist who examined Rajnish found it was likely he has a schizophrenia spectrum disorder. That psychologist also found that "Mr. Rajnish will decompensate psychologically if he continues to be detained at Yuba County Jail." Howard Decl. ¶ 4. That psychologist explained that there is a "direct connection" between the emergence of "psychosis" and "stress and isolation." *Id.* But, according to her, schizophrenia spectrum disorders are treatable, especially if there is "early intervention." *Id.* ¶ 5. Rajnish is at the age in which these disorders often begin manifesting; the psychologist therefore opined that now is the time when intervention would be effective, but that detention might cause Rajnish to "miss the window of opportunity" to effectively treat this mental illness. *Id.* The psychologist also explained that she "ha[s] a large professional network and ha[s] had success with connecting immigrants with referrals for mental health care. I have provided similar referrals to other individuals who were released from ICE custody and if Mr. Rajnish were released, I can coordinate with his counsel to help him find referrals in Merced County for counseling and mental health care." *Id.* ¶ 6. And the psychologist concluded that, employing a standard psychological evaluation tool, Rajnish is a "low risk" for recidivism, so long as he is "at baseline." *Id.* ¶ 7. His risk would decrease further if he had "proper care and support outside of detention." *Id.*

Rajnish filed his original petition on November 5, 2020, and the case was assigned to a

magistrate judge.  Dkt. No. 1.  On November 10, the case was reassigned to me and the parties

agreed to a stipulated briefing schedule.  Dkt. Nos. 8, 9, 11.  Pursuant to that briefing schedule,

Rajnish filed an amended petition on November 12, the respondents filed their return on

December 1, and Rajnish filed his traverse December 8.

**DISCUSSION**

Under 28 U.S.C. § 2241, federal district courts may issue writs of habeas corpus for one

"in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2241(c)(3).

Rajnish has been detained under 8 U.S.C. § 1226(a).  As a general matter, that statute

permits the Attorney General to issue a warrant under which the noncitizen is "arrested and

detained pending a decision on whether the alien is to be removed from the United States."  In

contrast, 8 U.S.C. § 1226(c)—which Rajnish is not detained under—permits the Attorney General

to take into custody noncitizens who commit certain crimes that render them inadmissible or

deportable.  Under Section 1226(a) but not Section 1226(c), the Attorney General may release the

noncitizen on bond or conditional parole.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018)

(setting out the Section 1226 framework).  The parties do not dispute that Rajnish is, accordingly,

statutorily eligible to be let out on bond instead of detained in jail while his proceeding is pending.

**I.      BURDEN OF PROOF IN BOND DETERMINATIONS**

Rajnish seeks habeas relief on two grounds.  The first is that, at April 2020 bond hearing—his

only bond hearing before an IJ—the IJ unconstitutionally placed the burden of proof on him to

demonstrate he was *not* a flight risk or danger to the community.  Pet. 12–13.  As a result, he

contends that the bond determination was unconstitutional and he is entitled to a new one at which

the burden is placed on the government to prove that he *is* a flight risk or danger to the

community.

**A.      The Proper Burden**

"Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause

protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  In many areas of law in which the

government seeks to detain people for a prolonged period—for instance, pretrial detention for criminal defendants or civil commitment for those whose mental illness makes them a threat to themselves or others—the government bears the burden of proving that the person should be detained. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 751 (1987) (pretrial detention); *Addington v. Texas*, 441 U.S. 418, 425–27 (1979) (civil commitment). Which party bears the burden of proof is no empty legalism: it "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington*, 441 U.S. at 423. That is no small thing given that "the function of legal process is to minimize the risk of erroneous decisions." *Id.* at 425.

"[C]ivil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington*, 441 U.S. at 425. As a result, "[t]he Supreme Court has repeatedly reaffirmed the principle that due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake are both particularly important and more substantial than mere loss of money." *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011) (internal quotation marks and alteration omitted). In such circumstances, the government is required to show that detention is warranted by the heightened clear-and-convincing-evidence standard. *Id.*

It is also settled that the Due Process Clause applies to noncitizens in removal proceedings. *See, e.g.*, *Zadvydas*, 533 U.S. at 690; *Reno v. Flores*, 507 U.S. 292, 306 (1993). Despite this and the law discussed above, the executive branch has placed the burden of proof on noncitizens in removal proceedings to show they are entitled to a bond, rather than detention. *See* 8 C.F.R. § 236.1(c)(8) (governing determination by an immigration officer); *In Re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999) ("[T]he respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceeding.") (internal quotation marks and alteration omitted).

Placing this burden on the noncitizen violates the Constitution. In *Singh*, the Ninth Circuit addressed almost precisely the situation here. It held that the government must bear the burden to show (by clear and convincing evidence) that the noncitizen detained under Section 1226(a) is a

flight risk or danger to the community during a bond hearing. 638 F.3d at 1203. The Ninth

Circuit looked to the consistent line of Supreme Court cases holding that due process requires the

government to bear the burden to justify detention when important liberty interests are at stake.

*Id.* at 1203–04. The court, relying on the Supreme Court's teachings, explained that "it is

improper to ask the individual to share equally with society the risk of error when the possible

injury to the individual—deprivation of liberty—is so significant, a clear and convincing evidence

standard of proof provides the appropriate level of procedural protection." *Id.* (internal quotation

marks omitted). Notably, the court rejected the government's argument that "detaining people like

Singh is distinguishable from other sorts of civil commitment because removal is its ultimate

goal." *Id.* at 1204. It held that this degree of detention "for *any* purpose" is a deprivation of

liberty. *Id.* (quoting *Addington*, 441 U.S. at 427) (emphasis in *Singh*).

A number of other courts facing this question have agreed that the Due Process Clause

requires the government to meet this burden with clear and convincing evidence. The Second

Circuit has held, for example, that the burden in a Section 1226(a) bond hearing should be on the

government by clear and convincing evidence. *Velasco Lopez v. Decker*, 978 F.3d 842, 855–56

(2d Cir. 2020). One court surveyed these cases and described this view as the "consensus view

among District Courts." *Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal.

2020) (collecting cases); *see also, e.g.*, *Darko v. Sessions*, 342 F. Supp. 3d 429 (S.D.N.Y. 2018)

("Joining with a growing body of persuasive authority, the Court concludes that the Due Process

Clause required that the Government bear the burden of proving that Ms. Darko's detention was

justified, and that it was required to meet its burden by clear and convincing evidence."); *Brito v.

Barr*, 415 F. Supp. 3d 258, 266 (D. Mass. 2019) ("[T]he Court holds that the Due Process

Clause requires the Government bear the burden of proof in § 1226(a) bond hearings."); *Singh v. Barr*,

400 F. Supp. 3d 1005, 1018 (S.D. Cal. 2019) ("The Court agrees with the reasoning of its sister

courts and concludes that the Fifth Amendment's Due Process Clause requires the Government to

bear the burden of proving, by clear and convincing evidence, that continued detention is justified

at a § 1226(a) bond redetermination hearing."). There are many more district court cases cited in

these decisions and Rajnish's brief, but there is no need to gild the lily.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Even if general due process principles did not support Rajnish's position, which they do,

2    *Singh* directly leads to the conclusion that, at bond hearings for noncitizens in removal

3    proceedings, the government must bear the burden of proof by clear and convincing evidence.

4    The respondents resist this straightforward application of *Singh*.  Their primary response is that

5    *Singh* involved "*Casas* bond hearings," while this case does not.  A *Casas* hearing arises from the

6    Ninth Circuit's decision in *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942

7    (9th Cir. 2008).  As the court characterized it in *Singh*, *Casas* "held that aliens facing prolonged

8    detention while their petitions for review of their removal orders are pending are entitled to a bond

9    hearing before a neutral immigration judge."  *Singh*, 638 F.3d at 1200.  Rajnish's bond hearing

10   was not a *Casas* hearing, the respondents point out.  Respondents' Return to Petition for Writ of

11   Habeas Corpus ("Ret.") 7–8.  And *Casas*, the respondents say, was about noncitizens subject to

12   prolonged detention who otherwise would not receive a bond hearing while their petitions for

13   review were pending.  *Id.*  Rajnish, in contrast, *did* receive a bond under the executive branch's

14   procedures and, on respondents' account, is not subject to prolonged detention.  *Id.* 8–9.

15   The respondents' attempt at fashioning a meaningful distinction between *Singh* and this

16   case does not persuade.  *See, e.g.*, *Ixchop*, 435 F. Supp. 3d at 1061 ("The Government's attempt to

17   cabin *Singh* to only apply to *Casas* hearings is not availing.").  To start, the liberty interest in a

18   *Casas* hearing and the bond hearing here are the same: the noncitizen will be detained—often, as

19   here, in incarceration-like conditions—pending resolution of proceedings.  The respondents

20   counter that a noncitizen owed a *Casas* hearing might be detained for longer than Rajnish has

21   been—in *Casas*, the noncitizen had been detained for seven years.  But any length of detention

22   implicates the same liberty fundamental rights.  While the consequences of a longer detention

23   might be more severe than a shorter one, the government offers no principled reason why the

24   government should not have to meet the same bar when taking away the same liberty.

25   More fundamentally, the government misunderstands *Singh*'s rationale.  While *Singh*

26   addressed *Casas* hearings on its facts, there is nothing in its reasoning *about burdens of proof* that

27   supports restricting its holding to that class of bond hearings.  To the contrary, that reasoning

28   applies with equal force to an initial hearing as to a *Casas* hearing as to a subsequent non-*Casas*

9

1    hearing. *Singh* was based on, among other things, the principle that "due process requires

2    adequate procedural protections to ensure that the government's asserted justification for physical

3    confinement outweighs the individual's constitutionally protected interest in avoiding physical

4    restraint." *Singh*, 638 F.3d at 1203 (quoting *Casas*, F.3d at 950 and *Zadvydas*, 533 U.S. at 690)

5    (internal quotation marks omitted). Rajnish's interest is no less implicated than a noncitizen at a

6    *Casas* hearing. The respondents' position, moreover, would create the exceedingly odd

7    constitutional rule that noncitizens have the burden of proof at an *initial* hearing to determine

8    whether they should be detained in the first place but that, if there is no such hearing, the burden at

9    some point shifts to the government during confinement. The respondents identify no principled

10   reason why it should be easier to confine people in the first place than to continue their

11   confinement.

12         The respondents next suggest that *Singh* (and *Casas*) did not survive the Supreme Court's

13   decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Ret. 9–10. In that case, the Ninth

14   Circuit held that Section 1226 (not the Due Process Clause) required bond hearings every six

15   months. *Rodriguez v. Robbins*, 804 F.3d 1060, 1065–87 (9th Cir. 2015), *rev'd sub nom. Jennings*,

16   138 S. Ct. 830. In reaching that conclusion, the Ninth Circuit said that to hold otherwise would

17   "raise a serious constitutional problem" and it applied, the constitutional avoidance canon to read

18   the requirement into the statute itself. The Supreme Court reversed. It held that the statute was

19   not "fairly susceptible" to the six-month requirement and, accordingly, invocation of the

20   constitutional avoidance canon was improper. *Jennings*, 138 S. Ct. at 842. The court went on to

21   explicitly state that it was remanding so that the lower courts could address the constitutional issue

22   in the first instance. *Id.* at 851. It should be more than clear—as numerous other district courts

23   have found after *Jennings*—that *Jennings* does not touch, let alone decide, this issue. Not only did

24   it only concern statutory interpretation, not constitutional due process, it has nothing to say about

25   constitutionally required burdens of proof.[3]

26

27   _____

     [3] The respondents rely on a class of statements from *Jennings* and other cases that they contend
28   support their position. One exemplary statement is, "the alien may secure his release if he can
     convince the officer or immigration judge that he poses no flight risk and no danger to the
     community." *Nielsen v. Preap*, 139 S. Ct. 954, 960, 203 L. Ed. 2d 333 (2019). The respondents'

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The fact that *Singh* is both good law and entirely applicable dooms the respondents'

2    arguments here.  Nonetheless, I also explain why several other of their contentions are also

3    incorrect.  The respondents repeatedly attempt to limit cases imposing a clear-and-convincing-

4    evidence standard to any context except immigration.  *See, e.g.*, Ret. 13.  But their authority for

5    that sweeping argument is simply a series of broad statements from the Supreme Court to the

6    effect that "Congress may make rules as to aliens that would be unacceptable if applied to

7    citizens."  *Demore v. Kim*, 538 U.S. 510, 522, 123 S. Ct. 1708, 1717, 155 L. Ed. 2d 724 (2003).

8    Those capacious statements are unhelpful here because the question still remains whether the Due

9    Process Clause has been complied with.  The Supreme Court and Ninth Circuit have been clear

10   that that Clause applies to noncitizens in removal proceedings.  No one here disputes Congress's

11   general power to detain noncitizens; all that is in dispute is what *rights* noncitizens are entitled to

12   related to that detention.  And, parenthetically, Congress did not impose the burden of proof on

13   noncitizens, the executive did.

14        The respondents also assert that because the Court has upheld *categorical* detention with

15   no bond determinations under 1226(c), it follows that it is constitutional to detain noncitizens after

16   individualized hearings in which the burden is on them.  *Demore*, 538 U.S. 531.  As explained,

17   1226(c) makes detention mandatory for noncitizens who have committed certain crimes.  But

18   *Denmore*'s "limited holding," *Casas*, 535 F.3d at 950, turned on whether those particular prior

19   criminal convictions entitled the government to detain noncitizens due to the unique "flight risk"

20   Congress found they posed.  *See Demore*, 538 U.S. at 520–21.  Section 1226(a), in sharp contrast,

21   is not predicated on any such criminal convictions that serve as a categorical proxy for flight risk.

22   That is why, regardless of my holding on this issue, noncitizens like Rajnish *are* entitled to

23   individualized bond determinations.[4]

24

25   _____

26   argument is entirely misplaced: the Court in these miscellaneous statements merely described *the
     regulatory framework*.

27   [4] The respondents also rely on *Carlson v. Landon*, 42 U.S. 524 (1952), which upheld denial of bail
     to noncitizens in removal proceedings who were members of the Communist Party and were
28   sufficiently active to impute involvement in violence to.  Just as with *Demore*, the Court held only
     that this specific categorical determination was constitutional.

11

United States District Court
Northern District of California

1    The respondents also rely on *Zadvydas*, which dealt with noncitizens who had already been

2    found to be unlawfully present and had a final order of removal entered against them.  533 U.S. at

3    682.  A federal statute not at issue here permitted detention of these noncitizens and the Court,

4    employing the constitutional avoidance canon, interpreted the statute to contain an implicit

5    requirement that the noncitizen only be detained for a reasonably necessary period to secure his or

6    her removal.  *Id.*  The respondents rely on the Court's statement that "[a]fter [a] 6–month period,

7    once the alien provides good reason to believe that there is no significant likelihood of removal in

8    the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut

9    that showing."  *Id.* at 701.

10   As an initial matter, *Zadvydas* predated *Singh*, and *Singh* relied on it; I cannot manufacture

11   inconsistency where the Ninth Circuit has perceived none.  Moreover, *Zadvydas* works largely

12   against the respondents: it reaffirms that the Due Process Clause applies to noncitizens in removal

13   proceedings.  And to the extent it dealt with burdens of proof, the burden was placed on the

14   noncitizen *after* a final order of removability and the burden concerned only whether the

15   noncitizen could show that removal was likely or not.  By that point, therefore, the government

16   had already justified detaining the noncitizen initially because it was imminently planning to

17   remove him.

18   Finally, the respondents point to a series of lower court cases to support their position.  As

19   an initial matter, I am bound by *Singh*, not other circuits' law.  And those courts' decisions are not

20   persuasive in any event.  In *Borbot v. Warden Hudson County Correctional Facility*, the Third

21   Circuit held that the burden could constitutionally remain with the noncitizen in a subsequent bond

22   hearing.  906 F.3d 274, 280 (3d Cir. 2018).  That court did not address any of the Supreme Court's

23   cases holding that such detentions in non-immigration cases must be justified by the government

24   via clear and convincing evidence.[5]  The respondents also rely on a single case from a district

25   

26   [5] One district court outside of the Third Circuit has read *Borbot* not to apply to *initial* bond
     determinations because it itself concerned only a subsequent one.  *Ortiz v. Tompkins*, No. CV 18-

27   12600-PBS, 2019 WL 7755299, at *1 (D. Mass. Jan. 29, 2019); *Doe v. Tompkins*, No. CV 18-
     12266-PBS, 2019 WL 8437191, at *1 (D. Mass. Feb. 12, 2019).  As explained above in addressing
     the respondents' argument, I perceive no relevant difference in this context between an initial and

28   a subsequent bond determination hearing.

court in this Circuit from seven years ago that held to the contrary. *See Manzanarez v. Holder*, No. CIV. 13-00354 SOM, 2013 WL 5607167 (D. Haw. Oct. 11, 2013). For the reasons explained, I join the strong majority of courts that disagree.

It is worth emphasizing how narrow this holding is. If the government has determined someone is a flight risk or danger to the community and, accordingly, challenges his bond application, the government presumably has a basis for doing so grounded in evidence. It need only present clear and convincing evidence to a neutral adjudicator, as prosecutors do every day across the country, even in the most serious of criminal cases.

**B. Prejudice**

"When it is necessary to demonstrate prejudice as a result of a constitutional violation, the alien must show that the inadequate procedures occurred in a manner so as potentially to affect the outcome of the proceedings." *Walters v. Reno*, 145 F.3d 1032, 1044 (9th Cir. 1998). "Ordinarily, there must be plausible scenarios in which the outcome of the proceedings would have been different, absent the constitutional violation." *Id.*

The IJ's unconstitutional burden-shifting plausibly prejudiced Rajnish because he plausibly would have been granted a bond if the burden had been on the government. Rajnish, at that point, had already filed for asylum, indicating intent to lawfully remain in the United States. He came here in the first place (as the IJ eventually found) after facing political persecution and believed he was likely to face political persecution upon returning. Even now, the only substantive evidence the respondents rely on to show he is a risk is the misdemeanor. Ret. 14–15. Rajnish's behavior was criminally blameworthy, but that does not create an automatic risk of flight or future threat to the community. The crime's connection to a flight risk is particularly weak as Rajnish had already served his criminal sentence. Accordingly, I cannot conclude that there is no plausible scenario in which an IJ reasonably found that the government would not have met its burden.

**C. Conclusion**

Rajnish was constitutionally entitled to a bond determination at which the burden was on the government to prove that he was a flight risk or danger to the community by clear and convincing evidence. When the IJ—relying on regulations and BIA precedent—instead put the

United States District Court
Northern District of California

1    burden on Rajnish, it violated due process.  Accordingly, Rajnish is entitled to a new bond

2    determination hearing.

3    **II.     SUBSEQUENT HEARING DUE TO PROLONGED CONFINEMENT**

4           Because I conclude that Rajnish's initial bond hearing violated the Due Process Clause, he

5    is entitled to a new bond determination.  I also find that, in the alternative, he would be entitled to

6    another bond hearing under *Mathews v. Eldridge*, 424 U.S. 319.[6]

7           "The fundamental requirement of due process is the opportunity to be heard at a

8    meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333 (internal quotation

9    marks omitted).  To determine whether process complies with the Constitution, *Mathews* imposes

10   a three-part test.  Courts consider (1) the individual's interest, (2) the government's interest, and

11   (3) the risk of erroneous deprivation of the right absent the further procedures.  *Id.* at 334.  "Due

12   process is flexible and calls for such procedural protections as the particular situation demands."

13   *Id.* (internal quotation marks and citation omitted).

14          As noted, *Jennings* explicitly did not consider whether the Constitution requires periodic

15   bond determinations for noncitizens detained while their proceedings are pending.  138 S. Ct. at

16   851.  The Ninth Circuit had similarly not reached that issue on the way to the Court because it

17   interpreted the statutes to include that requirement.  The constitutional reasons it did so, however,

18   are instructive and were not addressed (or overturned) by the Court.  In its pre-*Jennings* decision,

19   the Ninth Circuit explained that "prolonged" detention without bond hearings would raise

20   constitutional concerns; it held that detention became prolonged at six months.  *Rodriguez v.

21   Robbins*, 715 F.3d 1127, 1139 (9th Cir. 2013).  With that concern in mind, I apply the *Mathews*

22   analysis.

23          First, there is no genuine dispute that Rajnish has a weighty interest being free of

24   detention, or at least only being detained if justified.  *See* Ret. 21.  The respondents' reply that,

25   even though this is so, Rajnish's interest is diminished because (1) this case takes place in the

26

27   ─────────────────────
     [6] Rajnish applies both the *Mathews* test and the "prolonged detention" analysis.  *See* Pet. 16.
28   Because *Mathews* is a well-settled test, both parties thoroughly brief it, and I find for Rajnish
     based on it, there is no need to address his prolonged detention arguments.

                                                  14

removal context and (2) Rajnish requests to be free from detention "in the United States." *Id.* But it is beyond dispute that, even in immigration proceedings, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 at 690. While the Court has, as discussed, given Congress some special leeway in immigration matters, that does not diminish *Rajnish's* interest in being free from detention—or at least his strong interest in only being detained if the government can adequately show he is a flight risk or threat to the community. Rajnish, additionally, is currently in Yuba County Jail; there is nothing on this record showing that his material conditions differ from de jure incarceration. This is all particularly true in light of the Ninth Circuit's holding that "[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound." *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011).

All this aside, Rajnish has recently been assessed to likely have a serious mental illness. The unrebutted expert evidence on this record is that he is likely to further deteriorate given the well-established effects of incarceration, stress, and isolation on such disorders. If he were released, in contrast, the unrebutted evidence is that intervention can occur that is known to lead to improvements when done early and aggressively enough.

Second, on the facts of this case, the risk of erroneous deprivation of Rajnish's rights absent another hearing is high. Put another way, the value added by another hearing is great. Rajnish has now been held for almost nine months since his initial bond hearing. He has been held for roughly a year in ICE custody. His first (and only) bond hearing was unconstitutional and assigned the risk of error to him, not to the government. Even if it had not, there have been important developments in the last nine months. For one, Rajnish was adjudicated by an IJ to be entitled to withholding of removal. That reality almost certainly makes him less of a flight risk— or, at the very least, is something an IJ would seriously consider. For another, Rajnish now, it appears, has a realistic, psychologist-approved plan if he were let out on bond that would, the psychologist states, help lower his risk of recidivism.

The respondents counter that Judge Chhabria evaluated Rajnish three months ago as part of

15

the class action referenced above and denied him bail. Ret. 21. But that class action provides emergency relief due to COVID-19 in the form of release while habeas petitions are pending. It is not a replacement for an individualized determination by an IJ at which the government bears the burden of proof about being permitted to be out on bond generally. *See Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 40–41 (N.D. Cal. 2020). The respondents next contend that Section 1226(a) and its implementing regulations already provides sufficient procedural protections. *Id.* 22. The current procedures, however, are crucially lacking any mechanism by which, after a reasonably lengthy period of time, a noncitizen's eligibility for release on bond is reexamined. The closest procedure the respondents can point to is the ability to *request* reexamination based on changed circumstances. That request can be quickly dismissed and is far from a full hearing. Further, in making that request, the noncitizen bears the burden of convincing an IJ that circumstances have changed. This procedure therefore does not live up to *Singh*'s requirement that the government justify the detention it imposes.[7]

The respondents also contend that Rajnish's initial hearing was sufficient process. Ret. 22–23. That hearing was unconstitutionally tainted, so it was not. Aside from that, having an *initial* hearing does not address the core concern that months or years will drag by and those whom the government can no longer justify de facto incarceration for are nonetheless detained. Relatedly, the respondents argue that, under current regulations, Rajnish received adequate process because he can appeal to the BIA. Yet BIA review is only of the *initial* bond decision and even then can take many months. At least on these facts, such a drawn out appeal process is insufficient.

Third, the government's interest in an effective immigration system and in detaining those who pose a flight risk or danger to the community is undoubtedly important. But here, many of the usual equities are the government's side of the scale are not present. For instance, the respondents argue that there is a public interest in "prompt execution of removal orders," making

---

[7] The respondents also point to other, more peripheral procedural protections, such as a decision by the Department of Homeland Security to release the noncitizen on its own initiative. But the respondents point to no authority for the proposition that a theoretical exercise of executive grace is a sufficient procedural protection when such fundamental liberties are at stake.

United States District Court
Northern District of California

Rajnish's continued "presence" important. Ret. 23. But Rajnish has been granted withholding of removal, so there is no removal order at present. And, in any case, all I order today is a hearing; if the IJ determines that he is a flight risk then he will remain detained. The respondents also argue that "aliens, and not the government, are in the best position to provide evidence relevant to their lack of dangerousness, or other factors, including family ties to the United States, a record of employment, and an established place of residence, which may demonstrate that they are not a flight risk." Ret. 24. But, of course, the government must have some justification for detaining Rajnish—otherwise it would have no reason to oppose a bond. If that justification is sufficiently strong in the government's view to oppose a bond before the IJ and before me today, presumably it believes it is strong enough in front of a future IJ.

Balancing these three considerations, it is clear that another hearing is warranted, even if the first had been constitutional. Rajnish's interest is weighty: his fundamental rights are implicated and have been for nearly nine months. A new hearing would serve a valuable purpose in combatting erroneous deprivation of Rajnish's constitutional rights. And the government's interest is not seriously undermined, including because the relief requested will give the government ample opportunity to demonstrate that the detention is justified.

For clarity, I do not hold that Rajnish is entitled to a new hearing merely because more than six months have passed. Instead, I apply *Mathews* and hold that, on these facts, this is the process due to Rajnish. *Cf. Sahota v. Allen*, No. 20-CV-03180-WHO, 2020 WL 2992872, at *6 (N.D. Cal. June 4, 2020) ("Balancing the *Matthews v. Eldridge* factors—and considering that Sahota's last bond hearing was over a year and a half ago, that Sahota has significant evidence of changed circumstances regarding his potential danger, and given his probable chances of success at the Board on remand (considering that he prevailed on his CAT petition at the IJ level)—I conclude that Sahota is entitled as a matter of procedural due process to another bond hearing with the required procedural protections.").

## CONCLUSION

For the reasons described above, Rajnish's initial bond determination was unconstitutional. As a matter of procedural due process, he would be entitled to another bond hearing in any event.

His petition is GRANTED.

The government is ORDERED to provide Rajnish with a bond hearing within 21 days of this Order. If it fails to hold a bond hearing within 21 days, it is ORDERED to release him. This bond hearing must adhere to the Due Process Clause. In particular, the burden must be on the government to prove by clear and convincing evidence that Rajnish should be denied a bond because he is a flight risk or danger to the community.

Reasonable attorneys' fees and costs are AWARDED to Rajnish under the Equal Access to Justice Act, 28 U.S.C.§ 2412.

**IT IS SO ORDERED.**

Dated: December 22, 2020



William H. Orrick
United States District Judge