WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Petitioners-Plaintiffs
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA Ellis BEIER (SBN 300505)
genna.beier@sfgov.org
Emilou H. MacLean (SBN 319071)
emilou.maclean@sfgov.org
FRANCISCO UGARTE (SBN 241710)
francisco.ugarte@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA, <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TONY PHAM, Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility, <br><br> Respondents-Defendants. | CASE NO. 3:20-CV-02731-VC <br><br> **DECLARATION OF KELLY ENGEL WELLS** <br><br> **JUDGE VINCE CHHABRIA** |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK
(Mass. BBO# 688688)*
tcook@cooley.com
FRANCISCO M. UNGER
(Mass. BBO# 698807)*
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted *Pro Hac Vice*

## DECLARATION OF KELLY ENGEL WELLS

1.   I am an attorney licensed to practice in the states of New York and Texas, and since 2014, I have exclusively represented detained and formerly detained immigrants in their removal proceedings. I am currently employed in the Immigration Defense Unit of the San Francisco Public Defender's Office. In my capacity as class counsel in this litigation, I frequently communicate with *Zepeda Rivas* class members; attorneys who represent or otherwise assist detained *Zepeda Rivas* class members; and community members who support detained class members through visitation (when permitted), telephone calls, and letters.

2.   Yuba County Jail ("YCJ") has moved class members often between housing units during the pandemic. These moves have been frequent and risky over the past several weeks. Approximately ten days ago, Plaintiff Juan Jose Erazo Herrera ("Mr. Erazo")[1] was placed in a four-person cell with another ICE detainee after it had been vacated by four county prisoners, all of whom ultimately tested positive. By Saturday, December 19, Mr. Erazo and his cell-mate, Jose Darwin Quintanilla ("Mr. Quintanilla"), were moved again—this time, into A-pod. The following day, Sunday, December 20, Mr. Erazo informed me that the majority of the cells in A-pod were occupied by county inmates, many of whom were housed two to a two-person cell. The day after that, on Monday, December 21, during the case management conference, UC Davis School of Law Professor Carter White, who is class counsel in the *Hedrick* litigation, informed *Zepeda Rivas* class counsel that more county inmates were at that time being moved into A-pod—directly from housing units where Professor White had previously informed us that significant numbers of inmates had tested positive for COVID, and where the remaining

---

[1] I represent Mr. Erazo in his removal proceedings and he communicated this information to me directly in numerous phone calls over the past week.

CASE NO. 3:20-CV-02731-VC
DECLARATION OF WELLS I/S/O PLAINTIFFS' MOTION FOR TRO

uninfected individuals had been left to languish alongside the sick inmates. Yesterday, December 22, I asked Professor White whether those inmates who had been moved from heavily-infected units into A-pod had been administered rapid tests prior to the move to confirm that they remained uninfected at that point; he replied that he did not know. Last night, December 22, Mr. Erazo informed me that even more county inmates were being introduced into A-pod.

3.   Class members have consistently reported that housing units are not cleaned and disinfected in between occupants, and adequate cleaning supplies are not provided even for the detainees themselves to clean their new living quarters—even when those living quarters were previously occupied by individuals *known* to have been infected with COVID-19. Mr. Quintanilla reports that Q4, which was occupied by four COVID-positive county inmates immediately prior to his arrival, was visibly dirty when he and Mr. Erazo arrived, but they were not given cleaning supplies until approximately four days later. Three of the detainees who were later moved into A-pod also reported arriving to visibly filthy conditions, including trash on the floor and filth on the bed, floor, and/or toilet. They reported resorting to using their shampoo to attempt to clean their cells. Mr. Quintanilla reported that he showed ICE Officer Reyes the dirty conditions in his cell. Bryan Apaza, who was moved into a medical segregation cell on December 19 after testing positive for COVID-19, reports that the bathroom for the medical segregation cell where he was placed had trash in the shower, which subsequently flooded his cell; food residue everywhere, including on the walls; and dirt, hair, dust, plastic trash, and fingernails inside the cell when he arrived. It reportedly took jail staff three days upon his transfer into medical segregation to provide Mr. Apaza with sufficient supplies to clean his own cell.

4.   Fear of infection is pervasive throughout the facility. Class members in A-pod are aware that A-pod is where the outbreak started, and that some of their county neighbors in the pod come from units where nearly everyone is infected. An attorney reported that class member Jonny Vasquez-Rodriguez, who is also housed in A-pod, told her: "It feels like we are on a ship that is slowly sinking." Susan Lange, who coordinates the YCJ visitation group Faithful Friends, said that Mr. Quintanilla reported telling his ICE officer: "I'm worried for my life. I can get sick and die in here. I'm not an animal." Class member Rajnish Rajnish, also housed in A-pod, reported to his attorney that he and other ICE detainees were sleeping with their masks on. Attorneys for medically vulnerable detainees in C-pod report that their clients are terrified of being moved or of anyone new being introduced into the dorm, including the ICE detainees currently housed in A-pod.

5.   Class members report a lack of access to clean masks. Multiple class members have reported that they have only been given fabric masks, which some have been reusing for two to three months.

6.   YCJ does not appear to be exercising due diligence in identifying and isolating COVID-positive or -symptomatic individuals. Attorney Jillian Wagman overheard her client, class member Noe Rivera Garcia ("Mr. Rivera Garcia"), who was on the phone with her at the time, flag down a passing officer and ask to see a nurse early in the afternoon of Monday, December 21 because he had a cough and felt ill. The nurse took Mr. Rivera Garcia's temperature, but said that he would not be tested again for COVID until Friday, December 25. After learning of Mr. Rivera Garcia's symptoms, I informed counsel for Federal Defendants of a newly symptomatic detainee on Tuesday, December 22 at 12:56 PM, and requested that he be isolated pending retesting. At 9:25 PM that night, Federal Defendants' counsel Shiwon Choe ("Mr. Choe")

replied: "We just received word that Mr. Rivera Garcia Abbott-tested positive tonight and has been moved into medical isolation."

7.   Detainees who do fall ill report that they are not receiving adequate care or conditions to support their recovery. Class member Ruperto Robles ("Mr. Robles), a 59-year-old man who suffers from high blood pressure, high cholesterol, and diabetes, reports that on the morning of December 20, he felt that he was having a "heart episode," and attempted to use the call button in his medical segregation cell to seek urgent attention. However, the button did not work. Both Mr. Robles and Mr. Apaza also reported suffering from headaches after their COVID-19 diagnoses but say their requests for painkillers were either denied or ignored.

8.   It also appears from communications with both class members and opposing counsel that opposing counsel is not receiving timely, accurate information from either Federal Defendants or Yuba County. For example, on Saturday, December 19, at 3:07 PM, Federal Defendants' counsel Adrienne Zack informed class counsel that, "We have been informed that Mr. Apaza's PCR returned as positive for COVID-19.  He does not have any symptoms, either last night or this morning." However, two individuals who spoke with Mr. Apaza at 1:15 PM and 3:08 PM the same day said that he *did* report symptoms to the county officials who gave him his test results. The following day, I informed counsel for the Federal Defendants that we had received contradictory information that Mr. Apaza was, in fact, experiencing symptoms. At 8:15 that evening, Federal Defendants' counsel Sara Winslow ("Ms. Winslow") replied, "We…want to clarify that YCJ originally reported to ICE that Mr. Apaza was asymptomatic; however, upon his transfer to medical isolation after he tested positive for COVID-19, he reported symptoms."

9.   Similarly, information regarding the COVID test results of class member Mr. Robles was not relayed accurately. In the same e-mail at 8:15 PM on Sunday, December 20, Ms. Winslow

wrote, "We received notification this evening that Mr. Robles' lab results also came back positive for COVID-19.  He was transferred to medical isolation." The following day, at 8:11 AM, Ms. Winslow wrote that "Our attempts to obtain information quickly over the weekend resulted in us obtaining and relaying incorrect information about Mr. Robles' test results. We were advised today that he has in fact not tested positive yet, but he is symptomatic." Later that morning, during the Case Management Conference, Mr. Choe informed the Court that, in fact, Mr. Robles *had* tested positive. Mr. Robles himself reported receiving conflicting information about his COVID status as late as Tuesday, December 22.

10. Of the three class members who class counsel now know to have tested positive for COVID-19: *we* informed Federal Defendants of one positive test (Bryan Apaza); *we* reported symptoms and requested retesting of a second individual, leading to identification of his COVID-positive status (Noe Rivera Garcia); and we received conflicting and muddled information regarding the third individual (Ruperto Robles). Notably, all three of these individuals had been housed in the same units as county inmates either at the time of or shortly prior to their positive COVID tests.


I declare the foregoing to be to be true, to the best of my knowledge and recollection, on this 23rd day of December 2020 in Oakland, California.

*/s/ Kelly Engel Wells*
Kelly Engel Wells