| | |
|---|---|
| WILLIAM S. FREEMAN (SBN 82002)<br>wfreeman@aclunc.org<br>SEAN RIORDAN (SBN 255752)<br>sriordan@aclunc.org<br>EMILOU H. MACLEAN (SBN 319071)<br>emaclean@aclunc.org<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF NORTHERN<br>CALIFORNIA<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (415) 621-2493<br>Facsimile: (415) 255-8437 | MANOHAR RAJU (SBN 193771)<br>Public Defender<br>MATT GONZALEZ (SBN 153486)<br>Chief Attorney<br>GENNA ELLIS BEIER (SBN 300505)<br>genna.beier@sfgov.org<br>FRANCISCO UGARTE (SBN 241710)<br>francisco.ugarte@sfgov.org<br>OFFICE OF THE PUBLIC DEFENDER<br>SAN FRANCISCO<br>555 Seventh Street<br>San Francisco, CA 94103<br>Direct: (415) 553-9319<br>Facsimile: (415) 553-9810 |

*Attorneys for Petitioners-Plaintiffs*
Additional Counsel Listed on Following Page

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG,<br><br>     Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; NATHAN ALLEN, Warden of Mesa Verde Detention Facility,<br><br>     Respondents-Defendants. | **CASE NO. 3:20-CV-02731-VC**<br><br>**PLAINTIFFS' OPPOSITION TO GEO'S MOTION TO MODIFY PRELIMINARY INJUNCTION (ECF 1082, 1104)**<br><br>Hearing Date: Sept. 2, 2021<br>Hearing Time: 2:00 P.M.<br><br>JUDGE VINCE CHHABRIA |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA  94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
FRANCISCO M. UNGER* (Mass. BBO# 698807)
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted *Pro Hac Vice*

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II. PROCEDURAL BACKGROUND.................................................................................... 1

    A. The Second Preliminary Injunction ........................................................................ 1

    B. Plaintiffs Propound Further Discovery into Conditions at Mesa Verde and Yuba. 2

    C. Ninth Circuit Appeal and Mediation and This Court's Discovery Stay ................. 3

    D. The Parties Reach an Agreement in Principle to Settle the Litigation ................... 3

    E. GEO Brings This Motion Notwithstanding the Mediation and Discovery Stay .... 4

    F. GEO's Request Conflicts with CDC Guidance and the Current Threat of COVID-19 in Congregate Settings, Particularly in Light of the Emergence of the Delta Variant................................................................................................................... 5

        1. Dr. Henderson's Declaration Was Insufficient at the Time It Was Filed ... 5

        2. Plaintiffs' Experts Demonstrate the Need to Continue Population Caps and Universal Surveillance Testing at Mesa Verde........................................... 6

III. ARGUMENT..................................................................................................................... 9

    A. GEO's Motion Is Mooted by the Prospective Settlement, and Should Be Denied on That Basis Alone................................................................................................ 9

    B. GEO's Appeal of the December 2020 Preliminary Injunction Order Divests the Court of Jurisdiction to Modify the Substance of That Order on Appeal............. 10

    C. Even if the Court Had Jurisdiction to Rule on GEO's Motion and Were Inclined to Exercise That Jurisdiction, GEO Clearly Fails to Meet Its Burden to Show That Changed Circumstances Require Modification of the Injunction.......................... 11

        1. Standard for Modifying an Injunction ...................................................... 11

        2. GEO Has Not Met Its Factual Burden to Modify the Injunction.............. 12

IV. CONCLUSION................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Council v. Sw. Marine Inc.*,
 242 F.3d 1163 (9th Cir. 2001) .............................................................................................. 10

*Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*,
 536 F.2d 1268 (9th Cir.1976) ............................................................................................... 11

*Kismet Acquisition, LLC v. Diaz-Barba*,
 755 F.3d 1130 (9th Cir. 2014) .............................................................................................. 10

*Mayweathers v. Newland,*
 258 F.3d 930 (9th Cir. 2001) ................................................................................................ 10

*Rufo v. Inmates of Suffolk County Jail*,
 502 U.S. 367 (1992) .............................................................................................................. 11

*Sharp v. Weston*,
 233 F.3d 1166 (9th Cir. 2000) .............................................................................................. 11

*United States v. Laerdal Mfg. Corp.*,
 73 F.3d 852 (9th Cir. 1995) .................................................................................................. 14

**Rules**

Fed. R. Civ. P. 62 (d) .................................................................................................................. 10

FRAP 12.1 ................................................................................................................................... 11

FRCP 62.1 ................................................................................................................................... 11

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

GEO Defendants' motion to modify the Court's December 2020 preliminary injunction ("Second PI") is an exercise in bad faith that wastes Plaintiffs' and the Court's time and resources. The motion is futile, and should be summarily rejected. Plaintiffs and the Federal Defendants have reached an agreement in principle to settle this litigation – an agreement expected to cover the subjects of GEO's motion – and the Federal Defendants have represented that pending finalization of the agreement, they have no intention to increase the population at Mesa Verde beyond the current caps even if the Court were to permit such an increase.

Presentation of GEO's motion is also unfair to Plaintiffs, who agreed to defer pending discovery as a condition of Federal Defendants' entry into the mediation that led to the pending settlement. That discovery would have been critical to Plaintiffs' ability to oppose the motion.

Even if the Court were to consider GEO Defendants' motion, the motion would clearly fail as a legal and factual matter. The Court presently lacks jurisdiction to entertain the motion because it seeks to alter the status quo established by an order on appeal. Moreover, GEO has not met its burden to demonstrate that the preliminary injunction should be modified. Its evidence, which was grossly inadequate when originally presented over four months ago, has not been updated to account for new information about the COVID-19 pandemic, including evidence that vaccinated individuals can transmit the disease. As explained by Plaintiffs' expert witnesses, GEO's proposed modifications are inconsistent with CDC and other public health guidance and would increase the danger to class members and society. The population caps and testing requirements of the Second PI continue to be necessary.

II.  **PROCEDURAL BACKGROUND**

  A.  **The Second Preliminary Injunction**

The Court entered the Second PI (ECF 867) on December 3, 2020, following a five-day evidentiary hearing involving testimony from five fact witnesses and eight expert witnesses, and introduction of nearly 500 exhibits. The Court found the conduct of Defendants at Mesa Verde to be "appalling." "These officials knew that they needed a clear and detailed plan to minimize the

risk of an outbreak (and to contain an outbreak if one occurred), but nine months later they still have not created one." *Id.* at 2. The Court also found that "[t]hey failed to address the safety concerns created by Mesa Verde's unique layout, which makes it far more dangerous from a contagion standpoint than the typical jail or prison," and that "[t]hey gave false testimony several times in these court proceedings, on matters of importance." *Id.* The Court characterized GEO's conduct in operating Mesa Verde as "abominable." *Id.* at 3.

In granting the Second PI, the Court considered several factors that are pertinent to GEO's current motion. The Court noted that the "unusual housing layout" of Mesa Verde—four 100-person dorms and only five single-person cells—created "especially daunting challenges in dealing with Covid-19." *Id.* at 7. The Court considered, and rejected, Defendants' argument that "circumstances had changed" since the grant of a prior injunction in June 2020. *Id.* at 12-14. In particular, the Court took a dim view of Defendants' "Detainee Intake Procedures Plan," a "two-page document submitted at the eleventh hour" that "fail[ed] to provide any guidance on what the facility will do if another outbreak occurs" and did nothing to ease the Court's "considerable doubt" as to Defendants' willingness to act responsibly in the future, given their ongoing "deliberate indifference" to the health and safety of class members. *Id.* at 13.

### B. Plaintiffs Propound Further Discovery into Conditions at Mesa Verde and Yuba

Shortly after issuance of the Second PI, on December 17, 2020, Plaintiffs propounded document requests to both the Federal Defendants and GEO concerning issues critical to understanding the evolving conditions at Mesa Verde, including ventilation, intake procedures, population limits, outbreak contingency plans, testing, and detainee and staff vaccinations. Riordan Dec. ¶ 3 & Exs. 1-2. After Plaintiffs propounded that discovery, GEO Facility Administrator Nathan Allen took leave and Acting Facility Administrator Michael Knight assumed his role. ECF 1082-2 (Knight Dec.) ¶ 1. Plaintiffs intended, after receiving these documents, to take the depositions of key personnel of Defendants concerning ongoing conditions at Mesa Verde, including ventilation, vaccination programming, and plans for

modifications to intake, testing and quarantine. Riordan Dec. ¶ 3.

### C.  Ninth Circuit Appeal and Mediation and This Court's Discovery Stay

After issuing a memorandum disposition resolving only some of the issues raised by Federal Defendants' first appeal in this case, the Ninth Circuit consolidated Defendants' appeals of the Second PI with the first appeal and ordered the parties to consider referral to the Circuit Mediation Program. ECF 1044. As of that time, the Federal Defendants had not yet completed production in response to Plaintiffs' December 17, 2020 discovery requests. Riordan Dec. ¶ 4. The Federal Defendants insisted on a stay of discovery as a condition to entering into the Ninth Circuit mediation. *Id*. After several weeks of negotiation, the parties agreed to enter into mediation, and upon their stipulation, this Court stayed all discovery and future case management deadlines pending the outcome of mediation. ECF 1078. As part of the stipulation, all parties agreed that in the event the mediation failed, this Court could lift the discovery stay. Federal Defendants agreed that they would then "expeditiously meet outstanding discovery obligations, including the production of documents." *Id*.

### D.  The Parties Reach an Agreement in Principle to Settle the Litigation

The mediation did not fail. As the Federal Defendants have informed the Court, Plaintiffs and Federal Defendants have reached an agreement in principle to settle the litigation. ECF 1132. The parties have until September 14, 2021 to reduce the agreement to writing and for Defendants to dismiss their appeals. *Id.* Plaintiffs and the Federal Defendants are currently working to reduce the agreement to writing, and anticipate that the settlement will address the Second PI and the population caps set forth therein. *Id*.; *see also,* Riordan Dec. ¶ 2. Federal Defendants have represented to the Court that they "have no present intent to depart from the population cap terms of the [Second PI] at this time…." ECF 1132. In other words, *Federal Defendants will not seek to add to the Mesa Verde population beyond what the Second PI allows between now and the settlement of the case, and parties expect the settlement will determine any population caps*

*going forward.*

### E. GEO Brings This Motion Notwithstanding the Mediation and Discovery Stay

Only nine days after the parties agreed to participate in Ninth Circuit mediation, GEO filed the instant motion seeking to modify the Second PI. ECF 1082. GEO's filing was disingenuous, and quite possibly designed to disrupt the mediation process to protect its economic interests against any agreed-upon or court-ordered population cap.[1] It was also unfair to Plaintiffs, since the discovery Plaintiffs had properly sought – and the Federal Defendants had until then failed to provide – would be critical to enable Plaintiffs to respond to GEO's claims that "changed circumstances" justified modification of the Second PI.

After Plaintiffs' counsel protested vigorously, the parties stipulated, and the Court ordered, that Plaintiffs' response to the motion would not be due until "14 days after the date the mediation effort is determined to be unsuccessful," and that such a determination could only be made "if counsel *for all defendants*, or Plaintiffs' counsel, state that the mediation has reached an impasse." ECF1085, Order at 2 (emphasis added).

Two months later, blatantly violating their own stipulation and the Court's Order, GEO sought to renew its motion to modify the Second PI by filing a "Notice Regarding the Previously Filed Motion to Modify [the Second PI]" in which GEO *unilaterally* "determined that the mediation has been unsuccessful." ECF 1104 at 1. Not only was this claim factually untrue, since neither Plaintiffs' counsel nor Federal Defendants' counsel believed the mediation had reached an impasse (*see* ECF 1106-1, Riordan Declaration, 6/3/21, at ¶¶ 6-7); it also violated the prior Stipulation, which stated that an impasse could only be declared by *all* Defendants or Plaintiffs. Far from being at impasse, the mediation proceeded to produce an agreement in principle to settle the case in a manner that will address all the relief that the Court could order.

---

[1] GEO has elsewhere sought to prevent Federal Defendants from maintaining population reductions that harm its economic interests. In the Adelanto litigation, GEO sought to intervene and to modify a preliminary injunction on the grounds that "the Government is no longer protecting [GEO's] interests" and the "capacity limitations and ban on new transfers impacts [GEO Group's] … compensation under its contract with the [Government]." Order, 7/7/21, ECF 1207, *Hernandez Roman v. Mayorkas,* 20-cv-00768, attached as Exhibit 3 to the Riordan Declaration. Judge Hatter denied GEO's motion to intervene and struck its motion to modify the preliminary injunction. *Id.*

### F. GEO's Request Conflicts with CDC Guidance and the Current Threat of COVID-19 in Congregate Settings, Particularly in Light of the Emergence of the Delta Variant

#### 1. Dr. Henderson's Declaration Was Insufficient at the Time It Was Filed

In support of its motion, GEO relies almost solely on the March 25, 2021 declaration of Dr. Sean Henderson (ECF 1082-1), which was misleading in important respects. *First,* Dr. Henderson misstated relevant revisions of CDC guidance concerning correctional and detention settings subsequent to the availability of COVID-19 vaccines. Dr. Henderson falsely stated that the CDC "has not updated its recommendations pertaining to congregate settings … to address the housing and other treatment of vaccinated persons." Henderson Dec. ¶ 5. In fact, the CDC *had* updated its detention guidance, well after the approval and rollout of the Pfizer and Moderna vaccines, and was emphatic about the need for continued non-pharmaceutical interventions ("NPIs") in detention settings. Greifinger Dec. ¶ 6.

*Second,* Dr. Henderson mischaracterized CDC guidance intended for the general population. He claimed that the CDC's general guidance that (in his words) "fully vaccinated persons" could "normally interact indoors with other fully vaccinated persons without wearing masks or distancing," implied that it would be "reasonable" to remove population caps in dorms containing fully vaccinated people, so that they could again sleep three feet apart, 100 to a dorm. Henderson Dec. ¶ 7. This was a gross mischaracterization of the general guidance, and ignored more relevant, contrary guidance. On the same page cited by Dr. Henderson, the CDC advised that while fully vaccinated people can "visit[]" each other, they "should continue to follow guidance to protect themselves and others, including . . . physical distancing …, avoiding crowds, [and] avoiding poorly ventilated spaces." Greifinger Dec. ¶ 14. Fully vaccinated persons were also warned to "avoid medium or large-sized gatherings." *Id*.

### 2. Plaintiffs' Experts Demonstrate the Need to Continue Population Caps and Universal Surveillance Testing at Mesa Verde

This opposition is supported by detailed declarations from Dr. Robert Greifinger, with whom this Court is familiar, and from Dr. Salmaan Keshavjee, a professor at Harvard Medical School. These experts comprehensively demonstrate the folly of eliminating the critical mitigation measures of population caps and universal surveillance testing at a time when the Delta variant infects huge numbers of vaccinated and unvaccinated people alike and challenges the public health community's previous assumptions about the capacity of vaccines to protect against transmission of SARS-CoV-2. Drs. Greifinger and Keshavjee also rebut the interpretations of CDC guidance upon which GEO's expert, Dr. Henderson, relied.

Dr. Greifinger explains in detail why "it is premature to modify the mitigation measures that the December 2020 preliminary injunction requires at Mesa Verde, particularly as the Delta variant of SARS-CoV-2 spreads rapidly throughout the United States and the CDC recommends reinstituting mitigation measures throughout society." Seventh Supplemental Declaration of Robert Greifinger, MD. ("Greifinger Dec.") ¶ 4. At the time GEO filed its motion in March, the CDC was advising that correctional facilities should "continue to practice additional prevention strategies … after vaccine has been administered." (*Id.* ¶ 6.) Current guidance—which has not yet even been updated to account for the Delta variant—recommends "the maintenance of mitigation measures where the physical characteristics of a facility allow COVID-19 to spread easily" (*id.* ¶ 7), and that "historical levels of transmission within the facility" and "the level of community spread" (which is "substantial" in Kern County) be considered before relaxing mitigation measures (*id.* ¶¶ 8, 10). Dr. Henderson does not appear to have considered any of these factors.

Dr. Greifinger also points out that the CDC states that "maintaining a robust testing

program" and "continu[ing] to have a plan for scalable isolation and quarantine" are critical to any facility modifying prevention measures (*id.* ¶ 11(a)-(b)); neither of these is addressed by Dr. Henderson. According to CDC guidance, relaxation of mitigation measures in detention facilities must be done only "gradually … in a stepwise fashion, one prevention measure at a time, with continued screening testing to carefully monitor for COVID-19 cases in the facility before making changes to additional prevention measures." (*Id.* ¶ 12.)

Dr. Greifinger dismantles Dr. Henderson's reliance on prior CDC guidance relating to the *general population* as a being somehow applicable to *detention facilities* (*id.* ¶¶ 14, 20) and notes additional serious flaws in Dr. Henderson's analysis: his reliance on efficacy data for the Pfizer and Moderna vaccines that does not apply to the Johnson & Johnson vaccine administered at Mesa Verde (*id.* ¶ 17), his assertion that the vaccines prevent all serious illness (*id.* ¶ 15), and the absence from GEO's motion of any information concerning plans to vaccinate new arrivals or staff (*id.* ¶¶ 18, 19). Dr. Greifinger also reviews current CDC guidance concerning variants, including the suggestion that fully vaccinated persons can transmit the disease (*id.* ¶ 16). Based on the flaws in Dr. Henderson's original analysis and GEO's failure to explain its own practices and more recent CDC guidance, Dr. Greifinger concludes that "neither CDC guidance nor other epidemiological principles support the lifting of protective measures at Mesa Verde under the facts presented by GEO Group." (*Id.* ¶ 22.)

Dr. Keshavjee further explains the need for ongoing NPIs at Mesa Verde. He concludes that "[v]accination alone will be insufficient to stop COVID-19 outbreaks in detention facilities at this time," and that "there will continue to be a significant risk of SARS-Co-V-2 transmission and related illness or death in congregate facilities if depopulation and other mitigation measures are relaxed or ended." Keshavjee Decl. ¶ 10. Dr. Keshavjee points to, among other things,

alarming new evidence showing that approved vaccines have diminished ability to prevent infection from the Delta variant (a recent Israeli study found mRNA vaccines were only 39% effective at preventing such infection) and that vaccinated people readily transmit the virus to others. *Id*. ¶¶ 11, 13, 21, 26, 31, 36. Based on this evidence, Dr. Keshavjee cautions that "with our current vaccines, vaccine-derived herd immunity may no longer be sufficient to control the spread of SARS-CoV-2, a conclusion that would be even stronger in congregate settings where herd immunity as a concept is already of diminished utility." *Id*. ¶ 13.[2]

Dr. Keshavjee reviews in detail the scientific literature surrounding the relaxation of NPIs in both carceral and non-carceral settings, and concludes:

> [V]accination efforts must *complement*, and not *replace*, existing mitigation measures…. The most important NPI with which to effectively prevent COVID-19 in carceral and detention facilities is population reduction, followed by social distancing, regular testing, effective quarantine and isolation, access to personal protective equipment, and sanitation and hygiene. The diminution of NPIs upon the availability of vaccines would undermine the benefit of the vaccine and would ensure sustained risk of transmission and resulting illness, despite increasing vaccine access.

*Id.* ¶ 33 (emphasis in original). The reasons for "the limited effectiveness of vaccines introduced in isolation (or as replacement for NPIs) in immigration detention facilities" include the particularly high reproduction number of the virus in densely populated environments, *id.* ¶ 39(a), and other factors typical of such environments including frequent transfers, staff movements, and limitations in access to PPE, testing and healthcare. *Id.* ¶ 39(g).

As Dr. Keshavjee notes, based on modeling and epidemiological analysis: "Even a highly efficacious vaccine . . . will have suboptimal preventive effects in high-spread, congregate settings such as immigration detention settings." *Id.* ¶ 32. A spike in COVID-19 cases among people detained by ICE this past Spring demonstrate this risk. At that time, ICE was in the

---

[2] Dr. Keshavjee also points to documented vaccine resistance among guards (a subject on which GEO has been notably silent) as well as people in custody and the broader population. *Id.* ¶¶ 12, 39(b). *See also* Greifinger Dec. ¶ 12 ("Reluctance to be vaccinated by those being detained is understandable and should be addressed through thoughtful communication by those who manage detention settings.").

process of *doubling* the detained population relative to a few months earlier. And even though COVID-19 was declining in society at large, the incidence of COVID-19 was about 100 times higher than the general incidence of the disease. *Id.* ¶ 38.[3] The risks inherent to immigration detention centers are compounded by the emergence of the Delta variant. That variant has an estimated reproduction number of 7.0 (two to three times higher than the basic reproduction number of ancestral SARS-CoV-2), "a figure that would likely be even higher in a congregate detention center like Mesa Verde." *Id.* ¶ 36.

There are other reasons not to relax NPIs based on the availability of vaccines alone. It is currently unknown how effective vaccines are at preventing "long COVID" – which can have debilitating effects, including extreme fatigue, cognitive problems, depression, and anxiety – as well as certain other serious health conditions. *Id.* ¶ 39(c), (d). Moreover, public health experts predict that relaxing NPIs at this point will enable the emergence of more virulent and vaccine evasive SARS-CoV-2 variants. *Id.* ¶ 43. Dr. Keshavjee concludes that "[t]he premature relaxation of multi-layered mitigation measures at immigration detention centers risks the health and safety of those detained, and also the broader community," and that vaccines should only be viewed as "one component of a multi-layered strategy to stop viral transmission." *Id.* ¶ 48.

## III.   ARGUMENT

### A.   GEO's Motion Is Mooted by the Prospective Settlement, and Should Be Denied on That Basis Alone

Even if the Court were to order all the relief requested by GEO, there would be no resulting change to current conditions at Mesa Verde between now and the consummation of the settlement, and the conditions agreed to in the settlement will supersede any preliminary injunctive relief. In connection with the pending settlement, the Federal Defendants have pledged

---

[3] *See also*, Maura Turcotte, "Virus cases are surging at crowded immigration detention centers in the U.S.," N.Y. Times, July 6, 2021 (noting "major surges" in COVID-19 infections in early July, when more than 26,000 people were in detention, compared with about 14,000 in April), https://www.nytimes.com/2021/07/06/us/covid-immigration-detention.html.

not to increase the current per-dorm caps and stated that they expect the settlement to address population caps in a lasting way. *See* ECF 1132 at 1. Similarly, with respect to GEO's request to eliminate weekly testing for fully vaccinated persons, that issue is expected to be covered by the settlement. *Id.*; *see also,* Riordan Dec. ¶ 2.

Thus while the requested modifications to the Second PI's population caps might *permit* the Federal Defendants to exceed existing caps as an *interim* measure pending final resolution of the case, it could have no practical effect because the Federal Defendants have already stated that they have no intention of doing so. The Court has no reason to consider such a futile request.

### B. GEO's Appeal of the December 2020 Preliminary Injunction Order Divests the Court of Jurisdiction to Modify the Substance of That Order on Appeal

Even if the Court were inclined to rule on the motion, it would lack authority to do so because a district court lacks jurisdiction to modify an order on appeal, except under circumstances not present here. "Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." *Nat'l Res. Def. Council v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). Exceptions to this divestiture rule are codified in Fed.R.Civ.P. 62(d), which allows a district court to "suspend, modify, restore, or grant an injunction" during the pendency of an appeal. But any action by the district court under Rule 62(d) must "preserve[] the status quo" and "not materially alter the status of the case on appeal." *Sw. Marine Inc.*, 242 F.3d at 1166. GEO does not seek to modify the Second PI in order to preserve the status quo, which is measured at the time the appeal is taken, *see Mayweathers v. Newland,* 258 F.3d 930, 935 (9th Cir. 2001), but to destroy that status quo by allowing hundreds of additional class members to be detained at Mesa Verde under a relaxed testing regime.

GEO cites *Kismet Acquisition, LLC v. Diaz-Barba*, 755 F.3d 1130, 1138 (9th Cir. 2014) and *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir.1976), for a purported exception to the divestiture rule "where the Court supervises a continuing course of conduct and whereas new facts develop additional supervisory action by the

court is required." (ECF 1082 at 1, 4 (quotations omitted)). But *Hoffman* (on which *Kismet Acquisition, LLC* relies) makes clear that this "new facts" exception applies only if "*the maintenance of the status quo requires new action.*" 536 F.2d at 1276 (emphasis added). As explained above, GEO seeks to alter the status quo, not maintain it.[4]

### C. Even if the Court Had Jurisdiction to Rule on GEO's Motion and Were Inclined to Exercise That Jurisdiction, GEO Clearly Fails to Meet Its Burden to Show That Changed Circumstances Require Modification of the Injunction

#### 1. Standard for Modifying an Injunction

While arguing, in a single sentence, that a district court "may modify an injunction" where "as new facts develop additional supervisory action by the court is required," GEO completely ignores its burden to demonstrate the *necessity* of such a modification. "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). "If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992). Where a party seeks modification on the ground of changed circumstances, the district court is "required to examine the existing situation [at the time of the requested modification] to determine whether the changes … were so significant as to warrant" the relief requested." *Sharp*, 233 F.3d at 1170.[5] GEO's misleading and woefully outdated factual presentation provides no reason to disturb the injunction, while Plaintiffs'

---

[4] GEO's alternative request for an indicative ruling should also be denied. The Ninth Circuit panel with jurisdiction over the appeal of the Second PI is expecting the parties to consummate a settlement agreement by September 14. That panel would at best be puzzled by an indicative ruling from this Court *now* requiring it to expend resources considering whether to grant a remand under FRAP 12.1 and the scope of such a remand. Moreover, as explained below, GEO Group's motion fails on the merits, defeating any justification for FRCP 62.1 indicative ruling.

[5] Notably, GEO seeks to undo an order based on five days of live testimony and submission of hundreds of exhibits based on two short and outdated declarations. Yet in *Sharp*, which involved a request to modify an injunction governing conditions of confinement, the district court held a three-day evidentiary hearing on the motion to modify the injunction. *Id.*

### 2. GEO Has Not Met Its Factual Burden to Modify the Injunction

The Court should also not modify the Second PI because GEO has fallen far short of meeting its burden to demonstrate that such a modification is necessary. In contrast to Plaintiffs' detailed evidentiary presentation that the Court found supported the Second PI, GEO presents only an erroneous and highly selective rendition of CDC guidance. Plaintiffs' experts eviscerate GEO's purported scientific arguments, conclusively establishing that while the vaccines are important, they are *not* a panacea that would justify the termination of other NPIs such as population reduction, social distancing, and surveillance testing. COVID-19 was already surging at other immigration detention centers even before the arrival of the Delta variant, *see* Keshavjee Dec. ¶ 38, and emerging evidence indicates that vaccinated individuals have diminished protection against the Delta variant and can readily spread it to others—both vaccinated and unvaccinated, *see id.* ¶¶ 11, 13, 21, 26, 31, 36. This is simply not the time to relax critical mitigation measures at Mesa Verde, particularly as the Delta variant surges in Kern County, where vaccination efforts continue to struggle.[6]

GEO also undermines its own motion by failing to put forward any plan as to how it would implement the relief it now seeks from the Court. GEO's motion is predicated on the mitigating impact of vaccination, but does not mention any plan for future vaccination of the vastly increased population it proposes.[7] Instead, as factual support, it offers only that vaccines

---

[6] Sam Morgen, "Kern residents encouraged to wear masks indoors following state's guidance," Bakersfield.com, July 29, 2021, https://www.bakersfield.com/news/all-kern-county-residents-now-encouraged-to-wear-masks-indoors-as-cases-rise/article_ec7be628-f0b4-11eb-b656-ab701c74c61b.html; Ishani Desai, "Kern County sees coronavirus variants emerge as vaccination efforts falter," Bakersfield.com, July 16, 2021, https://www.bakersfield.com/news/kern-county-sees-coronavirus-variants-emerge-as-vaccination-efforts-falter/article_67fae3be-e695-11eb-b623-2787005ba779.html.

[7] In GEO's renewed motion, it proposes population increases of "5 vaccinated detainees" at a time. It is not clear whether GEO intends for these new detainees to have been vaccinated prior to book-in or whether GEO, though it has set forth no plan to do so, plans to vaccinate them itself. As discussed elsewhere in this brief, ICE, not GEO, controls who is booked into the population. Although GEO did not include a proposed order with its motion, it is not

were *previously* administered, on two occasions, to *current* class members five months ago. ECF 1082-1 ¶ 3. The declaration from Acting Facility Administrator Michael Knight, which sets forth "the efforts GEO has undertaken in response to COVID-19" includes *no* plan—or even stated intent—to procure vaccine doses or administer vaccine to newly-booked Class Members.

GEO also offers no plan to manage the vastly-increased population it proposes to house at Mesa Verde, including where and how to house class members during the time period between their arrival at the facility and the point where they are fully vaccinated, which may last as long six weeks.[8] This Court entered the existing preliminary injunction at least in part to remedy GEO's previous failure to develop appropriate plans to mitigate the serious infection risks in the mass congregate setting of Mesa Verde. *See* ECF 867 at 2, 7 ("These officials knew that they needed a clear and detailed plan to minimize the risk of an outbreak (and to contain an outbreak if one occurred), but nine months later they still have not created one. … The general COVID-19 guidelines for detention centers published by the CDC, ICE, and GEO did not in any way obviate the need to create a Mesa Verde-specific contingency plan."). As Dr. Greifinger concludes, "[g]iven that poor planning has enabled outbreaks at Mesa Verde in the past, it is concerning the GEO Group includes no plan or other information about administration of COVID-19 vaccines while proposing dramatic redensification." Greifinger Dec. ¶ 17. By predicating its entire motion solely on the vaccination of 24 currently-detained Class Members in Mesa Verde and

---

clear how it intends to learn whether a potential detainee has become vaccinated, ensure that the person becomes fully vaccinated within Mesa Verde, or otherwise manage this proposal.

[8] A person is "fully vaccinated" two weeks after a single-dose vaccine, like the Johnson & Johnson vaccine previously administered to Class Members, or two weeks after the second dose in a two-dose series vaccine, such as the Pfizer or Moderna vaccine. https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html. The two doses of the Pfizer vaccine should be administered three weeks apart and the two doses of the Moderna vaccine should be administered four weeks apart. CDC, *COVID-19: Frequently Asked Questions*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html (accessed Aug. 3, 2021). Accordingly, a Class Member who receives the first dose of a Moderna or Pfizer vaccine upon book-in will not be "fully vaccinated" for 5-6 weeks.

disregarding *any* plan to vaccinate and safely house the *276* additional individuals it seeks to detain, GEO has failed to make a factual showing sufficient to modify the injunction.

Moreover, GEO's request to undo the Court's carefully calibrated order must be viewed against Defendants' history of deliberate indifference to the health and safety of detainees. As the Court properly found in the Second PI, "the defendants' argument that the deliberate indifference they demonstrated in the past has no bearing on whether a preliminary injunction is warranted now is wrong." ECF 867 at 14 (*citing, inter alia, United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 857 (9th Cir. 1995)). The same logic applies to Defendants' current motion; "considering the whole record in this case, there exists, to put it mildly, some cognizable danger of recurrent violation." *Id.* at 15 (internal quotation omitted). As Dr. Greifinger noted, Defendants have presented no evidence that they will be able to comply with current CDC guidance – issued *after* the availability of vaccines – with the increased population levels they propose. *See, e.g.*, Greifinger Decl. ¶¶ 6-7, 13. They fail even to identify that they *understand* the current CDC guidance. *Id.* ¶¶ 6-7, 11, 13.

## IV.   CONCLUSION

For all of the foregoing reasons, GEO's motion to modify the Second PI should be denied.

Dated: August 4, 2021                              Respectfully submitted,

Bree Bernwanger                                    */s/ William S. Freeman*
Hayden Rodarte                                     William S. Freeman
LAWYERS' COMMITTEE FOR                             Sean Riordan
CIVIL RIGHTS OF                                    Emilou H. Maclean
SAN FRANCISCO BAY AREA                             AMERICAN CIVIL LIBERTIES UNION
                                                   FOUNDATION OF NORTHERN
Judah Lakin                                        CALIFORNIA
Amalia Wille
LAKIN & WILLE LLP


| | |
|---|---|
| Jordan Wells<br>Stephanie Padilla<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF SOUTHERN<br>CALIFORNIA | Manohar Raju<br>Public Defender<br>Matt Gonzalez<br>Chief Attorney<br>Genna Ellis Beier<br>Francisco Ugarte<br>OFFICE OF THE PUBLIC DEFENDER<br>SAN FRANCISCO<br><br>Martin S. Schenker<br>Timothy W. Cook<br>Francisco M. Unger<br>COOLEY LLP |

*Attorneys for Petitioners-Plaintiffs*