1   WILLIAM S. FREEMAN (SBN 82002)
    wfreeman@aclunc.org
2   SEAN RIORDAN (SBN 255752)
    sriordan@aclunc.org
3   EMILOU H. MACLEAN (SBN 319071)
    emaclean@aclunc.org
4   AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF NORTHERN CALIFORNIA
5   39 Drumm Street
    San Francisco, CA 94111
6   Telephone: (415) 621-2493
    Facsimile: (415) 255-8437
7
    Attorneys for Petitioners-Plaintiffs
8   Additional Counsel Listed on Following Page
9

   MANOHAR RAJU (SBN 193771)
   Public Defender
   MATT GONZALEZ (SBN 153486)
   Chief Attorney
   GENNA ELLIS BEIER (SBN 300505)
   genna.beier@sfgov.org
   JENNIFER FRIEDMAN (SBN 314270)
   jennifer.friedman@sfgov.org
   FRANCISCO UGARTE (SBN 241710)
   francisco.ugarte@sfgov.org
   KELLY ENGEL WELLS (SBN 338648)
   kelly.wells@sfgov.org
   OFFICE OF THE PUBLIC DEFENDER
   SAN FRANCISCO
   555 Seventh Street
   San Francisco, CA 94103
   Direct: (415) 553-9319
   Facsimile: (415) 553-9810

10

11                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
12                       SAN FRANCISCO DIVISION

13   ANGEL DE JESUS ZEPEDA RIVAS,                CASE NO. 3:20-CV-02731
     BRENDA RUBI RUIZ TOVAR, LAWRENCE
14   KURIA MWAURA, LUCIANO GONZALO             **PLAINTIFFS' UNOPPOSED**
     MENDOZA JERONIMO, CORAIMA                 **MOTION FOR PRELIMINARY**
15   YARITZA SANCHEZ NUÑEZ, JAVIER             **APPROVAL OF PROPOSED CLASS**
     ALFARO, DUNG TUAN DANG, JUAN JOSE         **SETTLEMENT**
16   ERAZO HERRERA, RAJNISH RAJNISH, and
     WILLIAN MATIAS RAUDA,                     **JUDGE VINCE CHHABRIA**
17
            Petitioners-Plaintiffs,
18
            v.
19
     DAVID JENNINGS, Acting Director of the San
20   Francisco Field Office of U.S. Immigration and
     Customs Enforcement; TAE JOHNSON, Acting
21   Director of U.S. Immigration and Customs
     Enforcement; U.S. IMMIGRATION AND
22   CUSTOMS ENFORCEMENT; GEO GROUP,
     INC.; MICHAEL KNIGHT, Acting Warden of
23   Mesa Verde Detention Facility,

24          Respondents-Defendants.

25

26

27

28

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF THE
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
JULIE M. VEROFF
jveroff@cooley.com (SBN 310161)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted *Pro Hac Vice*

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND ............................................................................................................. 2

    A.    Procedural History ................................................................................................ 3

    B.    Settlement Negotiations ....................................................................................... 4

    C.    Material Terms of the Proposed Settlement ........................................................ 4

III.  LEGAL STANDARD .................................................................................................... 7

IV.   ANALYSIS ..................................................................................................................... 8

    A.    The Proposed Class Meets the Requirements of Rule 23(a). ............................... 8

        1.    The Proposed Class Meets the Numerosity Requirement. ................................ 9

        2.    The Proposed Class Meets the Commonality Requirement. .............................. 9

        3.    The Proposed Class Representatives Meet the Typicality Requirement. ......................... 11

        4.    The Proposed Class Representatives and Proposed Class Counsel Meet the Adequacy
Requirement. ....................................................................................................... 11

    B.    The Proposed Class Meets the Requirements of Rule 23(b)(2). ........................... 12

    C.    The Proposed Settlement Falls Well Within the Range of Possible Approval. .................. 13

    D.    The Proposed Notice Form and Notice Plan Is Appropriate. ............................... 15

V.    CONCLUSION. ............................................................................................................. 15

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 620 (1997) ................................................................................. 8, 12

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001) ......................................................................... 10, 11

*Arnold v. United Artists Theatre Cir., Inc.*,
  158 F.R.D. 439 (N.D. Cal. 1994) .......................................................................... 9

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................... 8, 12

*Bakhtiar v. Info. Res., Inc.*,
  2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) ..................................................... 8

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .............................................................................. 7

*Gray v. Golden Gate Nat'l Recreational Area*,
  279 F.R.D. 501 (N.D. Cal. 2011) ........................................................................ 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 11

*Hernandez v. Cnty. Of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ........................................................................ 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................... 8, 13

*Johnson v. Cal.*,
  543 U.S. 499 (2005) ............................................................................................ 10

*Lilly v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. 2015) .................................................................. 14

*MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*,
  2020 WL 7389419 (N.D. Cal. Nov. 17, 2020) ................................................... 10

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .............................................................................. 10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ................................................................................ 7

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .......................................................................... 8, 10

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) ........................................................... 10, 11, 12, 13

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ........................................................... 9, 12

*Savino v. Souza*,
   453 F. Supp. 3d 441 (D. Mass. 2020) ........................................................................... 9, 10

*Sueoka v. United States*,
   101 F. App'x 649 (9th Cir. 2004) ..................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................... 9, 10

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) ......................................................................................... 12

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ........................................................................................... 10

*Zepeda Rivas v. Jennings*,
   445 F. Supp. 3d 36 (N.D. Cal. 2020) ....................................................................... passim

**RULES**

Federal Rule of Civil Procedure 23 ............................................................................... passim

**OTHER AUTHORITIES**

*Manual for Complex Litigation, Second* § 30.44 (1985) ................................................. 13

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND APPROVAL OF NOTICE TO CLASS OF SETTLEMENT**

PLEASE TAKE NOTICE that on March 3, 2022, or soon thereafter in accordance with Local Rule 7-2(a), Plaintiffs will and hereby do move the Court for an order granting preliminary approval of the settlement negotiated with Defendants in this Action.

Plaintiffs request that the Court:  (1) find it will likely approve the settlement; (2) find it will likely certify the class for settlement purposes; (3) appoint Plaintiffs as class representatives; (4) appoint William Freeman, Sean Riordan, and Emilou MacLean (ACLU Foundation of Northern California); Stephanie Padilla (ACLU Foundation of Southern California); Bree Bernwanger (Lawyers' Committee for Civil Rights of the San Francisco Bay Area); Francisco Ugarte, Jennifer Friedman, Kelly Engel Wells, and Genna Beier (Office of the Public Defender of San Francisco); Martin S. Schenker, Timothy W. Cook, and Julie M. Veroff (Cooley LLP); and Judah Lakin and Amalia Wille (Lakin & Wille LLP) as Class Counsel; (5) direct notice to the settlement class in connection with the settlement and approve the notice form; (6) approve Plaintiffs' proposed notice methods; and (7) set a schedule for final approval of the settlement and Plaintiffs' request for attorneys' fees and expenses.  This motion is supported by the memorandum of points and authorities included below, all papers and records on file in this matter, and such other matters as the Court may consider.

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (e), Plaintiffs respectfully request that the Court: (1) find it will likely approve the proposed class-wide settlement agreement (the "Agreement") attached as Exhibit 1; (2) find it will likely certify the class for settlement purposes; (3) appoint Plaintiffs as class representatives; (4) appoint the above-referenced counsel and their successors as Class Counsel; (5) direct notice of the settlement and approve the notice form; (6) approve the notice plan set forth in Section VIII.D of the Agreement; and (7) set the date and time for a fairness hearing, as set forth in the attached stipulated order ("Proposed Order").  As set forth herein, Defendants do not oppose this motion, the settlement is more than fair and reasonable to Class

1    Members, and the settlement warrants approval by this Court.

2         Plaintiffs brought this class action lawsuit on behalf of all people in the custody of ICE in either

3    the Yuba County Jail ("YCJ") or Mesa Verde Detention Center ("Mesa Verde") (collectively, the

4    "Facilities"), to enforce those individuals' constitutional rights to be protected against the dangerous

5    risk of contracting COVID-19.  This Court provisionally certified a class on April 29, 2020, and

6    entered a temporary restraining order designed to achieve social distancing and thereby protect Class

7    Members from the risk of COVID-19.  On June 9, 2020, this Court issued a preliminary injunction,

8    which required that Defendants maintain measures to mitigate the risk of COVID-19 in the Facilities.

9    After COVID-19 outbreaks at both Facilities, this Court granted preliminary injunctions in December

10   2020 and January 2021, requiring Defendants to implement certain measures intended to protect the

11   detained population.

12        The settlement retains key protections from this Court's earlier preliminary injunctions.  It also

13   ensures that Class Members in the Facilities will have access to vaccination, testing, and sanitation

14   products to help prevent any further spread of COVID-19.  The settlement was reached after years of

15   vigorous litigation and months of negotiations between the parties overseen by a mediator appointed

16   by the Ninth Circuit.  The settlement meets the requirements under Federal Rule of Civil Procedure

17   23 and, thus, should be approved by this Court.

18   **II.    BACKGROUND**

19        This lawsuit began with the spread of the COVID-19 pandemic across the United States,

20   resulting in a heightened risk of infection for people in ICE detention facilities.  As of April 20, 2020,

21   despite CDC recognition that jails and detention facilities posed a high risk of COVID-19 infection to

22   its staff and detainees, Class Members had no ability to socially distance.  They slept on bunk beds in

23   crowded dorms, shared limited bathroom space, and ate meals communally, often elbow-to-elbow.

24   Additionally, Defendants had inadequate screening procedures for admitting new people into the

25   Facilities, no testing requirements for staff or Class Members, and few preventive supplies available

26   to detainees.

27        As a result, Defendants would allow new entrants to the Facilities to immediately join the

28   general population without testing for COVID-19 or screening for symptoms.  The regular influx of

1   new entrants into already crowded facilities and the absence of regular testing for staff or Class

2   Members created tinderbox conditions as the pandemic spread.  Defendants failed to provide adequate

3   testing, even if Class Members showed potential symptoms of COVID-19.  And Defendants had no

4   facility-specific plan to isolate or quarantine symptomatic or positive Class Members.  Plaintiffs

5   brought this case and then won multiple rounds of preliminary relief to remedy those unconstitutional

6   harms.

7         **A.**    **Procedural History**

8         Plaintiffs filed a class action complaint on April 20, 2020, seeking to protect themselves and

9   their peers from unconstitutional conditions at the Facilities.  ECF No. 1, Compl.[1]  On April 29, 2020,

10   the Court provisionally certified a class of all people in civil immigration detention at the Facilities

11   and entered a temporary restraining order.  *See Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38-42

12   (N.D. Cal. 2020); ECF No. 53.  Plaintiffs then moved for a preliminary injunction on May 22, 2020,

13   which the Court granted on June 9, 2020, ordering Defendants to maintain protections against the

14   transmission of COVID-19 in the Facilities.  ECF No. 357, Order Granting Mot. Prelim. Inj.

15         Plaintiffs took substantial discovery, including expedited document productions, depositions,

16   and a site inspection.  When Defendants failed to implement facility-specific protocols to minimize

17   the risk of COVID-19 transmission during a COVID-19 outbreak at Mesa Verde, this Court granted a

18   show cause order and temporary restraining order.  ECF No. 500, Order Granting TRO.  Following a

19   five-day evidentiary hearing, the Court ordered a second preliminary injunction as to Mesa Verde on

20   December 3, explicitly listing mitigation measures Defendants must take, including population caps

21   on housing units, intake screenings, and testing.  ECF No. 867, Order Granting Mot. Second Prelim.

22   Inj.

23         In January 2021, in response to an outbreak in YCJ, this Court converted a temporary

24   restraining order granted on December 23, 2020, to a preliminary injunction.  ECF No. 951, Order

25   Granting Mot. Prelim. Inj. Re Yuba County Jail.

26    

27   [1] On October 30, 2020, Plaintiffs filed an amended complaint.  ECF No. 780, Am. Compl.  The amended complaint, which is the operative pleading, sets forth a single claim challenging Defendants'

28   detention of Plaintiffs and other Class Members as violative of the Due Process Clause of the Fifth Amendment of the United States Constitution.

1  Federal Defendants filed notices of appeal for both the Court's April 29, 2020 and June 9, 2020

2  orders (and all Defendants later appealed the December 3 injunction).  In February 2021, the Ninth

3  Circuit ruled in part, upholding the District Court's initial TRO and June 9 injunction, reserved a

4  portion of the appeals, and ordered the parties to consider mediation.  *See Zepeda Rivas v. Jennings*,

5  Case No. 20-16276, ECF Nos. 76 & 77 (9th Cir. Feb. 18, 2021).

6     **B.     Settlement Negotiations**

7  Following the Ninth Circuit's February order, the parties began discussing the possibility of

8  settlement with the assistance of the Ninth Circuit Mediation Program.  The parties negotiated over

9  the spring and summer of 2021, exchanging numerous versions of proposed settlement terms and

10  participating in numerous calls and virtual settlement conferences, both with and without the Circuit

11  Mediator.  The issues were complex and the negotiations contentious.  The substantive provisions

12  concerned the treatment of both Class Members remaining in detention and Class Members who have

13  been released from detention.  The parties asserted broadly divergent and strongly held views as to

14  how to resolve those issues, requiring intensive written and verbal negotiations between the parties,

15  and the direct participation of high-level agency personnel, over the course of several months.

16  The parties were able to reach an agreement in principle in July 2021.  Reducing the parties'

17  agreement in principle into a detailed and final written agreement required several more months.  The

18  whole of these negotiations proved to be so challenging that the parties requested additional time to

19  conclude the mediation, and a divided Ninth Circuit panel permitted additional time.  *Zepeda Rivas v.*

20  *Jennings*, 20-cv-16276 at ECF No. 86 (9th Cir. July 16. 2021) (Christen, J., dissenting in part); *id.* at

21  ECF No. 88 (9th Cir. Sept. 17, 2021) (Christen, J., dissenting); *id*. at ECF No. 93 (9th Cir. Nov. 17,

22  2021) (Christen, J., dissenting).  The parties finalized the Agreement on December 17, 2021.  *See* ECF

23  No. 1180, Notice of Settlement.  On that same day, pursuant to the parties' stipulation, the Ninth

24  Circuit dismissed all appeals without prejudice.

25     **C.     Material Terms of the Proposed Settlement**

26  The Agreement defines a single "Settlement Class": "[A]ll people who are or have been in ICE

27  custody at the Facilities from April 20, 2020, through the expiration of this settlement agreement."

28  Ex. 1, Settlement Agreement, at 5.  This includes both Detained Class Members, defined as those

"detained under the authority of ICE at the Facilities," and Non-Detained Class Members, defined as those who were "detained by ICE at either of the Facilities on or after April 20, 2020, and who [were] released from physical custody by ICE or the District Court before the Effective Date of this Agreement, who has not been removed or effectuated their own removal following such release." *Id.* at 3-4. The Agreement sets forth the policies and procedures Defendants are obligated to follow to mitigate the risk of COVID-19 inside the Facilities and commitments to protect the liberty of Non-Detained Class Members. These policies provide meaningful relief to Detained Class Members in the form of mitigation measures and to Non-Detained Class Members in the form of protections from re-detention.

First, with respect to Detained Class Members, the Agreement ensures Defendants' mitigation efforts will be long-lasting and meaningful, as well as guided by applicable CDC Guidance, nationwide orders and injunctions, and ICE's Pandemic Response Requirements ("PRR"). For example, the Agreement largely locks into place the protections of the Court's injunctions for 60 days after the Effective Date, during which time ICE shall:

- maintain a population cap consistent with the June 9, 2020 and December 3, 2020 preliminary injunctions (i.e. total population cap of 52 persons in the dorms if MVDC is accepting new intakes or 78 persons in the dorms if MVDC is not accepting new intakes; and a limit of 52 persons at YCJ); *id.* at 7-8; and

- make best efforts to abide by the mitigation measures in the December 3, 2020 Order; *id.* 8-9. Additionally, Defendants are required to maintain robust mitigation efforts for a three-year period. Under the Agreement, ICE[2] is obligated to, among other things:

- provide Detained Class Members with COVID-19 vaccines and booster doses; *id.* at 5-6;

---

[2] Pursuant to the Agreement, and due to the governing and contracting structure of YCJ, ICE "shall make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date." *Id.* at 5, ¶ II-A. Defendants are obligated to maintain certain mitigation measures for three years from the Effective Date at Mesa Verde, and "for no less than one year from the Effective Date for YCJ." *Id.* ICE needed additional time to confirm that a three-year duration for mitigation measures was possible for YCJ and is obligated to "make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date." *Id.* At this time, YCJ will only commit to a one-year duration for mitigation measures.

- supply Detained Class Members with masks and hand cleaning supplies free of charge; *id.* at 6;

- educate Detained Class Members about the risks of contracting the coronavirus; *id.* at 6-7;

- screen newly arriving Detained Class Members for vulnerabilities to severe COVID-19 and identify vulnerable detainees to be released; *id.* at 7;

- quarantine Detained Class Members for 14 days upon arrival and offer two COVID-19 tests before they are allowed into the General Population; *id.* at 8-9;

- isolate any Detained Class Member who exhibits symptoms or tests positive for COVID-19, member and test their entire housing unit; *id.* at 7-10, and

- require Staff Members to follow CDC Guidance regarding quarantine periods after a positive COVID-19 test.  *Id.* at 7, 10.

Second, the Agreement provides protection from rearrest of Non-Detained Class Members who have been released from ICE custody.  Under the Agreement, ICE may only re-detain Non-Detained Class Members if they pose a threat to public safety or national security or if they are considered a flight risk.  *Id.* at 10-14.  Moreover, under the Agreement, Non-Detained Class Members receive valuable clarity on the limited conditions under which they may be re-detained, e.g. for (1) violating a material condition of release in a way that indicates danger, flight risk, or threat to national security; (2) being ordered removed after failing to appear for an immigration court hearing; (3) absconding; (4) being arrested for new criminal conduct that presents a danger, flight risk, or threat to national security; (5) violating probation or parole if that violation conduct presents a danger, flight risk, or threat to national security; or (6) posing a "very significant ongoing threat to public safety or national security." *Id.* at 10-11.

Critically, the Agreement also creates dispute resolution procedures for both disputes regarding proposed changes to mitigation measures and contested re-detention of Class Members. *See id.* at 15-16 (Sections V-A and V-B).  The Agreement also provides for the disclosure of certain information that ensures regular communication between Defendants and Class Counsel.  *Id.* at 14-15 (Section IV).

In conjunction with this motion, the parties have also filed a joint motion to vacate certain of

the Court's prior orders.  The Agreement is contingent on the Court granting the motion to vacate.  The government required that such an order be a condition precedent to effectuating a settlement.  Given the enormous benefit to the Class, including maintaining many of the core protections from the Court's injunctions and providing additional protections to both Detained and Non-Detained Class Members, Class Counsel acceded to the government's demand.  The Agreement provides significant and meaningful relief to all Class Members, which, in the view of Class Counsel, justifies this condition, which, as discussed in the accompanying motion to vacate, is well-supported by Ninth Circuit authority.[3]

If the proposed Agreement becomes final, Plaintiffs and all other Class Members "waive and release Defendants from liability for all claims, demands, rights, liabilities and causes of action for declaratory or equitable relief, including injunctive relief, known or unknown that relate to risks associated with COVID-19 inside the Facilities that existed prior to the execution of this Agreement and which were or could have been alleged in the Action based on the same common nucleus of operative facts alleged." *Id.* at 18.  The Agreement provides that Defendants will pay Plaintiffs $4,000,000 in legal fees and up to $112,000 in taxable costs.  The Agreement does not preclude Plaintiffs or any Class Members from bringing individual damages claims or other challenges to the legal basis for their custody.  Accordingly, the Agreement balances meaningful protections for Class Members with finality for Defendants.

## III.   LEGAL STANDARD

Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in complex class action litigation." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, a "strong judicial policy" favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval.  *See Officers for Just.*, 688 F.2d at 623.  This court approval is a two-step process: (1) preliminary approval of the settlement, and (2) final determination that the settlement is fair,

---

[3] In conjunction with finalizing the Agreement, Defendants also dismissed their appeals on or shortly before December 17, 2021.

reasonable, and adequate after a notice period. *See Bakhtiar v. Info. Res., Inc.*, 2021 WL 4472606, at *5-6 (N.D. Cal. Feb. 10, 2021).

To grant preliminary approval, the court determines whether the class is proper for settlement purposes, and, if so, preliminarily certifies the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   To support class certification, a court must find each of Rule 23(a)'s four requirements has been satisfied: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  In addition to these requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.

The proposed class meets the requirements of Rule 23(b)(2), which "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).  The primary role of this rule "has always been the certification of civil rights class actions." *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014); *see also Amchem Prods.*, 521 U.S. at 614 ("Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.' Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights.").

When deciding whether to grant preliminary approval, the court determines whether the proposed settlement warrants consideration by members of the class and a later, full examination by the court at a final approval hearing.  *See* Fed. R. Civ. P. 23(e).  This merely requires the Court to determine whether the settlement falls "within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  The proposed Settlement Class and Agreement amply satisfy these requirements.

## IV.    ANALYSIS

### A.    The Proposed Class Meets the Requirements of Rule 23(a).

Rule 23(a) sets forth four requirements for certifying a class.  Plaintiffs first filed a motion to

1    certify this class provisionally on April 20, 2020, and this Court found then that the Rule 23(a)

2    requirements were satisfied.  *Zepeda Rivas*, 445 F. Supp. 3d at 38-39.  As discussed below, these

3    requirements are satisfied here too for the purposes of the proposed Settlement Class.

### 1.    The Proposed Class Meets the Numerosity Requirement.

5        Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

6    impracticable."  The plaintiff need not state the exact number of potential class members, and there is

7    no specific minimum number of class members required.  *Arnold v. United Artists Theatre Cir., Inc.*,

8    158 F.R.D. 439, 448 (N.D. Cal. 1994).  Where, as here, plaintiffs seek only injunctive and declaratory

9    relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference

10   arising from plaintiffs' other evidence that the number of unknown and future members of [the]

11   proposed [class] . . . is sufficient to make joinder impracticable." *Sueoka v. United States*, 101 F. App'x

12   649, 653 (9th Cir. 2004).

13       The proposed class here, just like the provisional class, is sufficiently numerous.  As of April

14   20, 2020, there were at least 400 people in ICE custody at the Facilities, with more added throughout

15   this litigation.  *See* ECF No. 37-1, Bonnar Decl., ¶ 8 (283 people in ICE custody at Mesa Verde as of

16   April 24, 2020); ECF No. 37-3, Kaiser Decl., ¶ 8 (144 people in ICE custody at YCJ as of April 24,

17   2020).  In addition to those released, as of January 3, 2022, there are 48 Class Members in Mesa Verde,

18   and three Class Members in YCJ.  ECF No. 1187, Status Report, at 2-3.  Courts have provisionally

19   certified classes with far fewer class members.  *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168,

20   1202 (N.D. Cal. 2017) (certifying class of 16 people in ICE custody); *Savino v. Souza*, 453 F. Supp.

21   3d 441, 454 (D. Mass. 2020) (certifying class of 148 people in ICE custody housed between two

22   detention facilities).  Accordingly, the proposed Settlement Class satisfies the numerosity requirement.

### 2.    The Proposed Class Meets the Commonality Requirement.

24       The second element of Rule 23(a) requires the existence of "questions of law or fact common

25   to the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied where the plaintiff alleges the

26   existence of a "common contention" such that "determination of [their] truth or falsity will resolve an

27   issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v.*

28   *Dukes*, 564 U.S. 338, 350 (2011).  Commonality requires only "a single significant question of law or

fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) ("So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2) (quoting *Wal-Mart*, 564 U.S. at 359 (alteration and internal quotation marks omitted))). Where plaintiffs challenge "a system-wide practice or policy that affects all of the putative class members," the commonality requirement is satisfied. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. Cal.*, 543 U.S. 499 (2005); *see also MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, 2020 WL 7389419, at *7 (N.D. Cal. Nov. 17, 2020) (finding commonality where ICE had a pattern of erroneously denying visa petitions, despite the underlying facts of each petition being different).

The proposed Settlement Class presents claims that raise common questions of law and fact. *See Zepeda Rivas*, 445 F. Supp. 3d at 38-39. Each Class Member is or was subjected to the same inadequate policies that put them at risk of contracting COVID-19. While some members may have vulnerabilities that put them at a higher risk of severe symptoms, hospitalization, or death, the Defendants' policies and practices "exposed all . . . detainees to an unnecessary risk of harm, not only those who are uniquely vulnerable to COVID-19 or who are not subject to mandatory detention." *Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020) (affirming provisional class certification in COVID-19-related immigration detention case); *see also Parsons*, 754 F.3d at 678 (finding commonality where, "although a presently existing risk may ultimately result in different future harm for different inmates, . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm"); *see also Hernandez v. Cnty. Of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015). This Court previously found commonality among these Class Members, recognizing that while some people would be released and others would remain in the Facilities, all members receive relief from a remedy focused on mitigating the risk of COVID-19 transmission. *See Zepeda Rivas*, 445 F. Supp. 3d at 38-39; *see also Savino*, 453 F. Supp. 3d at 451 ("To be sure, the harm of a COVID-19 infection will generally be more serious for some petitioners than others. Yet it cannot be denied that the virus is gravely dangerous to us all."). Commonality is therefore satisfied.

**3.      The Proposed Class Representatives Meet the Typicality Requirement.**

The third element of Rule 23(a) requires that all claims of the representative parties are typical of each class member.  Fed. R. Civ. P. 23(a)(3).  The representative plaintiffs' claims need not be identical to those of the other class members; this element requires only that "the unnamed class members have injuries *similar* to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869 (emphasis added).

This Court previously found the typicality element was satisfied for purposes of the provisionally certified class because, "[a]t root, this lawsuit is not about whether any particular person should be released; it is about the conditions of confinement at the facilities." *Zepeda Rivas*, 445 F. Supp. 3d at 38.  This Court found that all Class Members have suffered the same injury as a result of being subjected to the same inadequate mitigation efforts to prevent the spread of COVID-19 in the Facilities.  *Id.* at 38-39.  Because Class Members suffer the same constitutional injuries, this case "afford[s] class-wide relief that would . . . remed[y] the constitutional violations as to all detainees, even though it would have entailed the release or transfer of only some of the detainees." *Roman*, 977 F.3d at 944.  These same considerations apply with equal force now as they did 20 months ago, and the Court's prior analysis demonstrates that the typicality element is satisfied.

**4.      The Proposed Class Representatives and Proposed Class Counsel Meet the Adequacy Requirement.**

The final element of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this element, the named plaintiffs and their counsel must not have any conflicts of interest with the other class members, and the named plaintiffs and their counsel must pursue the action vigorously on the class's behalf. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Class counsel may demonstrate their qualifications with previous experience litigating class action lawsuits.  *See id.* at 1021.

Here, the proposed class meets both requirements, thereby satisfying the adequacy element. First, there are no conflicts among the Class Members.  Each Class Member has suffered the same injury, and each seeks relief that would mitigate their risk of contracting the coronavirus.  *See* ECF No. 780, Am. Compl., ¶¶ 16-34.  Each class representative risks contracting COVID-19 by virtue of

their detention in the Facilities after April 20, 2020.  *See Roman*, 977 F.3d at 944 (affirming provisional class certification because each class member was exposed to an unnecessary risk of contracting COVID-19 due to facility conditions).  Second, the named Plaintiffs have pursued this action on behalf of all other detainees in the Facilities for nearly two years.  Lastly, class counsel representing the class has extensive experience litigating class action suits, with specific experience representing people in immigration detention.  *See, e.g.*, ECF No. 6-8, Decl. of William S. Freeman; ECF No. 6-9, Decl. of Bree Bernwanger; ECF No. 6-10, Decl. of Martin S. Schenker; ECF No. 6-13, Decl. of Judah Lakin.

After a year of vigorously litigating this case before this Court, class counsel engaged in months of settlement negotiations in recognition that any further litigation would be costly and inefficient to reach a positive result for all Class Members.  Therefore, Rule 23(a)(4)'s adequacy requirement is satisfied.

**B.**     **The Proposed Class Meets the Requirements of Rule 23(b)(2).**

The next issue for the Court is whether Plaintiffs have shown that at least one of the requirements of Rule 23(b) is met.  *See Amchem Prods.*, 521 U.S. at 614.  Plaintiffs satisfy Rule 23(b)(2) where the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  For purposes of this rule, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.  Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).

Rule 23(b)(2) is satisfied here for the Class.  Plaintiffs sought injunctive relief as a result of Defendants' policies and practices that prevented social distancing in the Facilities, which subjected Class Members to dangerously high risks of contracting COVID-19.  *See Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (noting that the Rule 23(b)(2) requirements are "almost automatically satisfied in actions primarily seeking injunctive relief" (quoting *Baby Neal for & by Kanter*, 43 F.3d at 58)).  This inaction by the Defendants applies generally to the class and puts every Class Member at risk of contracting COVID-19; an injunction thus provides relief to the entire Class. *See Saravia*, 280 F. Supp. 3d at 1205 ("Because a single injunction can protect all class

1  members' procedural due process rights, the requirements of Rule 23(b)(2) are satisfied."); *see also*

2  *Zepeda Rivas*, 445 F. Supp. 3d at 38-39; *Roman*, 977 F.3d at 944.  Therefore, certification under Rule

3  23(b)(2) is appropriate.

**C.     The Proposed Settlement Falls Well Within the Range of Possible Approval.**

5  "If the proposed settlement appears to be the product of serious, informed, non-collusive

6  negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

7  representatives or segments of the class, and falls within the range of possible approval, then the court

8  should direct that the notice be given to the class members of a formal fairness hearing." *Manual for*

9  *Complex Litigation, Second* § 30.44 (1985); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d. at 1079-

10  80.  To determine whether the settlement falls within the range of possible approval, courts look to

11  "plaintiffs' expected recovery balanced against the value of the settlement offer," as well as the "risk

12  and [] anticipated expense and complexity of further litigation."  *In re Tableware Antitrust Litig.*, 484

13  F. Supp. 2d. at 1080.  The proposed settlement here satisfies this requirement.

14  First, the Agreement is the result of months of hard-fought, arms-length negotiations between

15  Plaintiffs and Defendants.  Prior to these negotiations, Plaintiffs vigorously litigated their case, moved

16  for multiple injunctions, and appeared before the Court on numerous occasions.[4]  The District Court

17  docket alone reflects over one thousand entries.  Recognizing the dynamic nature of the pandemic,

18  and the thorny legal and factual issues raised by this case, counsel for both parties engaged in months

19  of negotiations, passed multiple settlement drafts, and sought and received three extensions from the

20  Ninth Circuit to finalize a deal before coming to the final Agreement now before this Court.

21  Experienced counsel on both sides had "a comprehensive understanding of the strengths and

22  weaknesses of each party's respective claims and defenses."  *In re Tableware Antitrust Litig.*, 484 F.

23  Supp. 2d. at 1080.  There is nothing to suggest that the settlement is the result of any collusion.

24  Further, the "substantive fairness and adequacy of the settlement confirms this view of the fair

25  procedures used to reach the settlement."  *Id.*  The proposed settlement provides for meaningful

26

27  ──────────────
[4] *Cf.* ECF 1054, Order Denying Motion to Dismiss, Motion to Strike, and Motion to Transfer, at 1
(noting a motion to transfer "would obviously be inconvenient for everyone involved.  (Everyone,
28  that is, except the undersigned judge and his law clerk.)").

procedures the Defendants must follow in order to mitigate the risk of detainees contracting COVID-19 in the Facilities. Under the Agreement, Defendants will be required to maintain a cap on the number of detainees in the Facilities and provide Class Members with vaccines, tests, masks, and cleaning supplies to prevent further outbreak. *See* Ex. 1, Agreement, at 7-9. The Agreement also reduces the risk that staff members at the Facilities will expose Detained Class Members to COVID-19 by requiring either screening or quarantine periods if symptomatic or if they test positive for COVID-19. *Id.* at 7, 10. The Agreement also protects previously released Class Members from being re-detained unless for cause. *Id.* at 10-14. Finally, the settlement has no preclusive effect on any individual damages claims or individual challenges to the legal basis of their custody the Class Members may wish to bring. *Id.* at 18; *see also Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *7 (N.D. Cal. 2015).

This proposed settlement would halt hotly contested and uncertain litigation, while providing meaningful relief for Class Members by lowering their risk of contracting COVID-19. Further litigation would have presented significant risks and burdens to both sides. Defendants strongly disputed Plaintiffs' claims, challenging every bail application and appealing multiple orders to the Ninth Circuit. Defendants contested the merits of Plaintiffs' claims and heavily disputed whether portions of Plaintiffs' requested relief—particularly the release of individual Class Members—are an appropriate remedy for the harms alleged. While Plaintiff enjoyed early successes securing injunctive relief and prevailing after Defendants' appeal, the Settlement Class still would have assumed a degree of risk by continuing to litigate these claims at the Ninth Circuit and through trial, including contested issues regarding this Court's jurisdiction and ability to order individual release for certain Class Members. Because the injunctions issued before the introduction and availability of vaccines, and because of the uncertainty of the progression of the pandemic, the constitutional calculus of the dangerousness of the conditions may well have changed at summary judgment or trial. Similarly, the unprecedented release of hundreds of Class Members created what Plaintiffs contend are novel due process considerations for any litigation regarding their re-detention.

In contrast, the proposed settlement provides significant, meaningful relief to Class Members, as well as finality to Defendants. Plaintiffs' Settlement Class is composed of vulnerable noncitizens who have gained important safeguards from unconstitutional conditions in the form of robust safety

measures for those who remain in the Facilities and protection from arbitrary re-detention for those who have been released.  The Agreement significantly protects against another COVID-19 outbreak. The protections afforded in the Agreement are the result of a painstaking and intensive negotiation process and were secured after extensive discovery and litigation.  As a result, Plaintiffs have a powerful interest in obtaining the relief the Agreement affords.  By any measure, it is sufficiently fair to warrant preliminary approval.

### D.   The Proposed Notice Form and Notice Plan Is Appropriate.

The parties have agreed to provide notice to the Settlement Class upon preliminary approval of the class-wide settlement. The attached notice form will be translated into Spanish, as well as any other language identified by the Parties as being the language of proficiency for a Class Member.  *See* Ex. 2, Proposed Notice Form.  The Parties will then disseminate the notice through the following methods by: (1) posting the notice form in the Facilities; (2) mailing, by first-class mail, the notice form to the Detained Class Members in the Facilities; (3) mailing, by first-class mail, the notice form to Non-Detained Class Members at the address on file with ICE; and (4) mailing, by first-class mail to each Class Member's attorney of record on file with ICE.

Additionally, the content of the proposed notice form is appropriate.  The form explains the basis of the lawsuit, the contours of the Settlement Class, the relief to which Settlement Class Members are entitled, and the rights of Settlement Class Members (including the right to object).  *See id.* at 1-3. The proposed notice form and plan each satisfy Rule 23(c)(2) and Rule 23(e)(1)'s elements for effecting class notice.

## V.   CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached proposed order preliminarily approving the Agreement, preliminarily certifying the proposed class, and approving the proposed notice form and notice plan.

1

Dated:  January 27, 2022

2

Bree Bernwanger

3

4    LAWYERS' COMMITTEE FOR CIVIL
     RIGHTS OF THE SAN FRANCISCO
5    BAY AREA

6    Judah Lakin
     Amalia Wille
7    LAKIN & WILLE LLP

8    Stephanie Padilla
     AMERICAN CIVIL LIBERTIES
9    UNION FOUNDATION OF
     SOUTHERN CALIFORNIA
10

Respectfully submitted,

/s/ *Martin S. Schenker*
_____
William S. Freeman
Sean Riordan
Emilou H. Maclean
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA

Manohar Raju
Matt Gonzalez
Genna Ellis Beier
Jennifer Friedman
Francisco Ugarte
Kelly Engel Wells
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO

11

12

Martin S. Schenker
Timothy W. Cook
Julie M. Veroff
COOLEY LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 3:20-CV-02731
PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Martin S. Schenker, herby certify that true and correct copies of the foregoing were served on counsel of record via ECF on this 27th day of January, 2022.

/s/ *Martin S. Schenker*

Martin S. Schenker

CASE NO. 3:20-CV-02731
PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL