# Exhibit 1

WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
EMILOU H. MACLEAN (SBN 319071)
emaclean@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Petitioners-Plaintiffs
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (SBN 300505)
genna.beier@sfgov.org
JENNIFER FRIEDMAN (SBN 314270)
jennifer.friedman@sfgov.org
FRANCISCO UGARTE (SBN 241710)
francisco.ugarte@sfgov.org
KELLY ENGEL WELLS (SBN 338648)
kelly.wells@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA,<br><br>     Petitioners-Plaintiffs,<br><br>     v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; MICHAEL KNIGHT, Acting Warden of Mesa Verde Detention Facility,<br><br>     Respondents-Defendants. | **CASE NO. 3:20-CV-02731**<br><br>**CLASS SETTLEMENT AGREEMENT**<br><br>**JUDGE VINCE CHHABRIA** |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF THE
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
Julie M. Veroff (SBN 310161)
jveroff@cooley.com
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
FRANCISCO M. UNGER* (Mass. BBO#
698807)
funger@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement ("Agreement") is entered into by and between all parties in the above entitled action, namely: Plaintiffs Angel De Jesus Zepeda Rivas, Brenda Rubi Ruiz Tovar, Lawrence Kuria Mwaura, Luciano Gonzalo Mendoza Jeronimo, Coraima Yaritza Sanchez Nuñez, Javier Alfaro, Juan Jose Erazo Herrera, Rajnish Rajnish, and Willian Matias Rauda, on behalf of themselves and all Class Members, and Defendants David Jennings, Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; Tae Johnson, Acting Director of U.S. Immigration and Customs Enforcement; U.S. Immigration and Customs Enforcement; GEO Group, Inc.; and Michael Knight, Acting Warden of Mesa Verde Detention Facility (collectively, the "Parties"), by and through their counsel. The Parties enter into this Agreement as of the date it is executed by all Parties, and it is effective upon approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## RECITALS

WHEREAS:

On April 20, 2020, Plaintiffs filed in the U.S. District Court for the Northern District of California ("Court") a petition for writ of habeas corpus and class complaint for injunctive and declaratory relief in the Action, on behalf of themselves and all others similarly situated, against Defendants.

On April 29, 2020, the Court provisionally certified a class of all detainees at Mesa Verde Detention Center ("MVDC") and Yuba County Jail ("YCJ") and entered a temporary restraining order providing Class Counsel information about class members and establishing a system for the Court to consider the release on bail of certain class members to reduce the population of the two facilities in light of the COVID-19 pandemic.

On June 9, 2020, the Court granted Plaintiffs' motion for a preliminary injunction and ordered Defendants to maintain protections against the transmission of COVID-19 at MVDC and YCJ.

On August 6, 2020, the Court granted Plaintiffs' motion for a further temporary restraining order to ensure the implementation of safety measures in response to a COVID-19 outbreak at MVDC.

On December 3, 2020, the Court granted Plaintiffs' motion for a second preliminary injunction and ordered Defendants to comply with a series of requirements to protect against the spread of COVID-19 at MVDC.

On December 23, 2020, the Court granted Plaintiffs' motion for a temporary restraining order to ensure the implementation of safety measures during a COVID-19 outbreak at YCJ, which it converted into a preliminary injunction on January 6, 2021.

On June 29, 2020, the Federal Defendants filed a notice of appeal to the Ninth U.S. Circuit Court of Appeals ("Court of Appeals") of the Court's April 29, 2020 and June 9, 2020 orders. On February 1, 2021, Defendants filed a notice of appeal of the Court's December 3, 2020 order.

In March 2021, the Parties began discussing the possibility of settlement with the assistance of the Ninth Circuit Mediator. Months of vigorous good-faith negotiations ensued, resulting in this settlement agreement, which—subject to the Court's approval—fully resolves the Action.

On July 16, 2021, the Court of Appeals indicated that it would grant the Parties' anticipated joint stipulation, to be filed within 60 days of July 16, 2021, to dismiss Defendants' appeals, but without prejudice to reinstatement if the Court denies the Parties' motion for approval of a class settlement.

On September 17, 2021, the Court of Appeals granted the parties an additional 60 days to file a stipulation dismissing Defendants' appeals.

The Parties have concluded that further litigation would be protracted and expensive for all Parties. The Parties believe this Agreement is a fair, adequate, and reasonable settlement of the Action and have arrived at this Agreement after extensive arms-length negotiations. Class Counsel have concluded that the terms and conditions of this Agreement are in the best interests of Plaintiffs and the Class Members. Furthermore, this Agreement is in the public interest, as it avoids further diversion of private and governmental resources to adversarial action and helps mitigate risks associated with the spread of COVID-19. After taking into account these factors, as well as the risks of further litigation, the Parties agreed to settle in the manner and upon the terms set forth in this Agreement.

NOW, THEREFORE, it is hereby STIPULATED AND AGREED, by and among the Parties, through their respective attorneys, subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), in consideration of the benefits flowing to the Parties from this Agreement, that this Agreement constitutes a full, fair, and complete settlement of the Action, upon and subject to the following terms and conditions:

## I.    DEFINITIONS

Wherever used in this Agreement, the following terms have the meanings set forth below:

A.     "**Action**" means the lawsuit captioned *Zepeda Rivas v. Jennings*, Case No. 20-cv-02731-VC (N.D. Cal. April 20, 2020).

B.     "**CDC Guidance**" means guidance, policies, recommendations, and other documents by the U.S. Centers for Disease Control and Prevention ("CDC") related to COVID-19 and applicable to correctional, detention, and other congregate settings, including the CDC's "Guidance for Correctional and Detention Facilities," "Vaccine FAQs in Correctional and Detention Centers," "Testing in Correctional and Detention Facilities," "Quarantine Duration in Correctional Facilities," and any

revisions made by the CDC to these or other relevant CDC guidance, policies, recommendations, and other documents.

C.   "**Class Counsel**" means counsel for Plaintiffs and the Settlement Class in this action: William Freeman, Sean Riordan, and Emilou MacLean (ACLU Foundation of Northern California); Stephanie Padilla (ACLU Foundation of Southern California); Bree Bernwanger and Hayden Rodarte (Lawyers' Committee for Civil Rights of the San Francisco Bay Area); Francisco Ugarte, Jennifer Friedman, Kelly Engel Wells, and Genna Beier (Office of the Public Defender of San Francisco); Martin S. Schenker, Timothy W. Cook, Francisco M. Unger, and Julie M. Veroff (Cooley LLP); Judah Lakin and Amalia Wille (Lakin & Wille LLP); and their successors.

D.   "**Class Member**" means a member of the Settlement Class.

E.   "**Classwide Settlement**" means the settlement of the claims asserted by Plaintiffs, on behalf of themselves and others similarly situated, as reflected in this Agreement.

F.   "**Close Contact**" means the CDC's definition of this term. The current definition is "someone who was within six feet of an infected person (laboratory-confirmed or a clinically compatible illness) for a cumulative total of 15 minutes or more over a 24-hour period (for example, three individual five-minute exposures for a total of 15 minutes." Should the CDC modify its definition of this term, the definition of this term for purposes of this Agreement will conform to any such modification. For purposes of this Agreement, someone detained within the same dormitory or housing unit as an infected person is a "close contact" of the infected person.

G.   "**Court**" means the U.S. District Court for the Northern District of California.

H.   "**COVID-19**" means either SARS-CoV-2 (the virus that causes COVID-19) or the disease COVID-19, or both.

I.   "**Defendants**" means David Jennings, Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; Tae Johnson, Acting Director of U.S. Immigration and Customs Enforcement; U.S. Immigration and Customs Enforcement; GEO Group, Inc.; and Michael Knight, Acting Warden of Mesa Verde Detention Facility; and their successors.

J.   "**Detained Class Member**" means a Class Member detained under the authority of ICE at the Facilities.

K.   "**Effective Date**" means the date the Court shall have issued (1) an order finally approving this Agreement and (2) an order vacating its preliminary injunction orders as set forth in Section VI.B.

L.   "**Facilities**" means Mesa Verde Detention Center and Yuba County Jail.

**M.**     "**Facility Plan**" means any reference sheet, operations plan, health services plan, policy and/or procedure manual, module, or other document issued by the Facilities governing action to be taken at the Facilities with regard to COVID-19 symptoms, exposure, or outbreak.

**N.**     "**Fairness Hearing**" means the hearing at which the Court decides whether to approve the Classwide Settlement as being fair, reasonable, and adequate.

**O.**     "**General Population**" means housing at the Facilities that is not restricted on the basis of quarantine, medical isolation, administrative segregation, or disciplinary segregation.

**P.**     "**Hospitalization**" means admission to a hospital for inpatient treatment.

**Q.**     "**ICE**" means U.S. Immigration and Customs Enforcement, a federal law enforcement agency within the U.S. Department of Homeland Security; David Jennings, Director of ICE's San Francisco Field Office; Tae Johnson, Acting Director of ICE; and their successors.

**R.**     "**Isolation**" means the separate housing of individuals who are COVID-positive or display Symptoms of COVID-19. Isolation requires dedicated housing areas and bathrooms. Individuals with confirmed COVID-19 may be isolated individually or cohorted with other individuals who are confirmed COVID-19 positive. Individuals with Symptoms must be Isolated individually.

**S.**     "**Non-Detained Class Member**" means a person who was detained by ICE at either of the Facilities on or after April 20, 2020, and who was released from physical custody by ICE or the District Court before the Effective Date of this Agreement, who has not been removed or effectuated their own removal following such release.

**T.**     "**Quarantine**" means the separate housing of individuals who are Close Contacts of individuals with COVID-19 or who are housed separately to prevent COVID-19 spread (i.e., for a defined period after intake into a facility). Individuals may be quarantined individually or cohorted with other individuals so long as no one in the Quarantine is either confirmed COVID-19 positive or displaying Symptoms.

**U.**     "**Party or Parties**" means, in the singular one of and in the plural all of, Plaintiffs and Defendants.

**V.**     "**Plaintiffs**" means Angel De Jesus Zepeda Rivas, Brenda Rubi Ruiz Tovar, Lawrence Kuria Mwaura, Luciano Gonzalo Mendoza Jeronimo, Coraima Yaritza Sanchez Nuñez, Javier Alfaro, Juan Jose Erazo Herrera, Rajnish Rajnish, and Willian Matias Rauda.

**W.**     "**Point-of-Care Test**" means a Test performed at or near the place where a specimen is collected, and that provides results for an individual test within minutes rather than hours.

X.     "**PRR**" means the most recently updated version of the COVID-19 Pandemic Response Requirements published by ICE.

Y.     "**Settlement Class**" means all people who are or have been in ICE custody at the Facilities from April 20, 2020, through the expiration of this settlement agreement.

Z.     "**Staff**" means individuals who perform work onsite at the Facilities, regardless of their employer.

AA.    "**Symptoms**" means the following COVID-19 symptoms: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, loss of taste, loss of smell, sore throat, congestion or runny nose, nausea or vomiting, diarrhea.

BB.    "**Test**" when used as a verb means the administration of a medically approved COVID-19 diagnostic test and when used as a noun means a medically approved COVID-19 diagnostic test.

CC.    "**Vaccine**" means a COVID-19 vaccine approved, whether for emergency use or through final approval, by the U.S. Food and Drug Administration.

DD.    "**Vulnerability**" means a particular vulnerability to COVID-19, including (i) older adults (55 years or older, subject to change based on any subsequent nationwide order or settlement); (ii) CDC-identified comorbidities to severe COVID-19; and/or (iii) the inability to be vaccinated for medical or religious reasons.

## II.    MITIGATION OF COVID-19 RISKS AT THE FACILITIES

A.     ICE shall make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date.  Notwithstanding, for three years from the Effective Date for MVDC, and for no less than one year from the Effective Date for YCJ, ICE shall:

**CDC/PRR Guidance**

1.     Operate the Facilities consistent with applicable CDC Guidance, applicable nationwide orders and injunctions, and the PRR (as updated).

**Vaccination**

2.     In line with the PRR and provided it has sufficient quantities, or access to sufficient quantities, of Vaccine, offer vaccination to all medically eligible Detained   Class   Members,   beginning   with   Class   Members   with

Vulnerabilities, as soon as practicable during the 14-day intake quarantine period, subject to state and county public health orders.[1]

3.   Absent local, county, state, or federal public health guidance to the contrary, make reasonable efforts to provide the second dose from the same brand Vaccine if a Detained Class Member has already been given one dose of a two-dose Vaccine prior to being taken into custody or being transferred from one facility to another. If the facility is unable to obtain the second dose after making reasonable efforts, ICE will offer vaccination with another brand not less than 28 days after the most recent vaccination. If the CDC issues guidelines indicating that brands of vaccine may be mixed to achieve full vaccination, ICE will offer vaccination with the brand of vaccine available.

4.   Absent local, county, state, or federal public health guidance to the contrary, not delay or deny vaccination for any Detained Class Member on the grounds that additional doses in a vial cannot simultaneously be administered to other Class Members.

5.   If any unvaccinated Class Members remain detained in the facility, provide weekly announcements regarding vaccination availability to Detained Class Members at the Facilities who previously declined and continue to decline vaccination and promptly administer vaccines to any class member who requests to be vaccinated.

6.   Absent local, county, state, or federal public health guidance to the contrary, implement any CDC Guidance regarding booster doses of vaccine or modified Vaccine protocols to Detained Class Members. A booster shot of a vaccine different than the initial vaccine may be given, so long as the CDC considers the booster provided to be safe and effective in light of the Class Member's prior vaccine history.

**Education**

7.   Provide informed and effective public health education to encourage vaccinations and other health precautions for Class Members at the Facilities. Unless superseded by inconsistent orders or agreements, Defendants shall provide Class Members with educational materials, including pamphlets printed in English and Spanish, and an in-person presentation by, or consultation with, medical staff, where class members' questions can be answered about the benefits of vaccination. During the weekly announcements regarding vaccine availability, Class Members will

---

[1] A medically eligible Class Member's rejection of the offer of a Vaccine will not be grounds for release from detention. This is true even if the Class Member is at increased risk for severe illness from COVID-19 and if the individual has been deemed eligible to receive it.

be reminded that any questions regarding vaccination can be addressed by submitting a sick call request. Taking into account the need of medical staff to prioritize sick call requests, consultation regarding questions pertaining to vaccination will be provided promptly following receipt.

**Sanitation/Hygiene**

**8.**     Provide Detained Class Members no-cost, unlimited access to masks and supplies for hand cleansing, including soap, running water, and hand drying machines or disposable paper towels.

**Staff Mitigation Measures**

**9.**     Ensure that Staff at MVDC who Test positive for COVID-19 or who exhibit Symptoms and do not have a confirmed negative Test remain out of work or, if possible, work remotely until they satisfy the current CDC conditions for non-infectiousness. Subject to change in federal, state, or county guidelines, all YCJ staff are screened upon arrival to the facility each day. Staff who are symptomatic or Test positive are kept from the facility 10-14 days, depending on individual circumstances in consultation with county health officials.

**Vulnerable Class Members**

**10.**     Defendants will promptly screen Class Members (within 24 hours of any new intake) for Vulnerabilities to severe COVID-19 and identify vulnerable individuals for immediate release. A Class Member with Vulnerabilities should be released unless a Supervising Detention and Deportation Officer – following consultation with a medical professional, who will make the assessment as to the existence and/or severity of medical risk factors – determines that the risk of flight or danger to the community substantially outweighs the risk of severe illness or death to the Class Member. Any assessment will take into account mitigating factors, such as vaccination status.

**11.**     ICE shall make best efforts to ensure that any Class Member with Vulnerabilities who has not been released is housed in a manner allowing for social distancing in line with CDC guidelines and the PRR.

**B.**     For sixty days following the Effective Date, ICE shall:

**1.**     Delay implementing any CDC or PRR guidance permitting population levels at the Facilities above those permitted by the June 9, 2020, and December 3, 2020, preliminary injunctions, specifically:

      **a.**     a total population cap of 52 persons in the dorms if MVDC is accepting new intakes or 78 persons in the dorms if MVDC is not accepting new intakes; and

     **b.**     a limit of 52 persons at YCJ.

**2.**     Make best efforts to encourage population limits within dormitories and housing units that allow for six feet of social distancing at the Facilities, as construed in the December 3, 2020 preliminary injunction.

**3.**     Make best efforts to delay the implementation of any CDC or PRR guidance that permits relaxation of the mitigation measures ordered by the December 3, 2020, preliminary injunction to the extent that such measures are not within ICE's control. Specifically, at MVDC, ICE shall make best efforts to:

     **a.**     Set aside a dorm for COVID-19 positive Class Members, and immediately transfer to the COVID-19 positive dorm any class member who tests positive;

     **b.**     If accepting new intakes, set aside a dorm for cohorting any new intakes, with the cohort including intakes who arrive within 48 hours of each other;

     **c.**     Screen (including a temperature check and verbal symptoms check) all new intakes before they enter the facility or just inside the facility and offer Point-of-Care Tests to all new intakes as part of the intake screening process;

     **d.**     Quarantine all new intakes for 14 days beginning from the last intake's arrival and isolate any new intakes who test positive or exhibit Symptoms;

     **e.**     Test all Staff, including contracted staff, at least once per week, unless they have tested positive for COVID-19 within the past 90 days and are asymptomatic;

     **f.**     Offer to test all Class Members at least once per week and test any Class Members who agree to be tested, unless they have tested positive for COVID-19 within the past 90 days and are asymptomatic;

     **g.**     Report to Class Counsel within one business day any Class Member who refuses testing (after Close Contact with a COVID-positive individual, at intake, or during weekly testing), and re-offer a test to that Class Member after communicating with Class Counsel;

     **h.**     Offer immediate Testing and immediately quarantine all Class Members who are Close Contacts or are in the same dorm of a Class Member who Tests positive;

      **i.**    Offer Point-of-Care Testing and individually isolate all Class Members exhibiting Symptoms;

      **j.**    Not transfer class members out of MVDC unless necessary for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, release or removal, or to prevent overcrowding.

**C.**    ICE shall make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date. Notwithstanding, following the period described in Section II.B, until three years from the Effective Date with regard to MVDC and until no less than one year from the Effective Date with regard to YCJ, ICE shall:

**Social Distancing**

**1.**    Maintain the status quo regarding population caps at the Facilities unless and until the CDC modifies its guidance.

**Intake and Quarantine**

**2.**    In line with CDC Guidance, quarantine ICE intakes at the Facilities for at least 14 days upon arrival, either in individual units or in cohorts of detainees who arrive the same week (five days), provided that if the CDC updates its guidance, Defendants will maintain the discretion to modify facility procedures in compliance with CDC Guidance.

**3.**    Offer COVID testing to ICE intakes at the Facilities during their initial quarantine period and again before they are cleared for General Population, provided that if the CDC updates its guidance, Defendants will maintain the discretion to modify facility procedures in compliance with the CDC Guidance.

**Testing and Isolation of Class Members**

**4.**    So long as it is consistent with the CDC Guidance and the PRR, if a Class Member in a dorm or housing unit at MVDC tests positive for COVID-19, all class members in the entire dorm or housing unit will be tested using Point-of-Care tests within 24 hours. ICE will make best efforts to secure the same procedures at YCJ, subject to state and county guidelines.

**5.**    So long as it is consistent with the CDC Guidance and the PRR, test and isolate all Detained Class Members who exhibit Symptoms within 60 minutes and in no case more than 120 minutes of Staff becoming aware of the symptomatic Class Member, except in case of a natural disaster or other significant operational disruption outside the facility's control. At MVDC, if the Class Member tests positive, medical staff will promptly remove the Class Member from General Population and place them in medical

isolation; at that time, the Class Member will be provided with a written copy of the test results. If the Class Member tests negative, they will be provided with results within 12 hours. At YCJ, the Class Member shall be provided notice of a positive test promptly upon facility staff receiving the results. Class Members who test negative will also be informed of that fact.

6.  Subject to changes in CDC Guidance and the general availability of tests, offer to test weekly all unvaccinated Detained Class Members at MVDC when the Kern County positive case rate meets or exceeds the CDC-defined level of "substantial," and complete such surveillance testing promptly.

7.  Subject to changes in CDC Guidance and the general availability of tests, offer and, promptly upon acceptance, provide COVID tests to any Detained Class Members at the Facilities upon any Class Member's request (or Class Counsel's request on behalf of a specific Class Member) if the Detained Class Member is experiencing Symptoms, believes that they were exposed to COVID, or otherwise reasonably believes that they may have COVID, subject to the concurrence of medical staff not to be unreasonably withheld. This includes a Point-of-Care Test for any Class Member displaying Symptoms.

**Staff Mitigation Measures**

8.  Upon modification of existing contracts and contract-like instruments, require that the Facilities ensure staff are vaccinated in compliance with the guidance implementing Executive Order 14042 published by the Safer Federal Workforce Task Force. Subject to future changes to federal policies concerning the testing of federal employees and contractors and California policies concerning the testing of people who work in high-risk congregate settings, make best efforts to ensure that all unvaccinated staff who interact with individuals in custody are tested for COVID-19 before entering the Facilities at least once every seven days.

## III.   TERMS OF RELEASE OF NON-DETAINED CLASS MEMBERS

A.  For three years following the Effective Date, and subject to Sections III.B.-D, ICE will make best efforts to not re-detain under the immigration laws any Non-Detained Class Member unless they pose a threat to public safety or national security, and/or risk of flight pursuant to the criteria in Subsection III.B.

B.  During the three-year period set forth in Subsection III.A, ICE will only re-detain under the immigration laws a Non-Detained Class Member if one or more of the following conditions exists:

1.  The Class Member has violated any material condition of release in a manner indicating that the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight. A material

condition of release includes but is not limited to those conditions prohibiting criminal activity, reporting requirements, and restrictions on movement.

    **a.**    ICE takes the position that serious drug offenses – such as trafficking in or sale of significant amounts – and sex offenses, particularly against children, constitute a risk to public safety.

    **b.**    Reporting within one business day of a scheduled reporting date will not be considered a violation of a material condition of release.

**2.**    The Class Member fails or has failed to appear for an immigration court hearing and was ordered removed by an immigration judge.

    **a.**    If the immigration judge later grants a motion to reopen the in absentia removal order, ERO will evaluate whether release is warranted, paying particular attention to the circumstances surrounding the in absentia order and whether the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.

**3.**    The Class Member has absconded.

    **a.**    Upon locating the Class Member, ERO will evaluate whether release is warranted, paying particular attention to the circumstances surrounding the absconding and whether the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.

**4.**    The Class Member has been arrested by local, state, or federal authorities for new criminal conduct if, based on that conduct, the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.

**5.**    A local, state, or federal authority finds that the Class Member has failed to comply with the terms of probation or parole, if, based on that conduct, the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.

**6.**    The Class Member poses a very significant ongoing threat to public safety or national security. A determination that a Class Member poses a very significant ongoing threat to public safety or national security under this subsection only may be based upon criminal convictions and/or ongoing criminal proceedings preceding the Class Member's release pursuant to a

bail order issued by the Court and shall include consideration of factors such as the egregiousness of the underlying conviction and/or ongoing criminal proceedings; whether the conduct included violence; the sentence served or – in the case of Class Members in ongoing criminal proceedings – potential sentence; the recency of the criminal activity; and the characteristics of the victim, if any; as well as mitigating factors, including personal and family circumstances; health and medical factors (this includes mental health); evidence of rehabilitation; compliance with conditions of release; and availability of alternatives to detention to mitigate the risk to public safety and/or national security. Crimes that may fall within this category include, but are not limited to: homicide, including attempt; rape or sexual assault, including attempt; crimes against children, including offenses involving molestation, abuse, abandonment, neglect, or harm (physical or emotional); felony domestic violence offenses, including violations of an underlying protective order; and unlawful use of a weapon in an area where it could reasonably be anticipated to cause harm to others. In such limited cases, ICE will conduct an individualized review of the Class Member's record and may re-detain the Class Member only after approval at a senior headquarters level. Only in these circumstances may ICE consider pre-release information or conduct when seeking to re-detain a Class Member under this Section.

**C.** To the extent that a Class Member re-detained by ICE has ongoing criminal proceedings, ICE will facilitate the Class Member's access to criminal counsel, if applicable, and attendance at any criminal proceedings.

**D.** In the event that ICE has not re-detained a Class Member during the three-year period set forth in Subsection III.A, ICE will make one attempt to execute the final removal order that is not stayed without re-detention or to permit the Class Member to self-remove, including providing the appropriate documentation. If such Class Member fails to cooperate or removal is impossible or unsuccessful due to the fact that the Class Member is not detained, ICE may re-detain to effectuate removal. One example of a removal that is impossible to carry out without the noncitizen being in custody is one where the destination country refuses to provide a travel document or other necessary documents to the U.S. Government if the noncitizen is not in custody. For Class Members residing within the San Francisco Area of Responsibility, ICE shall not re-detain a Class Member for the purpose of removal for longer than 30 days.

**E.** When determining whether to re-detain a Class Member during the three-year period set forth in Subsection III.A, in addition to the requirements set forth in Subsection III.B, ICE will also take into account applicable DHS and ICE civil immigration enforcement priorities.

**F.** Except where conditions of release have been modified pursuant to Subsection III.I, Class Members who have been released from ICE custody pursuant to a District

Court bail order in this litigation must continue to comply with any conditions of release set forth in the District Court's Third Revised Standard Conditions of Release, ECF No. 543, and any additional conditions of release imposed on the Class member by the District Court, except that Class Members are not required to live with the custodian appointed by the District Court, provided that they obtain approval from ICE Enforcement and Removal Operations for any proposed mailing or physical address change in advance of such change.

**G.** At the conclusion of the three-year period set forth in Subsection III.A, ICE's re-arrest and re-detention practices for Class Members will occur pursuant to generally applicable law and policy.

**H.** ICE will use best efforts to provide notice of a Class Member's re-detention to Class Counsel as soon as possible after re-detention. Nonetheless, in all instances ICE will provide notice to Class Counsel not later than three business days after re-detention.

**I.** Within 60-75 days of Defendants' execution of this Agreement, ICE shall affirmatively review GPS monitoring requirements currently imposed on any Class Member not in custody who does not fall within ICE's current immigration enforcement priorities. At this time, ICE will also review any additional conditions of release imposed by the District Court. ICE will make any determination with regard to such modification of conditions of release based on an individualized review of the Class Member's record, including any criminal history of violence, known gang affiliation, disciplinary record, physical and mental health, and record of compliance with release conditions. ICE will also take into account applicable DHS and ICE civil immigration enforcement priorities. ICE shall complete a subsequent review of each Non-Detained Class Member still on GPS ankle monitors within 60 days after the Class Member's first review.

    **1.** Class Counsel, a Class Member, or individual attorneys may submit materials to the assigned ICE case officer that they believe are relevant to either the initial or subsequent determinations in this paragraph.

    **2.** If this review of additional conditions occurs prior to the Effective Date, ICE will determine whether it will join a motion or stipulation to terminate or relax those conditions. If this review of additional conditions occurs after the Effective Date, ICE will determine whether to lift or relax those conditions. Upon the Effective Date, ICE will have authority to lift or relax any general or special conditions of release imposed by the District Court.

    **3.** ICE shall provide prompt written notice of the disposition of each review to the Class Member. This notice is not required to explain the disposition.

    **4.** This Agreement creates no right to review the outcome of such assessments or ICE's exercise of discretion.

**J.**     **Termination of bail conditions for certain Class Members**

Class Members who are granted final relief from removal will no longer be subject to bail conditions as described in III.F. and III.I., including, *inter alia*, any requirement under this agreement to comply with ICE monitoring. Class Members who are granted withholding of removal or administrative closure will comply with routine monitoring under other ICE policies generally applicable to individuals granted only those forms of relief. In considering whether to require post-relief monitoring of a Class Member granted withholding of removal or administrative closure, ICE shall take into consideration the factors discussed in III.I., above.

## IV.     INFORMATION DISCLOSURE

**A.**     ICE shall make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date. Notwithstanding, the obligations in this Section shall run for three years from the Effective Date for MVDC and for no less than one year for YCJ.

**B.**     Defendants shall provide written notice to Class Counsel, as soon as practically feasible, within three business days, of any changes to plans, protocols, and educational materials referenced in Section II of this Agreement and/or Facility Plans, as defined in Section I.M. above, for use at either of the Facilities.

**C.**     If ICE intends to implement changes to procedures at the Facilities based on changed CDC Guidance, ICE will provide written notice to Class Counsel as soon as practically feasible.

**D.**     Defendants shall provide weekly disclosure to Class Counsel of:

    **1.**     The number of Class Members who arrive at each Facility vaccinated, the number of Class Members vaccinated at each Facility weekly, and COVID vaccination rates of Detained Class Members at the Facilities,

    **2.**     COVID testing numbers and, after the 60-day period set out in Section II.B of this Agreement during which best efforts will be made to make notification within one business day, refusals of Detained Class Members at the Facilities,

    **3.**     any positive COVID tests of Detained Class Members at the Facilities,

    **4.**     population levels of Detained Class Members at the Facilities,

    **5.**     population levels of housing units containing Detained Class Members at the Facilities,

6.      the name, medical condition(s), and criminal history of any Class Member with Vulnerabilities,

7.      the custody determination decision for any Class Member with Vulnerabilities, and

8.      any arrivals or releases of Detained Class Members at the Facilities.

**E.**      Defendants shall provide written notice to Class Counsel within 24 hours of ICE being notified of any COVID-19-related Hospitalization or death of any Class Member at the Facilities.

## V.    DISPUTE RESOLUTION PROCEDURES

**A.**      **Disputes regarding proposed changes to mitigation measures.** If, after being notified of a change or an intended change to the mitigation measures set forth in Section II, Plaintiffs dispute the change, the Parties agree to meet and confer within seven days of Plaintiffs notifying Defendants of the dispute. Should Plaintiffs believe that changed CDC Guidance warrants modification of any of the obligations at the Facilities, the Parties agree to meet and confer within seven days of Plaintiffs so notifying Defendants in writing. If the meet and confer process does not resolve the dispute over changed CDC Guidance, a Party may seek dispute resolution pursuant to Subsection V.D-E. Notwithstanding the Meet and Confer process, ICE will implement the change unless directed otherwise by the Circuit Mediator or magistrate judge.

**B.**      **Dispute resolution procedures where Plaintiffs contest the re-detention of a Class Member.**

1.      In the event that the Parties agree that a Class Member was re-detained in violation of this Settlement Agreement, ICE will release the Class Member from custody. In the event that the magistrate judge presiding over a dispute between the parties finds that a Class Member was re-detained in violation of the Settlement Agreement, and regardless of whether ICE used best efforts, ICE will immediately release the Class Member from custody. This includes individuals described in 8 U.S.C. § § 1226(c) and 1231(a)(2).

2.      Counsel for ICE agree to meet and confer with Class Counsel within three business days in response to a claim by Plaintiffs that ICE is in material breach of Section III of the Settlement Agreement (pertaining to re-detention of released Class Members). At or before the meet and confer, ICE agrees to provide the basis for the re-detention of the Class Member. If the Parties are unable to resolve the dispute within two business days after Plaintiffs raise a claim, the parties agree that they will present the dispute to the assigned magistrate for resolution. Absent a request for more time from the re-detained Class Member, Class Counsel shall provide Counsel for ICE with a brief of not longer than five pages, and any supporting evidence,

within five business days. Counsel for ICE shall have three business days to file a response. Counsel for Plaintiffs shall file a reply, if any, within two business days. The Parties shall then jointly file a request for expedited resolution with the assigned magistrate concerning Plaintiffs' brief, ICE's response, Plaintiffs' reply, and any supporting evidence from either Party. The assigned magistrate shall apply the provisions of Subsection V.E.3 to resolve a dispute under this paragraph.

C. **Claim of material breach.** Except as provided in Subsection V.B.2, the Parties agree to meet and confer within seven days in response to a claim by Plaintiffs that Defendants are in material breach of this Agreement.

D. **Mediation.** If, after the meet and confer, the Parties are unable to resolve the dispute, except as provided in Subsection V.B.2, the Parties will jointly seek expeditious presentation of the dispute to the Ninth Circuit mediation program.

E. **Court review.** Except as provided in Subsection V.B.2, if the issue cannot be resolved through the Ninth Circuit mediation program, the Parties will jointly seek expeditious review by a magistrate judge of the Court.

    1. As part of the Final Approval process, the Parties will ask the District Court Judge to appoint a magistrate judge to review any disputes under this Subsection.

    2. The Parties will present any dispute to the appointed magistrate judge through the simultaneous submission of briefs and any other supporting evidence or information no later than seven days after any failure to resolve the dispute before the Ninth Circuit mediation program. A Party may seek leave from the magistrate judge to expeditiously file a reply brief.

    3. In all instances where the magistrate judge is tasked with determining whether a material breach has occurred, the inquiry is an objective one. By way of example, whether a Class Member poses a risk to public safety or is a flight risk, whether a Class Member has absconded, or whether a Class Member has been medically isolated, is an objective question that will be determined in the first instance by the magistrate judge and no deference will be given to a Party's best efforts regarding the alleged breach at issue.

    4. The Parties will request that the magistrate judge hold a hearing concerning the dispute before issuing an order. The magistrate judge's order concerning the dispute shall be binding on the Parties.

F. **Enforcement.** If a Party fails to adhere to any determination by the magistrate judge under Subsection V.E, the aggrieved Party may file a motion for contempt or other sanctions with the District Court Judge presiding over the case.

## VI.   MISCELLANEOUS PROVISIONS

A.   **Attorney's fees and costs.** ICE shall pay Plaintiffs the amount of $4,000,000 in attorney's fees. Plaintiffs also attest that they have incurred up to $112,000 in costs taxable under 28 U.S.C. § 1920. Within seven (7) of the Effective Date, ICE shall submit Plaintiffs' claim for up to $112,000 in taxable costs to the Department of the Treasury for payment from the Judgment Fund, subject to approval by the Department of the Treasury. Plaintiffs will provide any documents or information requested by the Department of the Treasury to support their claim for taxable costs. Plaintiffs agree to accept ICE's payment of $4,000,000 and the taxable costs approved by the Department of Treasury as full and complete satisfaction of Plaintiffs' claims for attorneys' fees, costs, and litigation expenses, inclusive of any interest. Class Counsel will provide ICE's Counsel with the necessary information for the transfer of these funds. ICE shall make payment of the fees amount within forty-five (45) days of the Effective Date.

   1.   Plaintiffs represent that they have no existing debts to the United States and that they are not subject to an offset under *Astrue v. Ratliff*, 560 U.S. 586 (2010).

   2.   Plaintiffs represent that their claims for attorney's fees, litigation costs, and other expenses have been assigned to their counsel, and ICE accepts the assignment and waives any applicable provisions of the Anti-Assignment Act, 31 U.S.C. § 3727.

   3.   This Settlement Agreement does not waive Plaintiffs' or their attorneys' tax liability or any other liability owed to the United States government.

B.   **Vacatur of certain District Court orders.** Contemporaneously with the Plaintiffs' motion contemplated in Section VIII.B, seeking preliminary approval of the Classwide Settlement and provisional class certification, the Parties will jointly present to the Court a motion to vacate its preliminary injunction orders of June 9, 2020 and December 3, 2020 (ECF Nos. 357 & 867), such vacatur to be entered only if, and not before, the time the Court enters an order granting final approval of this settlement, together with a proposed order in the form attached hereto as Exhibit A. It is understood and agreed to by the Parties that the entry of the proposed order at Exhibit A by the Court is a condition precedent to the effectiveness of this Agreement and the obligations of the Parties thereunder, and that the Parties shall request that such an order shall not issue unless and until the settlement has been finally approved.

C.   **Notices.** All notices contemplated by this Agreement, other than notice to the Settlement Class, shall be in writing and shall, unless expressly provided otherwise herein, be delivered by email to Class Counsel.

D.   **Entire Agreement.**   This Agreement and attached exhibits contain the entire

agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action. This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. The exhibits to this Agreement are integral parts of the Agreement and the settlement and are incorporated into this Agreement as though fully set forth in the Agreement.

E.     **Modifications and Amendments.**  No amendment, change, or modification to this Agreement shall be valid unless in writing signed by the Parties or their counsel.

F.     **Governing Law.**  This Agreement is governed by federal law and must be interpreted under federal law and without regard to conflict of laws principles.

G.     **Further Assurances.**  The Parties shall execute and deliver any additional papers, documents and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Agreement and to carry out this Agreement's expressed intent.

H.     **Failure of Agreement to Become Effective.**  The Parties shall use their best efforts to ensure that the Agreement becomes effective. If, notwithstanding such best efforts, the Effective Date does not occur and it becomes apparent that the Effective Date will not occur, the Parties shall attempt to negotiate a new agreement resolving the claims in this Action. Should the Parties be unable to negotiate a new agreement, the Parties shall be returned to their respective positions in the Action as of the date of the execution of the Agreement.

## VII.    RELEASE OF CLAIMS/NO ADMISSION OF WRONGDOING

A.     Upon final approval of this Agreement by the Court, Plaintiffs and all Class Members waive and release Defendants from liability for all claims, demands, rights, liabilities and causes of action for declaratory or equitable relief, including injunctive relief, known or unknown, that relate to risks associated with COVID-19 inside the Facilities that existed prior to the execution of this Agreement, and which were or could have been alleged in the Action based on the same common nucleus of operative facts alleged.

B.     Nothing in this Agreement shall have any preclusive effect on any damages claim by Plaintiffs or any Class Members or any claim by Plaintiffs or any Class Members concerning any individual challenges to the legal basis of their custody, now or in the future.

C.     By agreeing to this Agreement and the releases contained herein, Defendants do not waive any defenses available to any Defendant or the United States in any other pending or future action to claims that were or could have been made in the Action that arise from the same common nucleus of operative facts alleged by Plaintiffs.

**D.**     This Agreement is not and shall not be offered as evidence of, or deemed evidence of, any admission of liability or fault on the part of Defendants, regarding any issue of law or fact, or regarding the truth or validity of any allegation or claim raised in this action.

**VIII.   PRELIMINARY APPROVAL, CLASS NOTICE, COURT JURISDICTION, AND EXPIRATION OF SETTLEMENT AGREEMENT**

**A.**     This agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same agreement. A facsimile or other duplicate of a signature shall have the same effect as a manually executed original. This Agreement shall be deemed executed on the date the Agreement is signed by all of the undersigned.

**B.**     Following the Parties' execution of this Agreement, Plaintiffs shall file forthwith a motion seeking preliminary approval of the Classwide Settlement and provisional class certification. The motion must request the Court to:

    **1.**     Preliminarily approve the Classwide Settlement as being a fair, reasonable, and adequate settlement within the meaning of Federal Rule of Civil Procedure 23 and applicable law, and consistent with due process;

    **2.**     Preliminarily approve the certification of the Settlement Class;

    **3.**     Appoint Plaintiffs as class representatives;

    **4.**     Appoint William Freeman, Sean Riordan, and Emilou MacLean (ACLU Foundation of Northern California); Stephanie Padilla (ACLU Foundation of Southern California); Bree Bernwanger and Hayden Rodarte (Lawyers' Committee for Civil Rights of the San Francisco Bay Area); Francisco Ugarte, Jennifer Friedman, Kelly Engel Wells, and Genna Beier (Office of the Public Defender of San Francisco); Martin S. Schenker, Timothy W. Cook, Francisco M. Unger, and Julie M. Veroff (Cooley LLP); Judah Lakin and Amalia Wille (Lakin & Wille LLP) as Class Counsel;

    **5.**     Approve the Notice Plan set forth in Section VIII.C; and

    **6.**     Set the date and time of the Fairness Hearing.

**C.**     Defendants shall produce a list of all Class Members to Class Counsel within one week of this Agreement being signed by all parties. Additional Class Members shall have the opportunity to self-identify at a later time.

**D.**     **Notice.** Notice to Class Members shall be translated into Spanish and any other language identified by the Parties as being a language of proficiency for a Class Member. The Parties will propose to the Court that the notice shall be given to Class

Members upon preliminary approval of the Classwide Settlement via the following:

1.        Posting in the Facilities;

2.        Legal mail to detained Class Members in the Facilities;

3.        First class mail to Non-Detained Class Members at the address on file with ICE; and

4.        First class mail to each Class Member's attorney of record on file with ICE.

E.        This Agreement shall become effective upon the Effective Date, and shall terminate three years thereafter.

F.        Following the Effective Date, the Parties shall forthwith jointly file the stipulated request attached hereto as Exhibit B, requesting that the Court enter this Agreement as a stipulated order and dismiss the Action with prejudice; notwithstanding such dismissal, the Court shall retain jurisdiction to interpret and enforce this Agreement for its three-year duration. The stipulated request for dismissal and judgment shall provide as follows:

> The Court shall retain jurisdiction over all disputes between and among the Parties arising out of the Agreement, including but not limited to interpretation and enforcement of the terms of the Agreement, except as otherwise provided in the Agreement, for a term of three (3) years from the Effective Date.

[This space intentionally left blank.]

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel, intending to be legally bound, have executed this agreement on the dates shown below.

Dated: *December 14*, 2021          COOLEY LLP

By: _____
Martin S. Schenker

Dated: *December 14*, 2021          AMERICAN CIVIL LIBERTIES UNION
                                    FOUNDATION OF NORTHERN CALIFORNIA

By: _____
William S. Freeman

Dated: **December 14**, 2021          AMERICAN CIVIL LIBERTIES UNION
                                    FOUNDATION OF SOUTHERN CALIFORNIA

By: _____
Stephanie Padilla

Dated: *December 14*, 2021          LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                    OF THE SAN FRANCISCO BAY AREA

By: _____
Bree Bernwanger
*Attorneys for Petitioner/Plaintiff*

Dated: *December 14*, 2021          OFFICE OF THE PUBLIC DEFENDER
                                    SAN FRANCISCO

By: _____
Kelly Wells
*Attorneys for Petitioner/Plaintiff*

                                    LAKIN & WILLE LLP

Dated: *December 14*, 2021          By: _____
Judah Lakin
*Attorneys for Petitioner/Plaintiff*

Dated:     December 14, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CHRISTOPHER TENORIO
Deputy Assistant Attorney General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

By: _____
JEFFREY S. ROBINS
Deputy Director, District Court Section
Office of Immigration Litigation

SERGIO SARKANY
Trial Attorney

*Attorneys for Defendants*

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel, intending to be legally bound, have executed this agreement on the dates shown below.

Dated: _____, 2021          THE GEO GROUP, INC.


By: _____
    Joseph Negron, Jr.
    *General Counsel, The GEO Group, Inc.*


Dated: __12/15__, 2021          WARDEN OF MESA VERDE DETENTION
                                FACILITY

By: _____
    Michael Knight
    *Acting Facility Administrator, Geo Secure
    Services, Mesa Verde ICE Processing Center*


Dated: _____, 2021          JONES WALKER, LLP


By: _____
    David S. Weinstein
    *Counsel for The Geo Group, Inc. and
    Warden of Mesa Verde Detention Facility*


                                BURKE, WILLIAMS & SORENSEN, LLP
Dated: _____, 2021

By: _____
    Susan E. Coleman
    *Counsel for The Geo Group, Inc. and
    Warden of Mesa Verde Detention Facility*

IN WITNESS WHEREOF, the Parties, by and through their authorized counsel, intending to be legally bound, have executed this agreement on the dates shown below.

Dated: ___12-17___, 2021          THE GEO GROUP, INC.

By: _____
Joseph Negron, Jr.
*General Counsel, The GEO Group, Inc.*

Dated: _____, 2021          WARDEN OF MESA VERDE DETENTION FACILITY

By: _____
Michael Knight
*Acting Facility Administrator, Geo Secure Services, Mesa Verde ICE Processing Center*

Dated: ___12-15___, 2021          JONES WALKER, LLP

By: _____
David S. Weinstein
*Counsel for The Geo Group, Inc. and Warden of Mesa Verde Detention Facility*

Dated: ___12-15___, 2021          BURKE, WILLIAMS & SORENSEN, LLP

By: _____
Susan E. Coleman
*Counsel for The Geo Group, Inc. and Warden of Mesa Verde Detention Facility*