WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
EMILOU H. MACLEAN (SBN 319071)
emaclean@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Petitioners-Plaintiffs
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (SBN 300505)
genna.beier@sfgov.org
JENNIFER FRIEDMAN (SBN 314270)
jennifer.friedman@sfgov.org
FRANCISCO UGARTE (SBN 241710)
francisco.ugarte@sfgov.org
KELLY ENGEL WELLS (SBN 338648)
kelly.wells@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA,<br><br>　　　　　Petitioners-Plaintiffs,<br><br>　　v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; MICHAEL KNIGHT, Acting Warden of Mesa Verde Detention Facility,<br><br>　　　　　Respondents-Defendants. | CASE NO. 3:20-CV-02731<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**JUDGE VINCE CHHABRIA**<br><br>Date:  June 9, 2022<br>Time: 2:30 PM |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF THE
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
JULIE M. VEROFF
jveroff@cooley.com (SBN 310161)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    Procedural History............................................................................................. 2

    B.    Merits Settlement Negotiations........................................................................... 4

    C.    Material Terms of the Proposed Settlement........................................................ 5

III.  LEGAL STANDARD.......................................................................................... 8

IV.   ANALYSIS ......................................................................................................... 9

    A.    Plaintiffs Provided Direct and Indirect Notice Pursuant to the Agreement and Plaintiffs' Counsel Are Unaware of any Objections to the Settlement. ........................................... 9

    B.    The Court Should Confirm Its Initial Finding that the Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a)........................................... 11

        1.   The Proposed Class Meets the Numerosity Requirement.................................... 12

        2.   The Proposed Class Meets the Commonality Requirement. .............................. 13

        3.   The Proposed Class Representatives Meet the Typicality Requirement. .................... 14

        4.   The Proposed Class Representatives and Proposed Class Counsel Meet the Adequacy Requirement.......................................................................................... 15

    C.    The Court Should Confirm Its Initial Finding that Plaintiffs Have Satisfied the Requirements of Federal Rule of Civil Procedure 23(b)(2).......................................... 16

    D.    The Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court. .................................................................................................... 17

V.    CONCLUSION.................................................................................................. 23

i

CASE NO. 3:20-CV-02731
PLAINTIFFS' NOTICE OF UNOPPOSED
MOTION AND MPA ISO MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................. 16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ............................................................................... 13, 14

*Arnold v. United Artists Theatre Cir., Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994).............................................................................. 12

*Baby Neal for & By Kanter*,
   43 F.3d 48 (3d Cir. 1994)........................................................................................... 17

*Bakhtiar v. Info. Res., Inc.*,
   No. 17-cv-04559-JST, 2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) ...................... 8

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir.) ........................................................................................... 11

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .................................................................................. 18

*Cancilla v. Ecolab, Inc.*,
   No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016)................................ 8

*Chan v. Sutter Health Sacramento Sierra Region*,
   No. 15-cv-02004-JAK, 2016 WL 7638111 (C.D. Cal. June 9, 2016) ........................ 9

*Churchill Village, LLC. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................... 9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .................................................................................... 8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................... 18

*Gray v. Golden Gate Nat'l Recreational Area*,
   279 F.R.D. 501 (N.D. Cal. 2011)............................................................................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................... 9, 18

*Hernandez v. Cnty. Of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ..................................................................... 14

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................... 17

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 21

*Johnson v. Cal.*,
  543 U.S. 499 (2005) ......................................................................................... 13

*Lyon v. United States Immigration & Customs Enforcement*,
  300 F.R.D. 628 (N.D. Cal. 2014) ....................................................................... 9

*MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*,
  No. 20-cv-02653-SVK, 2020 WL 7389419 (N.D. Cal. Nov. 17, 2020) .................. 13

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................................... 13

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ........................................................................... 11

*Officers for Just. v. Civil Serv. Comm'n of City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ......................................................................... 8, 9

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 963 (9th Cir. 2009) ........................................................... 9, 18, 20, 21

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) ........................................................ 14, 15, 16, 17

*Rosado v. Ebay Inc.*,
  No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) .................. 8

*Russell v. Kohl's Dep't Stores, Inc.*,
  755 F. App'x 605 (9th Cir. 2018) ..................................................................... 11

*Saravia v. Sessions*,
  280 F. Supp. 3d 1168 (N.D. Cal. 2017) ....................................................... 12, 17

*Savino v. Souza*,
  453 F. Supp. 3d 441 (D. Mass. 2020) ............................................................... 12

*Sueoka v. United States,*
   101 F. App'x 649 (9th Cir. 2004) ........................................................................ 12

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ........................................................................ 13

*Walters v. Reno,*
   145 F.3d 1032 (9th Cir. 1998) ........................................................................ 17

*Wang v. Chinese Daily News, Inc.,*
   737 F.3d 538 (9th Cir. 2013) ........................................................................ 13

*Yamagata v. Reckitt Benckiser LLC,*
   2021 WL 5909206 (N.D. Cal. Oct. 28, 2021) .................................................... 22

*Zepeda Rivas v. Jennings,*
   445 F. Supp. 3d 36 (N.D. Cal. 2020) ................................................... *passim*

**Other Authorities**

Fed. R. Civ. P.

Rule 23 ........................................................................ 16, 18, 20

Rule 23(a) ........................................................................ *passim*

Rule 23(a)(1) ........................................................................ 12

Rule 23(a)(2) ........................................................................ 13

Rule 23(a)(3) ........................................................................ 14

Rule 23(a)(4) ........................................................................ 16

Rule 23(b) ........................................................................ 16

Rule 23(b)(2) ........................................................................ 1, 9, 16, 17

Rule 23(c) ........................................................................ 11

Rule 23(e) ........................................................................ 8, 17

## <u>NOTICE OF UNOPPOSED MOTION AND MOTION FOR</u>
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

PLEASE TAKE NOTICE that on June 9, 2022 at 2:30 p.m., or soon thereafter in accordance with Local Rule 7-2(a), Plaintiffs will and hereby do move the Court for an order granting final approval of the settlement negotiated with Defendants and previously preliminarily approved the by Court in this Action.

Plaintiffs move the Court to (1) grant final approval of the Parties' settlement of this litigation ("Settlement") pursuant to their Settlement Agreement ("Agreement"), and (2) enter judgment pursuant to the Agreement.  The Court granted preliminary approval of the Settlement on March 4, 2022 (ECF. No. 1229).  Notice of the Settlement was properly given and no objections or requests for exclusion from the Settlement Class have been received.  The Settlement is fair, adequate, and reasonable.

This Motion is based on this Notice of Unopposed Motion; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Sean Riordan in Support of Plaintiffs' Unopposed Motion ("Riordan Decl."); Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Settlement (ECF No. 1205) and documents filed in support thereof (ECF Nos. 1205-1-3); the Court's Order Granting Preliminary Approval of the Class Action Settlement (ECF No. 1229); the Parties' Joint Motion to Vacate Orders (ECF No. 1206); all other papers and records on file in this matter; any oral argument of counsel; and such additional matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs filed this class action lawsuit on behalf of all people in the custody of ICE in either the Yuba County Jail ("YCJ") or Mesa Verde Detention Center ("Mesa Verde") (collectively, the "Facilities") to enforce those individuals' constitutional rights to be protected against the dangerous risk of contracting COVID-19.  When Plaintiffs first brought this action on April 20, 2020, the CDC had recognized that jails and detention facilities posed a high risk of COVID-19 infection to facility staff and detainees.  Yet, Class Members had no ability to socially distance:  They slept on bunk beds in crowded dorms, shared limited bathroom space, and ate meals communally—often elbow-to-elbow.  Furthermore, Defendants had inadequate screening procedures for admitting new people into the Facilities, no testing requirements for staff or Class Members, an insufficient amount personal protective equipment, and few other preventive supplies available to detainees.  The regular influx of new entrants into already-crowded facilities, absence of regular testing for staff or Class Members—even if Class Members showed potential symptoms of COVID-19—and lack of Facility-specific isolation and quarantine plans created tinderbox conditions as the pandemic spread.  Plaintiffs won multiple rounds of preliminary relief to remedy these unconstitutional harms, and, in December 2021—after a year and a half of vigorous litigation and mediated negotiations—the parties reached a final settlement, which the Court preliminarily approved on March 4, 2022.  ECF No. 1229.

Plaintiffs now request that the Court issue an order granting final certification of the proposed Settlement Class and final approval of the Settlement.  The proposed Settlement Class qualifies for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(2), and, as discussed below, the Settlement provides the Settlement Class with key protections from this

Court's earlier preliminary injunctions, including ensuring that Class Members in the Facilities will continue to have access to vaccination, testing, and sanitation products to help prevent any further spread of COVID-19.  The Parties also provided the best notice to the Class Members that is practicable under the circumstances.  The Settlement is thus more than fair and reasonable to the Class Members and the Court should therefore certify the proposed Settlement Class and grant final approval of the Settlement.

## II.    BACKGROUND

This section largely restates the Background section of Plaintiffs' Motion for Preliminary Approval (ECF No. 1205 at 2-7).[1]  Consistent with the Northern District's Procedural Guidance for Class Action Settlements, Plaintiffs again present here a summary of this case's history and background for purposes of completeness and ease of reference.

### A.    Procedural History

Plaintiffs filed a class action complaint on April 20, 2020, seeking to protect themselves and their peers from unconstitutional conditions at the Facilities.  ECF No. 1, Compl.[2]  On April 29, 2020, the Court provisionally certified a class of all people in civil immigration detention at the Facilities and entered a temporary restraining order ("TRO").  *See Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38-42 (N.D. Cal. 2020); ECF No. 53.  Plaintiffs then moved for a preliminary

---

[1] The negotiation history concerning the settlement of attorneys' fees and costs is separately presented in Plaintiffs' Motion for Approval of Class Settlement Regarding Plaintiffs' Claim for Equal Access to Justice Act Fees and Costs (ECF No. 1241 and documents filed in support thereof) and Defendants' Response to Plaintiffs' Motion for Approval of Proposed Class Settlement Regarding Plaintiffs' Claim for Equal Access to Justice Act Fees and Costs (ECF No. 1244).

[2] On October 30, 2020, Plaintiffs filed an amended complaint.  ECF No. 780, Am. Compl.  The amended complaint, which is the operative pleading, sets forth a single claim that Defendants' detention of Plaintiffs and other Class Members violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

injunction on May 22, 2020, which the Court granted on June 9, 2020, ordering Defendants to maintain protections against the transmission of COVID-19 in the Facilities.  ECF No. 357, Order Granting Mot. Prelim. Inj.

Plaintiffs took substantial discovery, including expedited document productions, written discovery, depositions, and a site inspection.  When Defendants failed to implement Facility-specific protocols to minimize the risk of COVID-19 transmission during a COVID-19 outbreak at Mesa Verde, this Court granted a show cause order and TRO.  ECF No. 500, Order Granting TRO.  Following a five-day evidentiary hearing, the Court ordered a second preliminary injunction as to Mesa Verde on December 3, 2020, explicitly listing mitigation measures Defendants must take, including population caps on housing units, intake screenings, and testing.  ECF No. 867, Order Granting Mot. Second Prelim. Inj.

In January 2021, in response to an outbreak in YCJ, this Court converted a TRO (first granted on December 23, 2020) to a preliminary injunction.  ECF No. 951, Order Granting Mot. Prelim. Inj. Re Yuba County Jail.

Federal Defendants filed notices of appeal for both the Court's initial April 29, 2020 TRO and June 9, 2020 injunction (and all Defendants later appealed the December 3, 2020 injunction). In February 2021, the Ninth Circuit affirmed in part, upholding the District Court's initial TRO and June 9 injunction, reserved a portion of the appeals, and ordered the Parties to consider mediation.  *See Zepeda Rivas v. Jennings*, No. 20-16276, ECF Nos. 76 & 77 (9th Cir. Feb. 18, 2021).

**B.      Merits Settlement Negotiations.**[3]

Following the Ninth Circuit's February 2021 order, the Parties commenced settlement discussions with the assistance of the Ninth Circuit Mediation Program.  The Parties negotiated over the spring and summer of 2021, exchanging numerous versions of proposed settlement terms and participating in numerous calls and virtual settlement conferences, both with and without the Circuit Mediator.  The issues were complex and the negotiations contentious.  The substantive provisions concerned the treatment of both Class Members remaining in detention and Class Members who have been released from detention.  The Parties asserted broadly divergent and strongly held views as to how to resolve those issues, requiring intensive written and verbal negotiations between the Parties, and the direct participation of high-level agency personnel, over the course of several months.

The Parties were able to reach an agreement in principle in July 2021.  Reducing the Parties' agreement in principle into a detailed and final written agreement required several more months.  The whole of these negotiations proved to be so challenging that the Parties requested additional time from the Ninth Circuit on three occasions to conclude the mediation, and a divided panel permitted additional time. *Zepeda Rivas v. Jennings*, No. 20-16276, ECF No. 86 (9th Cir. July 16. 2021) (Christen, J., dissenting in part); *id.*, ECF No. 88 (9th Cir. Sept. 17, 2021) (Christen, J., dissenting); *id.*, ECF No. 93 (9th Cir. Nov. 17, 2021) (Christen, J., dissenting).  The Parties finalized the Agreement on December 17, 2021.  *See* ECF No. 1180.  On that same day, pursuant

---

[3] Plaintiffs present the parties' fees and costs settlement agreement—which the Parties did not negotiate until after resolving the substantive issues at the insistence of Plaintiffs' counsel—in Plaintiffs' Motion for Approval of Proposed Class Settlement Regarding Plaintiffs' Claim for Equal Access to Justice Act Fees and Costs (ECF No. 1241 at 3-6).

4

CASE NO. 3:20-CV-02731
PLAINTIFFS' NOTICE OF UNOPPOSED
MOTION AND MPA ISO MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

to the Parties' stipulation, the Ninth Circuit dismissed all appeals without prejudice.

**C.    Material Terms of the Proposed Settlement.**

The Agreement provides meaningful relief to Detained Class Members in the form of mitigation measures and to Non-Detained Class Members in the form of protections from re-detention.  The Agreement defines a single "Settlement Class": "all people who are or have been in ICE custody at the Facilities from April 20, 2020, through the expiration of this settlement agreement."  ECF 1205-1, Settlement Agreement, at 5.  This includes both Detained Class Members, defined as those "detained under the authority of ICE at the Facilities," and Non-Detained Class Members, defined as those who were "detained by ICE at either of the Facilities on or after April 20, 2020, and who [were] released from physical custody by ICE or the District Court before the Effective Date of this Agreement, who [have] not been removed or effectuated their own removal following such release."  *Id.* at 3-4.  Under this framework, the Agreement sets forth the policies and procedures Defendants are obligated to follow to mitigate the risk of COVID-19 inside the Facilities and commitments to protect the liberty of Non-Detained Class Members.

*First*, with respect to Detained Class Members, the Agreement ensures Defendants' mitigation efforts will be long-lasting and meaningful, as well as guided by applicable CDC Guidance, nationwide orders and injunctions, and ICE's Pandemic Response Requirements ("PRR").  For example, the Agreement largely locks into place the protections of the Court's injunctions for 60 days after the Effective Date,[4] during which time ICE shall:

- maintain a population cap consistent with the June 9, 2020 and December 3, 2020 preliminary injunctions (i.e. total population cap of 52 persons in the dorms if Mesa Verde is accepting new intakes or 78 persons in the dorms if Mesa Verde is not accepting new

---

[4] The Effective Date is defined as the "date the Court shall have issued (1) an order finally approving th[e] Agreement and (2) an order vacating its preliminary injunction orders as set forth in Section VI.B [of the Agreement]."

intakes; and a limit of 52 persons at YCJ); *id.* at 7-8; and

- make best efforts to abide by the mitigation measures in the December 3, 2020 Order; *id.* 8-9.

Additionally, Defendants are required to maintain robust mitigation efforts for three years from the Effective Date at Mesa Verde, and for no less than one year from the Effective Date at YCJ.[5] Under the Agreement, ICE is obligated to, among other things and subject to changes in CDC guidance:

- provide Detained Class Members with COVID-19 vaccines and booster doses; *id.* at 5-6;

- supply Detained Class Members with masks and hand cleaning supplies free of charge; *id.* at 6;

- educate Detained Class Members about the risks of contracting the coronavirus; *id.* at 6-7;

- screen newly arriving Detained Class Members for vulnerabilities to severe COVID-19 and identify vulnerable detainees to be released; *id.* at 7;

- quarantine Detained Class Members for 14 days upon arrival and offer two COVID-19 tests before they are allowed into the General Population; *id.* at 8-9;

- isolate any Detained Class Member who exhibits symptoms or tests positive for COVID-19, member and test their entire housing unit; *id.* at 7-10, and

- require staff members to follow CDC Guidance regarding quarantine periods after a positive COVID-19 test.  *Id.* at 7, 10.

**Second**, the Agreement provides protection from rearrest for Non-Detained Class Members who have been released from ICE custody, and provides Non-Detained Class Members with valuable clarity on the limited conditions under which they may be re-detained.  Specifically,

---

[5] Under the Agreement, YCJ is committed to maintaining these robust mitigation efforts for no less than one year from the Effective Date.  *Id.* at 5, § II.A.  While ICE could not commit YCJ to maintaining these mitigation efforts for three years from the Effective Date due to the governing and contracting structure of YCJ, ICE is obligated under the Agreement to "make best efforts to secure YCJ's participation in this agreement for three years from the Effective Date."  *Id.* at 5, § II.A.

under the Agreement, ICE may only re-detain a Non-Detained Class Member if the Class Member: (1) has violated a material condition of release in a way that indicates danger, flight risk, or threat to national security; (2) has been ordered removed after failing to appear for an immigration court hearing; (3) has absconded; (4) has been arrested for new criminal conduct that presents a danger, flight risk, or threat to national security; (5) has failed to comply with the terms probation or parole and the failure to comply presents a danger, flight risk, or threat to national security; or (6) poses a "very significant ongoing threat to public safety or national security." *See id.* at 10-11.

*Third*, the Agreement also creates dispute resolution procedures for both disputes regarding proposed changes to mitigation measures and contested re-detention of Class Members. *See id.* at 15-16 (Sections V.A-F). For example, under the Agreement, the Parties are required to: (1) meet and confer about any disputed changes or intended changes to mitigation measures; (2) jointly seek "expeditious presentation of the dispute to the Ninth Circuit mediation program" if the Parties are unable to resolve the dispute after meeting and conferring; and (3) present any dispute that cannot be resolved through the Ninth Circuit mediation program to the magistrate judge appointed by this Court to review any such disputes.[6] *See id.* at 15-16 (Sections V.A, V.D, and V.E). The Agreement also provides for the disclosure of certain information that ensures regular communication between Defendants and Class Counsel. *Id.* at 14-15 (Section IV).

In conjunction with the motion for preliminary approval, the Parties also filed a joint motion to vacate certain of the Court's prior orders. ECF No. 1206. The Agreement is contingent on the Court granting the motion to vacate. The government required that such an order be a

---

[6] Pursuant to Section V.E.1 of the Agreement, as part of the final approval process, the Parties request that the Court appoint a magistrate judge to review disputes arising under the Agreement in the manner prescribed by the Agreement.

condition precedent to effectuating a settlement.  Given the enormous benefit to the Class—including maintaining many of the core protections from the Court's injunctions and providing additional protections to both Detained and Non-Detained Class Members—Class Counsel acceded to the government's demand and joins in the government's request for the Court to grant the joint motion to vacate.  At the preliminary approval hearing, the Court deferred ruling on the motion to vacate, but indicated it did not see any reason to deny that joint motion.  *See* ECF No. 1235 (minute entry reflecting that the Court heard the joint Motion to Vacate and unopposed Motion for Preliminary Approval and granted the latter motion).

## III.    LEGAL STANDARD

Settlement is "the preferred means of dispute resolution[,] . . . especially . . . in complex class action litigation."  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, a "strong judicial policy" favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Federal Rule of Civil Procedure 23(e), a class action settlement that is binding on absent class members requires court approval.  *See Officers for Just.*, 688 F.2d at 623.  This court approval is a two-step process: (1) preliminary approval of the settlement, and (2) final determination that the settlement is fair, reasonable, and adequate after a notice period.  *See Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2021 WL 4472606, at *5-6 (N.D. Cal. Feb. 10, 2021).

At final approval, the Court first "determines that notice to the class members was accomplished in the manner prescribed by the settlement and as approved by the Court at the preliminary approval stage."  *Cancilla v. Ecolab, Inc.,* No. 12-cv-03001-JD, 2016 WL 54113, at *3 (N.D. Cal. Jan. 5, 2016).  The Court then analyzes whether it should confirm final certification of any class preliminarily certified for settlement.  *Rosado v. Ebay Inc.,* No. 5:12-cv-04005-EJD,

2016 WL 3401987, at *1-2 (N.D. Cal. June 21, 2016).

Finally, "[h]aving already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits." *Id.* (citing *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004)).  The Court should "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Just.*, 688 F.2d at 625.  Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Officers for Just.*, 688 F.2d at 625; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d at 963.

## IV.    ANALYSIS

### A.    Plaintiffs Provided Direct and Indirect Notice Pursuant to the Agreement and Plaintiffs' Counsel Are Unaware of any Objections to the Settlement.

While notice to a Rule 23(b)(2) class is not required, the Parties agreed to provide notice to the Settlement Class upon preliminary approval of the class-wide settlement.  ECF No. 1205-1 at § VIII.D; *see Lyon v. United States Immigration & Customs Enforcement*, 300 F.R.D. 628, 643 (N.D. Cal. 2014) (explaining that notice to a [Rule 23(b)(2)] class is not required but may be appropriate depending on the circumstances); *Chan v. Sutter Health Sacramento Sierra Region*, No. 15-cv-02004-JAK, 2016 WL 7638111, at *14 (C.D. Cal. June 9, 2016) (explaining that notice was not required in a settlement agreement for a Rule 23(b)(2) injunctive settlement class because notice is optional under Rule 23(b)(2) and the "Class Members' rights [would] not be prejudiced by the Settlement Agreement.").  Consequently, pursuant to the preliminary approval order,

Plaintiffs gave notice of the Settlement (the "Notice") through multiple methods reasonably calculated to reach Class Members.

First, Plaintiffs' counsel caused the Notice (which detailed the Settlement, preliminary approval, and well as fees and costs, *see* ECF No. 1222) to be translated into Spanish and other languages identified as languages of proficiency for one or more Class Members: Vietnamese, Armenian, Punjabi, and Czech.  Riordan Decl. ¶¶ 3, 5.  Additionally, though not required by the Agreement, Plaintiffs' counsel also caused the Agreement itself to be translated into Spanish and the other-identified languages of proficiency.  *Id.* ¶ 3.  Plaintiffs' counsel then sent copies of the Notice and the Agreement through first class mail to each of the Class Members, in either English and Spanish or the Class Member's Non-Spanish language of proficiency, if known.  Riordan Decl. ¶ 5.

Second, Plaintiffs' counsel also sent copies of the Notice and Agreement to each Class Member's attorney of record on file with ICE via first class mail.  *Id.* ¶ 7.

Third, copies of the Notice were posted in the Facilities in both English and Spanish, according to Defendants.  *Id.* ¶ 4.

Plaintiffs' counsel also took additional steps beyond what was required in the Agreement to ensure that the Notice was disseminated as widely as possible to interested individuals. Plaintiffs' counsel sent copies of the Notice and the Agreement to the email listserv maintained by the California Collaborative for Immigrant Justice, which includes immigrant service providers in the Bay Area, Central Valley, and greater Los Angeles region.  *Id.* ¶ 8.  Plaintiffs' counsel also emailed the Notice and Agreement to other attorneys who reportedly were or are assisting certain Class Members with their respective immigration cases.  *Id.*  And Plaintiffs' counsel caused copies of the Notice and Agreement to be posted on the ACLU of Northern California's website page

dedicated to this case in accessible formats in English and Spanish. *Id.* Additionally, Plaintiffs' counsel convened a call with Spanish-speaking Class Members of April 21, 2022 and a separate call with English-speaking Class Members on April 28, 2022 to explain the terms of the Agreement and answer Class Members' questions. *Id.* ¶ 9. Plaintiffs' counsel have also received and responded to approximately one dozen calls from individual Class Members with questions about the Agreement. *Id.* ¶ 9. Finally, Plaintiffs' counsel also identified three Class Members as proficient speakers of two different indigenous languages. *Id.* ¶ 6. Because Plaintiffs' counsel were informed that written translations in these languages would not be useful, Plaintiffs' counsel arranged for phone calls with these Class Members to explain the terms of the Agreement with the assistance of interpreters. *Id.*

Consequently, Plaintiffs have complied with the Agreement's notice distribution plan approved by the Court (ECF No. 1229 at ¶¶ 7-8), satisfying the Advisory Committee's standards for effectuating required class notice in the process. *See Russell v. Kohl's Dep't Stores, Inc.*, 755 F. App'x 605, at *1 (9th Cir. 2018) (noting that even in a (b)(3) action, "[Rule] 23(c) requires the best notice practicable under the circumstances, not actual notice to every class member."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir.), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) ("[W]hen individual notice by mail is 'not possible, courts may use alternative means such as notice through third parties.'" (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)).

### B.    The Court Should Confirm Its Initial Finding that the Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a).

Federal Rule of Civil Procedure 23(a) sets forth four requirements for certifying a class: numerosity, commonality, typicality, and adequacy. The Court previously found that all four

requirements were satisfied with respect to the provisional class, *Zepeda Rivas*, 445 F. Supp. 3d at 38-39 (ECF No. 53), and reached the same conclusion in its Order Granting Preliminary Approval (ECF No. 1229).  The Court's prior analyses apply with equal force today and the Settlement Class should thus be certified.

### 1.    The Proposed Class Meets the Numerosity Requirement.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  The plaintiff need not state the exact number of potential class members, and there is no specific minimum number of class members required.  *Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994).  Where, as here, plaintiffs seek only injunctive and declaratory relief, "the numerosity requirement is relaxed and plaintiffs may rely on the reasonable inference arising from plaintiffs' other evidence that the number of unknown and future members of [the] proposed [class] . . . is sufficient to make joinder impracticable."  *Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004).

The proposed Settlement class, just like the provisional class, is sufficiently numerous.  As of April 20, 2020, there were at least 400 people in ICE custody at the Facilities, with more added throughout this litigation.  *See* ECF No. 37-1, Bonnar Decl., ¶ 8 (283 people in ICE custody at Mesa Verde as of April 24, 2020); ECF No. 37-3, Kaiser Decl., ¶ 8 (144 people in ICE custody at YCJ as of April 24, 2020).  In addition to those released, as of May 20, 2022, there are 58 Class Members in Mesa Verde and four Class Members in YCJ.  Courts have provisionally certified classes with far fewer class members. *See, e.g.*, *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1202 (N.D. Cal. 2017) (certifying class of 16 people in ICE custody); *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (certifying class of 148 people in ICE custody housed between two detention facilities); *see also* ECF No. 1229, ¶ 4(a) (granting preliminary approval and finding

numerosity satisfied).   Accordingly, the proposed Settlement Class satisfies the numerosity requirement.

### 2.     The Proposed Class Meets the Commonality Requirement.

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied where the plaintiff alleges the existence of a "common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Commonality requires only "a single significant question of law or fact."  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) ("So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2) (quoting *Wal-Mart*, 564 U.S. at 359 (alteration and internal quotation marks omitted))).  Where plaintiffs challenge "a system-wide practice or policy that affects all of the putative class members," the commonality requirement is satisfied.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. Cal.*, 543 U.S. 499 (2005); *see also MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-02653-SVK, 2020 WL 7389419, at *7 (N.D. Cal. Nov. 17, 2020) (finding commonality where ICE had a pattern of erroneously denying visa petitions, despite the underlying facts of each petition being different).

The proposed Settlement Class presents claims that raise common questions of law and fact.  *See Zepeda Rivas*, 445 F. Supp. 3d at 38-39.  Each Class Member is or was subjected to the same inadequate policies that put them at risk of contracting COVID-19.  While some members may have vulnerabilities that put them at a higher risk of severe symptoms, hospitalization, or death, the Defendants' policies and practices "exposed all . . . detainees to an unnecessary risk of

harm, not only those who are uniquely vulnerable to COVID-19 or who are not subject to mandatory detention." *Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020) (affirming provisional class certification in COVID-19-related immigration detention case); *see also Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (finding commonality where, "although a presently existing risk may ultimately result in different future harm for different inmates, . . . every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm"); *see also Hernandez v. Cnty. Of Monterey*, 305 F.R.D. 132 (N.D. Cal. 2015).

This Court previously found commonality among Class Members, recognizing that while some people would be released and others would remain in the Facilities, all members receive relief from a remedy focused on mitigating the risk of COVID-19 transmission. *See Zepeda Rivas*, 445 F. Supp. 3d at 38-39 (ECF No. 53); *see also Savino*, 453 F. Supp. 3d at 451 ("To be sure, the harm of a COVID-19 infection will generally be more serious for some petitioners than others. Yet it cannot be denied that the virus is gravely dangerous to us all."); ECF No. 1229, ¶ 4(b) (granting preliminary approval and finding commonality satisfied). Commonality is therefore satisfied.

### 3.   The Proposed Class Representatives Meet the Typicality Requirement.

The third element of Rule 23(a) requires that all claims of the representative parties are typical of each class member. Fed. R. Civ. P. 23(a)(3). The representative plaintiffs' claims need not be identical to those of the other class members; this element requires only that "the unnamed class members have injuries *similar* to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869 (emphasis added).

This Court previously found the typicality element was satisfied for purposes of the

provisionally certified class because, "[a]t root, this lawsuit is not about whether any particular person should be released; it is about the conditions of confinement at the facilities." *Zepeda Rivas*, 445 F. Supp. 3d at 38 (ECF No. 53). This Court found that all Class Members have suffered the same injury as a result of being subjected to the same inadequate mitigation efforts to prevent the spread of COVID-19 in the Facilities. *Id.* at 38-39. Because Class Members suffer the same constitutional injuries, this case "afford[s] class-wide relief that would . . . remed[y] the constitutional violations as to all detainees, even though it would have entailed the release or transfer of only some of the detainees." *Roman*, 977 F.3d at 944. These same considerations apply with equal force now as they did two years ago, and the Court's prior analysis demonstrates that the typicality element is satisfied. *See* ECF No. 1229, ¶ 4(c) (granting preliminary approval and finding typicality satisfied)

### 4.    The Proposed Class Representatives and Proposed Class Counsel Meet the Adequacy Requirement.

The final element of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this element, the named plaintiffs and their counsel must not have any conflicts of interest with the other class members, and the named plaintiffs and their counsel must pursue the action vigorously on the class's behalf. *Hanlon*, 150 F.3d at 1020. Class counsel may demonstrate their qualifications with previous experience litigating class action lawsuits. *See id.* at 1021.

Here, the proposed class meets both requirements, thereby satisfying the adequacy element. First, there are no conflicts among the Class Members. Each Class Member has suffered the same injury, and each seeks relief that would mitigate their risk of contracting the coronavirus. *See* ECF No. 780, Am. Compl., ¶¶ 16-34. Each class representative risked contracting COVID-19 by virtue

of their detention in the Facilities after April 20, 2020.  *See Roman*, 977 F.3d at 944 (affirming provisional class certification because each class member was exposed to an unnecessary risk of contracting COVID-19 due to facility conditions).  Second, the named Plaintiffs have pursued this action on behalf of all other detainees in the Facilities for over two years.

Finally, class counsel representing the class has extensive experience litigating class action suits, with specific experience representing people in immigration detention.  *See* ECF No. 1241-1, Decl. of Martin S. Schenker, ¶¶ 17-20; ECF No. 1241-2, Decl. of William S. Freeman, ¶¶ 17-21; ECF No. 1241-3, Decl. of Francisco Ugarte, ¶¶ 14, 17-23; ECF No. 1241-4, Decl. of Bree Bernwanger, ¶ 11; ECF No. 1241-5, Decl. of Amalie Wille, ¶¶ 12-13, 22; ECF No. 1241-6, Decl. of Stephanie Padilla, ¶¶ 11, 15-18.  After a year of vigorously litigating this case before this Court, class counsel engaged in months of settlement negotiations, recognizing that, compared to a comprehensive and effective settlement, further litigation would be a costly and inefficient way to achieve a positive result for all Class Members.  Plaintiffs' counsel believe the resulting Agreement is in the best interest of the Settlement Class Members.  Rule 23(a)(4)'s adequacy requirement is satisfied.  *See* ECF No. 1229, ¶ 4(d) (granting preliminary approval and finding adequacy satisfied).

**C.    The Court Should Confirm Its Initial Finding that Plaintiffs Have Satisfied the Requirements of Federal Rule of Civil Procedure 23(b)(2).**

The next issue for the Court is whether Plaintiffs have shown that at least one of the requirements of Rule 23(b) is met.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs satisfy Rule 23(b)(2) where the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The writers of Rule 23

intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights." *Baby Neal for & By Kanter*, 43 F.3d 48, 64 (3d Cir. 1994). For purposes of this rule, "it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Id.*

Rule 23(b)(2) is satisfied here for the Settlement Class. Plaintiffs sought injunctive relief as a result of Defendants' policies and practices that prevented social distancing in the Facilities, which subjected Class Members to dangerously high risks of contracting COVID-19. *See Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (noting that the Rule 23(b)(2) requirements are "almost automatically satisfied in actions primarily seeking injunctive relief" (quoting *Baby Neal for & by Kanter*, 43 F.3d. at 64). These actions by the Defendants apply generally to the Settlement Class and put every Class Member at risk of contracting COVID-19; an injunction thus provides relief to the entire Class. *See Saravia*, 280 F. Supp. 3d at 1205 ("Because a single injunction can protect all class members' procedural due process rights, the requirements of Rule 23(b)(2) are satisfied."); *see also Zepeda Rivas*, 445 F. Supp. 3d at 38-39; *Roman*, 977 F.3d at 944; ECF No. 1229, ¶ 4(e) (granting preliminary approval and finding Rule 23(b)(2) satisfied). Consequently, certification under Rule 23(b)(2) is appropriate.

### D. The Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court.

Federal Rule of Civil Procedure 23(e) "'requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate.'" *In re Online DVD-Rental Antitrust*

*Litig.,* 779 F.3d 934, 944 (9th Cir. 2015) (citations omitted).  "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-cv-1365-CW, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010).

When deciding whether to approve a proposed class action settlement, the Court may consider some or all of the following factors:

> [1] The strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) (citing *Hanlon* F.3d at 1026); *see also Rodriguez,* 563 F.3d at 963.  An analysis of the applicable factors weighs in favor of final approval of the Agreement as a good-faith, reasonable, and non-collusive settlement.  *See* Advisory Committee Notes to the 2018 Amendments to Federal Rule of Civil Procedure 23 (Regarding the amendment to subdivision (e)(2), "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal. . . . This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.")

**Strength of Plaintiffs' Case.**  The Court has recognized the merits of Plaintiffs' case multiple times throughout the duration of this litigation.  Shortly after Plaintiffs filed this action, the Court entered a temporary restraining order, *see Zepeda Rivas,* 445 F. Supp. 3d at 38-42 (ECF.

No. 53); the Court then granted a preliminary injunction less than two months later (ECF No. 357). Following substantial discovery and Defendants' failure to implement facility-specific COVID-19 protocols, the Court granted an order to show cause and another temporary restraining order. ECF No. 500. Following a five-day evidentiary hearing, the Court ordered a second preliminary injunction as to Mesa Verde in December 2020. ECF No. 867. Then, the next month, the Court granted a preliminary injunction as to YCJ in response to a COVID-19 outbreak. ECF No. 951. In each of these orders, the Court recognized that Plaintiffs were likely to succeed on the merits. This factor thus weighs in favor of approval.

   ***Risk, expense, complexity, and likely duration of further litigation***. While Plaintiffs enjoyed early successes securing injunctive relief and prevailing after Defendants' appeal, further litigation would present significant risks, complexity, and burdens on both sides. As evidenced by the 1,200-plus entries in this Court's docket alone, this case has been vigorously litigated and hotly contested. As discussed above, Plaintiffs successfully moved multiple times for injunctive relief in the first nine months of litigation. Defendants strongly opposed Plaintiffs' claims, challenging every bail application and appealing multiple orders to the Ninth Circuit. *See Zepeda Rivas*, Case No. 20-16276, ECF Nos. 76 & 77 (9th Cir. Feb. 18, 2021). Defendants also contested the merits of Plaintiffs' claims and heavily disputed whether portions of Plaintiffs' requested relief— particularly the release of individual Class Members—are an appropriate remedy for the harms alleged.

   Should Plaintiffs have to continue to litigate on appeal and through trial, the Settlement Class would assume an unacceptable degree of risk as the Parties would continue to contest challenging legal issues, including questions regarding this Court's jurisdiction and ability to order individual release for certain Class Members. Furthermore, because the injunctions issued before

the introduction and availability of vaccines, and because of the uncertainty of the progression of the pandemic, the constitutional calculus of the dangerousness of the conditions may well have changed.  Similarly, the unprecedented release of hundreds of Class Members created what Plaintiffs contend are novel due process considerations for any litigation regarding their re-detention.  Given the risks, burdens, and uncertainty of further litigation, this factor weighs in favor of approval.  *See Rodriguez*, 563 F.3d at 967 (affirming final approval when a "number of serious hurdles remained" including "an anticipated motion for summary judgment" and "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years.").

**The risk of maintaining class action status**.  Although Defendants have agreed to class treatment for purposes of this settlement, they would be free to oppose class treatment if the case were litigated, as they did during the first TRO, the first preliminary injunction, and on appeal.  While Plaintiffs believe the class meets the Rule 23 factors and is suitable for class treatment, class certification could be a disputed issue, and this risk to both sides supports the fairness of a negotiated resolution for all class members.  Class-wide resolution of Plaintiffs' claims through this settlement is therefore appropriate, and this factor supports approval.

**The amount offered in settlement**.  Plaintiffs' lawsuit did not seek damages, but instead sought to remedy the constitutional violations through injunctions.  The equitable relief provided by settlement is substantial, providing important safeguards for both Non-Detained Class Members and Detained Class Members that they otherwise would not have received.  Although the Settlement (and the complaint) never contemplated recovery of any monetary "amount," the meaningful relief provided for in the Agreement was reached after months of intense negotiation and was by no means a "first offer."  Accordingly, to the extent this factor is relevant to this case, it weighs in favor of approval.

***The extent of discovery and stage of proceedings***.   Plaintiffs took extensive discovery, including expedited document productions, written discovery, depositions, expert discovery, and a site inspection.   Moreover, Plaintiffs had the opportunity to call expert witnesses, submit expert declarations, and cross-examine Defendants' witnesses at a five-day evidentiary hearing.   To be sure, had the parties been unable to reach settlement, more discovery would have been required to develop the facts necessary for Plaintiffs to attempt to prevail at summary judgment or trial.   But the voluminous record developed in advance of the first and second preliminary injunctions demonstrates that "counsel had a good grasp on the merits of their case before settlement talks began" and thus were well positioned to enter into a favorable settlement.   *See Rodriguez*, 563 F.3d at 967 (affirming final approval prior to summary judgment when counsel developed a sufficient factual record to have an understanding of the merits of the case before pursuing settlement).

***Experience and view of counsel.***   Recognizing the dynamic nature of the pandemic and the complex legal and factual issues raised by this case, counsel for all parties engaged in months of negotiations, passed multiple settlement drafts, and sought and received three extensions from the Ninth Circuit to finalize a deal before coming to the final Agreement now before this Court. Experienced counsel on both sides had "a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses."   *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).   The Agreement is the result of months of hard-fought, arms-length negotiations—which were started only after Class counsel had zealously prosecuted the case on behalf of Plaintiffs, including by securing multiple TROs and preliminary injunctions. Class counsel, who have extensive experience in class actions, representing individuals in immigration detention, and constitutional law, believe that the Agreement is fair, reasonable,

adequate, and in the best interest of the Class Members after weighing the facts, law, and risks of continued litigation.  This factor thus weighs in favor of approval.  *See Yamagata v. Reckitt Benckiser LLC*, 2021 WL 5909206, at *4 (N.D. Cal. Oct. 28, 2021) (approving final class settlement that was "the product of lengthy, arms-length negotiations conducted in good faith and with the assistance of experienced mediators").

*Presence of a governmental participant.*  Defendants in this case include senior federal government executives who were represented by experienced federal counsel.  And the Settlement was assisted by a mediator with the Ninth Circuit Mediation Program.  Because the federal government was an indispensable and active participant in reaching the Agreement, this factor too favors approval.

*Reactions to the proposed settlement.*  As discussed in section IV.A above, Plaintiffs provided notice above and beyond the plan preliminarily approved by the Court, including by translating both the Notice and Agreement into Spanish, Vietnamese, Armenian, Punjabi, and Czech; hosting two conference calls with Class Members, one in Spanish and one in English; and disseminating the Notice and Agreement to members of the immigration advocacy community. *See* Riordan Decl. ¶¶ 3, 5, 8, 9.  To date, Plaintiffs' counsel are not aware of any objections to the Agreement.  Riordan Decl. ¶ 10.  This factor therefore favors approval.

***

This Motion and the Settlement mark the final chapter in a long, hard-fought litigation. Plaintiffs, counsel, and the Court have invested thousands of hours of time and substantial resources to reach this point.  Because the Agreement provides meaningful relief to the Class and was the result of extensive, arms-length negotiations, the Court should certify the Settlement Class and grant final approval of the Settlement.

V.      CONCLUSION

    For the foregoing reasons, Plaintiffs request that the Court enter the attached proposed order certifying the Settlement Class and approving the Settlement.

Dated:  May 26, 2022                    Respectfully submitted,

                                        /s/ *Sean Riordan*
                                        Sean Riordan
Bree Bernwanger                         William S. Freeman
LAWYERS' COMMITTEE FOR CIVIL            Emilou H. Maclean
RIGHTS OF THE SAN FRANCISCO             AMERICAN CIVIL LIBERTIES UNION
BAY AREA                                FOUNDATION OF NORTHERN CALIFORNIA

Judah Lakin                             Manohar Raju
Amalia Wille                            Matt Gonzalez
LAKIN & WILLE LLP                       Genna Ellis Beier
                                        Jennifer Friedman
                                        Francisco Ugarte
Stephanie Padilla                       Kelly Engel Wells
AMERICAN CIVIL LIBERTIES                OFFICE OF THE PUBLIC DEFENDER
UNION FOUNDATION OF                     SAN FRANCISCO
SOUTHERN CALIFORNIA

                                        Martin S. Schenker (SBN 109828)
                                        Timothy W. Cook (Mass. BBO #688688)
                                        Julie M. Veroff (SBN 310161)
                                        COOLEY LLP

CASE NO. 3:20-CV-02731
PLAINTIFFS' NOTICE OF UNOPPOSED
MOTION AND MPA ISO MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT