| | |
|---|---|
| WILLIAM S. FREEMAN (SBN 82002)<br>wfreeman@aclunc.org<br>SEAN RIORDAN (SBN 255752)<br>sriordan@aclunc.org<br>EMILOU H. MACLEAN (SBN 319071)<br>emaclean@aclunc.org<br>AMERICAN CIVIL LIBERTIES UNION<br>FOUNDATION OF NORTHERN CALIFORNIA<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (415) 621-2493<br>Facsimile: (415) 255-8437<br><br>Attorneys for Petitioners-Plaintiffs<br>Additional Counsel Listed on Following Page | MANOHAR RAJU (SBN 193771)<br>Public Defender<br>MATT GONZALEZ (SBN 153486)<br>Chief Attorney<br>GENNA ELLIS BEIER (SBN 300505)<br>genna.beier@sfgov.org<br>JENNIFER FRIEDMAN (SBN 314270)<br>jennifer.friedman@sfgov.org<br>FRANCISCO UGARTE (SBN 241710)<br>francisco.ugarte@sfgov.org<br>KELLY ENGEL WELLS (SBN 338648)<br>kelly.wells@sfgov.org<br>OFFICE OF THE PUBLIC DEFENDER<br>SAN FRANCISCO<br>555 Seventh Street<br>San Francisco, CA 94103<br>Direct: (415) 553-9319<br>Facsimile: (415) 553-9810 |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA,<br><br>    Petitioners-Plaintiffs,<br><br>    v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; MICHAEL KNIGHT, Acting Warden of Mesa Verde Detention Facility,<br><br>    Respondents-Defendants. | CASE NO. 3:20-CV-02731<br><br>**PLAINTIFFS' CHALLENGE TO RE-DETENTION OF JUAN BRAVO ZAMBRANO**<br><br>**JUDGE VINCE CHHABRIA** |

BREE BERNWANGER (SBN 331731)
bbernwanger@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF THE
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

MARTIN S. SCHENKER (SBN 109828)
mschenker@cooley.com
JULIE M. VEROFF
jveroff@cooley.com (SBN 310161)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

TIMOTHY W. COOK* (Mass. BBO# 688688)
tcook@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

*Attorneys for Petitioners-Plaintiffs*
*Admitted *Pro Hac Vice*

## INTRODUCTION

The Settlement Agreement in this case allows ICE to re-detain a class member for a probation violation *only if* that violation demonstrates the class member is a flight risk or danger to the community. On December 1, 2022, ICE re-detained class member Juan Bravo Zambrano (Mr. Bravo), who has lived at a stable residence with his family since his release, claiming that instances of non-compliance with federal probation requirements render him a flight risk from his immigration proceedings. Mr. Bravo maintained regular contact with his probation officer and remains subject to strict supervision. On the de novo review called for by the Settlement Agreement, Mr. Bravo is not a flight risk. Plaintiffs request that the court find that ICE breached the Settlement Agreement and order Mr. Bravo's immediate release.

## PROCEDURAL AND FACTUAL BACKGROUND

On May 28, 2020, Judge Chhabria ordered Mr. Bravo's release from ICE custody. ECF 272. Mr. Bravo returned to his family's home in Benton City, Washington, where he has remained. Declaration of Gregoria Zambrano Acevedo ("Acevedo Dec.") ¶ 2. Mr. Bravo has lived in Benton City with his family as a lawful permanent resident since 2011. ECF 248-4. He is a father to two U.S. citizen children. ECF 248-4. Since his release, Mr. Bravo has cared for and assisted his lawful permanent resident parents, who both have serious health issues and need his support. Acevedo Dec. ¶¶ 1-2, 7-15.

Mr. Bravo also has been subject to rigorous federal supervision in the Eastern District of Washington related to his sole criminal conviction. *See* Declaration of Bree Bernwanger ("Bernwanger Dec.") Ex. D and G (listing 22 separate conditions of release). On February 24, 2022, Mr. Bravo admitted violating certain conditions of his release over the course of several months, including failing to report in-person to probation, using a controlled substance, failing to report for drug testing, having contact with a convicted felon without permission, and failing to report a law enforcement contact (a traffic stop) to his probation officer. *See* Bernwanger Dec. Ex. A, B, C. The court sentenced Mr. Bravo to three months imprisonment. *See* Bernwanger Dec. Ex. D.

After his release, Mr. Bravo returned to his family's home in Benton City, where he remained in touch with probation. *See* Bernwanger Dec. Ex. E (documenting extensive contact with probation).

On July 5, 2022, Mr. Bravo admitted to violating additional conditions of release in April 2022 by failing to report for drug testing, to complete a drug abuse evaluation, and to report in-person to probation. *See* Bernwanger Dec. Ex. E, F, G. The court sentenced Mr. Bravo to seven months imprisonment and 48 months of supervised release. *See* Bernwanger Dec. Ex. F.

Although Mr. Bravo admitted that he fell out of compliance with certain supervision conditions, the record shows that he continued to comply with most of his conditions and remained in regular contact with his probation officer. For example, Mr. Bravo attended in-person appointments, including for drug testing, on November 29, 2021, December 16, 2021 and April 15, 2022. *See* Bernwanger Dec. Ex. A, E. He and his family also were in regular communication with probation. During the relevant time period, Mr. Bravo repeatedly contacted probation, apparently at the phone number they had on file for him, initiating calls to probation on November 21, 2021, December 29, 2021, January 14, 2022, January 19, 2022, and April 22, 2022 and speaking with a probation officer on November 19, 2021, December 16, 2021, January 19, 2022, and April 20, 2022. *See* Bernwanger Dec. Ex. A, E. Mr. Bravo often called his probation officer back promptly, in some cases the same day he received a message. *See* Bernwanger Dec. Ex. A at 2 (within 24 hours of 11/22/21), at 3 (within 24 hours of 1/13/22), at 4 (within 48 hours of 12/27/21); Bernwanger Dec. Ex. E at 3 (same day on 4/20/22). Mr. Bravo's parents and brother, with whom he lives, also cooperated with federal probation officers every time they reached out, which typically resulted in re-established contact with Mr. Bravo. *See* Bernwanger Dec. Ex. A (10/24/21 contact with mother leads to contact with Mr. Bravo; 12/27/21 message with mother leads to 12/29/21 returned call; 1/13/22 message with mother leads to 1/14/22 call; 11/22/21 message with mother leads to returned call).

Mr. Bravo has also been fully compliant with *all* conditions of release tailored toward flight risk. His supervision conditions prohibit him from leaving the federal judicial district without permission, require him to live at his stated address, require him to comply with strict notice requirements when he changes his address or contact information, and require him to allow home visits by the probation officer at any time. *See* Bernwanger Dec. Ex. D, G. There is no allegation that he has ever violated these conditions. Perhaps most significantly, the Eastern District of Washington has not subjected Mr. Bravo to any electronic monitoring or other particular restrictions on movement—even

after his recent, admitted violations—which shows that he is not the flight risk ICE believes him to be.

Moreover, Mr. Bravo has never missed an immigration court hearing or deadline imposed by an immigration adjudicator. Declaration of Juan Bravo Zambrano ("Bravo Dec.") ¶ 4. ICE has not alleged that he has failed to comply with *any* immigration-related obligations. Nevertheless, on December 1, 2022, ICE re-detained Mr. Bravo upon his release from federal criminal custody[1] because, in their view, his probation violations render him a flight risk from his immigration proceedings. The parties have met and conferred as set forth in Section V.B.2 of the Settlement Agreement and now seek court review.

## **LEGAL STANDARD**

The Settlement Agreement prohibits ICE from re-detaining class members except under strict criteria, including for failure "to comply with the terms of probation or parole" where "based on that conduct, the Class Member … poses a risk of flight." III.B.5. Although the Settlement Agreement does not define "risk of flight," it includes a provision that "[r]eporting within one business day of a scheduled reporting date will not be considered a violation of a material condition of release" warranting re-detention. III.B.1.b. Whether Mr. Bravo is a flight risk is an "objective question" that "must be interpreted under federal law." V.E.3; VI.F.

Under applicable federal law, flight risk is the likelihood that someone will "abscond," *Matter of Guerra*, 24 I&N Dec., 37, 40 (BIA 1976), which in the immigration context means abscondment from immigration court hearings or removal. *Demore v. Kim*, 538 U.S. 510, 515, 519—21 (2003). Relevant factors include (1) whether the person has a fixed U.S. address; (2) length of U.S. residence; (3) family ties in the U.S.; (4) employment history; (5) record of appearance in court; (6) criminal record; (7) immigration record; (8) attempts to flee prosecution or escape from authorities; and (9) manner of entry into the U.S. *Matter of Guerra*, 24 I&N Dec. 37, 40 (2006).

Federal law also instructs that in cases involving civil detention, like this one, the government

---

[1] In May 2021, Judge Chhabria terminated Mr. Bravo's bail on the basis of state criminal charges in Washington. *See* ECF 1090 (motion), 1096 (agreement to hold motion in abeyance), 1098 (order). However, Washington dropped the charges and ICE did not re-detain Mr. Bravo. The parties do not dispute that Mr. Zambrano remains protected by the Settlement Agreement.

must establish its basis for re-detention—including flight risk—by clear and convincing evidence.[2] *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (civil commitment); *Addington v. Texas*, 441 U.S. 418, 433 (1979) (civil commitment); *Perera v. Jennings*, ---F.Supp.3d---, 2022 WL 1128719, *7 (N.D. Cal. Apr. 15, 2022) (applying *Addington* to hold that clear and convincing evidence required to sustain immigration detention of petitioner ICE had previously left at liberty). Even when someone has violated conditions of release in the criminal system, federal law generally permits re-detention only when "there is no condition or combination of conditions of release that will assure the person will not flee." 18 U.S.C. § 3148(b)(2)(A).

## ARGUMENT

Mr. Bravo is not a flight risk. The Settlement Agreement makes clear that the parties did not believe violations of conditions of supervision constitute "risk of flight" when the Class Member promptly follows up with the supervising authorities. "A court must look at the contract as a whole and give to each particular clause thereof the modification or limitation or qualification which it is evident from the other parts of the contract the parties intended." *Lemm v. Stillwater Land & Cattle Co.*, 217 Cal. 474, 480 (1933); *see also Jeff. D. v. Andrus*, 899 F.2d 753, 759—60 (9th Cir. 1989) (settlement construction governed by state contract law). Here, it is evident that the parties intended that "[r]eporting within one business day of a scheduled reporting date" not only does not demonstrate flight risk, it is so immaterial that it cannot even trigger an inquiry into flight risk, even if a Class Member otherwise violated an ICE condition of release. III.B.1.B (permitting re-detention upon violation of "material condition of release in a manner indicating that the Class Member … poses a risk of flight"). As described in great detail above, on multiple occasions, Mr. Bravo reported to probation by phone within 24 hours of missing contact from a probation officer. He regularly maintained contact with probation. Although his conduct violated probation requirements, it does not rise to the level of "risk of flight" under the Settlement Agreement's terms.

The conduct underlying Mr. Bravo's probation violations also does not demonstrate risk of

---

[2] Plaintiffs believe it is their burden by a preponderance of the evidence to demonstrate that ICE breached the agreement by detaining Mr. Bravo without clear and convincing evidence that he is a flight risk. However, Plaintiffs also believe Mr. Bravo is not a flight risk under any standard the court might apply.

flight under the *Guerra* factors. He has a long-time stable address in Benton City with his family. Acevedo Dec. ¶¶ 5-6; Bravo Dec. ¶ 6. He has returned and remained there after each release from custody. *Id.* He is a long-time lawful permanent resident with extensive family ties in Washington, including two U.S. citizen children. ECF 248-4; Bravo Dec. ¶¶ 5-7. He provides care and assistance to his ailing parents. Acevedo Dec. ¶15. He has not missed a court hearing, including immigration court hearings. Bravo Dec. ¶ 4. He continues to be supported in and informed about his immigration case by counsel. *Id.* He entered the U.S. as a lawful permanent resident. *Id.* ¶ 1. He has not made an attempt to flee prosecution or escape from authorities. *Id.* ¶ 4; Acevedo Dec. ¶ 5. He will remain rigorously supervised by a federal probation officer for 48 months. The parole violations that Mr. Bravo accrued this year cannot outweigh his powerful community ties or history of compliance with immigration obligations. *Cf. United States v. Harris*, No. 2:19-cr-00235-KJM, 2021 WL 22436, *2 (E.D. Cal. Jan. 4, 2021) (in criminal pretrial context, defendant with "multiple failures to appear in state court" not flight risk because of stable residence and family ties).

Moreover, the federal court responsible for his supervision has not imposed any special monitoring of location restrictions on him. That court has supervised him for two-and-a-half years, and has not been hesitant to impose imprisonment and imposition of additional conditions on Mr. Bravo. If Mr. Bravo were in fact a flight risk, surely the court supervising him would impose special monitoring conditions or simply max out his punishment as courts do when probation deems people not amenable to supervision. But the court did none of those things here.

On this record, there is no serious argument that his violation of certain conditions of supervised release make Mr. Bravo a flight risk. ICE has breached the agreement and this court should order his immediate release from ICE custody.

Dated: December 19, 2022          Respectfully submitted,

                                  */s/ Bree Bernwanger*
                                  LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE
                                  SAN FRANCISCO BAY AREA