STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
ADRIENNE ZACK (CABN 291629)
SHIWON CHOE (CABN 320041)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7031
    Facsimile: (415) 436-6748
    adrienne.zack@usdoj.gov
    shiwon.choe@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, *et al.*, | CASE NO. 3:20-cv-02731-VC |
| Plaintiffs, | **FEDERAL DEFENDANTS' RESPONSE TO ALLEGATION OF MATERIAL BREACH WITH RESPECT TO RE-DETENTION OF JUAN BRAVO ZAMBRANO** |
| v. | |
| DAVID JENNINGS, *et al.*, | |
| Defendants. | |

I.      INTRODUCTION

In April 2019, Juan Bravo Zambrano ("Mr. Bravo") was convicted for conspiracy to distribute large amounts methamphetamine, cocaine, heroin, and fentanyl. *United States v. Bravo Zambrano*, No. 4:15-cr-6049-EFS-19 (E.D. Wash.) (*Bravo* Criminal Docket), ECF No. 1239. In October 2019, Mr. Bravo was released from criminal custody, immediately entered ICE custody, and was detained in ICE custody pursuant to 8 U.S.C. § 1226(c), which requires mandatory detention of certain criminal noncitizens while their removal proceedings are pending. *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018).[1] In May 2020, the District Court released Mr. Bravo during the bail-application process in this case. ECF No. 272. In April 2021, less than a year later, Mr. Bravo was arrested for harassment and making death threats related to a domestic-violence incident. *Bravo* Criminal Docket, ECF No. 1436.[2] In January 2022, the U.S. Probation Department submitted another petition for Mr. Bravo's arrest due to his repeated and months-long failure to comply with his supervised-released conditions, including by failing to return calls from his probation officer ("PO"), by failing to appear in person or by telephone seven of nine required times (11/22/21, 11/24/21, 12/27/21, 12/29/21, 1/7/22, 1/13/22, and 1/20/22), by using methamphetamine as confirmed by drug tests, and by knowingly communicating with another felon. Bernwanger Decl., Exs. A, B. Mr. Bravo admitted these allegations and was sentenced to three months' imprisonment and 57 months' supervised release. *Id.*, Exs. C, D. Less than two months after his release, Mr. Bravo again failed to comply with his release conditions, including by failing to appear for two drug tests (4/18/22 and 4/20/22), by failing to attend or reschedule his substance-abuse evaluation, by failing to return his PO's calls, and by failing to report to his PO (4/22/22).[3] *Id.*, Ex. E. Mr. Bravo admitted the allegations in his second probation-violation petition and was sentenced to another seven months' imprisonment and 48 months' supervised release. *Id.*, Exs. F, G. Following his term of imprisonment, ICE determined, based on the facts that Mr. Bravo admitted in his two probation-violation petitions, that Mr. Bravo is a flight risk and is unlikely to comply with supervision and instructions, including instructions to appear for immigration hearings or removal, and took Mr. Bravo

---

[1] Mr. Bravo was ordered removed on May 5, 2020; his appeal of that order remains pending.
[2] The charges and probation petition were ultimately dismissed because the victim was nonresponsive. *Bravo* Criminal Docket, ECF No. 1458. Mr. Bravo was released from state custody in July 2021.
[3] Plaintiffs state that Mr. Bravo called probation on November 21, 2021, and April 22, 2022, Pltfs' Br. at 2, but the petitions do not recount any contact on those dates.

back into ICE custody.  Declaration of Neil Schaefer ¶ 32.

Plaintiffs now claim that Mr. Bravo's re-detention is a material breach of the Settlement Agreement in this case, ECF No. 1205-1.  The Settlement Agreement expressly provides that ICE may re-detain Class Members who fail to comply with the terms of probation or parole if, based on that conduct, the Class Member presents a danger, is a threat to national security, or poses a flight risk.  *Id.* § III.B.5.  Plaintiffs nonetheless raised a claim of material breach on December 6, 2022.  Plaintiffs' claim fails.  First, Plaintiffs failed to comply with the timeline set forth in the Settlement Agreement's dispute-resolution mechanism and thus have waived their challenge to Mr. Bravo's re-detention.  Second, Plaintiffs have presented no meaningful challenge to ICE's flight-risk determination and have not established any breach.  Mr. Bravo thus should remain detained.

## II. ARGUMENT

### A. Plaintiffs Have Waived Their Challenge to Mr. Bravo's Re-Detention

Plaintiffs failed to timely provide their brief challenging Mr. Bravo's re-detention and thus have waived their challenge.  The Settlement Agreement provides that if Plaintiffs raise a claim that a Class Member has been re-detained in material breach of the Agreement, the parties must and confer within three business days.  ECF No. 1205-1, § V.B.2.  If the parties are unable to resolve the dispute within two business days "after Plaintiffs raise a claim," the parties agree that they will present the dispute to a magistrate judge.  *Id.*  The Agreement requires Plaintiffs to then provide Federal Defendants with a brief within five business days; provides Federal Defendants three business days to file a response; and provides Plaintiffs two business days to file a reply.  *Id.*  The briefs are then provided to the magistrate judge to make an objective determination of a material breach.  *Id.*, §§ V.B.2, V.E.3.

Here, Plaintiffs raised their claim of material breach on December 6.  Declaration of Adrienne Zack, Ex. A at 8.  The parties were "unable to resolve the dispute within two business days after Plaintiffs raise[d] a claim," i.e., by December 8.  Plaintiffs' brief was therefore due "within 5 business days," i.e., December 15.  Plaintiffs did not request an extension of that deadline and did not meet it.  *See generally* Zack Decl. at Ex. A.  Instead, Plaintiffs untimely provided their brief only on December 19 at 11:52 p.m.  *Id.* at 1.

Plaintiffs can only claim that they had until December 19 (instead of December 15) for their brief

FED. DEFS.' RESPONSE RE J. BRAVO ZAMBRANO
No. 3:20-cv-02731-VC                                         2

if their five-business-day period started on December 12 (instead of December 8). December 12 was two business days after the parties' meet and confer. But the Settlement Agreement does not say that the two-business-day period runs from the date of the meet and confer—it says that the two-business-day period runs from the date "Plaintiffs raise a claim." Plaintiffs raised a claim of material breach on December 6, and the initial two-business-day period thus ran to December 8, and Plaintiffs' five-business-day briefing period thus ran to (and expired) on December 15. Where the text of an agreement has a generally prevailing meaning, it is interpreted in accordance with that meaning. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 32 (2004) ("[W]here the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded") (quoting *Green v. Biddle*, 21 U.S. (8 Wheat.) 1, 89–90 (1823)); Restatement (Second) of Contracts § 202(3)(a) (1981).[4] Because Plaintiffs did not comply with the express time requirements set forth in the text of the Settlement Agreement, Plaintiffs have forfeited their challenge.

    B.  Re-Detention of Mr. Bravo Did Not Materially Breach the Settlement Agreement.

Even if Plaintiffs' claims of material breach had been properly presented, Defendants' re-detention of Mr. Bravo was not a material breach. ICE properly determined that Mr. Bravo is a flight risk due to his repeated noncompliance with his federal supervised release conditions.

In the immigration context, flight risk considers whether an individual is likely to appear for

---

[4] The fact that the two-business-day period to attempt to resolve a dispute expires before the deadline to meet and confer does not detract from this plain meaning or create a conflict, ambiguity, or surplusage. Rather, this provision reflects the fact that when Plaintiffs raise a claim, Defendants may quickly realize an error and correct it. The preceding paragraph demonstrates this understanding, stating that if "the Parties agree that a Class Member was re-detained in violation of the Settlement Agreement, ICE will release the Class Member from custody." ECF No. 1205-1 § V.B.1. When reading the two sections of the Settlement Agreement regarding the dispute resolution procedures for re-detention together, as one must in interpreting agreements, it is evident that Plaintiffs were required to provide their brief to Defendants within seven business days of their raising a claim of material breach, which they did not do. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) ("A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself.") (citations omitted). Additionally, where the parties determined that subsequent actions were to be predicated on a meet and confer, the parties knew how to draft a provision reflecting that intent. *See* ECF No. 1205-1 § V.D ("If, *after the meet and confer*, the Parties are unable to resolve the dispute, except as provided in Subsection V.B.2, the Parties will jointly seek expeditious presentation of the dispute to the Ninth Circuit mediation program.") (emphasis added). But the parties specifically excluded disputes regarding re-detention (Subsection V.B.2) from that provision and instead imposed a separate express time limit on Plaintiffs' briefing for a dispute regarding re-detention that runs not from the meet and confer but instead runs from when "Plaintiffs raise a claim." *Id.* § V.B.2.

immigration court hearings or removal. *Demore v. Kim*, 538 U.S. 510, 519–21 (2003). The inquiry is a holistic one, and there is broad discretion to consider any or all of a not exhaustive set of factors, so long as the ultimate conclusion is reasonable. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). It is generally a noncitizen's burden to demonstrate that he is not a flight risk in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1210–12 (9th Cir. 2022) (finding in the non-mandatory detention pre-removal order context that the burden of proof was properly on the noncitizen, and rejecting the application of *Foucha v. Louisiana*, 504 U.S. 71 (1992) and *Addington v. Texas*, 441 U.S. 418 (1979) in the immigration context).[5]

The flight-risk consideration applicable to Mr. Bravo is whether he is likely to comply with any future instruction of ICE to appear for removal from the United States or instruction of the immigration court to appear for a hearing. The probation violation record is replete with evidence demonstrating that Mr. Bravo is unlikely to comply with future instructions regarding his appearance. Since he was released from state criminal custody in July 2021, Mr. Bravo has been unable to comply with the simplest probation requirements for even four months—the first alleged violation in the January 2022 petition was in November 2021. The record shows that when he was instructed to appear in person or via telephone, he did not comply 10 out of 12 times, and only did so when his PO repeatedly and consistently followed up with him. The two occasions on which he did report as instructed, he tested positive for methamphetamine use. Even when the PO relayed messages through his family, Mr. Bravo still did not comply in many instances (i.e., failure to report by phone on 1/7/22; failure to report in person on 1/13/22). Repeated failures to report, drug-test violations, and drug addiction can establish risk of flight. *See, e.g.*, *United States v. Spurlock*, No. 3:22-cr-00006-GFVT-MAS-1, 2022 WL 1624894, at *2–4 (E.D. Ky. May 23, 2022) (failure to appear and illegal drug use indicated risk of flight, and family support, stable residence with grandmother, and grandmother's monitoring, did not sufficiently mitigate flight risk); *United States v. Hill*, No. 3:17-CR-276, 2020 WL 4208936, at *2 (M.D.

---

[5] Plaintiffs' reliance on *Perera v. Jennings*, __ F. Supp. 3d __, No. 21-cv-04136-BLF, 2022 WL 1128719 (N.D. Cal. Apr. 15, 2022), is misplaced. *Perera* relied on a holding in *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), that the government must prove by clear and convincing evidence that a noncitizen is a flight risk or a danger to the community to justify denial of bond. *Perera*, 2022 WL 1128719, at *7. The Ninth Circuit has held that this holding of *Singh* has been abrogated: "to the extent that any parts of *Singh* . . . remain good law," *Singh* is limited at most to only certain specific enumerated detention statutes, and there is no freestanding requirement otherwise for the government to bear the burden of proof to establish flight risk. *Rodriguez Diaz*, 53 F.4th at 1202–03.

Pa. July 22, 2020) (failure to appear for eight drug tests indicated well-founded flight risk); *United States v. Baker*, No. 1:04-CR-52, 2008 WL 2003084, at *2 (N.D. Ind. May 8, 2008) (missing probation appointments and illegal drug use within two months of release demonstrated risk of flight).[6]

Plaintiffs' citation to *United States v. Harris*, No. 2:19-cr-00235-KJM, 2021 WL 22436 (E.D. Cal. Jan. 4, 2021), is inapposite. The defendant's failures to appear there "can be explained in ways that do not support a meaningful risk of flight." *Id.* at *2. Specifically, the defendant was in federal custody and thus unable to appear in state court. *United States v. Harris*, No. 2:19-cr-00235-KJM (E.D. Cal.), ECF No. 69 at 3–4 (cited by *Harris*, 2021 WL 22436, at *2).[7] Mr. Bravo offers no similar explanation for his repeated violations and noncompliance here.

Plaintiffs' contention that Section III.B.1.b of the Settlement Agreement (which excuses a missed reporting if the individual subsequently reports within one business day) requires a different conclusion is inapposite. That is not what has occurred in Mr. Bravo's case. On many occasions, Mr. Bravo failed to report and did not report the next day either. *See, e.g.*, Bernwanger Decl., Ex. A. (failing to report on 11/22/21 and not reporting on 11/23 or 11/24; failing to call on 1/7/22 and not calling on 1/10, the next business day). He proactively contacted the PO after missing a reporting requirement only once (on 1/14/22). *Id.* This is not a case of a single instance of missing a reporting requirement. Rather, the record demonstrates that in the very short time Mr. Bravo was out of custody, he repeatedly failed to meet his obligations to report, and if not subject to consistent, repeated follow-up by his PO, he would likely not have complied on his own.

Mr. Bravo's supervised release violations demonstrate that he is unable to comply with even the most basic requirements of supervision. If is his unable to report for a drug test, it is likely that he will be unable to report for removal or future immigration court hearings, if applicable. ICE therefore appropriately determined that he is a flight risk. Mr. Bravo should remain detained.

---

[6] Plaintiffs claim that Mr. Bravo has not missed a court hearing. But this fact is of limited weight, given that most of Mr. Bravo's court hearings during (1) the active part of his removal proceedings and (2) his probation-violation petitions, took place when he was detained (the latter detention occurring because the judge presiding over his criminal proceedings determined that he had not established that he was not a flight risk). Schaefer Decl. ¶¶ 6–10; Zack Decl., Exs. B & C. Attendance at court hearings while being detained does not negate flight risk, and whether Mr. Bravo might have attended some earlier, less-consequential court hearings prior to the active part of his removal proceedings and his probation-violation petitions is of at most limited weight and does not rebut his other violations and risk of flight.

[7] The defendant's remaining warrants were all for misdemeanors, and in at least one instance, the misdemeanor notice for him to appear was sent to the wrong address.

FED. DEFS.' RESPONSE RE J. BRAVO ZAMBRANO
No. 3:20-cv-02731-VC                                    5

| | |
|---|---|
| DATED: December 22. 2022 | Respectfully submitted,<br><br>STEPHANIE M. HINDS<br>United States Attorney<br><br>*/s/ Adrienne Zack*<br>ADRIENNE ZACK<br>Assistant United States Attorney<br><br>Attorneys for Federal Defendants |