WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
EMILOU H. MACLEAN (SBN 319071)
emaclean@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Attorneys for Petitioners-Plaintiffs
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
GENNA ELLIS BEIER (SBN 300505)
genna.beier@sfgov.org
JENNIFER FRIEDMAN (SBN 314270)
jennifer.friedman@sfgov.org
FRANCISCO UGARTE (SBN 241710)
francisco.ugarte@sfgov.org
KELLY ENGEL WELLS (SBN 338648)
kelly.wells@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: (415) 553-9319
Facsimile: (415) 553-9810

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

ANGEL DE JESUS ZEPEDA RIVAS, BRENDA RUBI RUIZ TOVAR, LAWRENCE KURIA MWAURA, LUCIANO GONZALO MENDOZA JERONIMO, CORAIMA YARITZA SANCHEZ NUÑEZ, JAVIER ALFARO, DUNG TUAN DANG, JUAN JOSE ERAZO HERRERA, RAJNISH RAJNISH, and WILLIAN MATIAS RAUDA,

       Petitioners-Plaintiffs,

       v.

DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; GEO GROUP, INC.; MICHAEL KNIGHT, Acting Warden of Mesa Verde Detention Facility,

       Respondents-Defendants.

CASE NO. 3:20-CV-02731-VC

**PLAINTIFFS' REPLY IN SUPPORT OF CHALLENGE TO RE-DETENTION OF JUAN BRAVO ZAMBRANO**

**JUDGE VINCE CHHABRIA**

1    BREE BERNWANGER (SBN 331731)       MARTIN S. SCHENKER (SBN 109828)
   bbernwanger@lccrsf.org                mschenker@cooley.com
2    LAWYERS' COMMITTEE FOR           JULIE M. VEROFF
   CIVIL RIGHTS OF THE                 jveroff@cooley.com (SBN 310161)
3    SAN FRANCISCO BAY AREA          COOLEY LLP
   131 Steuart St #400                   3 Embarcadero Center, 20th Floor
4    San Francisco, CA 94105           San Francisco, CA 94111-4004
   Telephone: (415) 814-7631         Telephone: (415) 693-2000
5                                          Facsimile: (415) 693-2222
   JUDAH LAKIN (SBN 307740)
6    judah@lakinwille.com              TIMOTHY W. COOK* (Mass. BBO# 688688)
   AMALIA WILLE (SBN 293342)       tcook@cooley.com
7    amalia@lakinwille.com            COOLEY LLP
   LAKIN & WILLE LLP               500 Boylston Street
8    1939 Harrison Street, Suite 420    Boston, MA 02116
   Oakland, CA 94612               Telephone: (617) 937-2300
9    Telephone: (510) 379-9216        Facsimile: (617) 937-2400
   Facsimile: (510) 379-9219
10
   STEPHANIE PADILLA (SBN 321568)
11   spadilla@aclusocal.org
   AMERICAN CIVIL LIBERTIES UNION
12   FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West Eighth Street
13   Los Angeles, CA 90017
   Telephone: (213) 977-9500
14   Facsimile: (213) 977-5297

15                          *Attorneys for Petitioners-Plaintiffs*
16                            *Admitted Pro Hac Vice*

17

18

19

20

21

22

23

24

25

26

27

28

## I.     ICE's Reading of the Agreement Is Illogical and Plaintiffs' Brief Was Timely

This court should reject ICE's crabbed reading of the Settlement Agreement (the "Agreement"), which would prematurely force potential disputes before the magistrate judge. The Agreement sets the following timeline: If Plaintiffs' counsel claims that a re-detention appears to be a material breach, ICE counsel must meet and confer within three business days of the claim. V.B.2. At or before the meet and confer, ICE must provide Plaintiffs with the basis for re-detention. *Id.* This means Plaintiffs might not receive the basis for re-detention until *three days* after raising a claim. Then, "[i]f the Parties are unable to resolve the dispute within two business days after Plaintiffs raise a claim, the parties agree that they will present the dispute to the assigned magistrate for resolution." *Id.* By setting a two-day deadline to "resolve the dispute," the Agreement plainly sets a timeline for the meet and confer process. This necessarily can happen only after Plaintiffs have "raised a claim." After spending two days attempting to "resolve the dispute," Plaintiffs have five days to submit an opening brief and supporting evidence to ICE. *Id.*

ICE's reading to the contrary, in which the Parties agree to bring the dispute before the magistrate before ICE is even required to provide the basis for detention, is not supported by plain language or any canon of construction. It is hornbook contract law that, "if the principal purpose of the parties is ascertainable, it is given great weight." Restatement (Second) of Contracts ("Rstmt.") § 202(1). Here, the principal purpose of the parties is clear: to meaningfully attempt to resolve enforcement disputes by meeting and conferring before burdening this court. ICE argues that the Agreement contemplates only that "Defendants may quickly realize an error and correct it," rather than engaging in good faith dispute resolution. Response at n.4. But this is not the "ordinary meaning" of a meet and confer requirement, which "is not a meaningless formality, nor is it optional; … the purpose … is for the parties to engage in a meaningful dialogue … to see whether they can resolve … the disputes without court intervention." *Dairy v. Harry Shelton Livestock, LLC*, No. 18-CV-06357-RMI, 2020 WL 6269541, at *1 (N.D. Cal. Oct. 23, 2020) (discussing discovery dispute).[1] Plaintiffs' reading, in which litigation before the magistrate commences only *after* the

---

[1] Here, ICE shared the basis for Mr. Bravo's re-detention on December 7 and 8. Zack Decl. Ex. A at 5, 7. Plaintiffs used the meet and confer period to negotiate in good faith in an effort to avoid litigation. *Id.* at 5 (telephonic meet and confer), 3-4 (Plaintiffs shared mitigating evidence and sought

1  parties have undertaken a good faith meet-and-confer process, "gives a reasonable, lawful, and

2  effective meaning to all the terms" and thus "is preferred to an interpretation which leaves a part

3  unreasonable, unlawful, or of no effect," as ICE's does. Rstmt. § 203(a).

4  **II.    Mr. Bravo Is Not a Flight Risk**

5       ICE does not rebut, and thus concedes, that Mr. Bravo has no record of immigration

6  supervision violations or likelihood of attempting to actually abscond from his known residence in

7  Benton City.[2] In its legal arguments, ICE cites only to readily distinguishable out-of-circuit cases

8  involving criminal detention. In *U.S. v. Spurlock*, the defendant had a conviction for *fleeing* police.

9  No. 3:22-cr-00006-GFVT-MAS-1, 2022 WL 1624894 at *3 (E.D. Ky. May 23, 2022). In *Spurlock*

10  and *U.S. v. Hill* the defendants had criminal contact in multiple states. *Id.*; Crim. No. 3:17-CR-276,

11  2020 WL 4208936, *2-*3 (M.D. Pa. July 22, 2020). In *U.S. v. Baker*, unlike Mr. Bravo, the

12  defendant accrued all violations within two months of release. No. 1:04-CR-52, 2008 WL 2003084,

13  *2 (N.D. Ind. May 8, 2008). But in cases like Mr. Bravo's, which do not involve immigration

14  supervision violations, community ties, length of residence, and lawful permanent residence—all

15  present here—are decisive in holding that detention on the basis of flight risk is not warranted. *See,*

16  *e.g.*, *In re: Randy Penaranda Cabantac*, 2010 WL 1251039, at *2 (BIA Feb. 24, 2010) (reversing

17  bond denial); *In re: Victor Hugo Martinez-Jaramillo*, 2008 WL 2079391, at *1 (BIA Apr. 21, 2008)

18  (upholding bond). Mr. Bravo is not a flight risk. ICE materially breached the Agreement and this

19  court should order his release.[3]

20  ICE's position on release contingent on a substance abuse evaluation and appropriate treatment).
[2] ICE's misstates the law in its arguments on burden. First, *Rodriguez Diaz v. Garland* applies only
21  to 8 U.S.C. § 1226(a) and is thus inapplicable here. 53 F.4th 1189, 1203 (9th Cir. 2022). Second,
ICE argues that "*Singh* [*v. Holder*] has been abrogated" by *Rodriguez Diaz.* Response at n.5. Not so.
22  The sentence in *Rodriguez Diaz* from which ICE quotes actually reads as follows: "To the extent that
any parts of *Singh*, *Casas*, *Diouf II*, and *Rodriguez II* remain good law—*an issue we need not*
23  *decide*—those cases in relevant part addressed detention under §§ 1225(b), 1226(c), or 1231(a)(6),
not detention that was based on § 1226(a) throughout." 53 F.4th at 1196 (emphasis added). The
24  Ninth Circuit went on to emphasize that it was not deciding whether *Singh* remains good law. 53
F.4th at 1202 n.4 ("[W]e have no occasion to decide whether *Singh* remains good law in any respect
25  following *Jennings*."). *Rodriguez Diaz* thus did not disturb *Singh* or *Perera*, and certainly did not
disturb longstanding Supreme Court precedents like *Foucha v. Louisiana* and *Addington v. Texas*.
26  [3] The Agreement elsewhere addresses ICE's (unfounded) concerns that Mr. Bravo may not appear
for removal. *See* Response at 4. The Agreement requires that ICE permit non-detained class
27  members to voluntarily appear for removal and allows re-detention only *after* they do not comply.
III.D. ICE has presented no evidence that in such a circumstance, there would be any issue
28  apprehending and re-detaining Mr. Bravo from his home Benton City to effectuate his removal.

CASE NO. 3:20-CV-02731-VC
PLAINTIFFS' REPLY ISO CHALLENGE TO RE-
DETENTION OF JUAN BRAVO ZAMBRANO

Dated: December 27, 2022   Respectfully submitted,

              */s/ Bree Bernwanger*
              LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE
              SAN FRANCISCO BAY AREA