UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANGEL DE JESUS ZEPEDA RIVAS, et al., | Case No. 20-cv-02731-LB |
| Plaintiffs, | |
| v. | **ORDER DENYING PETITION** |
| | Re: ECF No. 1295 |
| DAVID JENNINGS, et al., | |
| Defendants. | |

**INTRODUCTION**

The plaintiffs in this class-action lawsuit are current and former civil immigration detainees at the Yuba County Jail and the Mesa Verde Processing Facility during the COVID-19 pandemic. They sued U.S. Immigrations and Customs Enforcement (ICE) and its private contractor GEO Group on the ground that the conditions of their detention offered little to no protection from the pandemic, in violation of the U.S. Constitution. The parties reached a class-action settlement that the trial court approved in June 2022. Under the settlement agreement, the defendants are required to mitigate COVID-19 risks at the facilities, such as by offering vaccination to class members who are still detained and providing them with educational materials, masks, and hand-cleaning supplies. For class members who are not detained, the defendants are required for three years to make best efforts not to re-detain them under the immigration laws unless they pose a threat to public safety or national security or a risk of flight. In the event of a disputed re-detention, the

ORDER – No. 20-cv-02731-LB

United States District Court
Northern District of California

court is to resolve the dispute under the settlement agreement's dispute-resolution procedures and re-detention criteria.

On September 13, 2023, ICE re-detained class member Cesar Eduardo Miranda on the ground that he is a danger to the community. At the time he was re-detained, Mr. Miranda had just been released from custody after serving approximately two years of a four-year sentence following his guilty plea to elder abuse of his grandmother. Mr. Miranda challenges his re-detention under the settlement agreement on the ground that he is not objectively dangerous because, among other reasons, his behavior was aberrant and resulted from a drug-induced psychosis following multiple severe traumas. Mr. Miranda submits new evidence that postdates ICE's re-detention to support his request for release.

First, ICE did not violate the settlement agreement. Second, assuming a remedy in the form of the court's consideration of the re-detention decision, on this record — which is all that Mr. Miranda is asking the court to consider — Mr. Miranda poses a danger to persons and a risk to public safety.

### STATEMENT

### 1. The Litigation and the Settlement Agreement

The plaintiffs sued on April 20, 2020, alleging that civil immigration detainees at the Yuba County Jail and the Mesa Verde ICE Processing Facility were being held "under extraordinarily dangerous conditions during the current COVID-19 pandemic."[1] They claimed a violation of their Fifth Amendment right to substantive due process and sought declaratory and injunctive relief.[2] On April 29, 2020, the trial court issued a temporary restraining order for ICE to provide information so that individual bail requests could be considered.[3] That led to a reduction in detainee numbers so that social distancing could happen, and in June 2020, the trial court issued a

---

[1] Compl. – ECF No. 1 at 3 (¶ 1). Record citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of the documents. The analysis in this section is repeated practically verbatim from the court's order at ECF No. 1277.

[2] Am. Compl. – ECF No. 780 at 40 (¶ 139 & Prayer for Relief).

[3] TRO – ECF No. 53 at 5–6 (¶ 6).

ORDER – No. 20-cv-02731-LB                2

preliminary injunction to preserve that status quo.[4] Then, in August and December 2020, the trial court issued a further temporary restraining order and preliminary injunction for the Mesa Verde facility.[5] Similarly, in December 2020 and August 2021, the trial court issued a temporary restraining order and preliminary injunction applicable to the Yuba County Jail.[6]

In December 2021, the parties settled the case.[7] The trial court granted final approval to that settlement under Federal Rule of Civil Procedure 23 in June 2022.[8] The final-approval order vacated the preliminary injunctions.[9] It also provided for the appointment of a magistrate judge to resolve any disputes under the settlement.[10]

Under the settlement agreement, the defendants must take various measures to mitigate COVID-19 risks at the two facilities.[11] They also must, for three years, make best efforts not to re-detain any class member under the immigration laws unless the class member poses a threat to public safety or national security or a risk of flight.[12] The settlement agreement sets forth the following more specific criteria, which are the only criteria ICE may use to re-detain class members during the applicable three-year period:

1.  The Class Member has violated any material condition of release in a manner indicating that the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight. A material condition of release includes but is not limited to those conditions prohibiting criminal activity, reporting requirements, and restrictions on movement.
    a.  ICE takes the position that serious drug offenses — such as trafficking in or sale of significant amounts — and sex offenses, particularly against children, constitute a risk to public safety.
    b.  Reporting within one business day of a scheduled reporting date will not be considered a violation of a material condition of release.

---

[4] Prelim. Inj. – ECF No. 357 at 8–9.

[5] TRO – ECF No. 500 at 2–3; Prelim. Inj. – ECF No. 867 at 23–26.

[6] TRO – ECF No. 922 at 1–3; Prelim. Inj. – ECF No. 951.

[7] Settlement Agreement – ECF No. 1205-1.

[8] Final Approval Order – ECF No. 1258.

[9] *Id.* at 5–6 (¶ 12).

[10] *Id.* at 6 (¶ 15).

[11] Settlement Agreement – ECF No. 1205-1 at 8–13 (§ II).

[12] *Id.* at 13–17 (§ III).

United States District Court
Northern District of California

2. The Class Member fails or has failed to appear for an immigration court hearing and was ordered removed by an immigration judge.
   a. If the immigration judge later grants a motion to reopen the in absentia removal order, [ICE Enforcement and Removal Operations] will evaluate whether release is warranted, paying particular attention to the circumstances surrounding the in absentia order and whether the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.
3. The Class Member has absconded.
   a. Upon locating the Class Member, [ICE Enforcement and Removal Operations] will evaluate whether release is warranted, paying particular attention to the circumstances surrounding the absconding and whether the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.
4. The Class Member has been arrested by local, state, or federal authorities for new criminal conduct if, based on that conduct, the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.
5. A local, state, or federal authority finds that the Class Member has failed to comply with the terms of probation or parole, if, based on that conduct, the Class Member presents a danger to persons or property, is a threat to national security, or poses a risk of flight.
6. The Class Member poses a very significant ongoing threat to public safety or national security. A determination that a Class Member poses a very significant ongoing threat to public safety or national security under this subsection only may be based upon criminal convictions and/or ongoing criminal proceedings preceding the Class Member's release pursuant to a bail order issued by the Court and shall include consideration of factors such as the egregiousness of the underlying conviction and/or ongoing criminal proceedings; whether the conduct included violence; the sentence served or — in the case of Class Members in ongoing criminal proceedings — potential sentence; the recency of the criminal activity; and the characteristics of the victim, if any; as well as mitigating factors, including personal and family circumstances; health and medical factors (this includes mental health); evidence of rehabilitation; compliance with conditions of release; and availability of alternatives to detention to mitigate the risk to public safety and/or national security. Crimes that may fall within this category include, but are not limited to: homicide, including attempt; rape or sexual assault, including attempt; crimes against children, including offenses involving molestation, abuse, abandonment, neglect, or harm (physical or emotional); felony domestic violence offenses, including violations of an underlying protective order; and unlawful use of a weapon in an area where it could reasonably anticipated to cause harm to others. In such limited cases, ICE will conduct an individualized review of the Class Member's record and may re-detain the Class Member only after approval at a senior headquarters level. Only in these circumstances may ICE consider pre-release information or conduct when seeking to re-detain a Class Member under this Section.[13]

---

[13] *Id.* at 13–15 (§ III.B).

United States District Court
Northern District of California

After the settlement agreement's three-year period limiting ICE's re-detention of class members, "ICE's re-arrest and re-detention practices for [c]lass [m]embers will occur pursuant to generally applicable law and policy."[14]

The agreement also has dispute-resolution procedures for when the plaintiffs dispute the re-detention of a class member:

> Counsel for ICE agree to meet and confer with Class Counsel within three business days in response to a claim by Plaintiffs that ICE is in material breach of Section III of the Settlement Agreement (pertaining to redetention of released Class Members). At or before the meet and confer, ICE agrees to provide the basis for the re-detention of the Class Member. If the Parties are unable to resolve the dispute within two business days after Plaintiffs raise a claim, the parties agree that they will present the dispute to the assigned magistrate for resolution. Absent a request for more time from the re-detained Class Member, Class Counsel shall provide Counsel for ICE with a brief of not longer than five pages, and any supporting evidence, within five business days. Counsel for ICE shall have three business days to file a response. Counsel for Plaintiffs shall file a reply, if any, within two business days. The Parties shall then jointly file a request for expedited resolution with the assigned magistrate. . . .[15]

The settlement agreement provides a standard of review for the assigned magistrate judge to apply in resolving disputes:

> In all instances where the magistrate judge is tasked with determining whether a material breach has occurred, the inquiry is an objective one. By way of example, whether a Class Member poses a risk to public safety or is a flight risk, whether a Class Member has absconded, or whether a Class Member has been medically isolated, is an objective question that will be determined in the first instance by the magistrate judge and no deference will be given to a [p]arty's best efforts regarding the alleged breach at issue.[16]

All former detainees released on bail by order in this case are subject to conditions of release. The court may impose additional conditions of release.[17]

---

[14] *Id.* at 16 (§ III.G).

[15] *Id.* at 18–19 (§ V.B.2).

[16] *Id.* at 19 (§ V.E.3).

[17] *Id.* at 14–15 (§ III.F); Third Revised Standard Conditions of Release – ECF No. 543.

## 2. The Disputed Re-Detention

Cesar Eduardo Miranda has been a lawful permanent resident of the United States for more than thirty years (since he was three).[18] In 2018, following his guilty plea, he was convicted of second-degree robbery and resisting an officer in violation of Cal. Penal Code §§ 211 and 60 and was sentenced to two years in prison.[19] On May 11, 2020, following his release from state prison, ICE took him into custody, charged him with removability under the Immigration and Nationality Act (INA), and determined that he would be detained because he was subject to mandatory custody under INA § 236(c).[20] In July 2020, after this lawsuit was filed in April 2020, Judge Chhabria ordered his release from ICE custody at the Mesa Verde facility.[21] Mr. Miranda then worked, took classes, attended AA at the LDS church (where he and his family are members), spent time with (and helped out) his grandmother, and had a period of sobriety through June 2021 (shown by his clean tests administered by his probation officer).[22]

On February 17, 2021, Mr. Miranda's mother was driving Mr. Miranda home from work, when another car t-boned them and destroyed the car. Mr. Miranda sustained nerve damage at two points on his spine, and his doctor suggested epidural injections, at $15,000 an injection, which he could not afford. As a result of his pain, he could not work.[23] On May 4, 2021, an assailant beat Mr. Miranda (resulting in bruising over most of his face) and stole his money, phone, and new bicycle. That also derailed him from working and his overall recovery. As a result, he resumed using drugs in June 2021 to help him cope with his back pain and mental-health challenges.[24]

On June 16, 2021, he took methamphetamine to reduce the back pain and surmises (based on its effect on him) that it was laced with PCP. He attacked his grandmother "while in this out-of-

---

[18] Miranda Decl. – ECF No. 1295-5 at 3 (¶ 3).

[19] Lo Decl. – ECF No. 1295-8 at 2 (¶ 3).

[20] *Id.* (¶¶ 4–5).

[21] Bail Application – ECF No. 398-1; Order – ECF No. 415.

[22] Miranda Decl. – ECF No. 1295-5 at 3 (¶¶ 3–6).

[23] *Id.* at 3–4 (¶¶ 7–10).

[24] *Id.* at 4 (¶ 11–12).

control state." His memory of what happened is "convoluted."[25] His grandmother has been a loving and supporting figure in his life, protecting him from his alcoholic father.[26] "The police report, as summarized in the probation officer's report, states that Miranda was arrested after he assaulted his grandmother in their home, punching her in the face, and then fled the scene after a neighbor arrived. His grandmother was transported by ambulance to the hospital for treatment of a swollen cheek and hand and laceration on her hand."[27]

During the subsequent criminal proceedings, a court-appointed psychologist evaluated him twice, finding him incompetent to stand trial (in September 2021) and finding him competent (in December 2021). By December 2021, the psychologist found, Mr. Miranda had "dramatically improved with regard to his mental health symptoms, those symptoms likely were the result of drug abuse, [he] [wa]s no longer a danger to public safety, and [he] was appropriate for Mental Health Diversion."[28] In February 2022, he pleaded no contest to elder abuse under Cal. Penal Code § 368(b)(1) and was sentenced to four years in prison. He served approximately two years, based on good-time credits. On September 13, 2023, ICE arrested Mr. Miranda on his release from prison and has detained him since at the Golden State Annex detention center.[29] ICE did not know about the court-authorized psychological evaluations of Mr. Miranda that took place in September and December 2021.[30]

On November 20, 2023, a licensed psychologist with more than forty years' experience, including on the CDCR's Board of Parole Hearings, evaluated Mr. Miranda. He found that Mr. Miranda's drug use was a result of his back injury, robbery, and lack of professional support to help him cope with these setbacks. His violence against his grandmother was the result of drug intoxication. Mr. Miranda showed insight and remorse, and he did not pose a risk to the public if

---

[25] *Id.* (¶¶ 14–15).

[26] *Id.* at 4–5 (¶ 16).

[27] Lo Decl. – ECF No 1295-8 at 3 (¶ 11).

[28] Williams Evaluation – ECF No. 1296-3 at 4 (p. 3) (citing Liefer evaluation).

[29] Lo Decl. – ECF No. 1295-8 at 3–4 (¶¶ 11–14, 16).

[30] *Id.* at 4 (¶ 16).

released to the community.[31] A social worker with the San Francisco Public Defender's office has developed a release plan for Mr. Miranda and will work closely with him if he is released. The release plan includes an outpatient program that offers cognitive-behavioral therapy, substance-abuse counseling, and trauma-related counseling, all close to his family home in Reseda.[32]

**ANALYSIS**

The issue is whether the defendants breached the settlement agreement.

The settlement agreement sets forth the exclusive conditions under which ICE may re-detain class members during the agreement's three-year period, after which ICE's re-detentions will again "occur pursuant to generally applicable law and policy."[33] ICE will re-detain a class member only if one or more of six specified conditions (quoted in full in the Statement) exists. The parties agree that the relevant conditions here are (1) "[t]he Class Member "has violated any material condition of release in a manner indicating that the Class Member presents a danger to persons" and (2) "[t]he Class Member has been arrested by local, state, or federal authorities for new criminal conduct if, based on that conduct, the Class Member presents a danger to persons."[34]

Case law sets forth factors relevant to the issue of whether a detainee is a flight risk or a danger to the community. Given the settlement agreement's specification of the relevant criteria (albeit in § III.B.6), the factors at least illuminate the court's inquiry. The factors are:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

---

[31] Williams Evaluation – ECF No. 1296-3 at 6–9 (pp. 5–8).

[32] Sanchez Letter – ECF No. 1295-3 at 3–5.

[33] Settlement Agreement – ECF No. 1205-1 at 13–15 (§ III.A–.B), 16 (§ III.G).

[34] *Id.* at 14–15 (§ III.B.1 and III.B.4); Pls.' Challenge to Re-Detention – ECF No. 1295-1 at 6; Defs.' Resp. – ECF No. 1295-7 at 3.

*Singh v. Holder*, 638 F.3d 1196, 1206 n.5 (9th Cir. 2011) (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)), *abrogated on other grounds as recognized in Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). The burden is on the noncitizen detainee, at least at an initial bond hearing before an immigration court. *Rodriguez Diaz*, 53 F.4th at 1210–12.

The issue is whether ICE breached the settlement agreement by re-detaining Mr. Miranda as a danger based on his arrest for new criminal conduct that eventually resulted in his conviction for elder abuse. The government points out that it is hard to find breach if one considers only conduct that existed at the time of the breach. And the facts that existed then satisfy the criteria of the settlement agreement: an arrest for serious criminal conduct that indicates danger to persons.[35]

That said, if the court determined that ICE had an obligation to consider new information about rehabilitation and alternatives to incarceration,[36] then the court's inquiry is an "objective one. By way of example, whether a Class Member poses a risk to public safety . . . is an objective question that will be determined in the first instance by the magistrate judge and no deference will be given to a [p]arty's best efforts regarding the alleged breach at issue."[37]

On this record, as an objective matter, the criminal conduct establishes grounds for Mr. Miranda's re-detention. Specifically, his conduct, arrest, and conviction "indicat[e] that the Class Member presents a danger to persons," and "based on that conduct, the Class Member presents a danger to persons."[38] The "objective question" is whether Mr. Miranda "poses a risk to public safety."[39] He does.

The court acknowledges the substantial work by class counsel to develop a release plan.[40] The problem with drug-induced psychosis is that harm can result, like the harm here to Mr. Miranda's

---

[35] Defs.' Resp. – ECF No. 1295-7 at 3 (citing two district court cases, one from the Southern District of California and one from the Southern District of New York).

[36] *See* Settlement Agreement – ECF No. 1205-1 at 14–15 (§ III.B.6). This section does not apply, but it provides the criteria for what an inquiry based on new information looks like.

[37] *Id.* at 19 (§ V.E.3).

[38] *Id.* at 14–15 (§ III.B.1 and III.B.4)

[39] *Id.* at 19 (§ V.E.3).

[40] *See supra* Statement.

ORDER – No. 20-cv-02731-LB                    9

grandmother, and it can reoccur with continued drug use. The court adds that in the somewhat analogous context of federal pretrial or postconviction supervision, there are other tools: intensive federal supervision and monitoring, the halfway house, residential drug treatment, and custodians. These might not change the outcome here. But it informs the conclusion that on this paper record, the release plan does not mitigate the danger sufficiently to allow release.

## CONCLUSION

The court denies release. This resolves ECF No. 1295.

**IT IS SO ORDERED.**

Dated: February 12, 2024

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California